**VOLUME I OF II, Pages Appx1-2544**
**2023-2241**

# United States Court of Appeals
# for the Federal Circuit

TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.,
NORTON (WATERFORD) LTD.,

*Plaintiffs-Appellees,*

— v. —

CIPLA LTD.,

*Defendant-Appellant.*

*On Appeal from the United States District Court for the District of New Jersey in No. 2:20-cv-10172-JXN-MAH Honorable Julien X. Neals, Judge*

## JOINT APPENDIX

DAVID I. BERL
BENJAMIN M. GREENBLUM
ELISE M. BAUMGARTEN
KATHRYN S. KAYALI
BEN PICOZZI
RICHARDO LEYVA
WILLIAMS & CONNOLLY LLP
680 MAINE AVENUE, SW
WASHINGTON, DC 20024
(202) 424-5000
dberl@wc.com
bgreenblum@wc.com
ebaumgarten@wc.com
kkayali@wc.com
bpicozzi@wc.com
rleyva@wc.com

*Counsel for Plaintiffs-Appellees*

ANIL H. PATEL
ADAM S. BERLIN
K&L GATES LLP
609 Main Street, Suite 4150
Houston, Texas 77002
(713) 815-7300
anil.patel@klgates.com
adam.berlin@klgates.com

HAROLD STOREY
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
(206) 623-7580
harold.storey@klgates.com

PETER GIUNTA
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
(212) 536-3900
peter.giunta@klgates.com

*Counsel for Defendant-Appellant*

**TABLE OF CONTENTS**
**JOINT APPENDIX**

| PAGE NO. | DATE | DKT. NO. | DESCRIPTION | TRIAL EX. NO. |
|---|---|---|---|---|
| Appx1-44 | 6/21/2023 | 301 | Opinion | |
| Appx45-46 | 6/21/2023 | 302 | Order Directing Parties to Submit a Joint Proposed Form of Judgment consistent with Opinion & Order | |
| Appx47-48 | 6/29/2023 | 304 | Joint Final Judgment Order | |
| Appx49-86 | - | | Docket Sheet Comprising the Record before the United States District Court, District of New Jersey, Case No. 2:20-cv-10172-JXN-MAH | |
| Appx87-117 | 10/11/2016 | | Certified U.S. Patent No. 9,463,289 (JTX-003) | JTX-003 |
| Appx118-150 | 11/7/2017 | | Certified U.S. Patent No. 9,808,587 (JTX-004) | JTX-004 |
| Appx151-182 | 2/18/2020 | | Certified U.S. Patent No. 10,561,808 (JTX-002) | JTX-002 |
| Appx183-210 | 9/10/2008 | | International Publication No. WO 2008/119552 (DTX-162) | DTX-162 |
| Appx211-307 | 1/11/2007 | | International Publication No. WO 2007/124406 (DTX-161) | DTX-161 |
| Appx308-356 | 11/12/2003 | | International Publication No. WO 03/101514 (DTX-165) | DTX-165 |
| Appx357-370 | 1/27/2002 | | U.S. Patent Publication No. US 2002/0078950 (DTX-159) | DTX-159 |
| Appx371 | | | Certified File History for U.S. Patent No. 10,561,808 (JTX-006) | JTX-006 |
| Appx2675 | 11/17/2022 | | Gregor Anderson Direct Testimony on Invalidity on Behalf of Cipla (DDX-3) | DDX-3 |
| Appx2706 | 11/16/2022 | 241 | Transcript of Bench Trial Volume 1 (Redacted) | |
| Appx3446 | 11/17/2022 | 243 | Transcript of Bench Trial Volume 2 | |
| Appx3773 | 11/18/2022 | 244 | Transcript of Bench Trial Volume 3 | |

| PAGE NO. | DATE | DKT. NO. | DESCRIPTION | TRIAL EX. NO. |
|---|---|---|---|---|
| Appx4020 | | | JTX-008 Certified File History for U.S. Patent 9,808,587 | JTX-008 |
| Appx6503 | | | PTX-208 Teva C2 DFM/DFA Report | PTX-208 |
| Appx6617 | | | PTX-231 Design Drawing | PTX-231 |
| Appx6624 | | | PTX-247 Brainstorm Spiromax "Tape Loosening" | PTX-247 |
| Appx7105 | | | PTX-372 Rote Ex. 03 - Drawing 120 Dose Counter Assembly DC (7100-011) | PTX-372 |
| Appx7231 | | | DTX-137 U.S. Patent 4,817,822 | DTX-137 |
| Appx7241 | | | DTX-153 U.S. Patent Publication No. US 2006/0289008 | DTX-153 |
| Appx7255 | | | DTX-168 United Kingdom Patent No. GB 994,755 | DTX-168 |
| Appx7260 | | | DTX-172 International Publication No. WO 2004/060260 | DTX-172 |
| Appx7297 | | | DTX-174 U.S. Design Patent No. D416,998 | DTX-174 |
| Appx9895 | 7/6/2021 | 102 | STATEMENT Joint Claim Construction and Prehearing Statement on Behalf of All Parties by All Plaintiffs. (Attachments: # 1 Exhibit) | |
| Appx13121 | | 157-15 | Expert Report of Gregor Anderson, dated April 29, 2022 | |
| Appx18584 | 1/17/2023 | 249 | TRIAL BRIEF Post-Trial by CIPLA LTD. | |
| Appx19559 | 2/27/2023 | 265 | Cipla RESPONSE re 262 Trial Brief. | |
| Appx19687 | 2/27/2023 | 267 | TRIAL BRIEF Post-Trial by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (Attachments: # 1 Declaration of Liza M. Walsh, # 2 Exhibit A | |

| PAGE NO. | DATE | DKT. NO. | DESCRIPTION | TRIAL EX. NO. |
|---|---|---|---|---|
| Appx19787 | 2/27/2023 | 268 | Proposed Findings of Fact by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC. | |
| Appx27898 | | | JTX-007 Certified File History for U.S. Patent 9,463,289 | JTX-007 |
| Appx29430 | | | PDX-4 Dr. David Lewis Direct Examination: Validity Demonstratives | PDX-4 |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC., and NORTON (WATERFORD) LTD., | : : : | **Civil Action No. 20-10172 (JXN) (MAH)** (Consolidated with Civil Action Nos. 20-14833 and 20-14890) |
| Plaintiffs, | : : |  |
| v. | : : | **OPINION** |
| CIPLA LTD., AUROBINDO PHARMA LLC, AUROBINDO PHARMA USA, INC., and AUROLIFE PHARMA LLC, | : : : : | **(Under Seal)** |
| Defendants. | : |  |

**NEALS**, **District Judge**:

## I.  INTRODUCTION

Plaintiffs Teva Branded Pharmaceutical Products R&D, Inc. ("Teva") and Norton (Waterford) Ltd. ("Norton") (collectively, "Plaintiffs") bring this consolidated patent infringement action against Defendant Cipla Ltd. ("Cipla") for submitting an Abbreviated New Drug Application ("ANDA") No. 211434 to the U.S. Food and Drug Administration ("FDA") seeking approval to commercially manufacture, use, offer for sale, sell, and/or import generic versions of Plaintiffs' QVAR® (beclomethasone dipropionate) products prior to the expiration of U.S. Patent Nos. 9,463,289 (the "'289 Patent"), 9,808,587 (the "'587 Patent"), 10,022,509 (the "'509 Patent"); 10,022,510 (the "'510 Patent"); 10,086,156 (the "'156 Patent"), and 10,561,808 (the "'808 Patent").  *See* Compl., ECF No. 1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.  Venue is proper under 28 U.S.C. §§ 1391(b) and 1400(b).  This opinion addresses allegations of infringement and invalidity with respect to the '289, '587, and '808 Patents (collectively, the "Asserted Patents") that each relate to the dose counting system that Teva developed and used in QVAR®.

This Court held a three-day bench trial relating to the Asserted Patents. *See* Transcripts ("Tr."), ECF Nos. 241-244. The parties submitted post-trial briefing with respect to infringement, validity, objective indicia, and the admissibility of the Aurobindo materials. *See* ECF Nos. 254, 257, 263, 266, 269, 271. This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). The findings of fact are based on the Court's observations and credibility determinations of the witnesses who testified at trial and a thorough review of all the evidence. As to infringement, the Court finds that Cipla's ANDA product infringes each Asserted Claim of the '289, '587, and '808 Patents. As to validity, the Court finds that the Asserted Patents are valid and Cipla's claims of obviousness are invalid.

## II.   BACKGROUND

### A.   <u>Patents-in-Suit and Asserted Claims</u>

#### 1.   The '289 Patent

The '289 Patent, entitled "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof," issued on October 11, 2016. Cipla's Finding of Fact ("CFOF"), ECF No. 266. The '289 Patent issued from U.S. Patent Application Serial No. 14/103,324. The '289 Patent was filed on December 11, 2013, as a divisional of U.S. Patent Application Serial No. 13/110,532, which in turn was filed on May 18, 2011, and is now U.S. Patent No. 8,978,966. The '289 Patent purports to claim the benefit of priority to each of U.S. Provisional Patent Application Serial No. 61/345,763, which was filed on May 18, 2010, and U.S. Provisional Patent Application No. 61/417,659, which was filed on November 29, 2010.

The '289 Patent includes one independent claim. Plaintiffs assert that Cipla's ANDA product infringes independent claim 1 and dependent claims 2, 4, 6, and 7 of the '289 Patent. Cipla

Appx2

contends that the '289 Patent is invalid as obvious in view of the '406 Publication in combination with the '514 Publication.  ECF No. 256.  The Asserted Claims in the '289 Patent read as follows:

**Claim 1**:
An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, and wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, the inner wall canister support formation, the actuation member, and the central outlet port lying in a common plane coincident with the longitudinal axis X.

**Claim 2**:
The inhaler as claimed in claim 1 wherein the medicament canister is movable relative to the dose counter.

**Claim 4**:
The inhaler as claimed in claim 1, wherein the first inner wall canister support formation comprises a support rail which extends longitudinally along an inside surface of the main body.

**Claim 6**:
The inhaler as claimed in claim 4 further comprising a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

**Claim 7**:
The inhaler as claimed in claim 6, wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

**2.  The '587 Patent**

The '587 Patent, entitled "Dose Counter for Inhaler Having an Anti-Reverse Rotation Actuator," issued on November 7, 2017.  The '587 Patent issued from U.S. Patent Application Serial No. 15/269,249, which was filed on September 19, 2016, as a continuation of U.S. Patent Application Serial No. 14/103,324, now the '289 patent, which in turn was filed on December 11, 2013, as a divisional of U.S. Patent Application Serial No. 13/110,532 (the "'532 Application"),

which in turn was filed on May 18, 2011, and is now U.S. Patent No. 8,978,966.  The '587 Patent, purports to claim the benefit of priority to each of U.S. Provisional Patent Application Serial No. 61/345,763, which was filed on May 18, 2010, and U.S. Provisional Patent Application No. 61/417,659, which was filed on November 29, 2010.

The '587 Patent includes three independent claims, two of which Plaintiffs assert against Cipla.  Plaintiffs assert that Cipla's ANDA product infringes independent claims 1 and 12, and dependent claims 2, 4, 6, and 7 of the '587 Patent.  Cipla contends that the '587 Patent is invalid as obvious in view of the '406 Publication in combination with the '514 Publication.  ECF No. 256.  The Asserted Claims of the '587 Patent read as follows:

**Claim 1:**
An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, and wherein the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

**Claim 2:**
The inhaler as claimed in claim 1 wherein the medicament canister is movable relative to the dose counter.

**Claim 4:**
The inhaler as claimed in claim 1, wherein the first inner wall canister support formation comprises a support rail which extends longitudinally along an inside surface of the main body.

**Claim 6:**
The inhaler as claimed in claim 4 further comprising a plurality of support rails each of which extends longitudinally along the inside surface of the main body.

4

**Claim 7:**
The inhaler as claimed in claim 6, wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

**Claim 12:**
An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, and wherein the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member.

### 3. The '808 Patent

The '808 Patent, entitled "Dose counter for inhaler having an anti-reverse rotation actuator," issued on February 18, 2020. The '808 Patent issued from U.S. Patent Application Serial No. 15/262,818, which was filed on September 12, 2016, as a continuation of U.S. Patent Application Serial No. 14/699,584, now abandoned, which in turn was filed on April 29, 2015, as a continuation of U.S. Patent Application Serial No. 14/103,353, now U.S. Patent No. 9,526,850, which in turn was filed on December 11, 2013 as a divisional of U.S. Application No. 13/110,532, now U.S. Patent No. 8,978,966, which was filed on May 18, 2011. The '808 Patent purports to claim the benefit of priority to each of U.S. Provisional Patent Application Serial No. 61/417,659, which was filed on November 29, 2010, and U.S. Provisional Patent Application No. 61/345,763, which was filed on May 18, 2010.

The '808 Patent includes one independent claim. Plaintiffs assert that Cipla's ANDA product infringes claim 28 of the '808 patent, which depends from claims 1 and 27. Cipla contends

that the '808 Patent is invalid as obvious in view of the '406 Publication and 552 Publication, among other arguments. ECF No. 256. The Asserted Claims of the '808 Patent read as follows:

**Claim 1:**
A dose counter for an inhaler, the dose counter having a counter display arranged to indicate dosage information, a drive system arranged to move the counter display incrementally in a first direction from a first station to a second station in response to actuation input, wherein a regulator is provided which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movements.

**Claim 27:**
The dose counter as claimed in claim 1 in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

**Claim 28:**
The dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

**B. Stipulated Facts**

Prior to trial, the parties stipulated to the following facts in the Final Pretrial Order ("FPO"):

1. Teva holds all rights, title, and interest in each of the Asserted Patents.

2. Each of the Asserted Patents is listed in the FDA's Approved Products with Therapeutic Equivalents ("Orange Book") in connection with Teva's Qvar® HFA with Dose Counter drug product.

3. Each of Defendants' ANDA Products comprises an inhaler for metered dose inhalation.

4. The inhaler of each of Defendants' ANDA Products comprises a main body having a canister housing.

5. The inhaler of each of Defendants' ANDA Products comprises a medicament canister.

6. The medicament canister of each of Defendants' ANDA Products is moveable relative to the canister housing.

7. The medicament canister of each of Defendants' ANDA Products is retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister.

8. Each of Defendants' ANDA Products comprises a dose counter.

9. The canister housing of each of Defendants' ANDA Products has an inner wall.

10. The inner wall of the canister housing of each of Defendants' ANDA Products has a plurality of ribs.

11. The canister housing of each of Defendants' ANDA Products has a longitudinal axis X which passes through the center of the central outlet port.

12. The medicament canister of each of Defendants' ANDA Products is moveable relative to the dose counter.

13. Each of Defendants' ANDA Products comprises a dose counter for a metered dose inhaler.

14. Each of Defendants' ANDA Products comprises a metered dose inhaler having a body arranged to retain a medicament canister of predetermined configuration for movement of the medicament canister relative thereto, the medicament canister containing an active drug.

15. Each of Defendants' ANDA Products comprises a dose counter for an inhaler.

*See* ECF No. 210 at 9-10[1]; *see also* Tr. 425:10-426:9.

---

[1] For the sake of clarity, unless otherwise noted, all references to page numbers correspond to the page numbers generated by the ECF system.

Appx7

## III. DISCUSSION

### A. <u>Infringement</u>

#### 1. Legal Standard

Under 35 U.S.C. § 271(e)(2)(A), whoever submits "an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act . . . for a drug claimed in a patent or the use of which is claimed in a patent" infringes the patent. Under 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

"Literal infringement exists if each of the limitations of the asserted claim(s) read on, that is, are found in, the accused ANDA product." *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995). If a defendant infringes even one claim, it infringes the patent, *Panduit Corp v. Dennison Mfg. Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987), and the patentee is entitled to a remedy, including all applicable statutory remedies, see 35 U.S.C. § 271(e)(4)(A), (B).

A proper "infringement analysis entails two steps." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). "The first step is determining the meaning and scope of the patent claims asserted to be infringed." *Id.* "The second step is comparing the properly construed claims to the ANDA product accused of infringing." *Id.* Thus, a court "must disregard the testimony of [an] expert . . . [if] based on an incorrect understanding of the claim construction." *Cordis Corp. v. Bos. Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011).

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004)). Infringement can only be assessed by "comparing the asserted claim[s] to the accused ANDA product, not by comparing the accused ANDA product to the figures of the asserted patent." *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002). It is likewise impermissible to compare the asserted claims "with the patentee's commercial embodiment." *Int'l Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 772 (Fed. Cir. 1993) (per curiam).

"Direct infringement is a strict-liability offense." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("[A] defendant's mental state is irrelevant."). Thus, whether the relevant component in the defendant's product has the "purpose" of performing a claim limitation is irrelevant if it performs that limitation. *See, e.g., Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1368-69 (Fed. Cir. 2012) (rejecting argument that accused product did not infringe because accused element did not have the "purpose" of performing the claim limitation); ECF No. 217 at 5 (*Markman* Order) (citing *Toshiba*, 681 F.3d at 1368).

Infringement is a question of fact, which a patentee can prove by a preponderance of the evidence (*i.e.*, that it is "more likely than not" that infringement occurred). *See Lucent Techs. Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1309, 1317-18 (Fed. Cir. 2009); *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341-42 & n.15 (Fed. Cir. 2005); *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1364 (Fed. Cir. 2017). Unlike a defendant who argues that a patent is invalid, a patentee need not satisfy any heightened standard. *See Lucent Techs.*, 580 F.3d at 1317-18.

As with other questions of fact, a patentee may prove infringement by direct or circumstantial evidence.  *Lucent Techs*., 580 F.3d at 1318.  Direct evidence is not required.  *See Symantec Corp. v. Comput. Assocs. Int'l Inc.*, 522 F.3d 1279, 1293 (Fed. Cir. 2008).  "A patentee may prove infringement by 'any method of analysis that is probative of the fact of infringement.'" *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1372 (Fed. Cir. 2009) (quoting *Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1312 (Fed. Cir. 2001)).

Nevertheless, factual disputes have their limits; a defendant cannot raise a factual dispute based on its expert's conclusory testimony.  *See Intell. Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1184 (Fed. Cir. 2009) ("An expert's unsupported conclusion on the ultimate issue of infringement will not alone create a genuine issue of material fact."); *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) ("[I]t is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact."); *Warner-Lambert*, 418 F.3d at 1341-42 ("[B]ald assertion" of noninfringement insufficient absent "specific evidence").

## 2.  **Findings of Fact and Conclusions of Law**

### a.  *The '289 Patent*

The issue before the Court is whether Plaintiffs have proven, by a preponderance of the evidence, that it is more likely than not that Cipla's ANDA product infringes the '289 Patent.  Plaintiffs argue that Cipla's ANDA product infringes claims 1, 2, 4, 6, and 7 ("the Asserted Claims").  ECF No. 262 at 10.[2]  Claim 1 of the '289 Patent recites:

**Claim 1:**
An inhaler for metered dose inhalation, the inhaler comprising:

---

[2] Cipla only contested infringement of a single term in a single limitation of claim 1 and did not dispute that its product meets any of the other limitations of claim 1 of the '289 Patent.  FOF 4, ECF No. 263; Tr. 503:23-504:4 (claim 1), FOF 90-105, ECF No. 263; Tr. 481:23-482:8 (dependent claims); *see also* 523:3-8, 525:3-527:11.  *See* ECF No. 262 at 10.

a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, and wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, the inner wall canister support formation, the actuation member, and the central outlet port lying in a common plane coincident with the longitudinal axis X.

The only limitation in claim 1 that the parties dispute is whether Cipla's ANDA product contains an "inner wall canister support formation, the actuation member, and the central outlet port lying in a common plane coincident with the longitudinal axis X," which the parties refer to as the "Common Plane Limitation."  There are several construed terms within the Common Plane Limitation.  The parties agreed that "canister support formation" means "a formation arranged to reduce canister rocking."  *See* ECF No. 102 at 4.  The parties further agreed that the term "inner wall" should be construed to mean "an internal wall of the inhaler body, which includes a main surface of the inner wall and the inner wall through which a portion of the actuation member extends, but excludes the bottom surface, or floor, of the inhaler body." *Id.* at 5.  The term "lying in a common plane coincident with the longitudinal axis X" was construed by the Court to mean "aligned in a single plane such that a straight line can be drawn through the center of the central outlet port, the canister support formation, and the actuation member."  *See Markman* Order, ECF No. 218 at 2.  The parties do not dispute that the front rib in Cipla's ANDA product is "aligned in a single plane such that a straight line can be drawn through the center of the central outlet port, the canister support formation, and the actuation member."  Thus, the question of infringement of claim 1 turns on the question of whether Plaintiffs have proven, by a preponderance of the evidence, that the front rib in Cipla's ANDA product is "arranged to reduce canister rocking," as required by the Common Plane Limitation in claim 1.

Plaintiffs offered the testimony of Dr. David Andrew Lewis, who performed a series of experiments on Cipla's ANDA product and presented demonstratives to help explain his conclusions. Dr. Lewis testified that the front rib in Cipla's ANDA product is arranged to reduce canister rocking. Tr. 213:6-10. When asked "[h]ow can you tell that the rib is a formation arranged to reduce cannister rocking," Dr. Lewis testified that "you can tell by simply looking. When you hold the inhaler, you can just push it and you can see it touches before it touches the inner wall." *Id.* 213:11-16. Dr. Lewis further testified that "[t]he front rib visibly extends inwardly into the inhaler body," and "by extending into the cavity of the inhaler body . . . [it] necessarily limits the canister's freedom of movement in the direction of the front of the device." *Id.* 206:20-207:4, 370:25-371:8. Plaintiffs argue that "this proposition is confirmed easily by holding the inhaler by the mouthpiece, pushing the canister forward, and observing that the canister contacts the rib in question and thereby stops its motion[.]" ECF No. 262 at 14. In support of their argument, Plaintiffs cite the following excerpts from Dr. Lewis's testimony:

- "When you hold the inhaler, you can just push it [the canister] and you can see it touches [the rib] before it touches the inner wall." Tr. 213:12-16 (Lewis).

- "[H]old the mouthpiece so you are not interfering with the body. And then simply just push the canister, just tap it down. Then you can see it touches the middle [*i.e.*, disputed] rail and there is also gap. Meaning if you took that rail out, it would continue to move." *Id.* at 217:23-218:4, 218:14-219:5.

- "[A]s I touch it, [the canister] meets the rail. And I can also see there is a gap still there between the canister and the housing." Tr. 218:23-219:4.

- "I can see the rail supporting the canister." *Id.* at 221:25-222:8.

- "If you are holding the inhaler by the mouthpiece and then you push, it's going to hit the rib." Tr. 375:24-376:7.

- "I see the canister touching the front rib and I see a gap at the top, as well, of the inhaler body. So I see a touching of the canister to that rib." Tr. 400:11-22 (explaining "gap between canister and inhaler body . . . mean[s] that the canister is not touching the inhaler body.").

12

*See* ECF No. 262 at 14-15 (citing FOF 46-48, ECF No. 263).  According to Plaintiffs, this is sufficient to determine that the front rib in question is arranged to reduce cannister rocking.

Nevertheless, Dr. Lewis performed multiple experiments in support of his opinion that the front rib is "arranged to reduce canister rocking."  In one experiment, Dr. Lewis compared the amount of canister rocking that can occur in Cipla's ANDA product "as supplied"—*i.e.*, with all ribs and mounting tabs present—with a version of Cipla's ANDA product in which he removed all the ribs (but not the mounting tabs).  Tr. 223:12-224:1.  Dr. Lewis testified that "as supplied, there is less movement -- there is more movement once you remove the ribs."  *Id.* 224:4-5.  Dr. Lewis explained that removal of the ribs results in more than a millimeter of movement.  *Id.* 224:17-18.  Although Dr. Lewis removed both the front and back ribs in Cipla's ANDA product, Dr. Lewis testified that he only rocked the canister forward so the removal of the ribs in the back were irrelevant.  *Id.* 229:17-230:12.

In addition to measuring the rocking, Dr. Lewis also performed an experiment to determine whether, if you remove the front rib in Cipla's ANDA product, is it possible to rock Cipla's canister so far forward that it causes the dose counter to misfire.  *See* PTX-178; Tr. 229:4-13.  During the experiment, Dr. Lewis rocked the canister in the direction of the front rib (which was removed), Tr. 230:1-13, and depressed the canister, Tr. 248:11-2.  The canister then slid down the front wall of the inhaler in the location where the rib would have been located had it not been removed.  *See* Tr. 248:16-21; 249:25-250:2; 372:11-373:2; 385:20-386:8; 403:17-404:7; 404:19-21; PTX-178 (Video).  Plaintiffs contend that this experiment demonstrates that the front rib is arranged to reduce canister rocking, since in the rib's absence, the canister can contact the inhaler wall at the rib's former location.

Cipla argues that Dr. Lewis's experiments do not prove infringement of claim 1 on several grounds. First, Cipla contends that there is no evidence in the record that this "tiny" front rib can or does ever contact the canister in Cipla's ANDA product. ECF No. 265 at 18. To the contrary, Dr. Lewis testified that the front rib extends inwardly into the inhaler body and thereby restricts the freedom of movement of the canister, and the observation that the rib visibly contacts the canister when the canister is rocked forward. Tr. 226:13-25. Dr. Lewis demonstrated this in Court and testified that if you "hold the mouthpiece so you are not interfering with the body. And then simply just push the canister, just tap it down. Then you can see it touches the middle [*i.e.*, disputed] rail and there is also gap. Meaning if you took that rail out, it would continue to move." Tr. 217:23-218:4; 218:14-219:5. Thus, the record does not support Cipla's argument.

Second, Cipla contends that the structure of its ANDA product precludes the tiny front rib from contacting the cannister. Cipla explains that "[w]hen the ribs extend to the top of the inhaler body, the canister will contact the rib prior to the wall because the rib protrudes out from the wall at all vertical points." ECF No. 265 at 19. Cipla contends that the rib in its ANDA product does not extend to the top of the wall. *Id.* Cipla argues that because there is a gap between the top of the rib and the top of the inhaler body in Cipla's ANDA product, Teva cannot simply say the front rib "necessarily" reduces rocking. *Id.* While Cipla's argument may be true, it is not supported by any testimony provided during the trial. Moreover, Cipla did provide any experimental evidence to support its conclusions that the structure of its ANDA product precludes the front rib from contacting the cannister.

Next, Cipla argues that Dr. Lewis's "front-to-back" testing is irrelevant. ECF No. 265 at 21. Cipla takes issue with how Dr. Lewis conducted the experiment. Cipla complains that "Dr. Lewis's testing improperly changed multiple variables" and did not answer the "question of

whether the tiny rib at the front of Cipla's inhaler body 'reduces canister rocking.'" *Id.* As noted above, when conducting his experiments Dr. Lewis removed all the ribs in Cipla's ANDA product except for the mounting tabs. Because Dr. Lewis removed all the ribs, Cipla contends that "it is still impossible to determine whether the alleged measured increase in canister rocking was due to the removal of the front rib, the back ribs, or something else." *Id.* at 21-22.

It is true that Dr. Lewis never performed any tests where he only removed the front rib in Cipla's ANDA product. This was confirmed during trial when the Court asked Dr. Lewis "[w]as there ever a test done where the only thing removed from the canister was the front rib," and Dr. Lewis replied "no." Tr. 382:16-18. Had this test been performed, it may have eliminated some of the discussion about whether Cipla's ANDA product infringes the Common Plane Limitation in the '289 patent. Thus, the Court understands Cipla's frustration and acknowledges that Dr. Lewis's experiments may not be the perfect tests to prove an "airtight" infringement case. The evidentiary standard here, however, is neither clear and convincing nor beyond a reasonable doubt; rather, it is preponderance of the evidence. Although the Court believes that Dr. Lewis could have performed better experiments to support his conclusions, the Court is not persuaded that Dr. Lewis's experiments as conducted are irrelevant or valueless as evidence.

Cipla next contends that Dr. Lewis's testimony that he could see the front rib touching the canister is not credible and should be excluded. ECF No. 265 at 25-26. At trial, Dr. Lewis testified that he could tell that the front rib in Cipla's ANDA product is a formation arranged to reduce canister rocking by "simply looking." Tr. 213:14. Dr. Lewis explained that "[w]hen you hold the inhaler, you can just push it and you can see it touches before it touches the inner wall." *Id.* 213: 14-16. Cipla objected, contending that Dr. Lewis's testimony was outside the scope of his report because Dr. Lewis never noted that he could see the canister touching the front rib in his report.

Appx15

*Id.* 213:18-23. In response, Plaintiffs contend that Dr. Lewis explained in his report that he "disagree[d with Mr. Anderson] that any analysis would be necessary to establish that the rib closest to the mouthpiece of the ANDA product limits rocking—by extending into the cavity of the inhaler, it necessarily limits the canister's freedom of movement in the direction of the front of the ANDA product." *See* ECF No. 262 at 29 (citing Ex. E (Reply Report) ¶ 61). Plaintiffs further contend that "Dr. Lewis did no more than illustrate this very same, fully-disclosed opinion: He held up Cipla's product, moved the canister towards the front of the ANDA product, and demonstrated that the canister's freedom of movement was restricted by its contact with the rib." ECF No. 262 at 29. Moreover, Plaintiffs contend that counsel for Cipla expressly and precisely elicited the testimony that Cipla seeks to preclude. In support of their argument, Plaintiffs point to the following questions and responses during Dr. Lewis's cross examination:

> Q. Dr. Lewis, it's your opinion that by extending into the cavity of the inhaler body . . . the front rib necessarily limits the canister's freedom of movement in the direction of the front of the ANDA product. Right? A. Yes.
>
> Q. And you offered that opinion in your report. Right? A. Yes. Q. And that's only true if the front rib of the inhaler body can actually contact the canister when it rocks. Right? A. Yes.

ECF No. 262 at 30 (citing Tr. 370:25-371:12). Plaintiffs contend that Cipla's own questioning (1) directly called for the testimony its counsel earlier moved to strike, and (2) established that such testimony was equivalent to the explicit statement in Dr. Lewis's report. *Id.* The Court agrees.

What is more important and provides grounds for the Court to include Dr. Lewis's testimony, is that Dr. Lewis testified at length about diagrams that the parties displayed and several experiments and demonstrations that were conducted. Dr. Lewis explained his analysis and shared his observations on both direct and cross examination. Taking into consideration Dr. Lewis's credentials, the testimony provided during trial, and the parties' post-trial submissions, the Court

finds that Dr. Lewis's testimony about what he observed during his experiments and in-court demonstrations were credible, well-supported, and elicited explicitly on cross examination. Thus, the Court will not exclude Dr. Lewis's testimony that he could see the front rib touch the canister in Cipla's ANDA product.

Finally, Cipla contends that its expert Mr. Gregory Anderson's testimony should be credited. ECF No. 265 at 30. More specifically, Cipla argues that the Court should credit Mr. Anderson's testimony that the rib does not prevent rocking. *Id.* Plaintiffs do not explicitly request that the Court give little or no weight to Mr. Anderson's testimony, but their argument strongly supports such a demand. In their post-trial brief, Plaintiffs contend that Mr. Anderson offered conclusory testimony using the wrong claim construction. ECF No. 262 at 21-23. At trial, Mr. Anderson testified that the parties' construction requires "***prevention***" of rocking. Tr: 406:16-25 (emphasis added). That is incorrect—the parties agreed that "canister support formation" means "a formation ***arranged to reduce*** canister rocking." *See* ECF No. 102 at 4 (emphasis added). Next, Plaintiffs argue that Mr. Anderson's testimony is conclusory. ECF No. 262 at 21-23. Plaintiffs note that Mr. Anderson did not offer his own opinion as to whether the front rib is arranged to prevent—let alone reduce—rocking. *Id.* at 22 (citing Tr. 479:14-21). Finally, Plaintiffs contend that Mr. Anderson contradicted his sworn testimony. ECF No. 262 at 23. Plaintiffs note that Mr. Anderson testified four separate times under oath that the front rib—located between the two mounting tabs—is an inner wall canister support formation. *Id.* In support of their argument, Plaintiffs cite the following excerpts from Mr. Anderson's testimony:

- Q. In between the two mounting tabs is a small inner wall canister support formation, right?" A. Yes.

- Q. Sorry, you agree that there are seven inner wall canister support formations in defendants' ANDA products that do not lie in a common plane with the center of the central outlet port and castellation [actuation member], right? A. Well wait a

minute. There is one that is in the common plane, yes, that has been marked with a yellow dot.

• Q. . . . There is one inner wall canister support formation, that is the one between the two mounting tabs, right? A. Yes.

• Q. So the inner wall canister support formation in between the two mounting tabs of defendants' ANDA product does lie in a common plane with a castellation [i.e., actuation member] and the center of the central outlet port as shown by the red line, right? A. Yes.

ECF No. 262 at 24 (citations omitted).

The Court finds that Mr. Anderson's testimony is conclusory and not supported by any testimony, experiments, or data. Mr. Anderson testified that Cipla's ANDA product does not have an inner wall canister support formation lying in the common plane, and therefore does not infringe. Tr. 479:22-480:18. Mr. Anderson, however, did not provide any explanation, experiments, or data to support his conclusion. Mr. Anderson could have conducted tests that demonstrate that the front rib in Cipla's ANDA product was not arranged to reduce canister rocking, but he did not do so. What is even more damaging to Cipla's request is that Mr. Anderson also used the wrong claim construction and provided inconsistent testimony during trial. Thus, the Court cannot give much weight to Mr. Anderson's testimony.

The Court finds that Plaintiffs' evidence of infringement deserves significant weight. Plaintiffs, through Dr. Lewis, presented evidence that the front rib in Cipla's ANDA product was arranged to reduce cannister rocking. Dr. Lewis testified that "[t]he front rib visibly extends inwardly into the inhaler body," and "by extending into the cavity of the inhaler body . . . [it] necessarily limits the canister's freedom of movement in the direction of the front of the ANDA product." Tr. 206:20-207:4, 370:25-371:8. Dr. Lewis further testified that there was more movement in Cipla's ANDA product when he removed the front and back ribs, then there was as supplied (with all the ribs). Tr. 223:12-224:1. This is compelling evidence because Dr. Lewis's

18

experiment demonstrates that, at the very least, when the front and back ribs are in Cipla's ANDA product they are arranged to reduce cannister rocking. More compelling is Dr. Lewis's testimony that he only rocked the canister forward so the removal of the ribs in the back was irrelevant. *Id.* 229:17-230:12. The only evidence to the contrary was Mr. Anderson's opinion, which the Court does not give much weight for the reasons stated above. The Court finds that Dr. Lewis isolated the front rib in his experiment, and that, in view of the applicable evidentiary standard, the experimental evidence and testimony by Dr. Lewis supports the inference that it is more likely than not that the front rib in Cipla's ANDA product is arranged to reduce canister rocking. Accordingly, the Court concludes that Plaintiffs have proven, by a preponderance of the evidence, that Cipla's ANDA product infringes claim 1 of the '289 Patent.[3]

### b. *The '587 Patent*

The issue before the Court is whether Plaintiffs have proven, by a preponderance of the evidence, that it is more likely than not that Cipla's ANDA product infringes the '587 Patent. Plaintiffs argue that Cipla's ANDA product infringes independent claims 1 and 12, and dependent claims 2, 4, 6, and 7 of the '587 Patent ("the Asserted '587 Claims"). ECF No. 262 at 34.[4] The Court will address the claims at issue in turn.

Claims 1 and 12 of the '587 patent recite:

**Claim 1:**
An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein

---

[3] The Court adopts by reference Plaintiffs' proposed findings of facts related to claims 2, 4, 6, and 7 of the '289 patent. ECF No. 263 ¶¶ 90-105

[4] The dependent limitations of claims 2, 4, 6, and 7 of the '587 Patent mirror the dependent limitations of claims 2, 4, 5, and 7 of the '289 Patent. Because the Court finds that Cipla's ANDA product infringes the '289 Patent and Cipla did not contest that its products meet these additional limitations, the Court need not address these limitations.

the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, and wherein the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

**Claim 12:**
An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, and wherein the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member.

The independent claims 1 and 12 of the '587 Patent are nearly identical to claim 1 of the '289 Patent, except that the '587 Patent claims include an additional limitation relating to "unwanted actuation of the dose counter" or "dose count errors." JTX-003; JTX-004; *see also* ECF No. 265 (noting that "[a]ll claims of the '587 Patent include the same Common Plane Limitation discussed above in connection with the '289 Patent."). Cipla disputes that it infringes the additional limitations. The Court will address these claims in turn.

**<u>Infringement of Claim 1</u>**

Claim 1 of the '587 Patent includes the limitation that "the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler." The parties agreed that this limitation means "guards against unwanted actuation by reducing rocking of the medicament

20

canister relative to the main body of the inhaler that would otherwise be of a magnitude sufficient to move the dose counter's actuator enough to cause unwanted incrementing (or decrementing) of the dose counter." ECF No. 102 at 5.

At trial, Dr. Lewis testified that Cipla's ANDA product meets the limitation at issue, based on his experiment recorded in PTX-178. During the experiment, Dr. Lewis altered Cipla's ANDA product by removing all the ribs, but not the mounting tabs. Dr. Lewis slid the canister down the front wall of the inhaler (against the wall where the "front" rib in question would have been located, had it not been removed). PTX-178. Dr. Lewis explained that after he seated the canister in the stem block by twisting it, he rocked the canister towards the front of the inhaler, and observed multiple unwanted actuations of the dose counter (*i.e.*, "count not fires"), because "when the support formation is not there, it doesn't limit the movement and it causes the count and the rocking." Tr. 268:12-23. Dr. Lewis testified that the rail he removed, the rail that was in the common plane, guarded against unwanted actuation of the dose counter. *Id.* 269:16-22. Dr. Lewis further testified that you could see "unwanted actuations" and rocking the medicament canister relative to the main body of the inhaler" in his video (PTX-178). *Id.* 269:23-270:2. When Plaintiffs' counsel asked, "can we see that the kind of unwanted -- rocking that this rail was guarding against, is that sufficient to move the dose counter's actuator enough to cause unwanted incrementing or decrementing of the dose counter," Dr. Lewis answered in the affirmative. *Id.* 270:3-7. Based on this, Plaintiffs contend that Dr. Lewis experiment recorded at PTX-178 demonstrates that the front rib "guards against unwanted actuation of the dose counter . . . by reducing rocking of the medicament canister relative to the main body of the inhaler." ECF No. 262 (citing FOF 115-16).

Cipla contends that its ANDA product does not meet the limitation in claim 1. ECF No. 265 at 32. Cipla submits that Mr. Anderson performed calculations showing that it is not possible to rock the canister in Cipla's ANDA product in an amount sufficient to cause an unwanted actuation of the dose counter. *Id.* At trial, Mr. Anderson testified to the following:

> I did a bit of math modeling just to try and understand how much rocking was going to be needed to cause a count. And based on the information that I had, I did an analysis and the summary was that Cipla['s] ANDA product does not meet that common plane limitation or unwanted actuation of the dose counter by reducing rocking, which is, obviously, the limitation of the '587 patent, but, in summary, it is not possible to rock Cipla's canister enough to create a count. So it does not infringe Claim 1 of the unwanted actuation.

Tr. 489:12-20. This statement is the entirety of Mr. Anderson's testimony regarding whether Cipla's ANDA product meets the limitation in claim 1. Following Mr. Anderson's testimony there was a brief objection, before Cipla's counsel shifted Mr. Anderson's attention to claims 2, 4, 6, and 7 of the '587 Patent. *See* Tr. 489:22-490:17 (discussing Plaintiffs' objection); *Id.* 490:19 (questioning Mr. Anderson about claims 2, 4, 6, and 7). Mr. Anderson did not explain his analysis or discuss what calculations he used to reach his conclusion. In sum, Mr. Anderson did not show his work.

Cipla next argues that Plaintiffs rely on an incorrect interpretation of rocking. ECF No. 265 at 34. At the outset, Cipla contends that "the Asserted Patents conflate rocking and 'wobbling'" and that "titling" could be referred to as rocking. *Id.* at 34-35. Cipla, however, takes issue with Dr. Lewis's interpretation of rocking, which Cipla claims includes "rocking and pressing." *Id.* Cipla argues that "[a] canister 'wobbling' is not pressing down and rocking it like Lewis did." *Id.* at 34. Cipla further argues that the "agreed construction of the claim terms does not say anything about pressing down on the canister while rocking" and "there is no evidence that Lewis's **rock-and-press-until-his-fingers-are-strained** tests constituted normal conditions for use of the inhaler." *Id.* at 35 (emphasis in original). Cipla's argument is unpersuasive. There is

no evidence that "rocking" cannot be interpreted as the canister moving side to side (rocking) while being depressed.

Finally, Cipla argues that Dr. Lewis's tests do not demonstrate infringement. ECF No. 265 at 35. Cipla contends that Plaintiffs' infringement case relies solely on Dr. Lewis's experiment recorded at PTX-178 and the testimony thereto. *Id.* Cipla complains that Dr. Lewis only presented what happens when all the ribs were removed but failed to show what happens when no ribs or the rib in the common plane is removed. *Id.* Cipla notes that "[t]he claim requires specifically that 'the first **inner wall canister support formation protects against unwanted actuation** of the dose counter by reducing rocking of the medicament canister.'" *Id.* at 36 (emphasis in original). Cipla argues that for Plaintiffs to "[demonstrate] that limitation through experimental evidence requires a control test (*i.e.*, no ribs removed). It is the change in result that would be circumstantial evidence of the presence of this limitation. The existence of allegedly unwanted actuation alone is not enough." *Id.* Because Plaintiffs did not present evidence of a control test or test what happens when only the rib in the common plane is removed, Cipla contends that Plaintiffs cannot prove infringement of claim 1. *Id.*

The Court addressed this issue in the discussion related to the '289 Patent above. For the sake of clarity, the Court will reiterate that it is true that Dr. Lewis never performed any tests where he only removed the front rib in Cipla's ANDA product. Dr. Lewis testified that he did test Cipla's ANDA product "as supplied"—*i.e.*, with all ribs and mounting tabs present—with a version of Cipla's ANDA product in which he removed all the ribs (but not the mounting tabs). Tr. 223:12-224:1. He further testified that removal of the front rib is responsible for at least some of the increase in canister rocking possible when all ribs are removed. Tr. at 226:7-25. When the canister is rocked in the direction of the missing front rib, and is then depressed such that it slides down

Appx23

the wall where the rib would have been, increased canister rocking can lead to a "fire-not-count" error whereby the dose counter increments even though medication is not dispensed. *See* Tr. 229:4-250:23. In Dr. Lewis's experiment recorded at PTX-178, when the canister is rocked forward, only the effect of the front rib is measured—the fact that other ribs in the back of the inhaler have also been removed is irrelevant. *See* Tr. 223:12-22; 224:2-226:6; 267:22-270:19. While a test demonstrating the results of what happens when only the front rib is removed from Cipla's ANDA product would be beneficial, it is not required to prove infringement. Thus, the Court finds Cipla's argument unpersuasive.

Having considered all Cipla's challenges to Plaintiffs' infringement case, the Court finds that Plaintiffs have proven, by a preponderance of the evidence, that Cipla's ANDA product infringes claim 1 of the '587 Patent. Dr. Lewis's experiment demonstrates that more likely than not that the front rib in Cipla's ANDA Product guards against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler. Thus, Cipla's ANDA product infringes claim 1 of the '587 Patent.

### Infringement of Claim 12

Claim 12 of the '587 Patent is nearly identical to claim 1 of the '587 Patent, except that its final limitation requires "that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member." JTX-004. Unlike '587 Patent claim 1's requirement to protect against only "unwanted actuation" (*i.e.*, "count-not fire errors"), claim 12's reference to "dose count errors" includes both "count-not-fire" and "fire-not-count" errors, and limits the direction of rocking to rocking "towards or away from the actuation member." JTX-004; Tr. 277:13-278:3.

At trial, Plaintiffs, again, rely on Dr. Lewis's experiment recorded at PTX-178 and the testimony thereto. Plaintiffs also rely on Dr. Lewis's experiment recorded at PTX-179, in which he demonstrated that the absence of the front rib can also lead to "fire-not-count" errors. PTX-179; Tr. 279:14-282:12. Dr. Lewis removed all the support ribs from Cipla's product, but left the mounting tabs in place, then rocked the canister towards the front of the inhaler (in the direction of the removed, front rib) and observed that the inhaler could expel medication ("fire") without the dose counter recording a count. *Id.* During the trial, Dr. Lewis narrated his experiment as recorded in the PTX-179 video. The following excerpt is from Dr. Lewis's testimony:

> Counsel: I'm going to simply suggest perhaps . . . that we watch the video first and then perhaps Dr. Lewis could narrate what happens. So we will put up PTX-179.
>
> Dr. Lewis: This is a 40 microgram product. We removed the ribs, but not the mounting tabs. Here we are on 103. Again, with pushing towards the common plane direction. And the mounting tab -- sorry. We are getting a fire. You can hear the fire. We are still on 103. Fire. Not count. And here we can see the dose counter here. Fire. So here we are -- that inner wall support formation, which is here, is not reducing the rocking. It's not protecting against a second type of dose counter error, which is you're firing, but you don't count.

Tr. 279:20-280:17. In other words, without the front rib, rocking in the direction of the actuation member (*i.e.*, in the same direction as the missing rib) can cause "fire-not-count" errors in Cipla's ANDA product. *Id.* On this basis, Dr. Lewis concluded that the front rib protects against dose count errors in the manner that claim 12 requires. *Id.* at 282:18-283:1.

Cipla asserts that Plaintiffs cannot prove infringement. Cipla repeats many of the same arguments it raised in support of its argument for non-infringement of claim 1 of the '587 Patent. Specifically, Cipla contends that Dr. Lewis did not perform any control test. ECF No. 265 at 37. Cipla further argues that Dr. Lewis misused Cipla's ANDA product during his experiment. *Id.* at 38. In support of this argument, Cipla points to Mr. Anderson's testimony. During trial, Mr. Anderson testified that Dr. Lewis did not prime the ANDA product. Tr. 495:18-19. Mr. Anderson

further testified that "it says in all the instructions . . . when you take the can out, you have to put the can back in, seat it, test fire, and recommendations certainly on this leaflet are two primes." *Id.* at 495:20-23. Mr. Anderson concludes that "if it was primed, it would have . . . worked I think perfectly." *Id.* at 495:19-21.

Cipla has, at best, persuaded the Court that Dr. Lewis's experiments are not the perfect tests to prove an "airtight" infringement case. Dr. Lewis should have primed Cipla's ANDA product. The fact that he did not prime Cipla's ANDA product before conducting his experiment does not make his tests irrelevant or valueless as evidence. As Plaintiffs noted in their post-trial submission, "Dr. Lewis's video showed three consecutive instances in which Cipla's inhaler fired but did not count. Even were one to consider those first two fires of the canister 'priming' doses, the video still reflects a third dose counter error caused by rocking." ECF No. 262 at 38-39 (citing PTX-179; Tr. 405:9-13). Although Dr. Lewis's tests are not flawless, they are enough to demonstrate more likely than not that Cipla's ANDA product infringes claim 12 of the '587 Patent. Accordingly, the Court finds that Plaintiffs have proven, by a preponderance of the evidence, that Cipla's ANDA product infringes the asserted claims of the '587 Patent.

### c. The '808 Patent

The issue before the Court is whether Plaintiffs have proven, by a preponderance of the evidence, that it is more likely than not that Cipla's ANDA product infringes the '808 Patent. Plaintiffs argue that Cipla's ANDA product infringes claim 28 of the '808 Patent. Claim 28 depends from claim 27, which in turn depends from claim 1. Claims 1, 27, and 28 of the '808 Patent recite:

**Claim 1:**
A dose counter for an inhaler, the dose counter having a counter display arranged to indicate dosage information, a drive system arranged to move the counter display incrementally in a first direction from a first station to a second station in response

to actuation input, wherein a regulator is provided which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movements.

**Claim 27:**
The dose counter as claimed in claim 1 in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

**Claim 28:**
The dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

To infringe claim 28, a dose counter must satisfy claim 1 and further comprise a "regulator" that "provides a resistance force" of "greater than 0.3 N" "against movement of the counter display." ECF No. 262 at 40; PDX-2-087. Cipla argues that its product does not include: "regulator," "regulate motion of the counter display at the first station to incremental movements," and "provides a resistance force of greater than 0.3 N against movement of the counter display." ECF No. 265 at 39. The parties agreed that a "regulator" was "a structure of the dose counter that modulates motion of the counter display." ECF No. 102 at 4. The parties also agreed that "regulate motion of the counter display" means "modulate motion of the counter display." *Id.* Because the parties do not dispute every limitation in the claim, the Court will only focus on the contested issues.

### Whether Cipla's ANDA Product Comprises a Regulator that Regulates Motion of the Counter Display to Incremental Movements

At trial, Dr. Lewis testified that the leaf spring in Cipla's ANDA product modulates motion of the counter display. Tr. 291:5-10. Dr. Lewis further testified that the leaf spring acts upon the counter display. *Id.* 291:18-21. Dr. Lewis explained that "[t]he leaf spring is pushing up on the unit's teeth ring, which is the drive surface and, of course, if it's pushing up, by the laws of Newton, third law equal -- and every action has an equal and opposite reaction, then it must be pushing down also and modulating that unit's display ring." *Id.* 291:23-292:2. To summarize Dr. Lewis's

27

testimony, when Cipla's ANDA Product is assembled, the canister sits on top of the indexer, which sits on top of the leaf spring, which "sits in the units display ring." Thus, when a patient pushes down on the canister, the canister pushes down on the indexer, which pushes down on the leaf spring, which pushes down on the units display ring. *See* Tr. 291:5-293:11; PTX-411 (Cipla ANDA Product Sample); PTX-372 (Cipla Design Drawing); PTX-181 (Video). If a patient pushes down on the canister with too little force, the leaf spring ensures that the units display ring does not move so as to record a count. 294:1-295:2 (Lewis); PTX-411 (Cipla ANDA Product Sample); PTX-372 (Cipla Design Drawing); PTX-181 (Video). If the patient pushes down with enough force, the leaf spring ensures that the units display ring does not "allow the dose counter to hover between two doses," but instead ensures that the units display ring increments completely such that it displays the next digit. Tr. 295:3-12 (Lewis); PTX-411 (Cipla ANDA Product Sample); PTX-372 (Cipla Design Drawing); PTX-181 (Video).

In their post-trial submission, Plaintiffs take issue with Mr. Anderson's testimony at trial. First, Plaintiffs argue that "Mr. Anderson's argument that Cipla has no 'regulator' because 'it's not a tape-based ANDA product' reflects a legally improper infringement inquiry." ECF No. 262 at 44. Plaintiffs point to the plain language of claim 28 and note that the claim does not require that the dose counter be "taped based." Second, Plaintiffs argue that Mr. Anderson is wrong in his assertion that Cipla's leaf spring only provides an "upwards" force against the indexer and does not exert any downwards force against the unit's teeth ring. ECF No. 262 at 44. Plaintiffs point to Dr. Lewis's testimony wherein he explained that the fundamental principles of physics—the "laws of Newton"—dictate that if the leaf spring pushes upwards, it must also push downwards against the leaf spring with an "equal and opposite force." *Id.* (citing FOF 174; Tr. 291:18-293:11, 294:19-295:22; PTX-411 (Cipla ANDA Product Sample); PTX-181 (Video)).

In response, Cipla contends that "the leaf spring is not a regulator nor does it modulate motion of the alleged counter display." ECF No. 265 at 39. Cipla points to the testimony of Mr. Anderson who testified that the "[leaf spring] just sits there. It's not attached to a frame or anything . . .. It is free to move. It is not constrained. And you wouldn't want it to be." Tr. 463:18-464:8. Cipla makes several other arguments, none of which point to any evidence or testimony that refutes Dr. Lewis's conclusions. Accordingly, the Court finds that Cipla's ANDA Product comprises a "regulator" "arranged to act upon the counter display at the first station to regulate motion of the counter display to incremental movements.

### Whether Cipla's ANDA Product Comprises a Regulator that Provides a Resistance Force of Greater than 0.3 N Against the Movement of the Counter Display

At trial, Dr. Lewis concluded that the leaf spring exerts a downwards force of greater than 0.3 N. Dr. Lewis conducted an experiment in which he measured the upwards resistance force that the leaf spring exerts against the canister. Dr. Lewis explained that as a matter of physics, measuring the upwards resistance "directly" measures the downward resistance force that the leaf spring exerts against the counter display. Tr. 410:13-22. Applying this principle, Dr. Lewis measured the upward force and concluded that the leaf spring exerts an upwards and downwards force of greater than 0.3 N, which establishes infringement.

In response, Cipla argues that Dr. Lewis only calculated the "vertical" force and did not provide and testimony or calculations of force in any other direction. ECF No. 265 at 45. While this may be true, Dr. Lewis did explain that as a matter of physics, measuring upwards resistance directly measures downward resistance because the forces that the leaf spring exerts are the same. Cipla also takes issue with the "force" Dr. Lewis measured. ECF No. 265 at 45-46. As best the Court can construe, Cipla appears to argue that Dr. Lewis's testing was erroneous because he did

not measure whether Cipla's leaf spring exerts a "counterclockwise" force in the "opposite" direction of the clockwise-moving counter display. Despite Cipla's argument, claim 28 does not require the regulator to provide a resistance force in the "opposite direction" of the counter display; rather, it requires that the "regulator" provide a "resistance force" "against movement of the counter display." Tr. 408:19-410:7. Dr. Lewis opined that Cipla's leaf spring "provides a resistance force opposite to the direction of the movement of the counter display"—in other words, the leaf spring provides a resistance that opposes the movement of the counter display. Tr. 313:10-17. Consistent with that opinion, Dr. Lewis testified that the regulator provides a resistance force "against movement of the counter display." That is all the claim language requires to establish infringement.

Having considered all Cipla's challenges to Plaintiffs' infringement case, the Court finds that Plaintiffs have proven, by a preponderance of the evidence, that Cipla's ANDA product infringes claim 28 of the '808 Patent. Dr. Lewis's testimony demonstrates that more likely than not that Cipla's ANDA Product comprises a regulator that regulates motion of the counter display to incremental movements and provides a resistance force of greater than 0.3 N against movement of the counter display. Thus, Cipla's ANDA product infringes the '808 Patent.[5]

## B. **Obviousness**

### 1. **Legal Standard**

The presumption that all patents are valid is the starting point for any obviousness determination. 35 U.S.C. § 282. A patent claim is invalid as obvious under 35 U.S.C. § 103 "if the differences between the claimed invention and the prior art are such that the claimed invention

---

[5] The Court notes that there are several undisputed limitations that Cipla and its expert did not dispute. For sake of clarity, the Court adopts Plaintiffs' findings of fact related to those undisputed limitations. Accordingly, the Court adopts by reference ¶¶ 157-165 at ECF No. 263.

as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." *Id.* § 103(a); *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406–07 (2007). Obviousness is a question of law that depends on the following factual inquiries: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the relevant art; and (4) any objective indicia of nonobviousness. *See KSR*, 550 U.S. at 406, 127; *see also Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1347 (Fed. Cir. 2012). As noted above, a court is required to consider secondary considerations, or objective indicia of nonobviousness, before reaching an obviousness determination, as a "check against hindsight bias." *See In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*, 676 F.3d at 1078–79. Relevant secondary considerations include commercial success, long felt but unsolved needs, failure of others, praise, unexpected results, and copying, among others. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 17–18 (1966).

"Generally, a party seeking to invalidate a patent as obvious must demonstrate . . . that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *In re Cyclobenzaprine Hydrochloride*, 676 F.3d at 1068–69. "The Supreme Court has warned, however, that, while an analysis of any teaching, suggestion, or motivation to combine known elements is useful to an obviousness analysis, the overall obviousness inquiry must be expansive and flexible." *Id.* at 1069. The improvement over prior art must be "more than the predictable use of prior art elements according to their established functions." *KSR*, 550 U.S. at 417. Evidence of obviousness, however, especially when that evidence is proffered in support of an "obvious-to-try" theory, is insufficient unless it indicates

that the possible options skilled artisans would have encountered were "finite," "small," or "easily traversed," and "that skilled artisans would have had a reason to select the route that produced the claimed invention." *In re Cyclobenzaprine Hydrochloride*, 676 F.3d at 1072. Obviousness must be proven by clear and convincing evidence. *Id.* at 1078.

### 2. Findings of Fact and Conclusions of Law

#### a. *Objective Considerations of Nonobviousness*

Before the Court turns to Cipla's obviousness defense, the Court must first consider secondary considerations or objective indicia of nonobviousness. *See Sanofi v. Lupin Atl. Holdings S.A.*, 282 F. Supp. 3d 818, 824 (D. Del. 2017) (citing *In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*, 676 F.3d 1063, 1078–79 (Fed. Cir. 2012)). Relevant secondary considerations include commercial success, long felt but unsolved needs, failure of others, praise, unexpected results, and copying, among others. *Graham*, 383 U.S. at 1, 17–18; *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662–63 (Fed. Cir. 2000); *Tex. Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1178 (Fed. Cir. 1993). Here, Plaintiffs offer evidence and testimony of industry praise.

Plaintiffs contend that the praise from healthcare providers and patients compels a conclusion of nonobviousness. ECF No. 262 at 50. At trial, Plaintiffs offered the testimony of Dr. Reynold Panettieri who was qualified as an expert in the medical use of inhaler devices. Tr. 801:4-804:4[6] Dr. Panettieri has over thirty years of experience treating pulmonary disorders and has prescribed inhalers to thousands of patients. *Id.* Dr. Panettieri testified that "based . . . on my 30-plus years of experience taking care of patients, and talking to my colleagues who are providers and physicians . . . [m]y opinion is that ProAir® and Qvar® are really best in class inhalers that

---

[6] The Court notes that Dr. Panettieri was submitted as an expert in the medical use of inhaler devices without objection. *See* Tr. 804:1-4.

have dose counters." Tr. 805:3-14. Dr. Panettieri further testified that he has "never had a complaint about ProAir® or Qvar®" and that his "colleagues also pretty uniformly would describe ProAir®, Qvar® dose counter and the inhalers as really state of the art, best in class." *Id.* 807:4-17. At trial, Dr. Panettieri reviewed a study authored by Brad Chipp. Tr. 807:18-808:8; PTX-120. Dr. Panettieri explained that the study compared "ProAir® HFA with dose counter versus the exact same device without a dose counter." *Id.* 808:2-4. Dr. Panettieri noted that the author of the study identified "that the dose counter . . . greatly enhanced the clinical outcomes for the patient, decreased hospitalizations, decreased exacerbations" and that the dose counter "was really quite a profound piece of work." *Id.* 808:5-8. Finally, Dr. Panettieri testified that the conclusion in the study was consistent with his observations in his clinical practice. *Id.* 808:9-11.

In response, Cipla argues that Plaintiffs' secondary considerations should not be given any weight. ECF No. 265 at 52. In support of its argument, Cipla contends that the two products that Plaintiffs rely on for secondary consideration were discontinued. *Id.* at 49; Tr. 812:9-19. Cipla notes that Plaintiffs did not explain why they were discontinued, which calls into question the praise that these products received. Cipla further argues that the two studies Plaintiffs relied on for industry praise are irrelevant because they compare ProAir® HFA with a dose counter and one without the dose counter. ECF No. 265 at 50. Cipla contends that these studies do not provide any insight on why Plaintiffs' devices were praiseworthy over those existing devices that also include dose counters. *Id.* Next, Cipla argues that Dr. Panettieri's testimony about Plaintiffs' devices being "best in class" and "state of the art" are not the type of industry praise required. Finally, Cipla contends that Plaintiffs failed to establish a nexus between the claim inventions and the alleged praise. ECF No. 265 at 51.

Having considered the evidence and testimony presented at trial and the parties' post-trial submissions, Plaintiffs' secondary considerations of nonobviousness will not be given substantial weight.  The Court finds Dr. Panettieri to be an impressive, highly credible expert witness who, based on his thirty years of experience treating patients and prescribing inhalers, is uniquely qualified to opine on the quality of Plaintiffs' devices.  The Court finds Dr. Panettieri's testimony about Plaintiffs' devices to be persuasive.  Nevertheless, the Court finds it slightly problematic that some of the documents Dr. Panettieri relied on to form his opinion only compared Plaintiffs' devices with and without the dose counter.  Given the fact that dose counters existed before Plaintiffs' patent claims, it would have been more compelling had Plaintiffs presented evidence that their devices received industry praise over those preexisting devices with dose counters.  Thus, the Court cannot give Plaintiffs' secondary considerations of nonobviousness substantial weight.

### a.   *The '808 Patent* [7]

Cipla contends that claim 28 of the '808 Patent would have been obvious over the '406 Publication or '552 Publication.  ECF No. 256 at 17.

### i.   Scope and Content of the Prior Art

The '808 Patent purports to claim the benefit of priority to each of U.S. Provisional Patent Application Serial No. 61/417,659, which was filed on November 29, 2010, and U.S. Provisional Patent Application No. 61/345,763, which was filed on May 18, 2010. [8]

---

[7] The parties raised no material disputes about the characteristics of the person of ordinary skill in the art ("POSA"); both parties contend that the opinions of their expert witnesses would not change if the definition of the POSA was the definition offered by the other side.  Tr. 548:21-549:1; 674:14-20.

[8] Although there is some dispute over the priority date, Plaintiffs represent that that the difference in the priority date does not matter for the asserted references.  ECF No. 271 at 5 ¶ 6.  Thus, the Court will use May 18, 2010, as the priority date.

1) <u>The '406 Publication (DTX-161)</u>

International Patent Publication No. WO 2007/124406 ("the '406 Publication") published on November 1, 2007. The '406 Publication was therefore available more than a year before the earliest priority date of the Asserted Patents under pre-AIA 35 U.S.C. § 102(b). It is undisputed the '406 Publication is prior art to the Asserted Claims. ECF No. 210 at Undisputed Fact 16(h).

2) <u>The '552 Publication (DTX-162)</u>

International Patent Publication No. WO 2008/119552 ("the '552 Publication") published on October 9, 2008. The '552 Publication was therefore available more than a year before the earliest priority date of the Asserted Patents under pre-AIA 35 U.S.C. § 102(b). It is undisputed the '552 Publication is prior art to the Asserted Claims. ECF No. 210 at Undisputed Fact 16(i).

## ii. __The Differences Between the Claims and the Prior Art__

At issue here is claim 28, which depends from claims 1 and 27. The Asserted Claims read as follows:

> **Claim 1:**
> A dose counter for an inhaler, the dose counter having a counter display arranged to indicate dosage information, a drive system arranged to move the counter display incrementally in a first direction from a first station to a second station in response to actuation input, wherein a regulator is provided which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movements.

> **Claim 27:**
> The dose counter as claimed in claim 1 in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

> **Claim 28:**
> The dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

Cipla contends that claim 28 of the '808 Patent would have been obvious over the '406 Publication or the '552 Publication. ECF No. 256 at 17. The Court will address each of Cipla's arguments in turn.

35

At trial, Mr. Anderson testified that Cipla's ANDA Product has "every single component that we discussed today, [in] the '406 [Publication]." Tr. 560:1-2. In support of his conclusion, Mr. Anderson points to the schematic drawings of the dose-counter in Cipla's ANDA Product and the dose-counter disclosed in Fig. 26 of the '406 Publication. *See* ECF No. 256 at 17 (citing PTX-372 (colored); DTX-161, Fig. 26 (colored)). After reviewing the above comparison between the dose-counter of Cipla's ANDA Product and the dose-counter disclosed in the '406 Publication, Mr. Anderson concluded that "when you have a look at the number [of components] and the way they are laid out, they are the same." Tr. 563:12-15.

In its post-trial submission, Cipla argues that if the leaf spring in its product is a "regulator," then so is the leaf spring in the '406 Publication. ECF No. 256 at 19. In support of this argument, Cipla contends that "Dr. Lewis ignores that the dose counter disclosed in the '406 Publication has the same leaf spring found in Cipla's Product," even though he conceded "that 'there are similarities' between the dose-counter disclosed in the '406 Publication and Cipla's Product, and that the dose-counter in the '406 Publication 'looks the same' as the dose-counter used in Cipla's Product." *Id.* With respect to this argument, Cipla did not point to any testimony provided by its expert witness.

Cipla next argues that the force limitation of claim 28 does not render the claim non-obvious. ECF No. 265 at 19. Cipla notes that Mr. Anderson explained that the claimed force values "are experimental" and based on routine testing. *Id.* (citing Tr. 557:12-22 (discussing this same claimed force limitation in the context of the '552 Publication prior art analysis)). Mr. Anderson further testified "as a matter of routine optimization for any POSA, they would find the appropriate force against movement of the counter display . . .." *Id.*

In addition to arguing that claim 28 of the '808 Patent would have been obvious over the '406 Publication, Cipla contends that claim 28 of the '808 Patent would have been obvious over the '552 Publication. In support of its argument, Cipla asserts that the limitations recited in claim 1 of the '808 Patent are met by the '552 Publication. ECF No. 256 at 23. Cipla notes that the '552 Publication discloses the following: "a dose counter for an inhaler," "dose counter having a counter display arranged to indicate dosage information," and "a drive system arranged to move the counter display incrementally in a first direction from a first station to a second station in response to actuation input." *Id.* at 23-25. Cipla contends that it is undisputed that the '552 Publication discloses the above limitations. *Id.*

In response, Plaintiffs argue that both of Cipla's obviousness theories on claim 28 of the '808 Patent fail for several reasons. First, Plaintiffs contend that Cipla's theory based on the '552 Publication has already been rejected by a scientifically trained, three-judge panel of the Patent Trial and Appeal Board ("PTAB"). ECF No. 270 at 44. Plaintiffs note that during prosecution of the '808 Patent, the examiner considered whether claim 28 would have been obvious based on the '950 Publication—a reference indistinguishable from the '552 Publication that Cipla relies on. *Id.* The PTAB, considering the issue on appeal from the examiner, held that just because the '950 Publication's figures resembled those of the '808 Patent, the '950 Publication did not render the '808 Patent obvious. Although Cipla has not advanced an obviousness theory on claim 28 of '808 Patent based on the '950 Publication, the PTAB decision is important because Mr. Anderson advanced obviousness theories in his reports based on both the '950 and '552 Publications, where he admitted that both references "disclose the same configuration." Plaintiffs' FOF 188. Mr. Anderson also acknowledged this at trial. Tr. 587:16-25.

Plaintiffs next contend that Cipla failed to prove that the POSA would have selected the '406 and '552 Publications. ECF No. 270 at 46. The Court agrees. As the Federal Circuit noted, "[t]oo often the obviousness analysis is framed as an inquiry into whether a person of skill, with two (and only two) references sitting on the table in front of him, would have been motivated to combine . . . the references in a way that renders the claimed invention obvious. The real question is whether that skilled artisan would have plucked one reference out of the sea of prior art . . .." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1337 (Fed. Cir. 2016). To demonstrate that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, Cipla, at the least, must explain why the POSA would have selected the '406 and '552 Publications.

As a final note, with respect to this obviousness theory, Cipla focuses too much attention comparing schematic drawings of the dose-counters and discussing Dr. Lewis's credibility. In so doing, Cipla failed to prove that claim 28 would have been obvious over either the '406 Publication or '552 Publication. Accordingly, the Court finds that Cipla has failed to prove that claim 28 of the '808 Patent would have been obvious by clear and convincing evidence.

### b. *The '289 and '587 Patents*

Cipla contends that independent claim 1 and dependent claims 2, 4, 6, and 7 of the '289 Patent and independent claims 1 and 12 and dependent claims 2, 4, 6, and 7 of the '587 Patent would have been obvious over the '406 Publication in combination with the '514 Publication. ECF No. 256 at 36, 46.

### i. Scope and Content of the Prior Art

The '289 Patent purports to claim the benefit of priority to each of U.S. Provisional Patent Application Serial No. 61/345,763, which was filed on May 18, 2010, and U.S. Provisional Patent

Application No. 61/417,659, which was filed on November 29, 2010.  DFOF ¶ 10.  The '587 Patent

purports to claim the benefit of priority to each of U.S. Provisional Patent Application Serial No.

61/345,763, which was filed on May 18, 2010, and U.S. Provisional Patent Application No.

61/417,659, which was filed on November 29, 2010.  *Id.* ¶ 14. [9]

> 1)  The '406 Publication (DTX-161)

International Patent Publication No. WO 2007/124406 ("the '406 Publication") published

on November 1, 2007.  The '406 Publication was therefore available more than a year before the

earliest priority date of the Asserted Patents under pre-AIA 35 U.S.C. § 102(b).  It is undisputed

the '406 Publication is prior art to the Asserted Claims.  ECF No. 210 at Undisputed Fact 16(h).

> 2)  The '514 Publication (DTX-165)

International Patent Publication No. WO 2003/101514 ("the '514 Publication") published

on December 11, 2003. The '514 Publication was therefore available more than a year before the

earliest priority date of the Asserted Patents under pre-AIA 35 U.S.C. § 102(b). It is undisputed

the '514 Publication is prior art to the Asserted Claims.  ECF No. 210 at Undisputed Fact 16(j).

### ii.  **Differences Between the Claims and the Prior Art**

At issue here is independent claim 1 and dependent claims 2, 4, 6, and 7 of the '289 Patent

and independent claims 1 and 12 and dependent claims 2, 4, 6, and 7 of the '587 Patent would

have been obvious over the '406 Publication in combination with the '514 Publication.  ECF No.

256 at 36, 46.  The Asserted Claims in the '289 Patent read as follows:

> **Claim 1**:
> An inhaler for metered dose inhalation, the inhaler comprising: a main body having
> a canister housing, a medicament canister, which is moveable relative to the
> canister housing and retained in a central outlet port of the canister housing
> arranged to mate with a canister fire stem of the medicament canister, and a dose

---

[9] Although there is some dispute over the priority date, Plaintiffs represent that that the difference in the priority date does not matter for the asserted references.  ECF No. 271 at 5 ¶ 6.  Thus, the Court will use May 18, 2010, as the priority date.

counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, and wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, the inner wall canister support formation, the actuation member, and the central outlet port lying in a common plane coincident with the longitudinal axis X.

**Claim 2**:
The inhaler as claimed in claim 1 wherein the medicament canister is movable relative to the dose counter.

**Claim 4**:
The inhaler as claimed in claim 1, wherein the first inner wall canister support formation comprises a support rail which extends longitudinally along an inside surface of the main body.

**Claim 6**:
The inhaler as claimed in claim 4 further comprising a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

**Claim 7**:
The inhaler as claimed in claim 6, wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

The Asserted Claims in the '587 Patent read as follows:

**Claim 1**:
An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, and wherein the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

**Claim 2**:
The inhaler as claimed in claim 1 wherein the medicament canister is movable relative to the dose counter.

**Claim 4:**
The inhaler as claimed in claim 1, wherein the first inner wall canister support formation comprises a support rail which extends longitudinally along an inside surface of the main body.

**Claim 6:**
The inhaler as claimed in claim 4 further comprising a plurality of support rails each of which extends longitudinally along the inside surface of the main body.

**Claim 7:**
The inhaler as claimed in claim 6, wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

**Claim 12:**
An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, and wherein the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member.

Cipla contends that independent claim 1 and dependent claims 2, 4, 6, and 7 of the '289 Patent would have been obvious over the '406 Publication in combination with the '514 Publication. ECF No. 256 at 36. Cipla further contends that claims 1, 2, 4, 6, 7, and 12 of the '587 Patent would have been obvious over the '406 and '514 Publications. The Court will discuss Cipla's obvious arguments related to these patents together.

Mr. Anderson, Cipla's expert, opined that a POSA would have been motivated to combine the '406 Publication with a '514 Publication. Tr. 576:7-12. Consistent with this opinion, Cipla contends that the '406 Publication disclosed every limitation in claim 1 of the '289 Patent except for the Common Plane Limitation. ECF No. 256 at 37. In its post-trial brief, Cipla notes that the

"'406 Publication does not expressly disclose an 'inner wall canister support formation' in a 'common plane,' which requires 'the inner wall canister support formation, the actuation member, and the central outport' to lie in a common plane coincident with the longitudinal axis X." *Id.* Cipla also notes that the "'514 Publication discloses four inner wall canister formations equally spaced on the front, back, and sides of an inhaler body." *Id.* Cipla contends that if the formations in the '514 Publication were added to the '406 Publication, then the common plane limitation would have been met.

At trial, Mr. Anderson explained how "ribs have been used . . . in the main body for many, many years. . .. And I believe 1965 was the first year that they were actually mentioned, you know, in publications, in papers. So these ribs are not new. They have been around almost as long as the MDIs themselves." Tr. 570:6-14. Mr. Anderson pointed to several examples of ribs in prior art inhalers. *See* ECF No. 256 (citing Tr. 570:15-571:17; 571:20-572:19; DTX-137 at 5:37-40; DTX-174 at Fig. 6; DTX-165 at Fig 8a; DTX-172 at Fig. 1C; DTX-153 at Fig. 7). Based on this evidence, Mr. Anderson opined that "ribs were ubiquitous prior art" and by "2010 the use of ribs were ubiquitous and all over the industry. They were known. It doesn't cost you anything to add a rib, so why wouldn't you put it in to enhance the product." Tr. 571:16-17; *Id.* at 575:1-4.

Plaintiffs, however, contend that Mr. Anderson's opinion that a POSA would have selected the '406 and '514 Publications—and no others—and combined them in ways that just so happen to produce an inhaler that meets the Common Plan Limitation is based on hindsight, and must be rejected. The Court agrees.

Even accepting Cipla's arguments that the '406 and '514 Publications combined meet every limitation in claim 1 of the '289 Patent, Cipla has not shown, by clear and convincing evidence, that the POSA would have been motivated to add the specific support rails disclosed in

the '514 Publication to the specific inhaler body and dose counter of the '406 Publication, and would have been motivated to align at least one such rail according to the Common Plane Limitation. Cipla and its expert never addressed why a POSA would have selected the '406 and '514 Publications for combination. "[W]hether a [POSA] would be motivated to make a combination includes whether he would select particular references in order to combine their elements." *WBIP*, 829 F.3d at 1337 (emphasis added). "Too often the obviousness analysis is framed as an inquiry into whether a [POSA], with two (and only two) references sitting on the table in front of him, would have been motivated to combine . . . the references in a way that renders the claimed invention obvious." *Id.* "The real question is whether that [POSA] would have plucked one reference out of the sea of prior art . . . and combined it with [elements of a second reference] to address some need present in the field." *Id.* Because Mr. Anderson did not address why a POSA would have selected the '406 and '514 Publications combination, the Court infers that Cipla selected these references with the assistance of hindsight, which is expressly forbidden. *See In re Rouffet*, 149 F.3d 1350, 1358 (Fed. Cir. 1998) ("This court forbids the use of hindsight in the selection of references that comprise the case of obviousness."). Accordingly, the Court finds that Cipla has failed to prove that the Asserted Claims of the '289 Patent would have been obvious by clear and convincing evidence.[10]

### C. **Admissibility of Aurobindo Evidence**

Plaintiffs request that the Court admit their proffer of Aurobindo deposition testimony and documents. ECF No. 262 at 53. Cipla opposes Plaintiffs' request. ECF No. 265 at 52. Based on the evidence already admitted in the record, the Court finds that Cipla's ANDA Products infringe each Asserted Claim of the '289, '587, and '808 Patents. Thus, the Court need not consider

---

[10] Because claims 2, 4, 6, and 7 of the '289 Patent depend from claim 1, the Court need not address those claims specifically. Moreover, Cipla's obvious arguments related to the '587 Patent fail for the same reasons.

Plaintiffs' request to have the Court consider additional evidence.  Accordingly, Plaintiffs' request is denied as moot.

## IV.    CONCLUSION

For the reasons set forth above, the Court finds that Plaintiffs have demonstrated by a preponderance of the evidence that Cipla's ANDA product infringes each Asserted Claim of the '289, '587, and '808 Patents.  The Court also finds that Cipla has failed to demonstrate by clear and convincing evidence that the Asserted Patents are invalid as obvious.  Accordingly, the Court will enter judgment in favor of Plaintiffs and against Cipla as to the '289, '587, and '808 Patents. The parties shall submit a joint proposed judgment.


s/ Julien Xavier Neals

DATED: June 21, 2023                                    **JULIEN XAVIER NEALS**
                                                                         United States District Judge

44

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| TEVA BRANDED PHARMACEUTICAL | : | |
| PRODUCTS R&D, INC., and NORTON | : | **Civil Action No. 20-10172 (JXN) (MAH)** |
| (WATERFORD) LTD., | : | (Consolidated with Civil Action Nos. |
| Plaintiffs, | : | 20-14833 and 20-14890) |
| | : | |
| v. | : | **ORDER** |
| | : | |
| CIPLA LTD., AUROBINDO PHARMA | : | |
| LLC, AUROBINDO PHARMA USA, | : | |
| INC., and AUROLIFE PHARMA LLC, | : | |
| Defendants. | : | |
| | : | |

**NEALS**, **District Judge**:

Plaintiffs Teva Branded Pharmaceutical Products R&D, Inc. ("Teva") and Norton (Waterford) Ltd. ("Norton") (collectively, "Plaintiffs") bring this consolidated patent infringement action against Defendant Cipla Ltd. ("Cipla") for submitting an Abbreviated New Drug Application ("ANDA") No. 211434 to the U.S. Food and Drug Administration ("FDA") seeking approval to commercially manufacture, use, offer for sale, sell, and/or import generic versions of Plaintiffs' QVAR® (beclomethasone dipropionate) products prior to the expiration of U.S. Patent Nos. 9,463,289 (the "'289 Patent"), 9,808,587 (the "'587 Patent"), 10,022,509 (the "'509 Patent"); 10,022,510 (the "'510 Patent"); 10,086,156 (the "'156 Patent"), and 10,561,808 (the "'808 Patent"). *See* Compl., ECF No. 1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202. Venue is proper under 28 U.S.C. §§ 1391(b) and 1400(b).

The Court having held a bench trial on November 16, 17, and 18, 2022, having entertained closing arguments on March 28, 2023, and having considered the parties' post-trial briefing and

weighed all credible testimony and other evidence in the record as well as all other relevant docket entries,

**IT IS** on this 21st day of June 2023,

**ORDERED and ADJUDGED** that Plaintiffs have demonstrated by a preponderance of the evidence that Cipla's ANDA product infringes each Asserted Claim of the '289, '587, and '808 Patents; and it is further

**ORDERED and ADJUDGED** that Cipla failed to demonstrate by clear and convincing evidence that the '289, '587, and '808 Patents are invalid as obvious; and it is further

**ORDERED** that the parties are directed to submit a joint proposed form of judgment consistent with this Order and the accompanying Opinion within 7 days of this Order; and it is further

**ORDERED** that an unredacted version of this Court's Opinion shall be filed under temporary seal and emailed separately to the parties, and the parties shall submit a joint, proposed redacted version of the Court's Opinion, as well as a statement of reasons as to why each redaction is necessary, within 7 days of this Order.

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
United States District Judge

Liza M. Walsh                                    Gregory D. Miller
Katelyn O'Reilly                                 Gene Y. Kang
Selina M. Ellis                                  RIVKIN RADLER LLP
WALSH PIZZI O'REILLY FALANGA LLP                 25 Main Street, Suite 501
Three Gateway Center                             Court Plaza North
100 Mulberry Street, 15th Floor                  Hackensack, NJ 07601
Newark, NJ 07102
(973) 757-1100                                   *Attorneys for Defendant Cipla Ltd.*

*Attorneys for Plaintiffs*
*Teva Branded Pharmaceutical*
*R&D Inc. and Norton (Waterford) Ltd.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TEVA BRANDED PHARMACEUTICAL | : | Consolidated Civil Action No. 20-10172 |
| PRODUCTS R&D, INC., and | : | (JXN)(MAH) |
| NORTON (WATERFORD) LTD., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| CIPLA LTD., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>JOINT FINAL JUDGMENT ORDER</u>

**WHEREAS,** the Court held a three-day bench trial in the above-captioned matter on

November 16, 17, and 18, 2022. (ECF Nos. 241-244.) For the reasons set forth in the Court's

Opinion and Opinion dated June 21, 2023 (ECF Nos. 301, 302), and all parties having consented

to the form and entry hereof, Judgment is entered in favor of Plaintiffs Teva Branded

Pharmaceutical Products R&D, Inc. and Norton (Waterford) Ltd. (collectively, "Plaintiffs") and

against Defendant Cipla Ltd. ("Cipla"):

　　　　1.　　　Cipla's filing of Abbreviated New Drug Application ("ANDA") No. 211434

("Cipla's ANDA") infringes claims 1-2, 4, and 6-7 of U.S. Patent No. 9,463,289 (the "'289

patent"); claims 1-2, 4, 6-7, and 12 of U.S. Patent No. 9,808,587 (the "'587 patent"); and claim

28 of U.S. Patent No. 10,561,808 (the "'808 patent"). The manufacture, use, sale, or offer for

sale within the United States, or importation into the United States, of the product that is the subject of Cipla's ANDA ("Cipla's ANDA Product"), would infringe the same claims.

    2.    Claims 1-2, 4, and 6-7 of the '289 patent; claims 1-2, 4, 6-7, and 12 of the '587 patent; and claim 28 of the '808 patent are not invalid.

    3.    Pursuant to 35 U.S.C. § 271(e)(4)(A), the U.S. Food & Drug Administration shall not approve Cipla's ANDA Product on a date which is earlier than the expiration date of the latest-expiring claim that Cipla has been adjudged to infringe (for the '289 and '587 patents, May 18, 2031; and for the '808 patent, January 1, 2032), including any extensions and market exclusivities.

    4.    Pursuant to 35 U.S.C. § 271(e)(4)(B), Cipla, its officers, agents, servants, employees, and attorneys; and any other persons who are in active concert or participation with anyone described above are hereby enjoined from commercially manufacturing, using, offering to sell, or selling within the United States, or importing into the United States, Cipla's ANDA Product before the expiration date of the latest-expiring claim that Cipla has been adjudged to infringe (for the '289 and '587 patents, May 18, 2031; and for the '808 patent, January 1, 2032), including any extensions and market exclusivities.

    5.    Judgment is hereby entered (a) in favor of Plaintiffs and against Cipla on Plaintiffs' claims for infringement of claims 1-2, 4, and 6-7 of the '289 patent; claims 1-2, 4, 6-7, and 12 of the '587 patent; and claim 28 of the '808 patent; and (b) in favor of Plaintiffs and against Cipla on Cipla's counterclaims and defenses. (*See* ECF No. 1; ECF No. 7.)

    6.    This is the **FINAL JUDGMENT** of the Court.

IT IS SO ORDERED this 29th day of June, 2023

JULIEN XAVIER NEALS
United States District Judge

2

Query    **Reports**▾    **Utilities**▾    Help    Log Out

ANDA,APPEAL,PRETRL,SCHEDO

# U.S. District Court
## District of New Jersey [LIVE] (Newark)
## CIVIL DOCKET FOR CASE #: 2:20-cv-10172-JXN-MAH

| | |
|---|---|
| TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC. et al v. CIPLA LTD. et al | Date Filed: 08/07/2020 |
| Assigned to: Judge Julien Xavier Neals | Date Terminated: 06/29/2023 |
| Referred to: Magistrate Judge Michael A. Hammer | Jury Demand: None |
| Case in other court: Federal Circuit, 23-02241 | Nature of Suit: 835 Patent - Abbreviated New Drug Application(ANDA) |
| Cause: 15:1126 Patent Infringement | Jurisdiction: Federal Question |

**Plaintiff**

**TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.**

represented by **KATELYN O'REILLY**
WALSH PIZZI O'REILLY FALANGA LLP
THREE GATEWAY CENTER
100 MULBERRY STREET
15TH FLOOR
NEWARK, NJ 07102
973-757-1100
Email: koreilly@thewalshfirm.com
*ATTORNEY TO BE NOTICED*

**SELINA MIRIAM ELLIS**
WALSH PIZZI O'REILLY FALANGA LLP
THREE GATEWAY CENTER
100 MULBERRY STREET
15TH FLOOR
NEWARK, NJ 07102
973-757-1100
Email: sellis@walsh.law
*ATTORNEY TO BE NOTICED*

**WILLIAM T. WALSH , JR**
WALSH PIZZI O'REILLY FALANGA LLP
THREE GATEWAY CENTER
100 MULBERRY STREET
15TH FLOOR
NEWARK, NJ 07102
United Sta
973-757-1030
Email: wwalsh@proskauer.com

Appx49

*ATTORNEY TO BE NOTICED*

**LIZA M. WALSH**
WALSH PIZZI O'REILLY FALANGA
LLP
THREE GATEWAY CENTER
100 MULBERRY STREET
15TH FLOOR
NEWARK, NJ 07102
973.757.1100
Email: lwalsh@walsh.law
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**NORTON (WATERFORD) LTD.**     represented by     **KATELYN O'REILLY**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SELINA MIRIAM ELLIS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**WILLIAM T. WALSH , JR**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LIZA M. WALSH**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**CIPLA LTD.**     represented by     **PETER LOUIS GIUNTA**
K&L Gates LLP
599 Lexington Avenue
NEW YORK, NY 10022
212-536-3910
Email: Peter.Giunta@klgates.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**GREGORY D. MILLER**
RIVKIN RADLER LLP
25 MAIN STREET, SUITE 501
COURT PLAZA NORTH
HACKENSACK, NJ 07601
201-287-2460
Fax: 201-489-0495
Email: gregory.miller@rivkin.com

Appx50

*ATTORNEY TO BE NOTICED*

**Defendant Consolidated**

**AUROBINDO PHARMA LTD.**
*TERMINATED: 12/08/2022*

represented by **CHRISTOPHER S. CASIERI**
MCNEELY HARE & WAR
12 ROSZEL ROAD
SUITE C104
PRINCETON, NJ 08854
609-731-3668
Email: chris@miplaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**WILLIAM HARE**
McNeely, Hare & War, LLP
12 Roszel Road
Ste C104
Princeton, NJ 08540
609-240-2533
Email: bill@miplaw.com
*ATTORNEY TO BE NOTICED*

**Defendant Consolidated**

**AUROBINDO PHARMA USA, INC.**
*TERMINATED: 12/08/2022*

represented by **CHRISTOPHER S. CASIERI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**WILLIAM HARE**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant Consolidated**

**AUROLIFE PHARMA LLC**
*TERMINATED: 12/08/2022*

represented by **CHRISTOPHER S. CASIERI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**WILLIAM HARE**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant Consolidated**

**AUROBINDO PHARMA USA, INC.**
*TERMINATED: 12/08/2022*

represented by **CHRISTOPHER S. CASIERI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**WILLIAM HARE**

Appx51

(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant Consolidated**

**AUROBINDO PHARMA LTD.**     represented by     **CHRISTOPHER S. CASIERI**
*TERMINATED: 12/08/2022*                        (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**WILLIAM HARE**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant Consolidated**

**AUROLIFE PHARMA LLC**     represented by     **CHRISTOPHER S. CASIERI**
*TERMINATED: 12/08/2022*                        (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**WILLIAM HARE**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant Consolidated**

**NORTON (WATERFORD) LTD.**     represented by     **KATELYN O'REILLY**
(See above for address)
*ATTORNEY TO BE NOTICED*

**WILLIAM T. WALSH , JR**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LIZA M. WALSH**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant Consolidated**

**TEVA BRANDED**     represented by     **KATELYN O'REILLY**
**PHARMACEUTICAL PRODUCTS**                   (See above for address)
**R&D, INC.**                                 *ATTORNEY TO BE NOTICED*

**WILLIAM T. WALSH , JR**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LIZA M. WALSH**
(See above for address)

Appx52

*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**CIPLA LTD.**                    represented by **PETER LOUIS GIUNTA**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**GREGORY D. MILLER**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**NORTON (WATERFORD) LTD.**        represented by **KATELYN O'REILLY**
(See above for address)
*ATTORNEY TO BE NOTICED*

**WILLIAM T. WALSH , JR**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LIZA M. WALSH**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.**    represented by **KATELYN O'REILLY**
(See above for address)
*ATTORNEY TO BE NOTICED*

**WILLIAM T. WALSH , JR**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LIZA M. WALSH**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/07/2020 | 1 | COMPLAINT against All Defendants ( Filing and Admin fee $ 400 receipt number ANJDC-11181243), filed by TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC., Norton (Waterford) Ltd/. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 AO120 Patent Form (I of II), # 9 AO120 Patent Form (II of II))(WALSH, LIZA) (Entered: 08/07/2020) |

| | | |
|---|---|---|
| 08/07/2020 | 2 | Corporate Disclosure Statement by Norton (Waterford) Ltd/, TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC. identifying Teva Pharmaceutical Industries Ltd. as Corporate Parent.. (WALSH, LIZA) (Entered: 08/07/2020) |
| 08/08/2020 | | Case assigned to Judge Madeline Cox Arleo and Magistrate Judge Michael A. Hammer. (jr) (Entered: 08/08/2020) |
| 08/10/2020 | 3 | AO120 Patent/Trademark Form filed. (Attachments: # 1 Complaint and Exhibits) (sm) (Entered: 08/10/2020) |
| 08/10/2020 | 4 | NOTICE of Appearance by KATELYN O'REILLY on behalf of Norton (Waterford) Ltd/, TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC. (O'REILLY, KATELYN) (Entered: 08/10/2020) |
| 08/10/2020 | 5 | NOTICE of Appearance by WILLIAM T. WALSH, JR on behalf of Norton (Waterford) Ltd/, TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC. (WALSH, WILLIAM) (Entered: 08/10/2020) |
| 08/13/2020 | 6 | WAIVER OF SERVICE Returned Executed by TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC., Norton (Waterford) Ltd/. CIPLA LTD. waiver sent on 8/10/2020, answer due 10/9/2020. (WALSH, LIZA) (Entered: 08/13/2020) |
| 10/09/2020 | 7 | ANSWER to Complaint , COUNTERCLAIM against Norton (Waterford) Ltd/, TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC. by CIPLA LTD.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10)(MILLER, GREGORY)<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 10/09/2020) |
| 10/09/2020 | 8 | Corporate Disclosure Statement by CIPLA LTD.. (MILLER, GREGORY) (Entered: 10/09/2020) |
| 10/12/2020 | 9 | REDACTION to 7 Answer to Complaint,,,,, Counterclaim,,, by CIPLA LTD.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10)(MILLER, GREGORY) (Entered: 10/12/2020) |
| 10/16/2020 | 10 | Letter from Liza M. Walsh to the Hon. Michael A. Hammer, U.S.M.J. re: Pro Hac Vice Application on Consent. (Attachments: # 1 Certification of David I. Berl, # 2 Certification of Elise M. Baumgarten, # 3 Certification of Kathryn S. Kayali, # 4 Certification of Ben Picozzi, # 5 Certification of Liza M. Walsh, # 6 Text of Proposed Order)(WALSH, LIZA) (Entered: 10/16/2020) |

Appx54

| Date | No. | Description |
|---|---|---|
| 10/16/2020 | 11 | APPLICATION/PETITION for the Pro Hac Vice Admission of William R. Zimmerman, Joseph M. Reisman, Mark Rubinshtein, William O. Adams, and Brandon G. Smith for by CIPLA LTD.. (Attachments: # 1 Declaration of Gregory D. Miller, # 2 Declaration of William R. Zimmerman, # 3 Declaration of Joseph M. Reisman, # 4 Declaration of Mark Rubinshtein, # 5 Declaration William O. Adams, # 6 Declaration Brandon G. Smith, # 7 Text of Proposed Order, # 8 Certificate of Service)(MILLER, GREGORY) (Entered: 10/16/2020) |
| 10/19/2020 | 12 | ORDER GRANTING ADMISSION PRO HAC VICE as to David I. Berl, Elise M. Baumgarten, Kathryn S. Kayali and Ben Picozzi; etc. Signed by Magistrate Judge Michael A. Hammer on 10/19/2020. (sm) (Entered: 10/19/2020) |
| 10/19/2020 | 13 | ORDER GRANTING PRO HAC VICE ADMISSION as to William R. Zimmerman, Joseph M. Reisman, Mark Rubinshtein, William O. Adams and Brandon G. Smith; etc. Signed by Magistrate Judge Michael A. Hammer on 10/19/2020. (sm) (Entered: 10/19/2020) |
| 10/26/2020 |  | Pro Hac Vice Fee Received as to David I. Berl, Elise M. Baumgarten, Kathryn S. Kayali, and Ben Picozzi: $ 600, receipt number TRE115032 (jmh) (Entered: 10/26/2020) |
| 10/26/2020 | 14 | Application and Proposed Order for Clerk's Order to extend time to answer. (WALSH, LIZA) (Entered: 10/26/2020) |
| 10/26/2020 | 15 | TEXT ORDER: Telephone Scheduling Conference set for 1/5/2021 at 2:00 p.m. before Magistrate Judge Michael A. Hammer. The parties shall electronically file a joint discovery plan by 12:00 p.m. on 1/4/2021. To join the conference call, dial 1-888-684-8852 and access code 1456817#. So Ordered by Magistrate Judge Michael A. Hammer on 10/26/2020. (jqb, ) (Entered: 10/26/2020) |
| 10/27/2020 |  | Clerk`s Text Order - The document 14 submitted by TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC. has been GRANTED. The answer due date has been set for 11/13/2020. (sm) (Entered: 10/27/2020) |
| 10/27/2020 | 16 | Notice of Request by Pro Hac Vice Elise M. Baumgarten to receive Notices of Electronic Filings. (WALSH, LIZA) (Entered: 10/27/2020) |
| 10/27/2020 | 17 | Notice of Request by Pro Hac Vice David I. Berl to receive Notices of Electronic Filings. (WALSH, LIZA) (Entered: 10/27/2020) |
| 10/27/2020 | 18 | Notice of Request by Pro Hac Vice Kathryn S. Kayali to receive Notices of Electronic Filings. (WALSH, LIZA) (Entered: 10/27/2020) |
| 10/27/2020 | 19 | Notice of Request by Pro Hac Vice Ben Picozzi to receive Notices of Electronic Filings. (WALSH, LIZA) (Entered: 10/27/2020) |
| 11/02/2020 | 20 | Letter from Liza M. Walsh to the Hon. Michael A. Hammer, U.S.M.J. re: Pro Hac Vice Application on Consent. (Attachments: # 1 Certification of Ricardo Leyva, # 2 Certification of Liza M. Walsh, # 3 Text of Proposed Order)(WALSH, LIZA) (Entered: 11/02/2020) |
| 11/04/2020 | 21 | ORDER granting pro hac vice admission of Ricardo Leyva; etc. Signed by Magistrate Judge Michael A. Hammer on 11/4/2020. (sm) (Entered: 11/04/2020) |
| 11/13/2020 | 22 | ANSWER to Counterclaim *(CONFIDENTIAL- FILED UNDER SEAL)* by Norton (Waterford) Ltd/, TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, |

| | | |
|---|---|---|
| | | INC..(WALSH, LIZA) |
| | | NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 11/13/2020) |
| 11/18/2020 | 23 | Letter from Liza M. Walsh to the Hon. Michael A. Hammer, U.S.M.J. requesting to unseal Teva's Answer to Cipla's Counterclaims (D.E. 22) re 22 Answer to Counterclaim,,. (WALSH, LIZA) (Entered: 11/18/2020) |
| 11/18/2020 | | Pro Hac Vice fee received as to Ricardo Leyva $150, receipt number TRE115596 (jal, ) (Entered: 11/18/2020) |
| 11/23/2020 | 24 | ORDER granting plaintiffs' request to unseal D.E. 22. Signed by Magistrate Judge Michael A. Hammer on 11/23/2020. (sm) (Entered: 11/23/2020) |
| 11/30/2020 | 25 | Notice of Request by Pro Hac Vice Ricardo Leyva to receive Notices of Electronic Filings. (WALSH, LIZA) (Entered: 11/30/2020) |
| 12/01/2020 | 26 | MOTION to Seal by CIPLA LTD.. (Attachments: # 1 Statement in Lieu of Brief, # 2 Declaration of Gregory D. Miller, # 3 Exhibit A to the Declaration of Gregory D. Miller, # 4 Text of Proposed Order, # 5 Certificate of Service)(MILLER, GREGORY) (Entered: 12/01/2020) |
| 12/01/2020 | | Set Deadlines as to 26 MOTION to Seal . Motion set for 1/4/2021 before Judge Madeline Cox Arleo. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (sm) (Entered: 12/01/2020) |
| 12/03/2020 | | Pro Hac Vice fee as to William R. Zimmerman, Joseph M. Reisman, Mark Rubinshtein, William O. Adams and Brandon G. Smith: $ 750, receipt number NEW043832 (sm) (Entered: 12/04/2020) |
| 12/04/2020 | 27 | MOTION for Judgment on the Pleadings by CIPLA LTD.. (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(MILLER, GREGORY) (Entered: 12/04/2020) |
| 12/04/2020 | 28 | MEMORANDUM in Support filed by CIPLA LTD. re 27 MOTION for Judgment on the Pleadings (MILLER, GREGORY) |
| | | NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 12/04/2020) |
| 12/07/2020 | | Set deadlines as to 27 MOTION for Judgment on the Pleadings . Motion set for 1/4/2021 before Judge Madeline Cox Arleo. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (sm) (Entered: 12/07/2020) |

| 12/09/2020 | 29 | TEXT ORDER: The Telephone Scheduling Conference set for 1/5/2021 will be held at 11:00 a.m. before Magistrate Judge Michael A. Hammer. The parties shall electronically file a joint discovery plan by 1/4/2021. Dial 1-888-684-8852 and access code 1456817# to join the conference call. Please mark your calendar accordingly. So Ordered by Magistrate Judge Michael A. Hammer on 12/9/2020. (jqb, ) (Entered: 12/09/2020) |
|---|---|---|
| 12/21/2020 | 30 | Letter from Liza M. Walsh to the Hon. Madeline Cox Arleo, U.S.D.J. requesting an extension of time to respond to Defendant's Motion for Judgment on the Pleadings re 27 MOTION for Judgment on the Pleadings . (WALSH, LIZA) (Entered: 12/21/2020) |
| 12/28/2020 | 33 | ORDER granting 30 Letter request for extension of time to respond to defendant's counter claim, through 1/26/2021, etc. Signed by Magistrate Judge Michael A. Hammer on 12/28/2020. (lag, ) (Entered: 12/29/2020) |
| 12/29/2020 | 31 | TEXT ORDER: Plaintiff shall mail a tabbed copy of the complaint to the Court by 1/4/2021. So Ordered by Magistrate Judge Michael A. Hammer on 12/29/2020. (jqb, ) (Entered: 12/29/2020) |
| 12/29/2020 | 32 | TEXT ORDER: The parties shall electronically file a joint discovery plan by 1/4/2021. So Ordered by Magistrate Judge Michael A. Hammer on 12/29/2020. (jqb, ) (Entered: 12/29/2020) |
| 12/30/2020 | 34 | Letter from Liza M. Walsh to Hon. Michael A. Hammer. (Attachments: # 1 Text of Proposed Order)(WALSH, LIZA) (Entered: 12/30/2020) |
| 01/04/2021 | 35 | ORDER granting 26 the parties Joint Motion to Seal; the Clerk of the Court shall permit the Confidential Material to be sealed permanently and take such other steps as may be reasonably necessary to maintain the confidentiality of the Confidential Material; that nothing herein shall constitute a ruling concerning future requests to seal. Signed by Magistrate Judge Michael A. Hammer on 1/4/2021. (sm) (Entered: 01/04/2021) |
| 01/04/2021 | 36 | Joint Discovery Plan by All Plaintiffs. (Attachments: # 1 Joint Discovery Plan)(WALSH, LIZA) (Entered: 01/04/2021) |
| 01/05/2021 | 37 | TEXT ORDER: Counsel for Aurobindo is granted leave to participate in the Rule 16 scheduling conference in Civ. No. 20-10172 and 20-14890 today at 11:00 a.m., for the purpose of addressing possible consolidation of these matters with Civ. No. 20-14833. So Ordered by Magistrate Judge Michael A. Hammer on 1/5/2021. So Ordered by Magistrate Judge Michael A. Hammer on 1/5/2021. (Hammer, Michael) (Entered: 01/05/2021) |
| 01/05/2021 | 38 | TEXT ORDER: The parties are directed to file a proposed order of consolidation by the close of business on January 8, 2021. So Ordered by Magistrate Judge Michael A. Hammer on 1/5/21. (TAD) (Entered: 01/05/2021) |
| 01/05/2021 | | Minute Entry for proceedings held before Magistrate Judge Michael A. Hammer: Telephone Scheduling Conference held on 1/5/2021. (ECR) (jqb, ) Modified on 3/12/2021 (jqb, ). (Entered: 01/06/2021) |
| 01/08/2021 | 39 | Letter from Liza M. Walsh to the Hon. Michael A. Hammer, U.S.M.J. encl. proposed Order of Consolidation. (Attachments: # 1 proposed Order of Consolidation)(WALSH, LIZA) (Entered: 01/08/2021) |

| 01/08/2021 | 40 | ORDER Consolidating Cases for All Purposes; All filings going forward shall be filed in Civil Action No. 20-10172 and that Civil Action Nos. 20-14890 and 20-14833 shall be administratively terminated. Signed by Magistrate Judge Michael A. Hammer on 1/8/2021. (ams, ) (Entered: 01/08/2021) |
|---|---|---|
| 01/08/2021 | 41 | PRETRIAL SCHEDULING ORDER. Signed by Magistrate Judge Michael A. Hammer on 1/8/2021. (sm) (Entered: 01/08/2021) |
| 01/14/2021 | 42 | APPLICATION/PETITION for the Pro Hac Vice Admission of Karen M. Cassidy for by CIPLA LTD.. (Attachments: # 1 Declaration of Gregory D. Miller, # 2 Declaration of Karen M. Cassidy, # 3 Text of Proposed Order, # 4 Certificate of Service)(MILLER, GREGORY) (Entered: 01/14/2021) |
| 01/14/2021 | 43 | Letter from Liza M. Walsh to the Hon. Madeline Cox Arleo, U.S.D.J. re: page limits. (WALSH, LIZA) (Entered: 01/14/2021) |
| 01/15/2021 | 44 | ORDER granting Teva's request to file a single responsive brief of 40 pages (in 12 point font) addressing both motions, and in turn, Cipla will file a single reply brief of 20 pages (in 12 point font). Signed by Judge Madeline Cox Arleo on 1/15/2021. (sm) (Entered: 01/15/2021) |
| 01/19/2021 | 45 | ORDER granting pro hac vice admission f Karen M. Cassidy, Esq.; etc. Signed by Magistrate Judge Michael A. Hammer on 1/19/2021. (sm) (Entered: 01/19/2021) |
| 01/19/2021 | 46 | Application and Proposed Order for Clerk's Order to extend time to answer as to Defendants Aurobindo Pharma Ltd., Aurobindo Pharma USA, Inc., and Aurolife Pharma LLC's Answer, Affirmative Defenses and Counterclaims filed in Civil Action No.: 2:20-cv-14833, D.E. 12.. (WALSH, LIZA) (Entered: 01/19/2021) |
| 01/19/2021 | 47 | Letter from Liza M. Walsh to Hon. Michael A. Hammer. (WALSH, LIZA) (Entered: 01/19/2021) |
| 01/20/2021 | 48 | ORDER granting Plaintiff and Counter-Defendants a two-week extension to submit a Consent Discovery Confidentiality Order until 2/2/2021. Signed by Magistrate Judge Michael A. Hammer on 1/20/2021. (sm) (Entered: 01/21/2021) |
| 01/25/2021 | 49 | ORDER EXTENDING TIME TO ANSWER OR OTHERWISE REPLY PURSUANT TO LOCAL CIVIL RULE 6.1(b) that Plaintiff's time to respond to Defendants Answer, Affirmative Defenses and Counterclaim is extended for 14 days to 2/3/2021. Signed by Magistrate Judge Michael A. Hammer on 1/25/2021. (sm) (Entered: 01/25/2021) |
| 01/26/2021 | 50 | BRIEF in Opposition filed by All Plaintiffs re 27 MOTION for Judgment on the Pleadings (WALSH, LIZA)<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 01/26/2021) |
| 01/26/2021 | 51 | DECLARATION of Liza M. Walsh re 50 Brief in Opposition to Motion,, by All Plaintiffs. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(WALSH, LIZA) (Entered: 01/26/2021) |

| | | |
|---|---|---|
| 02/02/2021 | 52 | Letter from Liza M. Walsh to Hon. Michael A. Hammer enclosing Proposed Stipulated Confidentiality Order. (Attachments: # 1 Stipulated Proposed Discovery Confidentiality Order, # 2 Declaration of Liza M. Walsh, # 3 Declaration of Christopher Casieri, # 4 Declaration of Gregory Miller)(WALSH, LIZA) (Entered: 02/02/2021) |
| 02/03/2021 | 53 | Discovery Confidentiality Order. Signed by Magistrate Judge Michael A. Hammer on 2/3/2021. (sm) (Entered: 02/03/2021) |
| 02/03/2021 | 54 | ANSWER to Complaint *Aurobindo's Counterclaims* by All Plaintiffs.(WALSH, LIZA) (Entered: 02/03/2021) |
| 02/05/2021 | 55 | Letter from Liza M. Walsh to Hon. Michael A. Hammer re 41 Scheduling Order. (WALSH, LIZA) (Entered: 02/05/2021) |
| 02/09/2021 | 56 | REPLY BRIEF to Opposition to Motion filed by CIPLA LTD. re 27 MOTION for Judgment on the Pleadings (Attachments: # 1 Certificate of Service)(MILLER, GREGORY) <hr> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 02/09/2021) |
| 02/09/2021 | 57 | ORDER that the time for parties to respond to both the initial discovery requests and discovery requests served after 2/15/2020 shall be 30 days; etc. Signed by Magistrate Judge Michael A. Hammer on 2/9/2021. (sm) (Entered: 02/09/2021) |
| 02/18/2021 | 58 | MOTION for Issuance of Letters Rogatory ( Filing fee $ 47 receipt number ANJDC-12149926.) by All Plaintiffs. (WALSH, LIZA) (Entered: 02/18/2021) |
| 02/18/2021 | 59 | BRIEF in Support filed by All Plaintiffs re 58 MOTION for Issuance of Letters Rogatory ( Filing fee $ 47 receipt number ANJDC-12149926.) (WALSH, LIZA) <hr> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 02/18/2021) |
| 02/24/2021 | | Set Deadlines as to 58 MOTION for Issuance of Letters Rogatory ( Filing fee $ 47 receipt number ANJDC-12149926.). Motion set for 3/15/2021 before Judge Madeline Cox Arleo. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (sm) (Entered: 02/24/2021) |
| 02/25/2021 | | Pro Hac Vice fee as to Karen M. Cassidy: $ 150, receipt number NEW044219 (sm) (Entered: 02/25/2021) |
| 03/01/2021 | 60 | Letter from Cipla to the Hon. Madeline Cox Arleo, U.S.D.J. re: response to application for Letters Rogatory re 59 Brief in Support of Motion,,. (Attachments: # 1 Exhibit A)(MILLER, GREGORY) <hr> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials |

Appx59

| | | |
|---|---|---|
| | | sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 03/01/2021) |
| 03/03/2021 | 61 | Letter from Liza M. Walsh to the Hon. Madeline Cox Arleo, U.S.D.J. and to the Hon. Michael A. Hammer, U.S.M.J. (Confidential - Filed Under Seal) re 60 Letter,,. (Attachments: # 1 Exhibit A-B (Confidential - Filed Under Seal))(WALSH, LIZA)<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 03/03/2021) |
| 03/04/2021 | 62 | REDACTION to 60 Letter,, *from Cipla to the Hon. Madeline Cox Arleo, U.S.D.J. re: response to application for Letters Rogatory* by CIPLA LTD.. (Attachments: # 1 Exhibit A)(MILLER, GREGORY) (Entered: 03/04/2021) |
| 03/04/2021 | 63 | REDACTION to 61 Letter,, by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (Attachments: # 1 Exhibit A-B)(WALSH, LIZA) (Entered: 03/04/2021) |
| 03/04/2021 | 64 | REDACTION to 59 Brief in Support of Motion,, by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (WALSH, LIZA) (Entered: 03/04/2021) |
| 03/10/2021 | 65 | REDACTION to 28 Memorandum in Support of Motion,, by CIPLA LTD.. (MILLER, GREGORY) (Entered: 03/10/2021) |
| 03/10/2021 | 66 | REDACTION to 56 Reply Brief to Opposition to Motion,, by CIPLA LTD.. (MILLER, GREGORY) (Entered: 03/10/2021) |
| 03/10/2021 | 67 | MOTION to Seal by CIPLA LTD.. (Attachments: # 1 Statement in Lieu of Brief, # 2 Declaration of Gregory D. Miller, # 3 Exhibit A to the Declaration of Gregory D. Miller, # 4 Exhibit B to the Declaration of Gregory D. Miller, # 5 Text of Proposed Order, # 6 Certificate of Service)(MILLER, GREGORY) (Entered: 03/10/2021) |
| 03/10/2021 | 68 | MOTION for Issuance of Letters Rogatory ( Filing fee $ 47 receipt number ANJDC-12251513.) by All Plaintiffs. (WALSH, LIZA) (Entered: 03/10/2021) |
| 03/10/2021 | 69 | BRIEF in Support filed by All Plaintiffs re 68 MOTION for Issuance of Letters Rogatory ( Filing fee $ 47 receipt number ANJDC-12251513.) (WALSH, LIZA)<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 03/10/2021) |
| 03/10/2021 | 70 | REDACTION to 50 Brief in Opposition to Motion,, by All Plaintiffs. (WALSH, LIZA) (Entered: 03/10/2021) |
| 03/11/2021 | 71 | REDACTION to 69 Brief in Support of Motion,, by All Plaintiffs. (WALSH, LIZA) (Entered: 03/11/2021) |
| 03/15/2021 | | Set Deadlines as to 67 MOTION to Seal , 68 MOTION for Issuance of Letters Rogatory ( Filing fee $ 47 receipt number ANJDC-12251513.). Motion set for 4/5/2021 before Judge Madeline Cox Arleo. Unless otherwise directed by the Court, |

| | | |
|---|---|---|
| | | this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (sm) (Entered: 03/15/2021) |
| 03/17/2021 | 72 | APPLICATION/PETITION for the Pro Hac Vice Admission of Ashley C. Morales for by CIPLA LTD.. (Attachments: # 1 Declaration of Gregory D. Miller, # 2 Declaration of Ashley C. Morales, # 3 Text of Proposed Order, # 4 Certificate of Service) (MILLER, GREGORY) (Entered: 03/17/2021) |
| 03/17/2021 | 73 | MOTION to Seal by CIPLA LTD.. (Attachments: # 1 Statement in Lieu of Brief, # 2 Declaration of Gregory D. Miller, # 3 Exhibit A to the Declaration of Gregory D. Miller, # 4 Exhibit B to the Declaration of Gregory D. Miller, # 5 Text of Proposed Order, # 6 Certificate of Service)(MILLER, GREGORY) (Entered: 03/17/2021) |
| 03/18/2021 | 74 | ORDER GRANTING PRO HAC VICE ADMISSION of Gregory D. Miller; etc. Signed by Magistrate Judge Michael A. Hammer on 3/18/2021. (sm) (Entered: 03/19/2021) |
| 03/24/2021 | 75 | MOTION to Seal by CIPLA LTD.. (Attachments: # 1 Statement in Lieu of Brief, # 2 Declaration of Gregory D. Miller, # 3 Exhibit A to the Declaration of Gregory D. Miller, # 4 Exhibit B to the Declaration of Gregory D. Miller, # 5 Text of Proposed Order, # 6 Certificate of Service)(MILLER, GREGORY) (Entered: 03/24/2021) |
| 03/25/2021 | 76 | Letter from Liza M. Walsh on Behalf of All Parties. (WALSH, LIZA) (Entered: 03/25/2021) |
| 03/26/2021 | | Minute Entry for proceedings held before Magistrate Judge Michael A. Hammer: Status Conference held on 3/26/2021. (ECR) (jqb, ) (Entered: 03/26/2021) |
| 03/26/2021 | 77 | ORDER granting the motions for issuance of letters rogatory, D.E. 58 & 68, are granted; that Tevas request for the identity of the third parties Cipla contacted, as well as the substance of their response, is granted; TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC., and NORTON (WATERFORD) LTD.,Plaintiffs, v. CIPLA LTD., AUROBINDO PHARMA LTD., AUROBINDO PHARMA USA, INC., and AUROLIFE PHARMA LLC, Defendants; the parties shall meet and confer regarding the format of compliance with respect to the identity of the third parties and substance of the response; the next call in this matter will be held on June 14, 2021 at 12:00 p.m.; etc. Signed by Magistrate Judge Michael A. Hammer on 3/26/2021. (sm) (Entered: 03/26/2021) |
| 03/26/2021 | 78 | ORDER re: Letters Rogatory. Signed by Magistrate Judge Michael A. Hammer on 3/26/2021. (sm) (Entered: 03/30/2021) |
| 03/26/2021 | 79 | ORDER re: Letter of Request to the Central Authority of the Republic of India for International Judicial Assistance. Signed by Magistrate Judge Michael A. Hammer on 3/26/2021. (sm) (Entered: 03/30/2021) |
| 03/30/2021 | | Set Deadlines as to 75 MOTION to Seal , 73 MOTION to Seal . Motion set for 4/19/2021 before Judge Madeline Cox Arleo. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (sm) (Entered: 03/30/2021) |

| 04/01/2021 | 80 | Transcript of Status Conference held on March 26, 2021, before Magistrate Judge Michael A. Hammer. Transcriber: King Transcription Services (973-237-6080). **NOTICE REGARDING (1) REDACTION OF PERSONAL IDENTIFIERS IN TRANSCRIPTS AND (2) MOTION TO REDACT AND SEAL:** The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this Transcript to comply with Fed.R.Civ.P.5.2(a) (personal identifiers). Parties seeking to redact and seal this Transcript, or portions thereof, pursuant to L.Civ.R. 5.3(g) must e-file a Motion to Redact and Seal utilizing the event `Redact and Seal Transcript/Digital Recording`. Redaction Request to Transcription Agency due, but not filed, by 4/22/2021. Redacted Transcript Deadline set for 5/3/2021. Release of Transcript Restriction set for 6/30/2021. (wh) (Entered: 04/05/2021) |
| 04/06/2021 | 81 | Letter from Liza M. Walsh to the Hon. Michael A. Hammer, U.S.M.J.. (WALSH, LIZA) (Entered: 04/06/2021) |
| 04/07/2021 | 82 | TEXT ORDER: Plaintiff's April 6, 2021 request [D.E. 81] to extend the deadline to produce documents until April 30, 2021 is granted for the reasons set forth in the April 6, 2021 letter. So Ordered by Magistrate Judge Michael A. Hammer on 4/7/2021. (Hammer, Michael) (Entered: 04/07/2021) |
| 04/13/2021 | | Pro Hac Vice fee: $150.00. Receipt number NEW044450 for Ashley C. Morales. (ps) (Entered: 04/14/2021) |
| 04/15/2021 | 84 | ORDER that the parties joint motion to seal is GRANTED; that the Clerk of the Court shall permit the Confidential Material to be sealed permanently.. Signed by Magistrate Judge Michael A. Hammer on 4/15/2021. (ld, ) (Entered: 04/21/2021) |
| 04/19/2021 | 85 | ORDER that based upon the foregoing findings of fact and conclusions of law, that the parties' joint motion to seal is hereby GRANTED; that the Clerk of the Court shall permit the Confidential Material to be sealed permanently and take such other steps as may be reasonably necessary to maintain the confidentiality of the Confidential Material; that nothing herein shall constitute a ruling concerning future requests to seal.. Signed by Magistrate Judge Michael A. Hammer on 4/19/2021. (ld, ) (Entered: 04/21/2021) |
| 04/19/2021 | 86 | ORDER that based upon the foregoing findings of fact and conclusions of law, that the parties' joint motion to seal is hereby GRANTED; that the Clerk of the Court shall permit the Confidential Material to be sealed permanently and take such other steps as may be reasonably necessary to maintain the confidentiality of the Confidential Material;etc. Signed by Magistrate Judge Michael A. Hammer on 4/19/2021. (ld, ) (Entered: 04/21/2021) |
| 04/20/2021 | 83 | Letter from Liza M. Walsh to Hon. Michael A. Hammer re 78 Order. (Attachments: # 1 Text of Proposed Order)(WALSH, LIZA)<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 04/20/2021) |
| 04/21/2021 | 87 | Order re Letter of request to the Central Authorities of The United Kingdom for International Judicial Assistance from Liza M. Walsh. (ld, )<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, |

|  |  | consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. Modified on 4/23/2021 (jqb, ). (Entered: 04/23/2021) |
|---|---|---|
| 04/21/2021 | 88 | ORDER granting Letter of request to the Central Authorities of The United Kingdom for International Judicial Assistance. Signed by Magistrate Judge Michael A. Hammer on 4/21/2021. (ld, ) (Entered: 04/23/2021) |
| 04/27/2021 | 89 | Letter from Liza M. Walsh to Hon. Madeline Cox Arleo. (Attachments: # 1 Text of Proposed Order)(WALSH, LIZA) (Entered: 04/27/2021) |
| 04/28/2021 |  | Clerk's Note - Please disregard D.E. 87 . See D.E. 88 . (ld, ) (Entered: 04/28/2021) |
| 05/19/2021 | 90 | Letter from Liza M. Walsh to the Hon. Madeline Cox Arleo, U.S.D.J. encl. Stipulation and proposed Order re: U.S. Patent Nos. 10,022,509 and 10,022,510. (Attachments: # 1 Text of Proposed Order)(WALSH, LIZA) (Entered: 05/19/2021) |
| 06/01/2021 | 91 | STIPULATION AND ORDER REGARDING U.S. PATENT NOS. 10,022,509 AND 10,022,510. Signed by Judge Madeline Cox Arleo on 6/1/2021. (sm) (Entered: 06/01/2021) |
| 06/11/2021 | 92 | MOTION for Issuance of Letters Rogatory ( Filing fee $ 47 receipt number ANJDC-12539401.) by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (WALSH, LIZA) (Entered: 06/11/2021) |
| 06/11/2021 | 93 | BRIEF in Support filed by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC. re 92 MOTION for Issuance of Letters Rogatory ( Filing fee $ 47 receipt number ANJDC-12539401.) *(Confidential - Filed Under Seal)* (WALSH, LIZA) <hr> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 06/11/2021) |
| 06/11/2021 | 94 | Letter from Liza M. Walsh to Hon. Michael A. Hammer. (WALSH, LIZA) (Entered: 06/11/2021) |
| 06/14/2021 |  | Set Deadlines as to 92 MOTION for Issuance of Letters Rogatory ( Filing fee $ 47 receipt number ANJDC-12539401.). Motion set for 7/6/2021 before Judge Madeline Cox Arleo. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (sm) (Entered: 06/14/2021) |
| 06/14/2021 |  | Minute Entry for proceedings held before Magistrate Judge Michael A. Hammer: Status Conference held on 6/14/2021. (jqb, ) (Entered: 06/14/2021) |
| 06/15/2021 | 96 | ORDER granting Letter of Request To The Central Authorities of The United Kingdom For International Judicial Assistance;etc. Signed by Magistrate Judge Michael A. Hammer on 6/15/2021. (ld, ) Modified on 6/17/2021 (ld). (Entered: 06/17/2021) |

Appx63

| 06/16/2021 | 95 | ORDER granting 92 Motion for Issuance of Letters Rogatory; that the next call in this matter will be held on September 20, 2021 at 2:00 p.m.. Signed by Magistrate Judge Michael A. Hammer on 6/15/2021. (ld, ) (Entered: 06/16/2021) |
| --- | --- | --- |
| 06/18/2021 | 97 | Letter from Liza M. Walsh on Behalf of All Parties. (WALSH, LIZA) (Entered: 06/18/2021) |
| 06/28/2021 | 98 | Letter from Liza M. Walsh to the Honorable Michael A. Hammer, U.S.M.J. re: claim construction deadlines. (WALSH, LIZA) (Entered: 06/28/2021) |
| 06/28/2021 | 99 | ORDER granting the parties a one-week extension of the current claim construction deadlines; etc. Signed by Magistrate Judge Michael A. Hammer on 6/28/2021. (sm) (Entered: 06/28/2021) |
| 06/29/2021 | 100 | ORDER granting the parties a brief extension of certain claim construction deadlines; etc. Signed by Magistrate Judge Michael A. Hammer on 6/29/2021. (sm) (Entered: 06/29/2021) |
| 06/30/2021 | 101 | TEXT ORDER REASSIGNING CASE. Case reassigned to Judge Julien Xavier Neals for all further proceedings. Judge Madeline Cox Arleo no longer assigned to case. So Ordered by Chief Judge Freda L. Wolfson on 6/30/2021. (smf) (Entered: 06/30/2021) |
| 07/06/2021 | 102 | STATEMENT *Joint Claim Construction and Prehearing Statement on Behalf of All Parties* by All Plaintiffs. (Attachments: # 1 Exhibit)(WALSH, LIZA) (Entered: 07/06/2021) |
| 07/19/2021 | 103 | Third Party Litigation Funding disclosure statement pursuant to L.Civ.R 7.1.1(a)(1-3) filed by CIPLA LTD.. (MILLER, GREGORY) (Entered: 07/19/2021) |
| 07/26/2021 | 104 | Letter from Liza M. Walsh to Hon. Julien X. Neals, U.S.D.J.. (WALSH, LIZA) (Entered: 07/26/2021) |
| 07/27/2021 | 105 | Letter from Cipla to the Hon. Julien X. Neals, U.S.D.J. re 104 Letter. (MILLER, GREGORY) (Entered: 07/27/2021) |
| 07/27/2021 | 106 | Letter from Aurobindo. (CASIERI, CHRISTOPHER) (Entered: 07/27/2021) |
| 07/29/2021 | 107 | LETTER ORDER that the page limit for claim construction briefing is extended from 40 pages to 60 pages. Signed by Judge Julien Xavier Neals on 7/29/2021. (sm) (Entered: 07/29/2021) |
| 08/03/2021 | 108 | Third Party Litigation Funding disclosure statement pursuant to L.Civ.R 7.1.1(a)(1-3) filed by AUROBINDO PHARMA LTD., AUROBINDO PHARMA USA, INC., AUROLIFE PHARMA LLC. (CASIERI, CHRISTOPHER) (Entered: 08/03/2021) |
| 08/06/2021 | 109 | MARKMAN OPENING BRIEF *on behalf of Defendants* (Attachments: # 1 Declaration of Karen M. Cassidy, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15)(MILLER, GREGORY) (Entered: 08/06/2021) |
| 08/06/2021 | 110 | MARKMAN OPENING BRIEF (Attachments: # 1 Declaration of Liza M. Walsh, # 2 Exhibit 1-10, # 3 Exhibit 11-17, # 4 Exhibit 19-23)(WALSH, LIZA) (Entered: 08/06/2021) |

Appx64

| 08/06/2021 | 111 | Exhibit to 110 Markman Opening Brief *(18)* by All Plaintiffs. (WALSH, LIZA) |
| | | NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 08/06/2021) |
| 09/15/2021 | 112 | NOTICE of Appearance by WILLIAM HARE on behalf of AUROBINDO PHARMA LTD., AUROBINDO PHARMA USA, INC., AUROLIFE PHARMA LLC (HARE, WILLIAM) (Entered: 09/15/2021) |
| 09/17/2021 | 113 | Letter from Liza M. Walsh to Hon. Michael A Hammer, U.S.M.J.. (WALSH, LIZA) (Entered: 09/17/2021) |
| 09/20/2021 | | Minute Entry for proceedings held before Magistrate Judge Michael A. Hammer: Status Conference held on 9/20/2021. (ECR) (jqb, ) (Entered: 09/20/2021) |
| 09/21/2021 | 114 | ORDER that the deadline to raise discovery disputes is extended to December 5, 2021; that the next call in this matter will be held on December 23, 2021 at 10:00 a.m.; etc. Signed by Magistrate Judge Michael A. Hammer on 9/21/2021. (sm) (Entered: 09/22/2021) |
| 09/24/2021 | 115 | MARKMAN RESPONSE BRIEF re 110 Markman Opening Brief (Attachments: # 1 Declaration of Karen M. Cassidy, # 2 Exhibit 16, # 3 Exhibit 17, # 4 Exhibit 18, # 5 Exhibit 19, # 6 Exhibit 20)(MILLER, GREGORY) (Entered: 09/24/2021) |
| 09/24/2021 | 116 | MARKMAN RESPONSE BRIEF re 109 Markman Opening Brief, (Attachments: # 1 Declaration of Liza M. Walsh, # 2 Exhibit 24, # 3 Exhibit 25)(WALSH, LIZA) (Entered: 09/24/2021) |
| 10/04/2021 | 117 | Letter from All Parties re Joint Proposed Markman Schedule. (WALSH, LIZA) (Entered: 10/04/2021) |
| 11/03/2021 | 118 | TEXT ORDER - The Court will conduct an in-person Markman hearing with the parties on November 30, 2021 at 10:00 AM in Newark - Courtroom 5D in the MLK Building before District Judge Julien Xavier Neals.So Ordered by Judge Julien Xavier Neals on 11/3/2021. (kd) (Entered: 11/03/2021) |
| 11/23/2021 | 119 | Letter from Liza M. Walsh to the Honorable Julien X. Neals, U.S.D.J. re: Markman Hearing. (WALSH, LIZA) (Entered: 11/23/2021) |
| 11/23/2021 | 120 | LETTER ORDER re 119 Joint Letter; Markman Hearing rescheduled to 11/30/2021 at 09:30 AM in Newark - Courtroom 5D before District Judge Julien Xavier Neals. etc. Signed by Judge Julien Xavier Neals on 11/23/2021. (ams, ) (Entered: 11/23/2021) |
| 11/30/2021 | 121 | Minute Entry for proceedings held before Judge Julien Xavier Neals: Markman Hearing held on 11/30/2021. (Court Reporter, Melissa Mormile (732-977-0047)) (kd) (Entered: 11/30/2021) |
| 12/06/2021 | 122 | Letter from Liza M. Walsh to Hon. Michael A Hammer, U.S.M.J. re 114 Order. (WALSH, LIZA) (Entered: 12/06/2021) |
| 12/07/2021 | 123 | ORDER granting Teva a two-week extension until 12/20/2021 to raise discovery disputes. Signed by Magistrate Judge Michael A. Hammer on 12/7/2021. (sm) (Entered: 12/07/2021) |

Appx65

| 12/17/2021 | 124 | TEXT ORDER: The Telephone Status Conference on 12/23/2021 is rescheduled to 12/22/2021 at 10:00 a.m. The parties will dial 1-888-684-8852 and access code 1456817# to join the conference. Please mark your calendar accordingly. So Ordered by Magistrate Judge Michael A. Hammer on 12/17/2021. (jqb, ) (Entered: 12/17/2021) |
|---|---|---|
| 12/21/2021 | 125 | Transcript of Proceedings held on November 30, 2021, before Judge Julien Xavier Neals. Court Reporter: Melissa Mormile (732-977-0047). **NOTICE REGARDING (1) REDACTION OF PERSONAL IDENTIFIERS IN TRANSCRIPTS AND (2) MOTION TO REDACT AND SEAL:** The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this Transcript to comply with Fed.R.Civ.P.5.2(a) (personal identifiers). Parties seeking to redact and seal this Transcript, or portions thereof, pursuant to L.Civ.R. 5.3(g) must e-file a Motion to Redact and Seal utilizing the event `Redact and Seal Transcript/Digital Recording`. Redaction Request to Court Reporter Agency due, but not filed, by 1/11/2022. Redacted Transcript Deadline set for 1/21/2022. Release of Transcript Restriction set for 3/21/2022. (krg) (Entered: 12/21/2021) |
| 12/21/2021 | 126 | Letter from Liza M. Walsh to the Hon. Michael A. Hammer, U.S.M.J. re: December 22, 2021 teleconference. (WALSH, LIZA) (Entered: 12/21/2021) |
| 12/22/2021 | 127 | TEXT ORDER: On or before January 10, 2022, Teva shall file a status report concerning the status of its subpoena to the U.S. Third Party entity. There will be a telephone conference with the Undersigned on April 11, 2022, at 11:00 a.m. Counsel shall join the call by dialing 1-888-684-8852 and entering access code 1456817#. So Ordered by Magistrate Judge Michael A. Hammer on 12/22/21. (tad) (Entered: 12/22/2021) |
| 12/22/2021 | | Minute Entry for proceedings held before Magistrate Judge Michael A. Hammer: Status Conference held on 12/22/2021. (ECR) (jqb, ) (Entered: 12/22/2021) |
| 01/10/2022 | 128 | Letter from Liza M. Walsh to Hon. Michael A Hammer, U.S.M.J. re 127 Order,. (WALSH, LIZA)<hr>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 01/10/2022) |
| 01/11/2022 | 129 | TEXT ORDER: Plaintiffs shall provide a second status update on or before January 18, 2022, to inform the Court whether Kindeva US has agreed to produce documents on an acceptable timeline. So Ordered by Magistrate Judge Michael A. Hammer on 1/11/22. (tad) (Entered: 01/11/2022) |
| 01/18/2022 | 130 | Letter from Liza M. Walsh to the Hon. Michael A. Hammer, U.S.M.J. (Confidential - Filed Under Seal) re 129 Order,. (WALSH, LIZA)<hr>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 01/18/2022) |
| 02/08/2022 | 131 | Letter from Liza M. Walsh to the Hon. Michael A. Hammer, U.S.M.J. re: discovery deadlines. (WALSH, LIZA) (Entered: 02/08/2022) |

Appx66

| 02/09/2022 | 132 | ORDER that the close of fact discovery is 3/25/2022; opening expert report is due 4/29/2022; responsive report by 6/3/2022; etc. Signed by Magistrate Judge Michael A. Hammer on 2/9/2022. (sm) (Entered: 02/09/2022) |
| 02/09/2022 | | Set Deadlines: Fact Discovery due by 3/25/2022. (sm) (Entered: 02/09/2022) |
| 02/11/2022 | 133 | Letter from Liza M. Walsh to Hon. Michael A Hammer, U.S.M.J.. (Attachments: # 1 Text of Proposed Order)(WALSH, LIZA) (Entered: 02/11/2022) |
| 02/14/2022 | 134 | STIPULATION AND ORDER. Signed by Magistrate Judge Michael A. Hammer on 2/14/2022. (sm) (Entered: 02/14/2022) |
| 04/01/2022 | 135 | TEXT ORDER: Telephone Status Conference set for 4/4/2022 at 3:30 p.m. The parties will dial 1-888-684-8852 and access code 1456817# to join the conference. Please mark your calendar accordingly. So Ordered by Magistrate Judge Michael A. Hammer on 4/1/2022. (jqb, ) (Entered: 04/01/2022) |
| 04/04/2022 | | Minute Entry for proceedings held before Magistrate Judge Michael A. Hammer: Status Conference held on 4/4/2022.(ECR) (jqb, ) (Entered: 04/05/2022) |
| 04/08/2022 | 136 | Letter from the Parties to the Hon. Michael A. Hammer, U.S.M.J. re: Joint Status Update. (MILLER, GREGORY) (Entered: 04/08/2022) |
| 04/11/2022 | 137 | ORDER that the parties will consider Aurobindo joining in Ciplas pending motion to dismiss by way of filing a short letter that does not raise or add any additional arguments; that the parties shall continue to meet and confer regarding the issues raised in the parties April 8, 2022 letter in light of the discussions during the April 11, 2022 telephone call and shall file a joint status report on or before April 25, 2022; that there will be an in-person Final Pretrial Conference on September 7, 2022, at 10:00 a.m. The parties shall file a proposed Final Pretrial Order by September 1, 2022. The Court requests that the parties send a copy of the Final Pretrial Order via mail or overnight delivery by September 1, 2022. Signed by Magistrate Judge Michael A. Hammer on 4/11/2022. (sm) (Entered: 04/11/2022) |
| 04/11/2022 | 138 | TEXT ORDER, Motions terminated: 27 MOTION for Judgment on the Pleadings filed by CIPLA LTD.. The motion for judgment on the pleadings [ECF No. 27] is hereby administratively terminated pending a decision on the parties Markman motions [ECF Nos. 109, 110]. Following the Courts Markman decision, Defendant Cipla Ltd. may renew its motion based on the Markman rulings.So Ordered by Judge Julien Xavier Neals on 4/11/2022. (kd) (Entered: 04/11/2022) |
| 04/11/2022 | | Minute Entry for proceedings held before Magistrate Judge Michael A. Hammer: Status Conference held on 4/11/2022. (bt) (Entered: 04/11/2022) |
| 04/25/2022 | | Set Hearings: Final Pretrial Conference is set for 9/7/2022 at 10:00 AM before Magistrate Judge Michael A. Hammer. (sm) (Entered: 04/25/2022) |
| 04/25/2022 | 139 | Letter from Liza M. Walsh to Hon. Michael A Hammer, U.S.M.J. re 137 Order,,,. (WALSH, LIZA) (Entered: 04/25/2022) |
| 04/28/2022 | 140 | TEXT ORDER: The Court is in receipt of the parties' April 25, 2022 letter to the Court, D.E. 139. It will take no action at time as it appears the parties are continuing to work toward a resolution of the issue which is the subject of that letter. No later than May 31, 2022, the parties shall file a joint status report. So Ordered by Magistrate Judge Michael A. Hammer on 4/28/22. (tad) (Entered: 04/28/2022) |

| 05/02/2022 | 141 | NOTICE of Change of Address by LIZA M. WALSH (WALSH, LIZA) (Entered: 05/02/2022) |
|---|---|---|
| 05/04/2022 | 142 | Transcript of Status Conference held on April 4, 2022, before Magistrate Judge Michael A. Hammer. Transcriber: King Transcription Services (973-237-6080). **NOTICE REGARDING (1) REDACTION OF PERSONAL IDENTIFIERS IN TRANSCRIPTS AND (2) MOTION TO REDACT AND SEAL:** The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this Transcript to comply with Fed.R.Civ.P.5.2(a) (personal identifiers). Parties seeking to redact and seal this Transcript, or portions thereof, pursuant to L.Civ.R. 5.3(g) must e-file a Motion to Redact and Seal utilizing the event `Redact and Seal Transcript/Digital Recording`. Redaction Request to Transcription Agency due, but not filed, by 5/25/2022. Redacted Transcript Deadline set for 6/6/2022. Release of Transcript Restriction set for 8/2/2022. (krg) (Entered: 05/09/2022) |
| 05/27/2022 | 143 | Letter from Liza M. Walsh to the Hon. Julien Xavier Neals, U.S.D.J. encl. Stipulation and Proposed Order. (Attachments: # 1 Stipulation and Proposed Order)(WALSH, LIZA) (Entered: 05/27/2022) |
| 05/31/2022 | 144 | STIPULATION AND ORDER REGARDING JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 10,695,512. Signed by Judge Julien Xavier Neals on 5/31/2022. (sm) (Entered: 05/31/2022) |
| 05/31/2022 | 145 | Letter from Liza M. Walsh to the Hon. Michael A. Hammer, U.S.M.J. re: discovery deadlines. (WALSH, LIZA) (Entered: 05/31/2022) |
| 05/31/2022 | 146 | Letter from Liza M. Walsh to Hon. Michael A Hammer, U.S.M.J. re 140 Order,. (WALSH, LIZA) (Entered: 05/31/2022) |
| 06/01/2022 | 147 | LETTER ORDER that responsive expert reports are due 6/14/2022; reply expert reports by 7/12/2022; close of expert discovery is 8/2/2022. Signed by Magistrate Judge Michael A. Hammer on 6/1/2022. (sm) (Entered: 06/01/2022) |
| 06/03/2022 | 148 | Letter from Liza M. Walsh to the Hon. Julien Xavier Neals, U.S.D.J. encl. Stipulation and Proposed Order. (Attachments: # 1 Stipulation and Proposed Order)(WALSH, LIZA) (Entered: 06/03/2022) |
| 06/06/2022 | 149 | Transcript of Status Conference held on April 11, 2022, before Magistrate Judge Michael A. Hammer. Transcriber: King Transcription Services (973-237-6080). **NOTICE REGARDING (1) REDACTION OF PERSONAL IDENTIFIERS IN TRANSCRIPTS AND (2) MOTION TO REDACT AND SEAL:** The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this Transcript to comply with Fed.R.Civ.P.5.2(a) (personal identifiers). Parties seeking to redact and seal this Transcript, or portions thereof, pursuant to L.Civ.R. 5.3(g) must e-file a Motion to Redact and Seal utilizing the event `Redact and Seal Transcript/Digital Recording`. Redaction Request to Transcription Agency due, but not filed, by 6/27/2022. Redacted Transcript Deadline set for 7/7/2022. Release of Transcript Restriction set for 9/6/2022. (krg) (Entered: 06/07/2022) |
| 06/06/2022 | 150 | STIPULATION AND ORDER REGARDING JUDGMENT OF NQN-INFRINGEMENT OF U.S. PATENT NO. 10,695,512. Signed by Judge Julien Xavier Neals on 6/6/2022. (sm) (Entered: 06/07/2022) |
| 07/21/2022 | 151 | Letter from Liza M. Walsh to Hon. Julien X. Neals, U.S.D.J.. (WALSH, LIZA) (Entered: 07/21/2022) |

| 07/27/2022 | 152 | LETTER ORDER granting the parties' request that any proposed Findings of Fact and Conclusions of Law are due the same day. Signed by Judge Julien Xavier Neals on 7/27/2022. (sm) (Entered: 07/27/2022) |
|---|---|---|
| 08/10/2022 | 153 | Letter from Liza M. Walsh to the Hon. Michael A. Hammer, U.S.M.J. re: Pro Hac Vice Application on Consent. (Attachments: # 1 Certification of Benjamin M. Greenblum, # 2 Certification of Liza M. Walsh, # 3 Text of Proposed Order)(WALSH, LIZA) (Entered: 08/10/2022) |
| 08/11/2022 | 154 | ORDER GRANTING PRO HAC VICE ADMISSION of Benjamin M. Greenblum. Signed by Magistrate Judge Michael A. Hammer on 8/11/2022. (sm) (Entered: 08/11/2022) |
| 08/22/2022 | | Pro Hac Vice fee: $150.00, receipt number NEW047051 for Benjamin M. Greenblum. (ps) (Entered: 08/22/2022) |
| 08/22/2022 | 155 | Notice of Request by Pro Hac Vice Benjamin M. Greenblum to receive Notices of Electronic Filings. (WALSH, LIZA) (Entered: 08/22/2022) |
| 08/24/2022 | | Pro Hac Vice counsel, BENJAMIN M. GREENBLUM, has been added to receive Notices of Electronic Filing. Pursuant to L.Civ.R. 101.1, only local counsel are entitled to sign and file papers, enter appearances and receive payments on judgments, decrees or orders. (lag, ) (Entered: 08/24/2022) |
| 08/25/2022 | 156 | TEXT ORDER: The parties shall file a proposed Final Pretrial Order by 9/1/2022. The Court requests that the parties send a copy of the Final Pretrial Order via mail or overnight delivery by 9/1/2022. So Ordered by Magistrate Judge Michael A. Hammer on 8/25/2022. (jqb, ) (Entered: 08/25/2022) |
| 09/01/2022 | 157 | Proposed Order *PROPOSED JOINT PRETRIAL ORDER (CONFIDENTIAL - FILED UNDER SEAL)* by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Opening Expert Report of Dr. David Lewis, Ph.D. as to Aurobindo Defendants, dated April 29, 2022, # 9 Opening Expert Report of Dr. David Lewis, Ph.D. as to Defendant Cipla Ltd., dated April 29, 2022, # 10 Opening Expert Report of Dr. Reynold A. Panettieri, Jr., M.D., dated April 29, 2022, # 11 Report of Dr. David Lewis, Ph.D., dated June 14, 2022, # 12 Reply Report of Dr. David Lewis, Ph.D. as to Defendant Aurobindo Ltd., dated July 12, 2022, # 13 Reply Report of Dr. David Lewis, Ph.D. as to Defendant Cipla Ltd., dated July 12, 2022, # 14 Reply Expert Report of Dr. Reynold A. Panettieri, Jr., M.D., dated July 12, 2022, # 15 Expert Report of Gregor Anderson, dated April 29, 2022, # 16 Supplemental Invalidity Expert Report of Gregor Anderson, dated May 24, 2022, # 17 Rebuttal Expert Report of Gregor Anderson on Noninfringement (Aurobindo), dated June 14, 2022, # 18 Rebuttal Expert Report of Gregor Anderson on Noninfringement (Cipla), dated June 14, 2022, # 19 Rebuttal Expert Report of Gregor Anderson on Secondary Considerations, dated June 14, 2022, # 20 Reply Expert Report of Gregor Anderson on Invalidity, dated July 12, 2022, # 21 Cover Letter)(WALSH, LIZA)<hr> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 09/01/2022) |

| 09/01/2022 | 158 | Letter from defendants requesting Final Pretrial Conference be converted to phone or video. (MILLER, GREGORY) (Entered: 09/01/2022) |
|---|---|---|
| 09/06/2022 | 159 | TEXT ORDER: Tomorrow's Final Pretrial Conference will proceed in-person in the Courtroom of the Undersigned. So Ordered by Magistrate Judge Michael A. Hammer on 9/6/22. (tad) (Entered: 09/06/2022) |
| 09/06/2022 | 160 | TEXT ORDER: The Court requests that the parties hand deliver a copy of the Proposed Final Pretrial Order by the close of business today. So Ordered by Magistrate Judge Michael A. Hammer on 9/6/22. (tad) (Entered: 09/06/2022) |
| 09/06/2022 | 161 | TEXT ORDER: The parties can disregard Text Order 160. So Ordered by Magistrate Judge Michael A. Hammer on 9/6/22. (tad) (Entered: 09/06/2022) |
| 09/07/2022 |  | Minute Entry for proceedings held before Magistrate Judge Michael A. Hammer: Final Pretrial Conference held on 9/7/2022. (ECR) (jqb, ) (Entered: 09/07/2022) |
| 09/07/2022 | 162 | TEXT ORDER: As discussed at the Final Pretrial Conference, counsel will make the revisions to the draft Final Pretrial Order that were noted at the conference and submit a revised Final Pretrial Order by September 30, 2022. Any in limine motion shall be filed by September 12 2022. Any opposition shall be filed by September 23, 20222. Any reply shall be filed by September 28, 2022. So Ordered by Magistrate Judge Michael A. Hammer on 9/7/2022. (Hammer, Michael) (Entered: 09/07/2022) |
| 09/12/2022 | 163 | MOTION in Limine *Text of Proposed Order* by CIPLA LTD.. (MILLER, GREGORY) (Entered: 09/12/2022) |
| 09/12/2022 | 164 | BRIEF in Support filed by CIPLA LTD. re 163 MOTION in Limine *Text of Proposed Order TO PRECLUDE EVIDENCE AND EXPERT TESTIMONY THAT CLAIMS 13-22 OF U.S. PATENT NO. 9,808,587 ARE INFRINGED* (Attachments: # 1 Declaration of Brandon G. Smith, # 2 Exhibit 1 to the Declaration of Brandon G. Smith, # 3 Exhibit 2 to the Declaration of Brandon G. Smith, # 4 Exhibit 3 to the Declaration of Brandon G. Smith, # 5 Exhibit 4 to the Declaration of Brandon G. Smith, # 6 Exhibit 5 to the Declaration of Brandon G. Smith, # 7 Exhibit 6 to the Declaration of Brandon G. Smith)(MILLER, GREGORY) <br><br> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 09/12/2022) |
| 09/12/2022 | 165 | MOTION in Limine *Plaintiffs Notice of Motion In Limine No. 2 to Preclude Argument or Evidence Regarding Obviousness Theories Based on Undisclosed Prior Art Combinations* by All Plaintiffs. (Attachments: # 1 Text of Proposed Order)(WALSH, LIZA) (Entered: 09/12/2022) |
| 09/12/2022 | 166 | BRIEF in Support filed by All Plaintiffs re 165 MOTION in Limine *Plaintiffs Notice of Motion In Limine No. 2 to Preclude Argument or Evidence Regarding Obviousness Theories Based on Undisclosed Prior Art Combinations* (Attachments: # 1 Declaration of Liza M. Walsh with Exhibits A-D)(WALSH, LIZA) <br><br> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: |

Appx70

| | | 09/12/2022) |
|---|---|---|
| 09/12/2022 | 167 | MOTION in Limine *Plaintiffs Notice of Motion In Limine No. 1 to Preclude Argument or Expert Opinion that the 406 Publication Discloses or Otherwise Encompasses the Inhaler Bodies Used in Defendants ANDA Products* by All Plaintiffs. (Attachments: # 1 Text of Proposed Order)(WALSH, LIZA) (Entered: 09/12/2022) |
| 09/12/2022 | 168 | BRIEF in Support filed by All Plaintiffs re 167 MOTION in Limine *Plaintiffs Notice of Motion In Limine No. 1 to Preclude Argument or Expert Opinion that the 406 Publication Discloses or Otherwise Encompasses the Inhaler Bodies Used in Defendants ANDA Products* (Attachments: # 1 Declaration of Liza M. Walsh with Exhibits A-H)(WALSH, LIZA) <br><br> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 09/12/2022) |
| 09/13/2022 | 170 | Transcript of Final Pretrial Conference held on September 7, 2022, before Magistrate Judge Michael A. Hammer. Transcriber: King Transcription Services (973-237-6080). **NOTICE REGARDING (1) REDACTION OF PERSONAL IDENTIFIERS IN TRANSCRIPTS AND (2) MOTION TO REDACT AND SEAL:** The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this Transcript to comply with Fed.R.Civ.P.5.2(a) (personal identifiers). Parties seeking to redact and seal this Transcript, or portions thereof, pursuant to L.Civ.R. 5.3(g) must e-file a Motion to Redact and Seal utilizing the event `Redact and Seal Transcript/Digital Recording`. Redaction Request to Transcription Agency due, but not filed, by 10/4/2022. Redacted Transcript Deadline set for 10/14/2022. Release of Transcript Restriction set for 12/12/2022. (adc) (Entered: 09/14/2022) |
| 09/14/2022 | 169 | Letter from Liza M. Walsh to the Hon. Michael A. Hammer, U.S.M.J. requesting leave to file a joint omnibus motion to seal. (WALSH, LIZA) (Entered: 09/14/2022) |
| 09/14/2022 | | Set Deadlines as to 167 MOTION in Limine *Plaintiffs Notice of Motion In Limine No. 1 to Preclude Argument or Expert Opinion that the 406 Publication Discloses or Otherwise Encompasses the Inhaler Bodies Used in Defendants ANDA Products*. Motion set for 10/17/2022 before Judge Julien Xavier Neals. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (lag, ) (Entered: 09/14/2022) |
| 09/14/2022 | | Set Deadlines as to 163 MOTION in Limine *Text of Proposed Order*, 167 MOTION in Limine *Plaintiffs Notice of Motion In Limine No. 1 to Preclude Argument or Expert Opinion that the 406 Publication Discloses or Otherwise Encompasses the Inhaler Bodies Used in Defendants ANDA Products*, 165 MOTION in Limine *Plaintiffs Notice of Motion In Limine No. 2 to Preclude Argument or Evidence Regarding Obviousness Theories Based on Undisclosed Prior Art Combinations*. Motion set for 10/17/2022 before Judge Julien Xavier Neals. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (lag, ) (Entered: 09/14/2022) |

| 09/19/2022 | 171 | LETTER ORDER that the parties joint omnibus sealing motion, together with the redacted versions of all submissions subject to the sealing motion, be due 45 days after post-trial briefing is complete. Signed by Magistrate Judge Michael A. Hammer on 9/19/2022. (sm) (Entered: 09/19/2022) |
|---|---|---|
| 09/19/2022 | 172 | Letter from Liza M. Walsh to the Hon. Julien Xavier Neals, U.S.D.J. encl. Stipulation and Proposed Order. (Attachments: # 1 Stipulation and Proposed Order)(WALSH, LIZA) (Entered: 09/19/2022) |
| 09/21/2022 | 173 | STIPULATION AND ORDER entering judgment of non-infringement as to Counts V and XII of Teva's Complaint in Civil Action No. 20-14833. Aurobindo accordingly stipulates the dismissal of Count V of its Answer, Affirmative Defenses, and Counterclaims in Civil Action No. 20-14833, for a declaratory judgment that the '156 Patent is not infringed and is invalid. Signed by Judge Julien Xavier Neals on 9/20/2022. (dam) (Entered: 09/21/2022) |
| 09/23/2022 | 174 | MEMORANDUM in Opposition filed by AUROBINDO PHARMA LTD., AUROBINDO PHARMA USA, INC., AUROLIFE PHARMA LLC, CIPLA LTD. re 167 MOTION in Limine *Plaintiffs Notice of Motion In Limine No. 1 to Preclude Argument or Expert Opinion that the 406 Publication Discloses or Otherwise Encompasses the Inhaler Bodies Used in Defendants ANDA Products* (Attachments: # 1 Declaration of Brandon G. Smith, # 2 Exhibit 1 to the Declaration of Brandon G. Smith, # 3 Certificate of Service)(MILLER, GREGORY) (Entered: 09/23/2022) |
| 09/23/2022 | 175 | MEMORANDUM in Opposition filed by AUROBINDO PHARMA LTD., AUROBINDO PHARMA USA, INC., AUROLIFE PHARMA LLC, CIPLA LTD. re 165 MOTION in Limine *Plaintiffs Notice of Motion In Limine No. 2 to Preclude Argument or Evidence Regarding Obviousness Theories Based on Undisclosed Prior Art Combinations* (Attachments: # 1 Declaration of Brandon G. Smith, # 2 Exhibit 1 to the Declaration of Brandon G. Smith, # 3 Exhibit 2 to the Declaration of Brandon G. Smith, # 4 Exhibit 3 to the Declaration of Brandon G. Smith, # 5 Certificate of Service)(MILLER, GREGORY) (Entered: 09/23/2022) |
| 09/23/2022 | 176 | BRIEF in Opposition filed by All Plaintiffs re 163 MOTION in Limine *Text of Proposed Order* (Attachments: # 1 Declaration of Liza M. Walsh, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F)(WALSH, LIZA)<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 09/23/2022) |
| 09/28/2022 | 177 | REPLY to Response to Motion filed by All Defendants re 163 MOTION in Limine *Text of Proposed Order* (MILLER, GREGORY)<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 09/28/2022) |
| 09/28/2022 | 178 | REPLY BRIEF to Opposition to Motion filed by All Plaintiffs re 167 MOTION in Limine *Plaintiffs Notice of Motion In Limine No. 1 to Preclude Argument or Expert Opinion that the 406 Publication Discloses or Otherwise Encompasses the Inhaler* |

| | | |
|---|---|---|
| | | *Bodies Used in Defendants ANDA Products* (WALSH, LIZA)<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 09/28/2022) |
| 09/28/2022 | 179 | REPLY BRIEF to Opposition to Motion filed by All Plaintiffs re 165 MOTION in Limine *Plaintiffs Notice of Motion In Limine No. 2 to Preclude Argument or Evidence Regarding Obviousness Theories Based on Undisclosed Prior Art Combinations* (WALSH, LIZA)<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 09/28/2022) |
| 09/30/2022 | 180 | Letter from Liza M. Walsh on Behalf of All Parties. (WALSH, LIZA) (Entered: 09/30/2022) |
| 10/03/2022 | 181 | LETTER ORDER granting 180 Plaintiffs' and Counter-Defendants' Request for an extension of the deadline for the parties to submit a revised Final Pretrial Order from 9/30/2022 through and including 10/7/2022. Signed by Magistrate Judge Michael A. Hammer on 10/3/2022. (dam) (Entered: 10/03/2022) |
| 10/07/2022 | 182 | Letter from Liza M. Walsh to the Hon. Michael A. Hammer, U.S.M.J. requesting an extension of the deadline for the parties to submit a revised final pretrial order. (WALSH, LIZA) (Entered: 10/07/2022) |
| 10/11/2022 | 183 | STIPULATION AND ORDER OF DISMISSAL REGARDING US. PATENT NOS. 10,022,509 AND 10,022,510 that Counts III and IV of its Answer 12 for a declaratory judgment that the '509 and '510 patents are not infringed and are invalid. Signed by Judge Julien Xavier Neals on 10/11/2022. (sm) (Entered: 10/12/2022) |
| 10/14/2022 | 184 | Letter from Liza M. Walsh to Hon. Michael A Hammer, U.S.M.J. requesting an extension of the deadline for the parties to submit a revised final pretrial order.. (WALSH, LIZA) (Entered: 10/14/2022) |
| 10/17/2022 | 185 | LETTER ORDER granting 184 Plaintiffs' and Counter Defendants' Letter requesting an extension of time until 10/20/2022 to submit a revised Final Pretrial Order. Signed by Magistrate Judge Michael A. Hammer on 10/17/2022. (dam) (Entered: 10/17/2022) |
| 10/19/2022 | 186 | Letter from Christopher Casieri requesting an extension of the page limit for the pre-trial brief. (CASIERI, CHRISTOPHER) (Entered: 10/19/2022) |
| 10/20/2022 | 187 | LETTER ORDER granting 186 Defendants' Request for an extension of the page limit for the pre-trial brief due 10/31/2022 from 40 pages to 60 pages. Signed by Judge Julien Xavier Neals on 10/20/2022. (dam) (Entered: 10/20/2022) |
| 10/20/2022 | 188 | Letter from Liza M. Walsh to Hon. Julien X. Neals, U.S.D.J. and Hon. Michael A. Hammer re 185 Order. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(WALSH, LIZA)<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials |

| | | |
|---|---|---|
| | | <span style="color:blue">sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court.</span> (Entered: 10/20/2022) |
| 10/21/2022 | 189 | TEXT ORDER: There will be a telephone conference with the Undersigned on October 27, 2022 at 10:00 a.m. to address the parties' joint letter, D.E. 188. Counsel shall dial 1-888-684-8852 and enter access code 1456817# to join the call. So Ordered by Magistrate Judge Michael A. Hammer on 10/21/22. (tad) (Entered: 10/21/2022) |
| 10/24/2022 | 190 | APPLICATION/PETITION for the Pro Hac Vice Admission of Jonathan E. Bachand for by CIPLA LTD.. (Attachments: # 1 Declaration of Gregory D. Miller, # 2 Declaration of Jonathan E. Bachand, # 3 Text of Proposed Order, # 4 Certificate of Service)(MILLER, GREGORY) (Entered: 10/24/2022) |
| 10/25/2022 | 191 | ORDER granting 190 Application for the Pro Hac Vice Admission of JONATHAN E. BACHAND. Signed by Magistrate Judge Michael A. Hammer on 10/25/2022. (dam) (Entered: 10/25/2022) |
| 10/27/2022 | 192 | TEXT ORDER: Today's telephone conference is rescheduled to October 31, 2022 at 3:00 p.m. Counsel shall dial 1-888-684-8852 and enter access code 1456817# to join the call. So Ordered by Magistrate Judge Michael A. Hammer on 10/27/22. (tad) (Entered: 10/27/2022) |
| 10/31/2022 | 193 | TRIAL BRIEF by CIPLA LTD.. (MILLER, GREGORY) (Entered: 10/31/2022) |
| 10/31/2022 | 194 | Proposed Findings of Fact by CIPLA LTD.. (Attachments: # 1 Appendix A, # 2 Appendix B, # 3 Appendix C, # 4 Appendix D)(MILLER, GREGORY) (Entered: 10/31/2022) |
| 10/31/2022 | 195 | MOTION to Dismiss *as to Defendant Cipla Ltd.* by All Plaintiffs. (Attachments: # 1 Text of Proposed Order)(WALSH, LIZA) (Entered: 10/31/2022) |
| 10/31/2022 | 196 | BRIEF in Support filed by All Plaintiffs re 195 MOTION to Dismiss *as to Defendant Cipla Ltd.* (WALSH, LIZA)<br><br><span style="color:blue">NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court.</span> (Entered: 10/31/2022) |
| 10/31/2022 | 197 | Letter from Liza M. Walsh on Behalf of Plaintiffs Requesting Expedited Briefing re 195 MOTION to Dismiss *as to Defendant Cipla Ltd.*. (WALSH, LIZA)<br><br><span style="color:blue">NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court.</span> (Entered: 10/31/2022) |
| 10/31/2022 | 198 | Proposed Findings of Fact by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (Attachments: # 1 Teva's Pretrial Conclusions of Law)(WALSH, LIZA) (Entered: 10/31/2022) |
| 10/31/2022 | 199 | TRIAL BRIEF by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (Attachments: # 1 Appendix A, # 2 Declaration of Liza M. Walsh with Exhibit A)(WALSH, LIZA) (Entered: 11/01/2022) |

Appx74

| 10/31/2022 | | Minute Entry for proceedings held before Magistrate Judge Michael A. Hammer: Status Conference held on 10/31/2022. (ECR) (jqb, ) (Entered: 11/01/2022) |
|---|---|---|
| 11/01/2022 | | Set Deadlines as to <u>195</u> MOTION to Dismiss *as to Defendant Cipla Ltd.*. Motion set for 12/5/2022 before Judge Julien Xavier Neals. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (lag, ) (Entered: 11/01/2022) |
| 11/01/2022 | <u>200</u> | Letter from Cipla Ltd. to Hon. Julien Xavier Neals, U.S.D.J. re Opposition to Plaintiffs request for expedited briefing re <u>197</u> Letter,,. (MILLER, GREGORY) (Entered: 11/01/2022) |
| 11/01/2022 | | Pro Hac Vice fee for Jonathan E. Bachand: $ 150, receipt number NEW047347 (jr) (Entered: 11/01/2022) |
| 11/02/2022 | <u>201</u> | Letter from Liza M. Walsh to the Hon. Julien Xavier Neals, U.S.D.J. re <u>200</u> Letter. (WALSH, LIZA) (Entered: 11/02/2022) |
| 11/02/2022 | 202 | TEXT ORDER - The Court is in receipt of Plaintiffs Motion to Dismiss U.S. Patent No. 10,086,156 for lack of subject-matter jurisdiction. See ECF Nos. 195-196. In connection with their motion, Plaintiffs filed a letter requesting expedited briefing [ECF No. 197], to which Cipla opposed [ECF No. 200], and Plaintiffs replied [ECF No. 201]. Having considered the parties submissions, the Court directs Cipla to file its response to the motion to dismiss by no later than November 8, 2022, and further directs Plaintiffs to file their reply by no later than November 9, 2022. The Court will render a decision on the motion and the parties Markman disputes prior to the start of trial. The in-person pretrial hearing currently scheduled for November 7, 2022 is rescheduled to November 10, 2022 at 10:30 AM in Newark - Courtroom 5D before Judge Julien Xavier Neals.So Ordered by Judge Julien Xavier Neals on 11/2/2022. (kd) (Entered: 11/02/2022) |
| 11/03/2022 | <u>203</u> | Letter from Liza M. Walsh to the Hon. Julien Xavier Neals, U.S.D.J.. (WALSH, LIZA) (Entered: 11/03/2022) |
| 11/03/2022 | <u>204</u> | Letter from Cipla Ltd. to Hon. Michael A. Hammer, U.S.M.J. re <u>197</u> Letter,, <u>195</u> MOTION to Dismiss *as to Defendant Cipla Ltd.*, <u>188</u> Letter,,. (MILLER, GREGORY) (Entered: 11/03/2022) |
| 11/03/2022 | <u>207</u> | Transcript of Status Conference held on October 31, 2022, before Magistrate Judge Michael A. Hammer. Transcriber: King Transcription Services (973-237-6080). **NOTICE REGARDING (1) REDACTION OF PERSONAL IDENTIFIERS IN TRANSCRIPTS AND (2) MOTION TO REDACT AND SEAL:** The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this Transcript to comply with Fed.R.Civ.P.5.2(a) (personal identifiers). Parties seeking to redact and seal this Transcript, or portions thereof, pursuant to L.Civ.R. 5.3(g) must e-file a Motion to Redact and Seal utilizing the event `Redact and Seal Transcript/Digital Recording`. Redaction Request to Transcription Agency due, but not filed, by 11/28/2022. Redacted Transcript Deadline set for 12/5/2022. Release of Transcript Restriction set for 2/1/2023. (adc) (Entered: 11/08/2022) |
| 11/04/2022 | <u>205</u> | LETTER ORDER granting <u>204</u> Defendant's Request for an extension of the deadline to file a Motion to Seal the Joint Letter and Exhibits filed by the parties on 10/20/2022 |

| | | |
|---|---|---|
| | | and permission to file an omnibus motion to seal. Signed by Magistrate Judge Michael A. Hammer on 11/4/2022. (dam) (Entered: 11/04/2022) |
| 11/04/2022 | 206 | Proposed Order *PROPOSED JOINT PRETRIAL ORDER (CONFIDENTIAL - FILED UNDER SEAL)* by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Cover Letter)(WALSH, LIZA) <br><br> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 11/04/2022) |
| 11/08/2022 | 208 | Letter from Liza M. Walsh to the Hon. Julien Xavier Neals, U.S.D.J. re: trial equipment set up. (WALSH, LIZA) (Entered: 11/08/2022) |
| 11/08/2022 | 209 | BRIEF in Opposition filed by CIPLA LTD. re 195 MOTION to Dismiss *as to Defendant Cipla Ltd.* (Attachments: # 1 Declaration of Ashley C. Morales, # 2 Exhibit 1 to the Declaration of Ashley C. Morales, # 3 Exhibit 2 to the Declaration of Ashley C. Morales, # 4 Exhibit 3 to the Declaration of Ashley C. Morales, # 5 Certificate of Service)(MILLER, GREGORY) <br><br> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 11/08/2022) |
| 11/08/2022 | 210 | SEALED FINAL PRETRIAL ORDER. Signed by Magistrate Judge Michael A. Hammer on 11/6/2022. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(dam) (Entered: 11/09/2022) |
| 11/09/2022 | 211 | REPLY BRIEF to Opposition to Motion filed by All Plaintiffs re 195 MOTION to Dismiss *as to Defendant Cipla Ltd.* (WALSH, LIZA) <br><br> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 11/09/2022) |
| 11/09/2022 | 212 | LETTER ORDER granting 208 Joint Request for an Order permitting the parties and their service providers access to the Courthouse and the Undersigned's Courtroom beginning 11/10/2022 for the purpose of delivering, and setting up, electronic equipment and other materials to be used during the trial. Signed by Judge Julien Xavier Neals on 11/9/2022. (dam) (Entered: 11/09/2022) |
| 11/10/2022 | 213 | Letter from Liza M. Walsh to the Hon. Julien Xavier Neals, U.S.D.J. encl. Stipulation and Proposed Order (Confidential - Filed Under Seal). (Attachments: # 1 Stipulation and Proposed Order (Confidential - Filed Under Seal))(WALSH, LIZA) <br><br> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: |

Appx76

| | | 11/10/2022) |
|---|---|---|
| 11/10/2022 | 214 | SEALED STIPULATION AND ORDER. Signed by Judge Julien Xavier Neals on 11/10/2022. (dam) (Entered: 11/10/2022) |
| 11/10/2022 | 221 | Minute Entry for proceedings held before Judge Julien Xavier Neals: Motion Hearing held on 11/10/2022 re 195 MOTION to Dismiss *as to Defendant Cipla Ltd.* filed by TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC., NORTON (WATERFORD) LTD., and a Housekeeping Conference held on 11/10/2022. (Court Reporter, Melissa Mormile (973-776-7710)) (kd) (Entered: 11/14/2022) |
| 11/10/2022 | 226 | Transcript of Final Pretrial Conference held on November 10, 2022, before Judge Julien Xavier Neals. Court Reporter: Melissa Mormile (973-776-7710). **NOTICE REGARDING (1) REDACTION OF PERSONAL IDENTIFIERS IN TRANSCRIPTS AND (2) MOTION TO REDACT AND SEAL:** The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this Transcript to comply with Fed.R.Civ.P.5.2(a) (personal identifiers). Parties seeking to redact and seal this Transcript, or portions thereof, pursuant to L.Civ.R. 5.3(g) must e-file a Motion to Redact and Seal utilizing the event `Redact and Seal Transcript/Digital Recording`. Redaction Request to Court Reporter due, but not filed, by 12/1/2022. Redacted Transcript Deadline set for 12/12/2022. Release of Transcript Restriction set for 2/8/2023. (adc) (Entered: 11/15/2022) |
| 11/11/2022 | 215 | OPINION. Signed by Judge Julien Xavier Neals on 11/11/2022. (aw) (Entered: 11/11/2022) |
| 11/11/2022 | 216 | ORDER that Tevas motion to dismiss [ECF No. 195] is GRANTED, and Counts V and XI of the Complaint (ECF No. 1) and Counts V and XI of Ciplas Answer, Defenses, and Counterclaims (ECF No. 7) are hereby DISMISSED. Signed by Judge Julien Xavier Neals on 11/11/2022. (aw) (Entered: 11/11/2022) |
| 11/11/2022 | 217 | MARKMAN OPINION. Signed by Judge Julien Xavier Neals on 11/11/2022. (aw) (Entered: 11/11/2022) |
| 11/11/2022 | 218 | MARKMAN ORDER. Signed by Judge Julien Xavier Neals on 11/11/2022. (aw) (Entered: 11/11/2022) |
| 11/11/2022 | 219 | TEXT ORDER - Due to unforeseen circumstances, the trial currently scheduled to commence on Tuesday, November 15, 2022 is ADJOURNED to Wednesday, November 16, 2022 at 9:30 AM. The Court has reserved additional days for trial. So Ordered by Judge Julien Xavier Neals on 11/11/2022. (aw) (Entered: 11/11/2022) |
| 11/14/2022 | 220 | Letter from Liza M. Walsh on Behalf of All Parties Regarding Trial. (WALSH, LIZA) (Entered: 11/14/2022) |
| 11/14/2022 | 222 | TEXT ORDER - The Court has received and reviewed the parties November 14, 2022 letter, ECF No. 220 requesting that the Court extend the end of the Court day on each of November 16 and November 17 from 5pm until 7pm. The parties request is granted. So Ordered by Judge Julien Xavier Neals on 11/14/2022. (kd) (Entered: 11/14/2022) |
| 11/15/2022 | 223 | Letter from Liza M. Walsh to the Hon. Julien Xavier Neals, U.S.D.J.. (WALSH, LIZA) (Entered: 11/15/2022) |
| 11/15/2022 | 224 | TEXT ORDER - In anticipation of the trial scheduled to commence in this matter on November 16, 2022, by no later than 5:00 pm today, the parties shall file a letter advising the Court on how they plan to present their case, including the parties |

| | | |
|---|---|---|
| | | proposed allocation of time.So Ordered by Judge Julien Xavier Neals on 11/15/2022. (kd) (Entered: 11/15/2022) |
| 11/15/2022 | 225 | Letter from Liza M. Walsh to the Hon. Julien Xavier Neals, U.S.D.J. re 224 Order,. (WALSH, LIZA) (Entered: 11/15/2022) |
| 11/16/2022 | 227 | Minute Entry for proceedings held before Judge Julien Xavier Neals: Bench Trial held on 11/16/2022. (Court Reporter, Melissa Mormile (973-776-7710)) (kd) (Entered: 11/16/2022) |
| 11/17/2022 | 228 | Letter from Cipla Ltd. to the Hon. Julien Xavier Neals, U.S.D.J. re Precluding Aurobindo Evidence. (Attachments: # 1 Exhibit, # 2 Exhibit)(MILLER, GREGORY)<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 11/17/2022) |
| 11/17/2022 | 229 | STATEMENT *PLAINTIFFS' SUBMISSION REGARDING THE ADMISSION OF DEPOSITION TESTIMONY OF JAY HOLT AND DEBORAH CARR AND ADDITIONAL VIDEO EXPERIMENTS PERFORMED BY DR. DAVID LEWIS (CONFIDENTIAL - FILED UNDER SEAL)* by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (WALSH, LIZA)<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 11/17/2022) |
| 11/17/2022 | 230 | TEXT ORDER - The motions in limine at ECF Nos. 163 , 165 , and 167 are hereby administratively terminated. The Court will address the parties disputes and objections during trial. Signed by Judge Julien Xavier Neals on 11/17/2022. (kd) (Entered: 11/17/2022) |
| 11/17/2022 | 231 | Minute Entry for proceedings held before Judge Julien Xavier Neals: Bench Trial held on 11/17/2022. (Court Reporter, Melissa Mormile (973-776-7710)) (kd) (Entered: 11/17/2022) |
| 11/18/2022 | 232 | Letter from Liza M. Walsh to Hon. Julien X. Neals, U.S.D.J.. (WALSH, LIZA) (Entered: 11/18/2022) |
| 11/18/2022 | 233 | Minute Entry for proceedings held before Judge Julien Xavier Neals: Bench Trial completed on 11/18/2022. (Court Reporter, Melissa Mormile (973-776-7710)) (kd) (Main Document 233 replaced on 12/12/2022) (kd). (Entered: 11/18/2022) |
| 11/18/2022 | 234 | Letter from Liza M. Walsh to the Hon. Julien Xavier Neals, U.S.D.J. (Attachments: # 1 Plaintiffs' Submission of Aurobindo Deposition Testimony, Associated Exhibits, and Test Videos Part 1, # 2 Plaintiffs' Submission of Aurobindo Deposition Testimony, Associated Exhibits, and Test Videos Part 2, # 3 Plaintiffs' Submission of Aurobindo Deposition Testimony, Associated Exhibits, and Test Videos Part 3, # 4 Plaintiffs' Submission of Aurobindo Deposition Testimony, Associated Exhibits, and Test Videos Part 4, # 5 Plaintiffs' Submission of Aurobindo Deposition Testimony, Associated Exhibits, and Test Videos Part 5, # 6 Plaintiffs' Submission of Aurobindo Deposition Testimony, Associated Exhibits, and Test Videos Part 6, # 7 Plaintiffs' Submission of |

Appx78

| | | |
|---|---|---|
| | | Aurobindo Deposition Testimony, Associated Exhibits, and Test Videos Part 7, # 8 Plaintiffs' Submission of Aurobindo Deposition Testimony, Associated Exhibits, and Test Videos Part 8, # 9 Plaintiffs' Submission of Aurobindo Deposition Testimony, Associated Exhibits, and Test Videos Part 9, # 10 Plaintiffs' Submission of Aurobindo Deposition Testimony, Associated Exhibits, and Test Videos Part 10)(WALSH, LIZA) <hr> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 11/18/2022) |
| 11/18/2022 | 235 | Letter from Liza M. Walsh on Behalf of the Parties to the Hon. Julien Xavier Neals, U.S.D.J.. (Attachments: # 1 Parties' Joint Submission of Deposition and Written Testimony and Associated Exhibits)(WALSH, LIZA) <hr> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 11/18/2022) |
| 11/18/2022 | 240 | Trial Exhibit List (kd) (Entered: 12/13/2022) |
| 11/21/2022 | 236 | TEXT ORDER - The Court is in receipt of the parties November 17, 2022 letters outlining their respective position on the admission of deposition testimony and related documents of Dr. Jay Holt and Deborah Carr and additional video experiments performed by Dr. David Lewis. See ECF Nos. 228 , 229 . At this time, the Court will reserve its decision on the parties dispute pending supplemental briefing in the parties post-trial submissions. So Ordered by Judge Julien Xavier Neals on 11/21/2022. (kd) (Entered: 11/21/2022) |
| 12/08/2022 | 237 | CONSENT ORDER of Dismissal as to Defendants AUROBINDO PHARMA LLC, AUROBINDO PHARMA USA,INC., and AUROLIFE PHARMA LLC. Signed by Judge Julien Xavier Neals on 12/7/2022. (dam) (Entered: 12/08/2022) |
| 12/12/2022 | 238 | TEXT ORDER - By the close of business on December 12, 2022, the parties shall file a letter updating the Court on the status of the parties joint letter proposing deadlines for post-trial submissions.So Ordered by Judge Julien Xavier Neals on 12/12/2022. (kd) (Entered: 12/12/2022) |
| 12/12/2022 | 239 | Letter from Liza M. Walsh to Hon. Julien X. Neals, U.S.D.J. re 238 Order,. (WALSH, LIZA) <hr> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 12/12/2022) |
| 12/13/2022 | 241 | *REDACTED* Transcript of Bench Trial Vol 1 held on November 16, 2022, before Judge Julien Xavier Neals. Court Reporter: Melissa Mormile (973-776-7710). **NOTICE REGARDING (1) REDACTION OF PERSONAL IDENTIFIERS IN TRANSCRIPTS AND (2) MOTION TO REDACT AND SEAL:** The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this Transcript to comply with Fed.R.Civ.P.5.2(a) (personal identifiers). Parties |

| | | |
|---|---|---|
| | | seeking to redact and seal this Transcript, or portions thereof, pursuant to L.Civ.R. 5.3(g) must e-file a Motion to Redact and Seal utilizing the event `Redact and Seal Transcript/Digital Recording`. Redaction Request to Court Reporter due, but not filed, by 1/3/2023. Redacted Transcript Deadline set for 1/13/2023. Release of Transcript Restriction set for 3/13/2023. (adc) (Entered: 12/14/2022) |
| 12/13/2022 | 242 | **SEALED** Transcript of Bench Trial Vol 1 held on November 16, 2022, before Judge Julien Xavier Neals. Court Reporter: Melissa Mormile (973-776-7710). This is the complete unredacted/sealed version of the transcript and is unavailable for public viewing. (adc) (Entered: 12/14/2022) |
| 12/13/2022 | 243 | Transcript of Bench Trial Vol 2 held on November 17, 2022, before Judge Julien Xavier Neals. Court Reporter: Melissa Mormile (973-776-7710). **NOTICE REGARDING (1) REDACTION OF PERSONAL IDENTIFIERS IN TRANSCRIPTS AND (2) MOTION TO REDACT AND SEAL:** The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this Transcript to comply with Fed.R.Civ.P.5.2(a) (personal identifiers). Parties seeking to redact and seal this Transcript, or portions thereof, pursuant to L.Civ.R. 5.3(g) must e-file a Motion to Redact and Seal utilizing the event `Redact and Seal Transcript/Digital Recording`. Redaction Request to Court Reporter due, but not filed, by 1/3/2023. Redacted Transcript Deadline set for 1/13/2023. Release of Transcript Restriction set for 3/13/2023. (adc) (Entered: 12/14/2022) |
| 12/13/2022 | 244 | Transcript of Bench Trial Vol 3 held on November 18, 2022, before Judge Julien Xavier Neals. Court Reporter: Melissa Mormile (973-776-7710). **NOTICE REGARDING (1) REDACTION OF PERSONAL IDENTIFIERS IN TRANSCRIPTS AND (2) MOTION TO REDACT AND SEAL:** The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this Transcript to comply with Fed.R.Civ.P.5.2(a) (personal identifiers). Parties seeking to redact and seal this Transcript, or portions thereof, pursuant to L.Civ.R. 5.3(g) must e-file a Motion to Redact and Seal utilizing the event `Redact and Seal Transcript/Digital Recording`. Redaction Request to Court Reporter due, but not filed, by 1/3/2023. Redacted Transcript Deadline set for 1/13/2023. Release of Transcript Restriction set for 3/13/2023. (adc) (Entered: 12/14/2022) |
| 12/14/2022 | 245 | SEALED LETTER ORDER. Signed by Judge Julien Xavier Neals on 12/13/2022. (dam) (Entered: 12/14/2022) |
| 12/21/2022 | 246 | NOTICE of Intent to Request Redaction re 242 Transcript, by LIZA M. WALSH (WALSH, LIZA) (Entered: 12/21/2022) |
| 01/11/2023 | 247 | Letter from Liza M. Walsh to Hon. Julien X. Neals, U.S.D.J.. (WALSH, LIZA) (Entered: 01/11/2023) |
| 01/11/2023 | 248 | Exhibit to 247 Letter by All Plaintiffs. (WALSH, LIZA)<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 01/11/2023) |
| 01/17/2023 | 249 | TRIAL BRIEF *Post-Trial* by CIPLA LTD.. (MILLER, GREGORY) (Entered: 01/17/2023) |

| | | |
|---|---|---|
| 01/17/2023 | 250 | Proposed Findings of Fact by CIPLA LTD.. (MILLER, GREGORY) (Entered: 01/17/2023) |
| 01/17/2023 | 251 | TRIAL BRIEF by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(WALSH, LIZA) (Entered: 01/17/2023) |
| 01/17/2023 | 252 | Proposed Findings of Fact by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (WALSH, LIZA) (Entered: 01/17/2023) |
| 01/17/2023 | 253 | DECLARATION of Liza M. Walsh re 251 Trial Brief by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (Attachments: # 1 Exhibit H, # 2 Exhibit I, # 3 Exhibit J)(WALSH, LIZA) (Entered: 01/17/2023) |
| 01/17/2023 | 254 | Proposed Order *Proposed Conclusions of Law* by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC. re 252 Proposed Findings of Fact, 251 Trial Brief. (WALSH, LIZA) (Entered: 01/17/2023) |
| 01/25/2023 | 255 | NOTICE of Appearance by SELINA MIRIAM ELLIS on behalf of NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC. (ELLIS, SELINA) (Entered: 01/25/2023) |
| 01/25/2023 | 256 | TRIAL BRIEF by CIPLA LTD.. (MILLER, GREGORY) (Entered: 01/25/2023) |
| 01/25/2023 | 257 | Proposed Findings of Fact by CIPLA LTD.. (MILLER, GREGORY) (Entered: 01/25/2023) |
| 01/25/2023 | 258 | Letter from Cipla Ltd. to the Hon. Julien Xavier Neals, U.S.D.J. re 257 Proposed Findings of Fact, 256 Trial Brief. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(MILLER, GREGORY) (Entered: 01/25/2023) |
| 01/27/2023 | 259 | TEXT ORDER - At the parties request, the Court will conduct in-person post-briefing oral argument on March 28, 2023 at 10:30 AM in Newark - Courtroom 5D before Judge Julien Xavier Neals.So Ordered by Judge Julien Xavier Neals on 1/27/2023. (kd) (Entered: 01/27/2023) |
| 02/02/2023 | 260 | Letter from Liza M. Walsh to the Hon. Julien Xavier Neals, U.S.D.J.. (WALSH, LIZA) (Entered: 02/02/2023) |
| 02/03/2023 | 261 | LETTER ORDER granting 260 Plaintiffs' Request for an extension until 2/27/2023 for the submission of both sides' Responsive Briefs/Responsive Findings of Facts/Conclusions of Law. Signed by Judge Julien Xavier Neals on 2/3/2023. (dam) (Entered: 02/03/2023) |
| 02/07/2023 | 262 | TRIAL BRIEF *(Corrected D.E. 251) (Highly Confidential - Filed Under Seal)* by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (WALSH, LIZA) (Entered: 02/07/2023) |
| 02/07/2023 | 263 | Proposed Findings of Fact by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (WALSH, LIZA) (Entered: 02/07/2023) |

| 02/07/2023 | 264 | Letter from Liza M. Walsh to the Hon. Julien Xavier Neals, U.S.D.J. re 262 Trial Brief, 263 Proposed Findings of Fact. (Attachments: # 1 Exhibit A (Confidential - Filed Under Seal), # 2 Exhibit B (Confidential - Filed Under Seal))(WALSH, LIZA) <br><br> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 02/07/2023) |
| 02/27/2023 | 265 | RESPONSE re 262 Trial Brief. (MILLER, GREGORY) <br><br> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 02/27/2023) |
| 02/27/2023 | 266 | RESPONSE re 263 Proposed Findings of Fact. (MILLER, GREGORY) <br><br> NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 02/27/2023) |
| 02/27/2023 | 267 | TRIAL BRIEF *Post-Trial* by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (Attachments: # 1 Declaration of Liza M. Walsh, # 2 Exhibit A)(WALSH, LIZA) (Entered: 02/27/2023) |
| 02/27/2023 | 268 | Proposed Findings of Fact by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (WALSH, LIZA) (Entered: 02/27/2023) |
| 02/27/2023 | 269 | STATEMENT *Post-Trial Proposed Conclusions of Law Addressing Validity* by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (WALSH, LIZA) (Entered: 02/27/2023) |
| 03/09/2023 | 270 | TRIAL BRIEF *Corrected Post-Trial Brief D.E. 267* by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (WALSH, LIZA) (Entered: 03/09/2023) |
| 03/09/2023 | 271 | Proposed Findings of Fact by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (WALSH, LIZA) (Main Document 271 replaced on 3/10/2023) (dam, ). (Entered: 03/09/2023) |
| 03/09/2023 | 272 | Letter from Liza M. Walsh to the Hon. Julien Xavier Neals, U.S.D.J. re 271 Proposed Findings of Fact, 270 Trial Brief. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(WALSH, LIZA) (Entered: 03/09/2023) |
| 03/10/2023 | | Please be advised that at the direction of Plaintiff's Counsel, the 271 Proposed Posttrial Findings of Fact has been replaced with a Corrected version. This message is for informational purposes only. (dam) (Entered: 03/10/2023) |
| 03/28/2023 | 273 | Minute Entry for proceedings held before Judge Julien Xavier Neals: Closing Arguments held on 3/28/2023. (Court Reporter, Melissa Mormile (973-776-7710)) (kd) (Entered: 03/28/2023) |

Appx82

| 04/04/2023 | 274 | Transcript of Closing Arguments held on March 28, 2023, before Judge Julien Xavier Neals. Court Reporter: Melissa Mormile (973-776-7710). **NOTICE REGARDING (1) REDACTION OF PERSONAL IDENTIFIERS IN TRANSCRIPTS AND (2) MOTION TO REDACT AND SEAL:** The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this Transcript to comply with Fed.R.Civ.P.5.2(a) (personal identifiers). Parties seeking to redact and seal this Transcript, or portions thereof, must e-file a Motion to Redact and Seal utilizing the event `Redact and Seal Transcript/Digital Recording`. Redaction Request to Court Reporter due, but not filed, by 4/25/2023. Redacted Transcript Deadline set for 5/5/2023. Release of Transcript Restriction set for 7/3/2023. (adc) (Entered: 04/04/2023) |
|---|---|---|
| 04/11/2023 | 275 | Letter from Liza M. Walsh to the Hon. Michael A. Hammer, U.S.M.J. re 205 Order,. (WALSH, LIZA) (Entered: 04/11/2023) |
| 04/13/2023 | 276 | LETTER ORDER granting 275 Plaintiffs' and Counter-Defendants' request a sixty (60) day extension until 6/12/2023 for the parties to file a joint omnibus motion to seal the parties' pre and post-trial filings and corresponding extension of the deadline to submit redacted versions of those submissions. Signed by Magistrate Judge Michael A. Hammer on 4/12/2023. (dam) (Entered: 04/13/2023) |
| 06/12/2023 | 277 | REDACTION to 128 Letter,, by All Plaintiffs. (WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 278 | REDACTION to 130 Letter,, by All Plaintiffs. (WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 279 | REDACTION to 157 Proposed Pretrial Order,,,,,,, by All Plaintiffs. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C (Redacted), # 4 Exhibit D (Redacted), # 5 Exhibit E (Redacted), # 6 Exhibit F (Redacted), # 7 Exhibit G, # 8 Opening Expert Report of Dr. David Lewis, Ph.D. as to Aurobindo Defendants, dated April 29, 2022 (Redacted), # 9 Opening Expert Report of Dr. David Lewis, Ph.D. as to Defendant Cipla Ltd., dated April 29, 2022 (Redacted), # 10 Opening Expert Report of Dr. Reynold A. Panettieri, Jr., M.D., dated April 29, 2022 (Redacted), # 11 Report of Dr. David Lewis, Ph.D., dated June 14, 2022 (Redacted), # 12 Reply Report of Dr. David Lewis, Ph.D. as to Defendant Aurobindo Ltd., dated July 12, 2022 (Redacted), # 13 Reply Report of Dr. David Lewis, Ph.D. as to Defendant Cipla Ltd., dated July 12, 2022 (Redacted), # 14 Reply Expert Report of Dr. Reynold A. Panettieri, Jr., M.D., dated July 12, 2022 (Redacted), # 15 Expert Report of Gregor Anderson, dated April 29, 2022, # 16 Supplemental Invalidity Expert Report of Gregor Anderson, dated May 24, 2022, # 17 Rebuttal Expert Report of Gregor Anderson on Noninfringement (Aurobindo), dated June 14, 2022, # 18 Rebuttal Expert Report of Gregor Anderson on Noninfringement (Cipla), dated June 14, 2022, # 19 Rebuttal Expert Report of Gregor Anderson on Secondary Considerations, dated June 14, 2022 (Redacted), # 20 Reply Expert Report of Gregor Anderson on Invalidity, dated July 12, 2022 (Redacted), # 21 Letter)(WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 280 | REDACTION to 176 Brief in Opposition to Motion,, by All Plaintiffs. (Attachments: # 1 Declaration of Liza M. Walsh with Ex. A-F (Redacted))(WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 281 | REDACTION to 188 Letter,, by All Plaintiffs. (WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 282 | REDACTION to 196 Brief in Support of Motion,, by All Plaintiffs. (WALSH, LIZA) (Entered: 06/12/2023) |

| 06/12/2023 | 283 | REDACTION to 198 Proposed Findings of Fact by All Plaintiffs. (Attachments: # 1 Teva's Pretrial Conclusions of Law)(WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 284 | REDACTION to 206 Proposed Pretrial Order,,, by All Plaintiffs. (WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 285 | REDACTION to 210 Pretrial Order by All Plaintiffs. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C (Redacted), # 4 Exhibit D (Redacted), # 5 Exhibit E (Redacted), # 6 Exhibit F (Redacted), # 7 Exhibit G)(WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 286 | REDACTION to 211 Reply Brief to Opposition to Motion,, by All Plaintiffs. (WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 287 | REDACTION to 229 Statement,, by All Plaintiffs. (WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 288 | REDACTION to 234 Letter,,,,,, by All Plaintiffs. (WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 289 | REDACTION to 235 Letter,, by All Plaintiffs. (Attachments: # 1 Parties' Joint Submission of Deposition and Written Testimony and Associated Exhibits (Redacted))(WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 290 | REDACTION to 251 Trial Brief by All Plaintiffs. (Attachments: # 1 A-G (Redacted))(WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 291 | REDACTION to 252 Proposed Findings of Fact by All Plaintiffs. (WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 292 | REDACTION to 262 Trial Brief by All Plaintiffs. (WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 293 | REDACTION to 263 Proposed Findings of Fact by All Plaintiffs. (WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 294 | REDACTION to 264 Letter,, by All Plaintiffs. (Attachments: # 1 Exhibit A (Redacted), # 2 Exhibit B (Redacted))(WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 295 | Joint MOTION to Seal by NORTON (WATERFORD) LTD., TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (Attachments: # 1 Proposed Findings of Fact and Conclusions of Law, # 2 Declaration of Liza M. Walsh with Ex. 1, # 3 Declaration Gregory D. Miller with Ex. A-C, # 4 Statement in Lieu of Brief, # 5 Text of Proposed Order)(WALSH, LIZA) (Entered: 06/12/2023) |
| 06/12/2023 | 296 | REDACTION to 164 Brief in Support of Motion,,,, by CIPLA LTD.. (Attachments: # 1 Declaration of Brandon G. Smith, # 2 Exhibit 1 to the Declaration of Brandon G. Smith, # 3 Exhibit 2 to the Declaration of Brandon G. Smith, # 4 Exhibit 3 to the Declaration of Brandon G. Smith, # 5 Exhibit 4 to the Declaration of Brandon G. Smith, # 6 Exhibit 5 to the Declaration of Brandon G. Smith, # 7 Exhibit 6 to the Declaration of Brandon G. Smith)(MILLER, GREGORY) (Entered: 06/12/2023) |
| 06/12/2023 | 297 | REDACTION to 194 Proposed Findings of Fact by CIPLA LTD.. (MILLER, GREGORY) (Entered: 06/12/2023) |
| 06/12/2023 | 298 | REDACTION to 228 Letter,, by CIPLA LTD.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(MILLER, GREGORY) (Entered: 06/12/2023) |

Appx84

| 06/12/2023 | 299 | REDACTION to 265 Response (NOT Motion), by CIPLA LTD.. (MILLER, GREGORY) (Entered: 06/12/2023) |
|---|---|---|
| 06/12/2023 | 300 | REDACTION to 266 Response (NOT Motion), by CIPLA LTD.. (MILLER, GREGORY) (Entered: 06/12/2023) |
| 06/12/2023 |  | Set Deadlines as to 295 Joint MOTION to Seal . Motion set for 7/17/2023 before Judge Julien Xavier Neals. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (lag, ) (Entered: 06/12/2023) |
| 06/21/2023 | 301 | *** UNSEALED pursuant to 306 Letter Order *** OPINION. Signed by Judge Julien Xavier Neals on 6/21/2023. (lag) Modified on 7/7/2023 (dam). (Entered: 06/21/2023) |
| 06/21/2023 | 302 | ORDER directing parties to submit a joint proposed form of judgment consistent with Opinion & Order within 7 days. Signed by Judge Julien Xavier Neals on 6/21/2023. (lag, ) (Entered: 06/21/2023) |
| 06/28/2023 | 303 | Letter from Liza M. Walsh to the Hon. Julien Xavier Neals, U.S.D.J. encl. proposed Final Judgment. (Attachments: # 1 Text of Proposed Order)(WALSH, LIZA) (Entered: 06/28/2023) |
| 06/29/2023 | 304 | JOINT FINAL JUDGMENT ORDER entered in favor of Plaintiffs and against Cipla on Plaintiffs' claims for infringement of claims 1-2, 4, and 6-7 of the '289 patent; claims 1-2, 4, 6-7, and 12 of the '587 patent; and claim 28 of the '808 patent; and in favor of Plaintiffs and against Cipla on Cipla's counterclaims and defenses. Signed by Judge Julien Xavier Neals on 6/29/2023. (dam) (Entered: 06/29/2023) |
| 07/06/2023 | 305 | Letter from Liza M. Walsh to the Honorable Julien Xavier Neals, U.S.D.J. re 301 Opinion. (WALSH, LIZA) (Entered: 07/06/2023) |
| 07/07/2023 | 306 | LETTER ORDER granting 305 Joint Request to unseal the 301 Opinion. Signed by Judge Julien Xavier Neals on 7/7/2023. (dam) (Entered: 07/07/2023) |
| 07/21/2023 | 307 | MOTION for Taxation of Costs by TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (Attachments: # 1 Brief, # 2 Itemization, # 3 AO133, # 4 Text of Proposed Order)(WALSH, LIZA) (Entered: 07/21/2023) |
| 07/21/2023 | 308 | DECLARATION of Ben Picozzi re 307 MOTION for Taxation of Costs *with Exhibits A - D* by TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.. (WALSH, LIZA)<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 07/21/2023) |
| 07/21/2023 | 309 | NOTICE of Appearance by PETER LOUIS GIUNTA on behalf of CIPLA LTD. (GIUNTA, PETER) (Entered: 07/21/2023) |
| 07/21/2023 | 310 | NOTICE OF APPEAL to Federal Circuit as to 304 Order of Dismissal, by CIPLA LTD.. Filing fee $ 505, receipt number ANJDC-14473763. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (GIUNTA, PETER) |

| | | Modified on 7/28/2023 (lag, ). (Entered: 07/21/2023) |
|---|---|---|
| 07/26/2023 | 311 | Letter from Cipla Ltd. to Clerk re Adjournment of Hearing and Deferral of Decision on Motion to Tax Costs (ECF No. 307). (GIUNTA, PETER) (Entered: 07/26/2023) |
| 07/27/2023 | 312 | TEXT ORDER - The Court is in receipt of Defendants July 26, 2023, letter (ECF No. 311 ) requesting an adjournment of the July 28, 2023, hearing and deferral of the Clerk of Courts decision on Plaintiffs Motion for Taxation of Costs (ECF Nos. 307 - 308 ) on consent, until 30 days after the final disposition of Defendants appeal of the Courts Joint Final Judgment Order (ECF No. 304 ) and Opinion (ECF No. 301 ). The request is GRANTED. So Ordered by Judge Julien Xavier Neals on 7/27/2023. (kd) (Entered: 07/27/2023) |
| 08/04/2023 | 313 | USCA Case Number 23-2241 for 310 Notice of Appeal (Federal Circuit), filed by CIPLA LTD.. (Document Restricted - Court Only) (adc, ) (Entered: 08/11/2023) |



## THE UNITED STATES OF AMERICA

### TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

February 26, 2021

THIS IS TO CERTIFY THAT ANNEXED HERETO IS A TRUE COPY FROM
THE RECORDS OF THIS OFFICE OF:

U.S. PATENT:  *9,463,289*
ISSUE DATE:  *October 11, 2016*

By Authority of the

Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

P. R.  GRANT

Certifying Officer

> Dist. of New Jersey
> C.A. No. 20-10172 (JXN)(MAH)
> Consolidated
> **JTX-003**

TEVAQVAR-00031219



US009463289B2

(12) **United States Patent**
Walsh et al.

(10) Patent No.: **US 9,463,289 B2**
(45) Date of Patent: **Oct. 11, 2016**

(54) **DOSE COUNTERS FOR INHALERS, INHALERS AND METHODS OF ASSEMBLY THEREOF**

(71) Applicants: **IVAX PHARMACEUTICALS IRELAND**, Utrecht (NL); **NORTON WATERFORD**, Utrecht (NL); **TEVA PHARMACEUTICALS IRELAND**, Utrecht (NL)

(72) Inventors: **Declan Walsh**, County Kilkenny (IE); **Derek Fenlon**, County Wexford (IE); **Simon Kaar**, County Cork (IE); **Jan Geert Hazenberg**, County Kilkenny (IE); **Daniel Buck**, County Waterford (IE); **Paul Clancy**, Waterford (IE); **Robert Charles Uschold**, Leominster, MA (US); **Jeffrey A. Karg**, Hopkinton, MA (US)

(73) Assignees: **IVAX Pharmaceuticals Ireland**, Waterford (IE); **Norton (Waterford) Limited**, Waterford (IE); **Teva Pharmaceuticals Ireland**, Waterford (IE)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **14/103,324**

(22) Filed: **Dec. 11, 2013**

(65) **Prior Publication Data**

US 2014/0096769 A1      Apr. 10, 2014

**Related U.S. Application Data**

(62) Division of application No. 13/110,532, filed on May 18, 2011, now Pat. No. 8,978,966.

(60) Provisional application No. 61/345,763, filed on May 18, 2010, provisional application No. 61/417,659, filed on Nov. 29, 2010.

(51) **Int. Cl.**
**G06M 1/06**       (2006.01)
**A61M 11/00**      (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC .......... **A61M 15/0071** (2014.02); **A61M 11/00** (2013.01); **A61M 15/009** (2013.01);
(Continued)

(58) **Field of Classification Search**
USPC ................................ 235/8, 103; 128/200.23
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,174,890 A    11/1979    Johnson
4,669,838 A    6/1987    Hibbard
(Continued)

FOREIGN PATENT DOCUMENTS

CA    2501726    9/2006
EP    1330280    11/2004
(Continued)

OTHER PUBLICATIONS

First Examination Report of counterpart New Zealand Patent Application No. 603466, dated Jul. 1, 2013.
(Continued)

*Primary Examiner* — Daniel Hess
(74) *Attorney, Agent, or Firm* — RatnerPrestia

(57) **ABSTRACT**

A manually operated metered dose inhaler includes a dose counter chamber including a dose display tape driven by a ratchet wheel which is driven in turn by an actuator pawl actuated by movement of a canister, the tape unwinding from a stock bobbin during use of the inhaler, a rotation regulator being provided for the stock bobbin and including a wavelike engagement surface with concavities which engage against control elements in the form of protrusions on resilient forks of a split pin thereby permitting incremental unwinding of the stock bobbin yet resisting excessive rotation if the inhaler is dropped onto a hard surface.

**10 Claims, 17 Drawing Sheets**



TEVAQVAR-00031220

**US 9,463,289 B2**

Page 2

(51) **Int. Cl.**
    *A61M 15/00*     (2006.01)
    *G06M 1/24*     (2006.01)
(52) **U.S. Cl.**
    CPC ..... *A61M15/0025* (2014.02); *A61M 15/0026* (2014.02); *A61M 15/0065* (2013.01); *A61M 15/0078* (2014.02); *G06M 1/246* (2013.01); *A61M 2202/064* (2013.01); *A61M 2205/6063* (2013.01); *A61M 2207/00* (2013.01); *A61M 2207/10* (2013.01); *Y10T 29/49* (2015.01); *Y10T 29/49764* (2015.01); *Y10T 29/49826* (2015.01)

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,687,359 A | 8/1987 | Barrus | |
| 5,482,030 A | 1/1996 | Klein | |
| 5,861,911 A | 1/1999 | Oosaka | |
| 6,446,627 B1 | 9/2002 | Bowman et al. | |
| 6,718,972 B2 | 4/2004 | O'Leary | |
| 8,418,690 B2 | 4/2013 | Power | |
| 8,474,448 B2 | 7/2013 | Oi | |
| 2002/0047021 A1 | 4/2002 | Blacker et al. | |
| 2002/0078949 A1 | 6/2002 | OLeary | |
| 2002/0078950 A1 | 6/2002 | OLeary | |
| 2003/0209239 A1 | 11/2003 | Rand | |
| 2004/0095746 A1 | 5/2004 | Murphy | |
| 2005/0028815 A1 | 2/2005 | Deaton et al. | |
| 2005/0087191 A1 | 4/2005 | Morton et al. | |
| 2006/0096594 A1 | 5/2006 | Bonney et al. | |
| 2006/0107949 A1 * | 5/2006 | Davies et al. .......... 128/200.23 |
| 2006/0107979 A1 | 5/2006 | Kim | |
| 2007/0062518 A1 | 3/2007 | Geser | |
| 2008/0242465 A1 | 10/2008 | Strobel | |
| 2009/0178678 A1 | 7/2009 | O'Leary | |
| 2010/0089395 A1 | 4/2010 | Power | |
| 2010/0218759 A1 | 9/2010 | Anderson et al. | |
| 2011/0041845 A1 | 2/2011 | Solomon | |
| 2012/0006322 A1 | 1/2012 | Anderson | |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 1486227 | 12/2004 |
| GB | 2320489 A | 6/1998 |
| JP | 02502129 | 7/1990 |
| JP | 450059 | 8/1992 |
| JP | 07100205 | 4/1995 |
| JP | 10504220 | 4/1998 |
| JP | 2002528144 | 9/2002 |
| JP | 2004501685 | 1/2004 |
| JP | 2008094103 | 4/2008 |
| JP | 2008261423 | 10/2008 |
| JP | 2009233308 | 10/2009 |
| JP | 2009257392 | 11/2009 |
| JP | 2010096308 | 4/2010 |
| WO | 8909078 | 10/1989 |
| WO | 9628205 | 9/1996 |
| WO | WO 9828033 | 7/1998 |
| WO | 9936115 | 7/1999 |
| WO | 03101514 | 12/2003 |
| WO | 2005102430 | 11/2005 |
| WO | WO 2006/062449 | 6/2006 |
| WO | 2007012861 | 2/2007 |
| WO | 2007062518 | 6/2007 |
| WO | WO 2008/023019 | 2/2008 |
| WO | WO 2008119552 | 10/2008 |
| WO | 2011012325 | 2/2011 |
| WO | 2011012327 | 2/2011 |

OTHER PUBLICATIONS

Entire patent prosecution history of U.S. Appl. No. 14/699,567, filed Apr. 29, 2015, entitled, "Dose Counter for Inhaler and Method for Counting Doses."

Entire patent prosecution history of U.S. Appl. No. 14/699,578, filed, Apr. 29, 2015, entitled, "Dose Counter for Inhaler Having a Bore and Shaft Arrangement."

Entire patent prosecution history of U.S. Appl. No., 14/699,584, filed Apr. 29, 2015, entitled, "Dose Counter for Inhaler Having an Anti-Reverse Rotation Actuator."

Entire patent prosecution history of U.S. Appl. No. 14/713,612, filed May 15, 2015, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."

Entire patent prosecution history of U.S. Appl. No. 14/713,620, filed May 15, 2015, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."

Entire patent prosecution history of U.S. Appl. No. 14/713,633, filed May 15, 2015, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."

Entire patent prosecution history of U.S. Appl. No. 14/713,643, filed May 15, 2015, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."

Entire patent prosecution history of U.S. Appl. No. 13/110,532, filed May 18, 2011, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."

Entire patent prosecution history of U.S. Appl. No. 14/103,343, filed Dec. 11, 2013, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."

Entire patent prosecution history of U.S. Appl. No. 14/103,353, filed Dec. 11, 2013, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."

Entire patent prosecution history of U.S. Appl. No. 14/103,363, filed Dec. 1, 2013, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."

Entire patent prosecution history of U.S. Appl. No. 14/103,392, filed Dec. 11, 2013, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."

European Patent Office Communication, dated Apr. 24, 2014 of counterpart European Patent Application No. 11 010 211.8.

European Patent Office Communication, dated Apr. 24, 2014 of counterpart European Patent Application No. 11 010 212.6.

* cited by examiner

TEVAQVAR-00031221



FIG. 1

FIG. 2

FIG. 3A

FIG. 3B

FIG. 4B

FIG. 4C

FIG. 4A

FIG. 5

TEVAQVAR-00031222



FIG. 6A

FIG. 6B

FIG. 6C

FIG. 6D

FIG. 6E

TEVAQVAR-00031223



FIG.6F

FIG.6G

TEVAQVAR-00031224



FIG. 7A

FIG. 7B

FIG. 6H

TEVAQVAR-00031225



FIG. 7C

FIG. 7D

FIG. 8D

TEVAQVAR-00031226



FIG. 8A

FIG. 8B

FIG. 8C

TEVAQVAR-00031227



FIG. 9

TEVAQVAR-00031228



FIG. 10A

FIG. 10B

TEVAQVAR-00031229



FIG. 10E

FIG. 10C

TEVAQVAR-00031230



FIG. 10F



FIG. 10D

TEVAQVAR-00031231



FIG. 11

FIG. 14

TEVAQVAR-00031232



FIG. 12



FIG. 13

TEVAQVAR-00031233



FIG. 15

FIG. 20

FIG. 16

TEVAQVAR-00031234

Case: 23-2241    Document: 27-1    Page: 107    Filed: 03/22/2024



FIG. 19A

FIG. 19B

FIG. 19C

FIG. 18A

FIG. 18B

FIG. 18C

FIG. 17

TEVAQVAR-00031235



FIG. 21

FIG. 22

TEVAQVAR-00031236



## FIG. 23



## FIG. 24

TEVAQVAR-00031237



FIG. 25



FIG. 26

TEVAQVAR-00031238

US 9,463,289 B2

**1**

# DOSE COUNTERS FOR INHALERS, INHALERS AND METHODS OF ASSEMBLY THEREOF

### CROSS-REFERENCE TO RELATED APPLICATIONS

This patent application is a divisional patent application of U.S. Non-Provisional patent application Ser. No. 13/110,532, filed May 18, 2011, which claims priority to U.S. Provisional Patent Application No. 61/345,763, filed May 18, 2010, and U.S. Provisional Patent Application No. 61/417,659, filed Nov. 29, 2010, each of which is incorporated herein by reference in its entirety for all purposes.

### FIELD OF THE INVENTION

The present invention relates to dose counters for inhalers, inhalers and methods of assembly thereof. The invention is particularly applicable to metered dose inhalers including dry power medicament inhalers, breath actuated inhalers and manually operated metered dose medicament inhalers.

### BACKGROUND OF THE INVENTION

Metered dose inhalers can comprise a medicament-containing pressurised canister containing a mixture of active drug and propellant. Such canisters are usually formed from a deep-dawn aluminium cup having a crimped lid which carries a metering valve assembly. The metering valve assembly is provided with a protruding valve stem which, in use is inserted as a push fit into a stem block in an actuator body of an inhaler having a drug delivery outlet. In order to actuate a manually operable inhaler, the user applies by hand a compressive force to a closed end of the canister and the internal components of the metering valve assembly are spring loaded so that a compressive force of approximately 15 to 30N is required to activate the device in some typical circumstances.

In response to this compressive force the canister moves axially with respect to the valve stem and the axial movement is sufficient to actuate the metering valve and cause a metered quantity of the drug and the propellant to be expelled through the valve stem. This is then released into a mouthpiece of the inhaler via a nozzle in the stem block, such that a user inhaling through the outlet of the inhaler will receive a dose of the drug.

A drawback of self-administration from an inhaler is that it is difficult to determine how much active drug and/or propellant are left in the inhaler, if any, especially of the active drug and this is potentially hazardous for the user since dosing becomes unreliable and backup devices not always available.

Inhalers incorporating dose counters have therefore become known.

WO 98/280733 discloses an inhaler having a ratchet mechanism for driving a tape drive dose counter. A shaft onto which tape is wound has a friction clutch or spring for restraining the shaft against reverse rotation.

EP-A-1486227 discloses an inhaler for dry powered medicament having a ratchet mechanism for a tape dose counter which is operated when a mouthpiece of the inhaler is closed. Due to the way in which the mouthpiece is opened and closed, and actuation pawl of the device which is mounted on a yoke, travels a known long stroke of consistent length as the mouthpiece is opened and closed.

**2**

WO 2008/119552 discloses a metered-dose inhaler which is suitable for breath-operated applications and operates with a known and constant canister stroke length of 3.04 mm+/−0.255 mm. A stock bobbin of the counter, from which a tape is unwound, rotates on a shaft having a split pin intended to hold the stock bobbin taut. However, some dose counters do not keep a particularly reliable count, such as if they are dropped onto a hard surface.

More recently, it has become desirable to improve dose counters further and, in particular, it is felt that it would be useful to provide extremely accurate dose counters for manually-operated canister-type metered dose inhalers. Unfortunately, in these inhalers, it has been found in the course of making the present invention that the stroke length of the canister is to a very large extent controlled on each dose operation by the user, and by hand. Therefore, the stroke length is highly variable and it is found to be extremely difficult to provide a highly reliable dose counter for these applications. The dose counter must not count a dose when the canister has not fired since this might wrongly indicate to the user that a dose has been applied and if done repeatedly the user would throw away the canister or whole device before it is really time to change the device due to the active drug and propellant reaching a set minimum. Additionally, the canister must not fire without the dose counter counting because the user may then apply another dose thinking that the canister has not fired, and if this is done repeatedly the active drug and/or propellant may run out while the user thinks the device is still suitable for use according to the counter. It has also been found to be fairly difficult to assembly some known inhaler devices and the dose counters therefor. Additionally, it is felt desirable to improve upon inhalers by making them easily usable after they have been washed with water.

The present invention aims to alleviate at least to a certain extent one or more of the problems of the prior art.

### SUMMARY OF THE INVENTION

According to a first aspect of the present invention there is provided a dose counter for an inhaler, the dose counter having a counter display arranged to indicate dosage information, a drive system arranged to move the counter display incrementally in a first direction from a first station to a second station in response to actuation input, wherein a regulator is provided which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movements.

The regulator is advantageous in that it helps prevent unwanted motion of the counter display if the counter is dropped.

According to a further aspect of the present invention, the regulator provides a resistance force of greater than 0.1 N against movement of the counter display. According to still a further aspect of the present invention, the resistance force is greater than 0.3 N. According to yet a further aspect of the present invention, the resistance force is from 0.3 to 0.4 N.

Preferably, the counter comprises a tape.

Preferably, the tape has dose counter indicia displayed thereon. The first station may comprise a region of the dose counter where tape is held which is located before a display location, such as a display window, for the counter indicia.

The first station may comprise a first shaft, the tape being arranged on the first shaft and to unwind therefrom upon movement of the counter display.

TEVAQVAR-00031239

US 9,463,289 B2

3

The first shaft may be mounted for rotation relative to a substantially rotationally fixed element of the dose counter.

The regulator may comprise at least one projection which is arranged on one of the first shaft and the substantially rotationally fixed element and to engage incrementally with one or more formations on the other of the first shaft and the substantially rotationally fixed element.

At least two said projections may be provided. Exactly two said projections maybe provided.

Each projection may comprise a radiused surface.

The at least one projection may be located on the substantially fixed element which may comprise a fixed shaft which is fixed to a main body of the dose counter, the first shaft being rotationally mounted to the fixed shaft.

Preferably, the fixed shaft has at least two resiliently flexible legs (or forks). Each leg may have at least one said projection formed in an outwardly facing direction thereon, said one or more formations being formed on an inwardly facing engagement surface of the first shaft, said at least one projection being arranged to resiliently engage said one or more formations. Preferably, a series of said formations are provided. An even number of said formations may be provided. Eight to twelve of said formations may be provided. In one embodiment, ten said formations are provided.

Each said formation may comprise a concavity formed on an engagement surface. Each concavity may comprise a radiused surface wall portion which preferably merges on at least one side thereof into a flat wall portion surface. The engagement surface may include a series of said concavities, and convex wall portions of the engagement surface may be formed between each adjacent two said concavities, each said convex wall portion comprising a convex radiused wall portion.

Each convex radiused wall portion of each convex wall portion may be connected by said flat wall portion surfaces to each adjacent concavity.

The fixed shaft may comprise a split pin with fork legs and each projection may be located on a said fork leg.

The first shaft may comprise a substantially hollow bobbin.

Said at least one formation may be located on an inner surface of the bobbin. In other embodiments it may be located on an outer surface thereof. Said engagement surface may extend partially along said bobbin, a remainder of the respective inner or outer surface having a generally smooth journal portion along at least a portion thereof.

The drive system may comprise a tooth ratchet wheel arranged to act upon a second shaft which is located at the second station, the second shaft being rotatable to wind the tape onto the second shaft.

The second shaft may be located on a main body of the dose counter spaced from and parallel to the first shaft.

The ratchet wheel may be fixed to the second shaft is arranged to rotate therewith. The ratchet wheel may be secured to an end of the second shaft and aligned coaxially with the second shaft.

The dose counter may include anti-back drive system which is arranged to restrict motion of the second shaft. The anti-back drive system may include a substantially fixed tooth arranged to act upon teeth of the ratchet wheel.

According to a further aspect of the present invention, a dose counter includes an anti-back drive system which is arranged to restrict motion of the second shaft in a tape winding direction.

According to a further aspect of the present invention there is provided a shaft for holding counter tape in a dose counter for an inhaler, the shaft having an engagement

4

surface including incrementally spaced formations located around a periphery thereof, the formations comprising a series of curved concavities and convex portions.

The shaft may comprise a hollow bobbin.

The engagement surface may be a generally cylindrical inwardly directed surface.

The engagement surface may include a flat surface wall portion joining each concavity and convex wall portion.

Each concavity may comprise a radiused wall portion.

Each convex wall portion may comprise a radiused wall portion.

Said concavities may be regularly spaced around a longitudinal axis of the shaft.

Said convex wall portions may be regularly spaced around a longitudinal axis of the shaft.

In some embodiments there may be from eight to twelve said concavities and/or concavities regularly spaced around a longitudinal axis thereof.

One embodiment includes ten said concavities and/or convex wall portions regularly spaced around a longitudinal axis of the shaft.

According to a further aspect of the present invention there is provided a shaft and counter tape assembly for use in a dose counter for an inhaler, the assembly comprising a rotatable shaft and a counter tape which is wound around the shaft and is adapted to unwind therefrom upon inhaler actuation, the shaft having an engagement surface which includes incrementally spaced formations located around a periphery thereof.

According to a further aspect of the present invention there is provided an inhaler for the inhalation of medication and the like, the inhaler including a dose counter as in the first aspect of the present invention.

A preferred construction consists of a manually operated metered dose inhaler including a dose counter chamber including a dose display tape driven by a ratchet wheel which is driven in turn by an actuator pawl actuated by movement of a canister, the tape unwinding from a stock bobbin during use of the inhaler, a rotation regulator being provided for the stock bobbin and comprising a wavelike engagement surface with concavities which engage against control elements in the form of protrusions on resilient forks of a split pin thereby permitting incremental unwinding of the stock bobbin yet resisting excessive rotation if the inhaler is dropped onto a hard surface.

According to another aspect of the present invention there is provided a dose counter for a metered dose inhaler having a body arranged to retain a medicament canister of predetermined configuration for movement of the canister relative thereto; the dose counter comprising: an incremental counting system for counting doses, the incremental counting system having a main body, an actuator arranged to be driven in response to canister motion and to drive an incremental output member in response to canister motion, the actuator and incremental output member being configured to have predetermined canister fire and count configurations in a canister fire sequence, the canister fire configuration being determined by a position of the actuator relative to a datum at which the canister fires medicament and the count configuration being determined by a position of the actuator relative to the datum at which the incremental count system makes an incremental count, wherein the actuator is arranged to reach a position thereof in the count configuration at or after a position thereof in the canister fire configuration.

This arrangement has been found to be highly advantageous since it provides an extremely accurate dose counter

TEVAQVAR-00031240

US 9,463,289 B2

**5**

which is suitable for use with manually operated metered dose inhalers. It has been found that dose counters with these features have a failure rate of less than 50 failed counts per million full canister activation depressions. It has been found in the course of making the present invention that highly reliable counting can be achieved with the dose counter counting at or soon after the point at which the canister fires. It has been covered by the present inventors that momentum and motion involved in firing the canister, and in some embodiments a slight reduction in canister back pressure on the user at the time of canister firing, can very reliably result in additional further motion past the count point.

The actuator and incremental counting system may be arranged such that the actuator is displaced less than 1 mm, typically 0.25 to 0.75 mm, more preferably about 0.4 to 0.6 mm, relative to the body between its location in the count and fire configurations, about 0.48 mm being preferred. The canister, which can move substantially in line with the actuator, can reliably move this additional distance so as to achieve very reliable counting.

The incremental count system may comprise a ratchet mechanism and the incremental output member may comprise a ratchet wheel having a plurality of circumferentially spaced teeth arranged to engage the actuator.

The actuator may comprise an actuator pawl arranged to engage on teeth of the ratchet wheel. The actuator pawl may be arranged to be connected to or integral with an actuator pin arranged to engage and be depressed by a medicament canister bottom flange. The actuator pawl may be generally U-shaped having two parallel arms arranged to pull on a central pawl member arranged substantially perpendicular thereto. This provides a very reliable actuator pawl which can reliably pull on the teeth of the ratchet wheel.

The incremental count system may include a tape counter having tape with incremental dose indicia located thereon, the tape being positioned on a tape stock bobbin and being arranged to unwind therefrom.

The actuator and incremental output member may be arranged to provide a start configuration at which the actuator is spaced from the ratchet output member, a reset configuration at which the actuator is brought into engagement with the incremental output member during a canister fire sequence, and an end configuration at which the actuator disengages from the ratchet output during a canister fire sequence.

The actuator may be arranged to be located about 1.5 to 2.0 mm, from its location in the fire configuration, when in the start configuration, about 1.80 mm being preferred.

The actuator may be arranged to be located about 1.0 to 1.2 mm, from its location in the fire configuration, when in the reset configuration, about 1.11 mm being preferred.

The actuator may be arranged to be located about 1.1 to 1.3 mm, from its location in the fire configuration, when in the end configuration, about 1.18 mm being preferred.

These arrangements provide extremely reliable dose counting, especially with manually operated canister type metered dose inhalers.

The main body may include a formation for forcing the actuator to disengage from the incremental output member when the actuator is moved past the end configuration. The formation may comprise a bumped up portion of an otherwise generally straight surface against which the actuator engages and along which it is arranged to slide during a canister firing sequence.

The dose counter may include a counter pawl, the counter pawl having a tooth arranged to engage the incremental

**6**

output member, the tooth and incremental output member being arranged to permit one way only incremental relative motion therebetween. When the incremental output member comprises a ratchet wheel, the tooth can therefore serve as an anti-back drive tooth for the ratchet wheel, thereby permitting only one way motion or rotation thereof.

The counter pawl may be substantially fixedly mounted on the main body of the incremental count system and the counter pawl may be arranged to be capable of repeatedly engaging equi-spaced teeth of the incremental output member in anti-back drive interlock configurations as the counter is operated. The counter pawl may be positioned so that the incremental output member is halfway, or substantially halfway moved from one anti-back drive interlock configuration to the next when the actuator and incremental output member are in the end configuration thereof. This is highly advantageous in that it minimises the risk of double counting or non-counting by the dose counter.

According to a further aspect of the invention there is provided an inhaler comprising a main body arranged to retain a medicament canister of predetermined configuration and a dose counter mounted in the main body.

The inhaler main body may include a canister receiving portion and a separate counter chamber, the dose counter being located within the main body thereof, the incremental output member and actuator thereof inside the counter chamber, the main body of the inhaler having wall surfaces separating the canister-receiving portion and the counter chamber, the wall surfaces being provided with a communication aperture, an actuation member extending through the communication aperture to transmit canister motion to the actuator.

According to a further aspect of the present invention there is a provided an inhaler for metered dose inhalation, the inhaler comprising a main body having a canister housing arranged to retain a medicament canister for motion therein, and a dose counter, the dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of a medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation located directly adjacent the actuation member.

This is highly advantageous in that the first inner wall canister support formation can prevent a canister from rocking too much relative to the main body of the inhaler. Since the canister may operate the actuation member of the dose counter, this substantially improves dose counting and avoids counter errors.

The canister housing may have a longitudinal axis which passes through a central outlet port thereof, the central outlet port being arranged to mate with an outer canister fire stem of a medicament canister, the inner wall canister support formation, the actuation member and the outlet port lying in a common plane coincident with the longitudinal axis. Accordingly, this construction may prevent the canister from rocking towards the position of the dose counter actuation member, thereby minimising errors in counting.

The canister housing may have a further inner canister wall support formation located on the inner wall opposite, or substantially opposite, the actuation member. Accordingly, the canister may be supported against rocking motion away from the actuator member so as to minimise count errors.

The canister housing may be generally straight and tubular and may have an arrangement in which each said inner wall support formation comprises a rail extending longitudinally along the inner wall.

TEVAQVAR-00031241

US 9,463,289 B2

**7**

Each said rail may be stepped, in that it may have a first portion located towards a medicine outlet end or stem block of the canister housing which extends inwardly a first distance from a main surface of the inner wall and a second portion located toward an opposite end of the canister chamber which extends inwardly a second, smaller distance from the main surface of the inner wall. This may therefore enable easy insertion of a canister into the canister housing such that a canister can be lined up gradually in step wise function as it is inserted into the canister housing.

The inhaler may include additional canister support rails which are spaced around an inner periphery of the inner wall of the canister housing and which extend longitudinally therealong.

At least one of the additional rails may extend a constant distance inwardly from the main surface of the inner wall.

At least one of the additional rails may be formed with a similar configuration to the first inner wall canister support formation.

The dose counter may, apart from said at least a portion of the actuation member, be located in a counter chamber separate from the canister housing, the actuation member comprising a pin extending through an aperture in a wall which separates the counter chamber and the canister housing.

According to a further aspect of the present invention there is provided an inhaler for inhaling medicaments having: a body for retaining a medicament store; the body including a dose counter, the dose counter having a moveable actuator and a return spring for the actuator, the return spring having a generally cylindrical and annular end; the body having a support formation therein for supporting said end of the return spring, the support formation comprising a shelf onto which said end is engageable and a recess below the shelf.

This shelf and recess arrangement is highly advantageous since it allows a tool (such as manual or mechanical tweezers) to be used to place the return spring of the actuator onto the shelf with the tool then being withdrawn at least partially via the recess.

The shelf may be U-shaped.

The support formation may include a U-shaped upstanding wall extending around the U-shaped shelf, the shelf and upstanding wall thereby forming a step and riser of a stepped arrangement.

The recess below the shelf my also be U-shaped.

At least one chamfered surface may be provided at an entrance to the shelf. This may assist in inserting the actuator and return spring into position.

A further aspect of the invention provides a method of assembly of an inhaler which includes the step of locating said end of said spring on the shelf with an assembly tool and then withdrawing the assembly tool at least partly via the recess. This assembly method is highly advantageous compared to prior art methods in which spring insertion has been difficult and in which withdrawal of the tool has sometimes accidentally withdrawn the spring again.

The cylindrical and annular end of the spring may be movable in a direction transverse to its cylindrical extent into the shelf while being located thereon.

According to a further aspect of the present invention there is provided an inhaler for inhaling medicament, the inhaler having a body for retaining a medicament store; and a dose counter, the dose counter having a moveable actuator and a chassis mounted on the body; the chassis being heat staked in position on the body. This is be highly advantageous in that the chassis can be very accurately positioned

**8**

and held firmly in place, thereby further improving counting accuracy compared to prior art arrangements in which some movement of the chassis relative to the body may be tolerated in snap-fit connections.

The chassis may have at least one of a pin or aperture heat staked to a respective aperture or pin of the body.

The chassis may have a ratchet counter output member mounted thereon.

The ratchet counter output member may comprise a ratchet wheel arranged to reel in incrementally a dose meter tape having a dosage indicia located thereon.

According to a further aspect of the present invention there is provided a method of assembling an inhaler including the step of heat staking the chassis onto the body. The step of heat staking is highly advantageous in fixedly positioning the chassis onto the body in order to achieve highly accurate dose counting in the assembled inhaler.

The method of assembly may include mounting a spring-returned ratchet actuator in the body before heat staking the chassis in place. The method of assembly may include pre-assembling the chassis with a dose meter tape prior to the step of heat staking the chassis in place. The method of assembly may include attaching a dose meter cover onto the body after the heat staking step. The cover may be welded onto the body or may in some embodiments be glued or otherwise attached in place.

According to a further aspect of the present invention there is provided an inhaler for inhaling medicament and having a body, the body have a main part thereof for retaining a medicament store; and a dose counter, the dose counter being located in a dose counter chamber of the body which is separated from the main part of the body, the dose counter chamber of the body having a dosage display and being perforated so as to permit the evaporation of water or aqueous matter in the dose counter chamber into the atmosphere.

This is high advantageous since it enables the inhaler to be thoroughly washed and the dose counting chamber can thereafter dry out fully.

The display may comprise a mechanical counter display inside the dose counter chamber and a window for viewing the mechanical counter display. The mechanical counter display may comprise a tape. The perforated dose counter chamber may therefore enable reliable washing of the inhaler, if desired by the user, and may therefore dry out without the display window misting up.

The dose counter chamber may be perforated by a drain hole formed through an outer hole of the body. The drain hole may be located at a bottom portion of the body of the inhaler, thereby enabling full draining of the inhaler to be encouraged after washing when the inhaler is brought into an upright position.

According to a further aspect of the present invention there is provided a dose counter for an inhaler, the dose counter having a display tape arranged to be incrementally driven from a tape stock bobbin onto an incremental tape take-up drive shaft, the bobbin having an internal bore supported by and for rotation about a support shaft, at least one of the bore and support shaft having a protrusion which is resiliently biased into frictional engagement with the other of the bore and support shaft with longitudinally extending mutual frictional interaction. This arrangement may provide good friction for the bobbin, thereby improving tape counter display accuracy and preventing the bobbin from unwinding undesirably for example if the inhaler is accidentally dropped.

TEVAQVAR-00031242

US 9,463,289 B2

9

The support shaft may be forked and resilient for resiliently biasing the support shaft and bore into frictional engagement.

The support shaft may have two forks, or more in some cases, each having a radially extending protrusion having a friction edge extending therealong parallel to a longitudinal axis of the support shaft for frictionally engaging the bore of the support shaft with longitudinally extending frictional interaction therebetween.

The bore may be a smooth circularly cylindrical or substantially cylindrical bore.

Each of the above inhalers in accordance with aspects of the present invention may have a medicament canister mounted thereto.

The canister may comprise a pressurised metered dose canister having a reciprocally movable stem extending therefrom and movable into a main canister portion thereof for releasing a metered dose of medicament under pressure, for example by operating a metered dose valve inside the canister body. The canister may be operable by pressing by hand on the main canister body.

In cases in which one or more support rails or inner wall support formations are provided, the canister may at all times when within the canister chamber have a clearance of about 0.25 to 0.35 mm from the first inner wall support formation. The clearance may be almost exactly 0.3 mm. This clearance which may apply to the canister body itself or to the canister once a label has been applied, is enough to allow smooth motion of the canister in the inhaler while at the same time preventing substantial rocking of the canister which could result in inaccurate counting by a dose counter of the inhaler, especially when lower face of the canister is arranged to engage an actuator member of the dose counter for counting purposes.

According to a further aspect of the invention, a method of assembling a dose counter for an inhaler comprises the steps of providing a tape with dosing indicia thereon; providing tape positioning indicia on the tape; and stowing the tape while monitoring for the tape positioning indicia with a sensor. The method advantageously permits efficient and accurate stowing of the tape, e.g. by winding.

The dosing indicia may be provided as numbers, the tape positioning indicia may be provided as one or more lines across the tape. The stowing step comprises winding the tape onto a bobbin or shaft, and, optionally, stopping winding when the positioning indicia are in a predetermined position. The tape may be provided with pixelated indicia at a position spaced along the tape from the positioning indicia. The tape may also be provided with a priming dot.

According to a further aspect of the invention, a tape system for a dose counter for an inhaler has a main elongate tape structure, and dosing indicia and tape positioning indicia located on the tape structure. The tape positioning indicia may comprise at least one line extending across the tape structure. The tape system may comprise pixelated indicia located on the tape structure and spaced from the positioning indicia. The tape system may comprise a priming dot located on the tape structure. The positioning indicia may be located between the timing dot and the pixelated indicia. The main elongate tape structure may have at least one end thereof wound on a bobbin or shaft.

A further aspect of the invention provides a method of designing an incremental dose counter for an inhaler comprising the steps of calculating nominal canister fire and dose counter positions for a dose counter actuator of the inhaler; calculating a failure/success rate for dose counters built to tolerance levels for counting each fire of inhalers in

10

which the dose counter actuators may be applied; and selecting a tolerance level to result in said failure/success rate to be at or below/above a predetermined value. This is highly advantageous in that it allows an efficient and accurate prediction of the reliability of a series of inhaler counters made in accordance with the design.

The method of designing may include selecting the failure/success rate as a failure rate of no more than one in 50 million. The method of designing may include setting an average count position for dose counters built to the tolerances to be at or after an average fire position thereof during canister firing motion. The method of designing may include setting the average count position to be about 0.4 to 0.6 mm after the average fire position, such as about 0.48 mm after. The method of designing may include setting tolerances for the standard deviation of the fire position in dose counters built to the tolerances to be about 0.12 to 0.16 mm, such as about 0.141 mm. The method of designing may include setting tolerances for the standard deviation of the count positions in dose counters built to the tolerances to be about 0.07 to 0.09 mm, such as about 0.08 mm. A further aspect of the invention provides a computer implemented method of designing an incremental dose counter for an inhaler which includes the aforementioned method of designing.

A further aspect of the invention provides a method of manufacturing in a production run a series of incremental dose counters for inhalers which comprises manufacturing the series of dose counters in accordance with the aforementioned method of designing.

A further aspect of the invention provides a method of manufacturing a series of incremental dose counters for inhalers, which comprises manufacturing the dose counters with nominal canister fire and dose count positions of a dose counter actuator relative to a dose counter chassis (or inhaler main body), and which includes building the dose counters with the average dose count position in the series being, in canister fire process, at or after the average canister fire position in the series.

According to a further aspect of the invention, the method provides fitting each dose counter in the series of incremental dose counters to a corresponding main body of an inhaler.

These aspects advantageously provide for the production run of a series of inhalers and dose counters which count reliably in operation.

According to a further aspect of the invention, an incremental dose counter for a metered dose inhaler has a body arranged to retain a canister for movement of the canister relative thereto, the incremental dose counter having a main body, an actuator arranged to be driven and to drive an incremental output member in a count direction in response to canister motion, the actuator being configured to restrict motion of the output member in a direction opposite to the count direction. This advantageously enables an inhaler dose counter to keep a reliable count of remaining doses even if dropped or otherwise jolted.

The output member may comprise a ratchet wheel. The actuator may comprise a pawl and in which the ratchet wheel and pawl are arranged to permit only one-way ratcheting motion of the wheel relative to the pawl. The dose counter may include an anti-back drive member fixed to the main body. In a rest position of the dose counter, the ratchet wheel is capable of adopting a configuration in which a back surface of one tooth thereof engages the anti-back drive member and the pawl is spaced from an adjacent back

TEVAQVAR-00031243

US 9,463,289 B2

11 12

surface of another tooth of the ratchet wheel without positive drive/blocking engagement between the pawl and wheel.

## BRIEF DESCRIPTION OF THE DRAWINGS

The present invention may be carried out in various ways and preferred embodiment of a dose counter, inhaler and methods of assembly, design and manufacture will now be described with reference to the accompanying drawings in which:

FIG. **1** is an isometric view of a main body of an embodiment of an inhaler related to the invention together with a mouthpiece cap therefor;

FIG. **2** is a top plan view of the components as shown in FIG. **1**;

FIG. **3A** is a section on the plane **3A-3A** in FIG. **2**;

FIG. **3B** is a view corresponding to FIG. **3A** but with a dose counter fitted to the main body of the inhaler;

FIG. **4A** is a exploded view of the inhaler main body, mouthpiece cap, dose counter and a dose counter window;

FIG. **4B** is a view in the direction **4B** in FIG. **4C** of a spring retainer in the dose counter;

FIG. **4C** is a top view of the spring retainer of FIG. **4B**;

FIG. **5** is a bottom view of the assembled inhaler main body, mouthpiece cap, dose counter and dose counter window;

FIGS. **6A**, **6B**, **6C**, **6D**, **6E**, **6F**, **6G** and **6H** are various views of dose counter components of the inhaler;

FIGS. **7A** and **7B** are sectional views showing canister clearance inside the main body of the inhaler;

FIG. **7C** is a further sectional view similar to that of FIG. **7B** but with the canister removed;

FIG. **7D** is a top plan view of the inhaler main body;

FIGS. **8A**, **8B**, **8C** and **8D** show the inhaler main body and dose counter components during assembly thereof;

FIG. **9** shows a sectional side view of a datum line for an actuator pawl of the dose counter;

FIGS. **10A**, **10B**, **10C**, **10D**, **10E** and **10F** show various side views of positions and configurations of the actuator pawl, a ratchet wheel, and a count pawl;

FIG. **11** shows distributions for tolerances of start, reset, fire, count and end positions for the actuator of the dose counter;

FIG. **12** is an enlarged version of part of FIG. **4A**;

FIG. **13** shows an end portion of a tape of the dose counter;

FIG. **14** shows a computer system for designing the dose counter;

FIG. **15** is an isometric view of a stock bobbin modified in accordance with the present invention for use in the dose counter of the inhaler of FIGS. **1** to **14**;

FIG. **16** shows an end view of the stock bobbin of FIG. **15**;

FIG. **17** is a section through a longitudinal axis of the stock bobbin of FIGS. **15** and **16**;

FIGS. **18A** to **18C** are views of the stock bobbin of FIGS. **15** to **17** mounted in the dose counter chassis of FIGS. **1** to **14**, with the control elements of the forks of the second shaft (or split pin) having a profile slightly different to that in FIG. **6F**, with the forks in a compressed configuration;

FIGS. **19A** to **19C** are views equivalent to FIGS. **18A** to **18C** but with the forks in a more expanded configuration due to a different rotational position of the stock bobbin;

FIG. **20** is an isometric view of the chassis assembled and including the stock bobbin of FIGS. **15** to **17** but excluding the tape for reasons of clarity;

FIG. **21** is a view of a preferred embodiment of a dry powder inhaler in accordance with the present invention;

FIG. **22** is an exploded view of the inhaler of FIG. **21**;

FIG. **23** is a view of a dose counter of the inhaler of FIG. **21**;

FIG. **24** is an exploded view of the dose counter shown in FIG. **23**;

FIG. **25** is an exploded view of parts of the inhaler of FIG. **21**; and

FIG. **26** is a view of a yoke of the inhaler of FIG. **21**.

## DETAILED DESCRIPTION OF THE INVENTION

FIG. **1** shows a main body **10** of a manually operated metered dose inhaler **12** in accordance with an embodiment related to the present invention and having a mouthpiece cap **14** securable over a mouthpiece **16** of the main body.

The main body has a canister chamber **18** into which a canister **20** (FIG. **7A**) is slideable. The canister **20** has a generally cylindrical main side wall **24**, joined by a tapered section **26** to a head portion **28** having a substantially flat lower face **30** which has an outer annular drive surface **32** arranged to engage upon and drive an actuation pin **34** of a dose counter **36** as will be described. Extending centrally and axially from the lower face **30** is a valve stem **38** which is arranged to sealingly engage in a valve stem block **40** of the main body **10** of the inhaler **12**. The valve stem block **40** has a passageway **42** leading to a nozzle **44** for directing the contents of the canister **20**, namely active drug and propellant, towards an air outlet **46** of the inhaler main body **12**. It will be appreciated that due to gaps **48** between the canister **20** and an inner wall **50** of the main body **10** of the inhaler **12** an open top **52** of the main body **10** forms an air inlet into the inhaler **12** communicating via air passageway **54** with the air outlet **46**, such that canister contents exiting nozzle **44** mix with air being sucked by the user through the air passageway **54** in order to pass together through the air outlet and into the mouth of the user (not shown).

The dose counter **36** will now be described. The dose counter **36** includes an actuation pin **34** biased upwardly from underneath by a return spring **56** once installed in the main body **10**. As best shown in FIGS. **4A**, **6H** and **8A**, the pin **34** has side surfaces **58**, **60** arranged to slide between corresponding guide surfaces **62**, **64** located in a dose counter chamber **66** of the main body **10**, as well as an end stop surface **68** arranged to engage a corresponding end stop **70** formed in the dose counter chamber **66** to limit upward movement of the pin **34**. The pin **34** has a top part **72** which is circularly cylindrical and extends through an aperture **74** formed through a separator wall **76** which separates the canister chamber **18** from the dose counter chamber **66**. The top part **72** of the pin **34** has a flat top surface **78** which is arranged to engage the outer annular drive surface **32** of the canister **20**.

The actuation pin **34** is integrally formed with a drive or actuator pawl **80**. The actuator pawl **80** has a generally inverted U-shape configuration, having two mutually spaced and parallel arms **82**, **84** extending from a base portion of the actuation pin **34**, each holding at respective distal ends **88** thereof opposite ends of a pawl tooth member **90** which extends in a direction substantially perpendicular to the arms **82**, **84**, so as to provide what may be considered a "saddle" drive for pulling on each of the 11 drive teeth **92** of a ratchet wheel **94** of an incremental drive system **96** or ratchet mechanism **96** of the dose counter **36**. As shown for example in FIG. **10B**, the pawl tooth member **90** has a sharp lower longitudinal side edge **98** arranged to engage the drive teeth **92**, the edge-to-surface contact provided by this engagement

TEVAQVAR-00031244

US 9,463,289 B2

13

providing very accurate positioning of the actuator pawl 80 and resultant rotational positioning of the ratchet wheel 94.

The dose counter 36 also has a chassis preassembly 100 which, as shown in FIGS. 4A and 6A, includes a chassis 102 having a first shaft 104 receiving the ratchet wheel 94 which is secured to a tape reel shaft 106, and a second shaft (or split pin) 108 which is parallel to and spaced from the first shaft 104 and which slidably and rotationally receives a tape stock bobbin 110.

As shown in FIG. 6B, when the inhaler has not been used at all, the majority of a tape 112 is wound on the tape stock bobbin 110 and the tape 112 has a series of regularly spaced numbers 114 displayed therealong to indicate a number of remaining doses in the canister 20. As the inhaler is repeatedly used, the ratchet wheel 94 is rotated by the actuator pawl 80 due to operation of the actuation pin 34 by the canister 20 and the tape 112 is incrementally and gradually wound on to the tape reel shaft 106 from the second shaft 108. The tape 112 passes around a tape guide 116 of the chassis 102 enabling the numbers 114 to be displayed via a window 118 in a dose counter chamber cover 120 having a dose marker 132 formed or otherwise located thereon.

As shown in FIGS. 6A and 6D, the second shaft 108 is forked with two forks 124, 126. The forks 124, 126 are biased away from one another. The forks have located thereon at diametrically opposed positions on the second shaft 108 friction or control elements 128, 130, one on each fork. Each control element extends longitudinally along its respective fork 124, 126 and has a longitudinally extending friction surface 132, 134 which extends substantially parallel to a longitudinal axis of the second shaft and is adapted to engage inside a substantially cylindrical bore 136 inside the tape stock bobbin 110. This control arrangement provided between the bore 136 and the control elements 128, 130 provides good rotational control for the tape stock bobbin 110 such that it does not unwind undesirably such as when the inhaler is dropped. The tape force required to unwind the tape stock bobbin 110 and overcome this friction force is approximately 0.1 N.

As can be seen in FIG. 6D, as well as FIGS. 6G and 10A to 10F, the chassis 102 is provided with an anti-back drive tooth 138 or count pawl 138 which is resiliently and substantially fixedly mounted thereto. As will be described below and as can be seen in FIGS. 10A to 10F, when the actuation pin 34 is depressed fully so as to fire the metered valve (not shown) inside the canister 20, the actuator pawl 80 pulls down on one of the teeth 92 of the ratchet wheel 94 and rotates the wheel 94 anticlockwise as shown in FIG. 6D so as to jump one tooth 92 past the count pawl 138, thereby winding the tape 112 a distance incrementally relative to the dose marker 122 on the dose counter chamber 120 so as to indicate that one dose has been used.

With reference to FIG. 10B, the teeth of the ratchet wheel 94 have tips 143 which are radiused with a 0.1 mm radius between the flat surfaces 140, 142. The ratchet wheel 94 has a central axis 145 which is 0.11 mm above datum plane 220 (FIG. 9). A top/nose surface 147 of the anti-back drive tooth 138 is located 0.36 mm above the datum plane 220. The distance vertically (i.e. transverse to datum plane 220—FIG. 9) between the top nose surface 147 of the anti-back drive tooth is 0.25 mm from the central axis 145 of the wheel 94. Bump surface 144 has a lateral extent of 0.20 mm, with a vertical length of a flat 145′ thereof being 1 mm, the width of the bump surface being 1.22 mm (in the direction of the axis 145), the top 149 of the bump surface 144 being 3.02 mm vertically below the axis 145, and the flat 145′ being spaced a distance sideways (i.e. parallel to the datum plane

14

220) 2.48 mm from the axis 145. The top surface 78 of the pin 34 (FIG. 6H) is 11.20 mm above the datum plane 220 (FIG. 9) when the actuator pawl 80 and pin 34 are in the start configuration. The length of the valve stem 22 is 11.39 mm and the drive surface 32 of the canister 20 is 11.39 mm above the datum plane 220 when the canister is at rest waiting to be actuated, such that there is a clearance of 0.19 mm between the canister 20 and the pin 34 in this configuration.

FIGS. 10A and 10B show the actuator pawl 80 and ratchet wheel 94 and count pawl 138 in a start position in which the flat top 78 of the pin 34 has not yet been engaged by the outer annular drive surface 32 of the canister 20 or at least has not been pushed down during a canister depression.

In this "start" position, the count pawl 138 engages on a non-return back surface 140 of one of the teeth 92 of the ratchet wheel 94. The lower side edge 98 of the actuator pawl is a distance "D" (FIG. 9) 1.33 mm above datum plane 220 which passes through bottom surface or shoulder 41 of valve stem block 40, the datum plane 220 being perpendicular to a main axis "X" of the main body 10 of the inhaler 12 which is coaxial with the centre of the valve stem block bore 43 and parallel to a direction of sliding of the canister 20 in the main body 10 of the inhaler 12 when the canister is fired.

As shown in FIG. 10B, an advantageous feature of the construction is that the pawl tooth/actuator 90 acts as a supplementary anti-back drive member when the inhaler 12 is not being used for inhalation. In particular, if the inhaler 12 is accidentally dropped, resulting in a jolt to the dose counter 36 then, if the wheel 94 would try to rotate clockwise (backwards) as shown in FIG. 10B, the back surface 140 of a tooth will engage and be blocked by the tooth member 90 of the pawl 80. Therefore, even if the anti-back drive tooth 138 is temporarily bent or overcome by such a jolt, undesirable backwards rotation of the wheel 94 is prevented and, upon the next canister firing sequence, the pawl 90 will force the wheel 94 to catch up to its correct position so that the dose counter 36 continues to provide correct dosage indication.

FIG. 10C shows a configuration in which the actuator pawl 80 has been depressed with the pin 34 by the canister 20 to a position in which the side edge 98 of the pawl tooth member 90 is just engaged with one of the teeth 92 and will therefore upon any further depression of the pin 34 begin to rotate the wheel 94. This is referred to as a "Reset" position or configuration. In this configuration, the lower side edge 98 of the actuator 80 is 0.64 mm above the datum plane 220.

FIG. 10D shows a configuration in which the actuator pawl 80 has been moved to a position lower than that shown in FIG. 10C and in which the metered dose valve (not shown) inside the canister has at this very position fired in order to eject active drug and propellant through the nozzle 44. It will be noted that in this configuration the count pawl 138 is very slightly spaced from the back surface 140 of the same tooth 92 that it was engaging in the configuration of FIG. 10D. The configuration shown in FIG. 10D is known as a "Fire" configuration. In this configuration the lower side edge 98 of the actuator 80 is 0.47 mm below the datum plane 220.

FIG. 10E shows a further step in the sequence, called a "Count" position in which the actuator pawl 80 has rotated the ratchet wheel 94 by the distance circumferentially angularly between two of the teeth 92, such that the count pawl 138 has just finished riding along a forward surface 142 of one of the teeth 92 and has resiliently jumped over the tooth into engagement with the back surface 140 of the next tooth. Accordingly, in this "Count" configuration, a sufficiently

US 9,463,289 B2

15

long stroke movement of the pin **34** has occurred that the tape **112** of the dose counter **36** will just have counted down one dose. In this configuration, the lower side edge **98** of the actuator is 0.95 mm below the datum plane **220**. Accordingly, in this position, the actuator **80** generally, including edge **98**, is 0.48 mm lower than in the fire configuration. It has been found that, although the count configuration happens further on than the fire configuration, counting is highly reliable, with less than one in 50 failed counts per million. This is at least partially due to momentum effects and to the canister releasing some back pressure on the user in some embodiments as its internal metering valve fires.

In the configuration of FIG. **10**F, the pawl **80** has been further depressed with the pin **34** by the canister **20** to a position in which it is just disengaging from one of the teeth **92** and the actuator pawl **80** is assisted in this disengagement by engagement of one of the arms **84** with a bump surface **144** on the chassis **102** (see FIG. **6**G) and it will be seen at this point of disengagement, which is called an "End" configuration, the count pawl **138** is positioned exactly halfway or substantially halfway between two of the drive teeth **92**. This advantageously means therefore that there is a minimum chance of any double counting or non-counting, which would be undesirable. In the end configuration, the side edge **98** of the actuator is 1.65 mm below the datum plane **220**. It will be appreciated that any further depression of the actuator pawl **80** and pin **34** past the "End" configuration shown in FIG. **10**F will have no effect on the position of the tape **112** displayed by the dose counter **36** since the actuator pawl **80** is disengaged from the ratchet wheel **94** when it is below the position shown in FIG. **10**F.

As shown in FIGS. **7**C and **7**D, the inner wall **50** of the main body **10** is provided with a two-step support rail **144** which extends longitudinally along inside the main body and is located directly adjacent the aperture **74**. As shown in FIG. **7**B a diametrically opposed two-step support rail **146** is also provided and this diametrically opposed in the sense that a vertical plane (not shown) can pass substantially directly through the first rail **144**, the aperture **74**, a central aperture **148** of the valve stem block **40** (in which canister stem **25** is located) and the second two-step support rail **146**. As shown in FIG. **7**A and schematically in FIG. **7**B, the rails **144**, **146** provide a maximum clearance between the canister **20** and the rails **144**, **146** in a radial direction of almost exactly 0.3 mm, about 0.25 to 0.35 mm being a typical range. This clearance in this plane means that the canister **20** can only rock backwards and forwards in this plane towards away from the actuation pin **34**. A relatively small distance and this therefore prevents the canister wobbling and changing the height of the actuation pin **34** a as to undesirably alter the accuracy of the dose counter **36**. This is therefore highly advantageous.

The inner wall **50** of the main body **10** is provided with two further two-step rails **150** as well as two pairs **152**, **154** of rails extending different constant radial amounts inwardly from the inner wall **50**, so as to generally achieve a maximum clearance of almost exactly 0.3 mm around the canister **20** for all of the rails **144**, **146**, **150**, **152**, **154** spaced around the periphery of the inner wall **50**, in order to prevent undue rocking while still allowing canister motion freely inside the inhaler **12**. It will be clear from FIG. **7**C for example that the two-step rails have a first portion near an outlet end **156** of the canister chamber **18**, the first portion having a substantially constant radial or inwardly-extending width, a first step **160** leading to a second portion **162** of the rail, the second portion **102** having a lesser radial or inwardly

16

extending extent than the first portion **156**, and finally a second step **164** at which the rail merges into the main inner wall **50** main surface.

A method of assembling the inhaler **12** will now be described.

With reference to FIG. **8**A, the main body **10** of the inhaler **12** is formed by two or more plastics mouldings which have been joined together to the configuration shown.

As shown in FIG. **8**B, the actuator pawl **80** and pin **34** are translated forward into position into a pin receiving area **166** in the dose counter chamber **66** and the pin **34** and actuator **80** may then be raised until the pin **34** emerges through the aperture **74**.

Next, the return spring **56** may be inserted below the pin **34** and a generally cylindrical annular lower end **168** of the spring **56** may be moved by a tweezer or tweezer-like assembly tool (not shown) into engagement with a shelf **170** of a spring retainer **172** in the dose counter chamber **66**. The spring retainer **172** is U-shaped and the shelf **170** is U-shaped and has a recess **174** formed below it. As shown in FIGS. **4**B, **4**C and **12** shelf **170** includes three chamfer surfaces **176**, **178**, **180** arranged to assist in moving the lower end of the spring **168** into position onto the shelf using the assembly tool (not shown). Once the lower end of the spring **168** is in place, the assembly tool (not shown) can easily be removed at least partly via the recess **174** below the lower end **168** of the spring **56**.

The tape **112** is attached at one end (not shown) to the tape stock bobbin **110** and is wound onto the bobbin by a motor **200** (FIG. **13**) having a hexagonal output shaft **202** which engages in a hexagonal socket **204** (FIG. **6**B) of the bobbin. During winding, the tape is monitored by a sensor **206**, which may be in the form of a camera or laser scanner, which feeds data to a computer controller **205** for the motor **200**. The controller **205** recognises three positioning markers **210** in the form of lines across the tape **112** and stops the motor **202** when the tape **112** is nearly fully wound onto the bobbin **110**, such that the distal end **212** of the tape **112** can be secured, e.g. by adhesive, to the tape reel shaft **106**. The controller **205** also recognises a pixelated tape size marker **214** observed by the sensor **206** and logs in a stocking system data store **217** details of the tape **112** such as the number of numbers **114** on the tape, such as one hundred and twenty or two hundred numbers **114**. Next, the tape reel shaft is wound until an appropriate position of the lines **210** at which a priming dot **216** will, once the bobbin **110** and reel shaft **106** are slid onto the second shaft **108** and second shaft **104**, be in a position to be located in the window **118** when the inhaler **12** is fully assembled. In the embodiments, the bobbin **110** and reel shaft **106** may be slid onto the shafts **108**, **104** before the tape **112** is secured to the reel shaft **106** and the reel shaft may then be wound to position the priming dot **216**.

Next, the assembled dose counter components of the chassis preassembly **100** shown in FIG. **6**B may as shown in FIG. **8**C be inserted into the dose counter chamber **66**, with pins **182**, **184**, **186** formed on the main body **10** in the dose counter chamber **66** passing through apertures or slots **188**, **190**, **192** formed on the chassis **102**, such that the pins **182**, **184**, **186** extend through (or at least into) the apertures or slots **188**, **190**, **192**. With the chassis **102** being relatively firmly pushed towards the main body **10**, the pins **182**, **184**, **186** are then heat staked and the chassis **102** is therefore after this held very firmly in position in the main body and is unable to move, thereby assisting in providing great accuracy for the dose counter **36**. Next, as shown in FIG. **8**D, the dose counter chamber cover **120** may be fitted over the dose

TEVAQVAR-00031246

US 9,463,289 B2

17                                                                    18

counter chamber **66** and may be secured in place such as by welding, with the priming dot **216** being displayed through the window.

The user can, when readying the inhaler **12** for first use, prime the inhaler by depressing the canister **20** three times which will bring the first number **114** on the tape into display through the window **118** in place of the priming dot **216**, the number **114** shown in FIG. **8**D being "200", thereby indicating that 200 doses are remaining to be dispensed from the canister **20** and inhaler **12**.

As shown in FIG. **8**D, and in FIG. **5**, an open drain hole **194** is provided at the bottom of the dose counter chamber **66** by a substantially semi-circular cut-out or recess formation **196** in a lower surface **198** of the main body **10** of the inhaler. Accordingly, if the user (not shown) should decide to wash the main body **10** of the inhaler, for example after encountering an unhygienic situation or simply as a matter of choice, the drain hole **194** allows initial draining of water from inside the dose counter chamber **66** and also thereafter evaporation of water or any aqueous matter in the dose counter chamber **66** so that the window **118** does not mist up undesirably.

FIG. **14** shows a computer system **230** for designing the dose counter **36** and in particular for calculating distributions representative of average positions and standard deviations in a production series of inhalers of the start, reset, fire, count and end positions of the actuator lower side edge **98** relative to the datum plane **220** (FIG. **9**) and therefore of the actuator pawl **80** generally relative to the ratchet wheel **94**, and, when the inhaler **12** is fully assembled, the main body **10** of the inhaler **12**. The computer system **230** includes a data store **232**, a CPU **234**, an input device **236** (such as a keyboard or communication port) and an output device **238** (such as a communications port, display screen and/or printer). A user may enter data via the input device **236** which may be used by the CPU **234** in a mathematical calculation to predict count failure rates when the various dose counters are to be built in a series with dose counter positions set with given averages and standard deviations and taking into account any momentum/inertia effects and metering valve user-back-pressure reduction effect which will occur upon canister firing of a given type of canister. The computer system **230** is thus mathematically used to design the distributions. For the inhaler **12** described herein with the dose counter **36** and canister **20**, the distributions are designed as shown in FIG. **11**. The x axis shows distance of the lower side surface **98** of the actuator **80** above the datum plane **220** and the y axis is representative of the distribution. Thus, curve **240** shows that the start configuration has an average 1.33 mm above the datum plane **200** (standard deviation is 0.1 mm), curve **242** shows that the reset configuration has an average of 0.64 mm above the datum plane **220** (standard deviation is 0.082 mm), curve **244** shows the fire configuration has an average 0.47 mm below the datum plane **220** (standard deviation is 0.141 mm), curve **246** shows the count configuration has an average 0.95 mm below the datum plane **220** (standard deviation is 0.080 mm), and curve **248** shows the end configuration has an average of 1.65 mm below the datum plane **220** (standard deviation is 0.144 mm).

FIGS. **15** to **20** show a version of the inhaler modified in accordance with the present invention. In these drawings, the same reference numerals have been used to those in the earlier drawings to denote the equivalent components. The inhaler **12** is the same as that in FIGS. **1** to **14** apart from the following modifications.

First, it can be seen that there is a modification in that the drive teeth **92** of the ratchet wheel **94** have a different profile to that in FIGS. **1** to **14**. There are also only nine ratchet teeth **94** in this embodiment instead of eleven.

Additionally, as shown in FIGS. **18**C and **19**C, the control elements **128**, **130** on the forks **124**, **126** of the second shaft **108** have a tapered profile which is different to the profile of the control elements **128**, **130** shown in FIG. **6**F. Either profile can be used in the embodiment of FIGS. **15** to **20** however.

Furthermore, as shown in FIG. **15**, the tape stock bobbin **110** has an inwardly facing generally cylindrical engagement surface **300** with a wavelike form extending partially therealong. The engagement surface **300** has a cross-section **301** perpendicular to the longitudinal length of the stock bobbin **110** which is constant therealong. This cross-section **301** can be seen in FIG. **16** and consists of a series of ten regularly spaced concavities **302** and ten convex wall portions **304**. The convex wall portions **304** are equi-spaced between the concavities **302**. Each concavity **302** has a radius of 0.2 mm. Each convex wall portion **304** also has a radius of 0.2 mm. Finally, the cross section **301** also includes flat wall portions **306** between all of the radiused wall portions of the concavities **302** and convex wall portions **304**. The geometry of the cross-section **301** is therefore defined by the radii of the concavities **302** and convex wall portions **304**, the flat wall portions **306** and the fact that there are ten concavities **302** and convex wall portions **304**.

The minor diameter of the engagement surface **300**, i.e. between the tips of opposite convex wall portions **304**, is 2.46 mm. The major diameter of the engagement surface **300**, i.e. between the outermost portions of the concavities **302**, is 2.70 mm. The undeformed tip to tip maximum diameter of the forks **124**, **126** of the split pin (the second shaft) **108**, i.e. in the region of the maximum radio extent of the control elements **128**, **130**, is 3.1 millimeters and it will therefore be appreciated that the forks **124**, **126** are resiliently compressed once the stock bobbin **110** has been assembled onto the split pin **108** in all rotational configurations of the stock bobbin **110** relative to the split pin **108**. The minimum gap between the forks **124**, **126** in the plane of the cross sections of FIGS. **18**C and **19**C is 1 mm when the split pin **108** is in the undeformed, pre-inserted state. When the split pin **108** is at maximum compression, as shown in FIGS. **18**A to **18**C when the control elements **128**, **130** are shown to be engaged on top of the convex wall portions **304**, the gap **308** between the tips **310**, **312** of the forks **124**, **126** is 0.36 mm. On the other hand, when the split pin **108** is at minimum compression (once inserted into the stock bobbin) as shown in FIGS. **19**A to **19**C, when the control elements **128**, **130** rest in the concavities **302**, the gap between the tips **310**, **312** of the forks **124**, **126** is 0.6 mm. The control elements **128**, **130** are outwardly radiused with a radius also of 0.2 mm such that they can just rest on the concavities **302** with full surface contact (at least at an axial location on the split pin where the tapered control elements are at their maximum radial extent), without rattling in, locking onto or failing to fit in the concavities **302**. The radii of the control elements **128**, **130** is therefore preferably substantially the same as the radii of the concavities **302**.

It will be appreciated that whereas FIGS. **18**B and **19**B are end views along the coaxial axis of the stock bobbin **110** and split pin **108**, FIGS. **18**A and **19**A are cross-sections. FIG. **19**A is a section on the plane A-A' in FIG. **19**C and FIG. **18**A is a section at the same plane, but of course with the stock bobbin **110** rotated relative to the split pin **108**.

TEVAQVAR-00031247

US 9,463,289 B2

19                                                                    20

As the inhaler **12** is used and the ratchet wheel **94** rotates in order to count used doses, the stock bobbin rotates incrementally through rotational positions in which rotation is resisted, i.e. due to increasing compression of the split pin **108** at such rotational positions, and rotational positions in which rotation is promoted, i.e. due to decreasing compression of the split pin **108** at such rotational positions and this may involve a click forward of the stock bobbin **110** to the next position equivalent to that in FIGS. **19**A to **19**C in which the control elements **128**, **130** of the split pin are located in the concavities **302**. This functionality firstly allows the stock bobbin to unwind during use as required, but also prevents the tape **112** from loosening during transit if the inhaler **12** is dropped, such as onto a hard surface. This is highly advantageous, since the tape **11** is prevented from moving to a position in which it will give an incorrect reading regarding the number of doses in the canister.

During compression and expansion of the forks in the radial direction between the two configurations shown in FIGS. **18**C and **19**C, the forks **124**, **126** rotate about a point **316** on the split pin where the forks **124**, **126** come together. This rotational action means that there is a camming action between the forks **124**, **126** and the engagement surface **300** without significant friction but, nevertheless, the resilient forces provided by the regulator formed by the engagement surface **300** and forks **124**, **126** are able to regulate unwinding of the tape such that it does not easily occur during transit or if the inhaler **12** is dropped. It has been found during testing that a force of 0.3 to 0.4 N needs to be applied to the tape **112** to overcome the regulator at the stock bobbin **110**. 0.32 N is achieved with the control elements **128** having the profile shown in FIG. **19**C and 0.38 N is achieved with the profile of the control elements **128** altered to be as shown as described with reference to FIG. **6**F. These forces are substantially higher than the 0.1 N force mentioned above and undesirable movement of the tape is substantially avoided even if the inhaler is dropped onto a hard surface. The modified arrangement of FIGS. **15** to **20** does not provide this force "constantly" such that there is overall not an undesirably high friction of the tape **112** as it passes over the other components of the dose counter because, due to the incremental nature of the resilient forces at the regulator, the tape **112** can incrementally relax as it slides over the stationary chassis components.

Instead of having ten concavities **302** and convex wall portions **304**, other numbers may be used, such as 8 or 12. However, it is preferred to have an even number, especially since two control elements **128**, **130** are provided, so that all of the control elements **128**, **130** will expand and contract simultaneously. However, other arrangements are envisaged with 3 or more forks and the number of concavities/convex wall portions may be maintained as an integer divisible by the number of forks to maintain a system with simultaneous expansion/contraction. For example, the use of 9, 12 or 15 concavities/convex wall portions with 3 forks is envisaged.

Instead of having the engagement surface **300** on the inside of the stock bobbin **110**, it could be placed on the outside of the stock bobbin **110** so as to be engaged by flexible external legs/pawls or similar.

It will be noted that the regulator provided by the engagement surface **300** and forks **124**, **126** does not only allow rotation of the stock bobbin in one direction as is the case with the ratchet wheel **94**. Rotation in both directions is possible, i.e. forwards and backwards. This means that during assembly, the stock bobbin **110** can be wound backwards during or after fitting the bobbin **100**, shaft **106** and tape **112** onto the carriage **102**, if desired.

The stock bobbin **110** and the carriage **102** including the split pin **108** are both moulded of polypropylene material.

It will be seen from FIG. **16** that the cross-sectional shape **301** is not symmetrical within the hexagonal socket **204**. This has enabled the hexagonal socket **204** to be maintained at a useful size while still allowing the desired size and geometry of the cross section **301** to fit without interfering with the hexagonal shape of the hexagonal socket **204** and also permits moulding to work during manufacture.

As shown in FIG. **17**, the stock bobbin **110** has a series of four circumferential ribs **330** inside it and a spaced therealong. These hold the stock bobbin **110** on the correct side of the mould tool during moulding.

FIGS. **21** and **22** show a preferred embodiment in accordance with the invention of an inhaler **510** for dispensing a dry-powdered medicament in metered doses for patient inhalation. The inhaler **510** is as disclosed in FIGS. **1** to **16** or EP-A-1330280, the contents of which are hereby fully incorporated herein by reference, but with the stock bobbin **110** and second shaft **108** of the dose counter **516** modified so as to be as in FIGS. **15** to **20** hereof. Thus, the dry powder inhaler **510** generally includes a housing **518**, and an assembly **512** received in the housing (see FIG. **21**). The housing **518** includes a case **520** having an open end **522** and a mouthpiece **524** (FIG. **25**) for patient inhalation, a cap **526** secured to and closing the open end **522** of the case **520**, and a cover **528** pivotally mounted to the case **520** for covering the mouthpiece **524**. As shown in FIG. **22**, the inhaler **510** also includes an actuation spring **569**, first yoke **566** with opening **572**, bellows **540** with crown **574**, a reservoir **514**, second yoke **568** with hopper **542** and dose counter **516** mounted thereto, and case **520** has transparent window **5130** thereon for viewing dose counter tape indicia **5128**. The dose metering system also includes two cams **570** mounted on the mouthpiece cover **528** and movable with the cover **528** between open and closed positions. The cams **570** each include an opening **580** for allowing outwardly extending hinges **582** of the case **520** to pass therethrough and be received in first recesses **584** of the cover **528**. The cams **570** also include bosses **586** extending outwardly and received in second recesses **588** of the cover **528**, such that the cover **528** pivots about the hinges **582** and the cams **570** move with the cover **528** about the hinges **582**. As described in EP-A-1330280, cams **570** act upon cam followers **578** to move second yoke **568** up and down and thereby operate dose counter by engagement of pawl **5138** on the second yoke **568** with teeth **5136**. Remaining components of the inhaler are provided as, and operate as described, in EP-A-1330280.

The dose counting system therefore includes a ribbon or tape **5128** (FIGS. **23** & **24**), having successive numbers or other suitable indicia printed thereon, in alignment with a transparent window **5130** provided in the housing **18** (see FIG. **22**). The dose counting system **516** includes the rotatable stock bobbin **110** (as described above), an indexing spool **5134** rotatable in a single direction, and the ribbon **5128** rolled and received on the bobbin **110** and having a first end **527** secured to the spool **5134**, wherein the ribbon **5128** unrolls from the bobbin **110** so that the indicia are successively displayed as the spool **5134** is rotated or advanced. In FIGS. **23** and **24** the wavelike engagement surface **300** of the bobbin **110** is not shown for the purposes of clarity.

The spool **134** is arranged to rotate upon movement of the yokes **566**, **568** to effect delivery of a dose of medicament from reservoir **514**, such that the number on the ribbon **5128** is advanced to indicate that another dose has been dispensed by the inhaler **510**. The ribbon **5128** can be arranged such that the numbers, or other suitable indicia, increase or

TEVAQVAR-00031248

US 9,463,289 B2

| 21 | 22 |

decrease upon rotation of the spool **5134**. For example, the ribbon **5128** can be arranged such that the numbers, or other suitable indicia, decrease upon rotation of the spool **5134** to indicate the number of doses remaining in the inhaler **510**. Alternatively, the ribbon **5128** can be arranged such that the numbers, or other suitable indicia, increase upon rotation of the spool **5134** to indicate the number of doses dispensed by the inhaler **10**.

The indexing spool **5134** includes radially extending teeth **5136**, which are engaged by pawl **5138** extending from a cam follower **578** of the second yoke **568** upon movement of the yoke to rotate, or advance, the indexing spool **5134**. More particularly, the pawl **5138** is shaped and arranged such that it engages the teeth **5136** and advances the indexing spool **5134** only upon the mouthpiece cover **528** being closed and the yokes **566**, **568** moved back towards the cap **526** of the housing **518**.

The dose counting system **516** also includes a chassis **5140** that secures the dose counting system to the hopper **542** and includes shafts **108**, **5144** for receiving the bobbin **110** and the indexing spool **5134**. As described above with reference to FIGS. **1** to **20**, the bobbin shaft **108** is forked and includes radially nubs **5146** for creating a resilient resistance to rotation of the bobbin **110** on the shaft **108** by engaging with the wavelike engagement surface **300** inside the bobbin **110**. A clutch spring **5148** is received on the end of the indexing spool **5134** and locked to the chassis **5140** to allow rotation of the spool **5134** in only a single direction.

Various modifications may be made to the embodiment shown without departing from the scope of the invention as defined by the accompanying claims as interpreted under patent law.

What is claimed:

**1**. An inhaler for metered dose inhalation, the inhaler comprising:

a main body having a canister housing,

a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and

a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister,

wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, and

wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port,

the inner wall canister support formation, the actuation member, and the central outlet port lying in a common plane coincident with the longitudinal axis X.

**2**. The inhaler as claimed in claim **1** wherein the medicament canister is movable relative to the dose counter.

**3**. The inhaler as claimed in claim **1** further comprising an aperture formed in the inner wall through which the portion of the actuation member extends.

**4**. The inhaler as claimed in claim **1**, wherein the first inner wall canister support formation comprises a support rail which extends longitudinally along an inside surface of the main body.

**5**. The inhaler as claimed in claim **4**, wherein the support rail includes a step formed thereon.

**6**. The inhaler as claimed in claim **4** further comprising a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

**7**. The inhaler as claimed in claim **6**, wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

**8**. The inhaler as claimed in claim **4**, wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

**9**. The inhaler as claimed in claim **4**, wherein the support rail merges with the inner wall at a location adjacent the aperture.

**10**. The inhaler as claimed in claim **9**, wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail merges with the inner wall.

\*   \*   \*   \*   \*

TEVAQVAR-00031249



## THE UNITED STATES OF AMERICA

### TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

February 26, 2021

THIS IS TO CERTIFY THAT ANNEXED HERETO IS A TRUE COPY FROM
THE RECORDS OF THIS OFFICE OF:

U.S. PATENT: *9,808,587*
ISSUE DATE: *November 07, 2017*

By Authority of the

Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

P. R. GRANT

Certifying Officer

Dist. of New Jersey
C.A. No. 20-10172 (JXN)(MAH)
Consolidated

**JTX-004**

TEVAQVAR-00031250



US009808587B2

(12) **United States Patent**
Walsh et al.

(10) Patent No.: **US 9,808,587 B2**
(45) Date of Patent: *****Nov. 7, 2017**

(54) **DOSE COUNTER FOR INHALER HAVING AN ANTI-REVERSE ROTATION ACTUATOR**

(71) Applicants: **IVAX PHARMACEUTICALS IRELAND**, Waterford (IE); **NORTON (WATERFORD) LIMITED**, Waterford (IE); **TEVA PHARMACEUTICALS IRELAND**, Waterford (IE)

(72) Inventors: **Declan Walsh**, Co. Kilkenny (IE); **Derek Fenlon**, Co. Wexford (IE); **Simon Kaar**, Co. Cork (IE); **Jan Geert Hazenberg**, Co. Kilkenny (IE); **Daniel Buck**, Co. Waterford (IE); **Paul Clancy**, Waterford (IE); **Robert Charles Uschold**, Leominster, MA (US); **Jeffrey A. Karg**, Hopkinton, MA (US)

(73) Assignees: **IVAX PHARMACEUTICALS IRELAND** (IE); **TEVA PHARMECEUTICALS IRELAND** (IE); **NORTON (WATERFORD) LIMITED** (IE)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **15/269,249**

(22) Filed: **Sep. 19, 2016**

(65) **Prior Publication Data**

US 2017/0000962 A1    Jan. 5, 2017

**Related U.S. Application Data**

(60) Continuation of application No. 14/103,324, filed on Dec. 11, 2013, now Pat. No. 9,463,289, which is a
(Continued)

(51) **Int. Cl.**
*G06M 1/06* (2006.01)
*A61M 11/00* (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC ........ *A61M 15/0078* (2014.02); *A61M 11/00* (2013.01); *A61M 15/009* (2013.01);
(Continued)

(58) **Field of Classification Search**
USPC .................................. 235/8, 103; 128/200.23
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,174,890 A | 11/1979 | Johnson | |
| 4,669,838 A | 6/1987 | Hibbard | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CA | 2501726 | 9/2006 |
| EP | 1330280 | 7/2003 |

(Continued)

OTHER PUBLICATIONS

Final Office Action dated Oct. 20, 2016 for U.S. Appl. No. 14/699,567.
(Continued)

*Primary Examiner* — Daniel Hess
(74) *Attorney, Agent, or Firm* — Morgan, Lewis & Bockius LLP

(57) **ABSTRACT**

An inhaler includes a main body having a canister housing, a medicament canister retained in a central outlet port of the canister housing, and a dose counter having an actuation member for operation by movement of the medicament canister. The canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall. The canister housing
(Continued)



TEVAQVAR-00031251

US 9,808,587 B2

Page 2

has a longitudinal axis X which passes through the center of the central outlet port. The first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

**22 Claims, 17 Drawing Sheets**

**Related U.S. Application Data**

division of application No. 13/110,532, filed on May 18, 2011, now Pat. No. 8,978,966.

(60) Provisional application No. 61/417,659, filed on Nov. 29, 2010, provisional application No. 61/345,763, filed on May 18, 2010.

(51) **Int. Cl.**
  *A61M 15/00*      (2006.01)
  *G06M 1/24*      (2006.01)

(52) **U.S. Cl.**
  CPC .... *A61M 15/0025* (2014.02); *A61M 15/0026* (2014.02); *A61M 15/0065* (2013.01); *A61M 15/0071* (2014.02); *G06M 1/246* (2013.01); *A61M 2202/064* (2013.01); *A61M 2205/6063* (2013.01); *A61M 2207/00* (2013.01); *A61M 2207/10* (2013.01); *Y10T 29/49* (2015.01); *Y10T 29/49764* (2015.01); *Y10T 29/49826* (2015.01)

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,687,359 A | 8/1987 | Barrus | |
| 5,482,030 A | 1/1996 | Klein | |
| 5,861,911 A | 1/1999 | Oosaka | |
| 6,446,627 B1 | 9/2002 | Bowman | |
| 6,718,972 B2 | 4/2004 | O.Leary | |
| 8,418,690 B2 | 4/2013 | Power | |
| 8,474,448 B2 | 7/2013 | Oi | |
| 8,978,966 B2 | 3/2015 | Walsh et al. | |
| 9,174,013 B2 | 11/2015 | Walsh et al. | |
| 9,463,289 B2 * | 10/2016 | Walsh ............... | A61M 15/0065 |
| 2002/0047021 A1 | 4/2002 | Blacker | |
| 2002/0078949 A1 | 6/2002 | O.Leary | |
| 2002/0078950 A1 | 6/2002 | O.Leary | |
| 2002/0084891 A1 | 7/2002 | Mankins et al. | |
| 2003/0209239 A1 | 11/2003 | Rand | |
| 2004/0089298 A1 | 5/2004 | Haikarainen et al. | |
| 2004/0095746 A1 | 5/2004 | Murphy | |
| 2005/0028815 A1 | 2/2005 | Deaton | |
| 2005/0087191 A1 * | 4/2005 | Morton ............... | A61M 15/0065 128/205.23 |
| 2006/0096594 A1 | 5/2006 | Bonney | |
| 2006/0107949 A1 * | 5/2006 | Davies ............... | A61M 15/0065 128/200.23 |
| 2006/0107979 A1 | 5/2006 | Kim | |
| 2007/0062518 A1 | 3/2007 | Geser | |
| 2008/0242465 A1 | 10/2008 | Strobel | |
| 2009/0178678 A1 | 7/2009 | O.Leary | |
| 2010/0089395 A1 | 4/2010 | Power | |
| 2010/0218759 A1 | 9/2010 | Anderson | |
| 2011/0041845 A1 | 2/2011 | Solomon | |
| 2012/0006322 A1 | 1/2012 | Anderson | |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 1486227 | 12/2004 |
| GB | 2320489 | 6/1998 |
| IL | 201256 | 11/2014 |
| JP | 02502129 | 7/1990 |
| JP | 450059 | 8/1992 |
| JP | 07100205 | 4/1995 |
| JP | 10504220 | 4/1998 |
| JP | 2002528144 | 9/2002 |
| JP | 2004501685 | 1/2004 |
| JP | 2008-94103 A | 4/2008 |
| JP | 2008094103 | 4/2008 |
| JP | 2008261423 | 10/2008 |
| JP | 2009233308 | 10/2009 |
| JP | 2009257392 | 11/2009 |
| JP | 2010096308 | 4/2010 |
| WO | 8909078 | 10/1989 |
| WO | 9628205 | 9/1996 |
| WO | 9828033 | 7/1998 |
| WO | 9936115 | 7/1999 |
| WO | 02/00281 A2 | 1/2002 |
| WO | 03101514 | 12/2003 |
| WO | 2005102430 | 11/2005 |
| WO | 2006062449 | 6/2006 |
| WO | 2006062449 A1 | 6/2006 |
| WO | 2007012861 | 2/2007 |
| WO | 2007062518 | 6/2007 |
| WO | 2008023019 | 2/2008 |
| WO | 2008119552 | 2/2008 |
| WO | 2011012325 | 2/2011 |
| WO | 2011012327 | 2/2011 |

OTHER PUBLICATIONS

Advisory Action dated Mar. 13, 2017 for U.S. Appl. No. 14/699,567.
Non-Final Office Action dated Jan. 12, 2017 for U.S. Appl. No. 14/713,620, 8 pages.
Final Rejection dated Sep 27, 2016 for U.S. Appl. No. 14/699,578.
Final Office Action dated Aug. 31, 2016 for U.S. Appl. No. 14/713,620, 7 pages.
Advisory action dated Feb. 9, 2017 for U.S. Appl. No. 14/699,584.
Non-final rejection dated Jul. 12, 2016 for U.S. Appl. No. 14/713,643.
File History for U.S. Appl. No. 15/271,738.
File History for U.S. Appl. No. 15/269,102.
File History for U.S. Appl. No. 15/262,818.
File History for U.S. Appl. No. 15/289,553.
File History for U.S. Appl. No. 15/269,249.
Final rejection dated Oct. 20, 2016 or U.S. Appl. No. 14/699,584.
Non-Final Office Action dated Jun. 24, 2016 for U.S. Appl. No. 14/713,620, 7 pages.
Final rejection dated Oct. 20, 2016 or U.S. Appl. No. 14/713,631.
Advisory Action Mar. 16, 2017 or U.S. Appl. No. 14/713,633.
Entire patent prosecution history of U.S. Appl. No. 13/110,532, filed May 18, 2011, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof.".
Entire patent prosecution history of U.S. Appl. No. 14/103,324, filed Dec. 11, 2013, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof.".
Entire patent prosecution history of U.S. Appl. No. 14/103,343, filed Dec. 11, 2013, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof.".
Entire patent prosecution history of U.S. Appl. No. 14/103,353, filed Dec. 11, 2013, entitled,"Dose Counters for Inhalers, Inhalers and Methods of Ass Embly Thereof.".
Entire patent prosecution history of U.S. Appl. No. 14/103,363, filed Dec. 1, 2013, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof.".
Entire patent prosecution history of U.S. Appl. No. 14/103,392, filed Dec. 11, 2013, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof.".

TEVAQVAR-00031252

**US 9,808,587 B2**

Page 3

(56)          **References Cited**

OTHER PUBLICATIONS

Entire patent prosecution history of U.S. Appl. No. 14/699,567, filed Apr. 29, 2015, entitled, "Dose Counter for Inhaler and Method for Counting Doses.".
Entire patent prosecution history of U.S. Appl. No. 14/699,578, filed Apr. 29, 2015, entitled, "Dose Counter for Inhaler Having a Bore !and Shaft Arrangement.".
Entire patent prosecution history of U.S. Appl. No. 14/699,584, filed Apr. 29, 2015, entitled, "Dose Counter for Inhaler Having an Antireverse Rotation Actuator.".
Entire patent prosecution history of U.S. Appl. No., 14/713,612, filed May 15, 2015, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof.".
Entire patent prosecution history of U.S. Appl. No. 14/713,620, filed May 15, 2015, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof.".
Entire patent prosecution history of U.S. Appl. No. 14/713,643, filed May 15, 2015, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof.".
European Patent Office Communication, dated Apr. 24, 2014 of counterpart European Patent Application No. 11 010 211.8.
European Patent Office Communication, dated Apr. 24, 2014 of counterpart European Patent Application No. 11 010 212.6.
First Examination Report of counterpart New Zealand Patent Application No. 603466, dated Jul. 1, 2013.
Office Action issued by the Israel Patent Office on Jul. 3, 2017 in reference to Israel Patent Application No. 247396, 3 pages.
Office Action issued by the Israel Patent Office on Jul. 27, 2017 in reference to Israel Patent Application No. 247402, 4 pages.

* cited by examiner

TEVAQVAR-00031253



FIG. 1

FIG. 2    FIG. 3A    FIG. 3B

FIG. 4C    FIG. 4A    FIG. 5

TEVAQVAR-00031254



FIG.6A

FIG.6B

FIG.6C

FIG.6D

FIG.6E

TEVAQVAR-00031255



FIG.6F

FIG.6G

TEVAQVAR-00031256



FIG. 7A

FIG. 7B

FIG. 6H

TEVAQVAR-00031257



FIG. 8C

FIG. 8B

FIG. 8A

TEVAQVAR-00031258



FIG. 7C

FIG. 7D

FIG. 8D

TEVAQVAR-00031259



FIG. 9

TEVAQVAR-00031260



FIG. 10A

FIG. 10B

TEVAQVAR-00031261



FIG.10E

FIG.10C

TEVAQVAR-00031262



FIG. 10F



FIG. 10D

TEVAQVAR-00031263



FIG. 11

FIG. 14

TEVAQVAR-00031264



FIG. 12

FIG. 13

TEVAQVAR-00031265



FIG. 15

FIG. 20

FIG. 16

TEVAQVAR-00031266

Case: 23-2241     Document: 27-1     Page: 139     Filed: 03/22/2024



FIG. 19A

FIG. 19B

FIG. 19C

FIG. 18A

FIG. 18B

FIG. 18C

FIG. 17

TEVAQVAR-00031267

**U.S. Patent**    Nov. 7, 2017    Sheet 15 of 17    US 9,808,587 B2



FIG. 21

FIG. 22

TEVAQVAR-00031268



## FIG. 23



## FIG. 24

TEVAQVAR-00031269



# FIG. 25



# FIG. 26

TEVAQVAR-00031270

US 9,808,587 B2

**1**

# DOSE COUNTER FOR INHALER HAVING AN ANTI-REVERSE ROTATION ACTUATOR

## CROSS-REFERENCE TO RELATED APPLICATIONS

This patent application is a continuation patent application of U.S. Non-Provisional patent application Ser. No. 14/103,324, filed Dec. 11, 2013, which is a divisional patent application of U.S. Non-Provisional patent application Ser. No. 13/110,532, filed May 18, 2011, now U.S. Pat. No. 8,978,966, issued Mar. 17, 2015, which claims priority to U.S. Provisional Patent Application No. 61/345,763, filed May 18, 2010, and U.S. Provisional Patent Application No. 61/417,659, filed Nov. 29, 2010, each of which is incorporated herein by reference in its entirety for any and all purposes.

## FIELD OF THE INVENTION

The present invention relates to dose counters for inhalers, inhalers and methods of assembly thereof. The invention is particularly applicable to metered dose inhalers including dry power medicament inhalers, breath actuated inhalers and manually operated metered dose medicament inhalers.

## BACKGROUND OF THE INVENTION

Metered dose inhalers can comprise a medicament-containing pressurised canister containing a mixture of active drug and propellant. Such canisters are usually formed from a deep-dawn aluminium cup having a crimped lid which carries a metering valve assembly. The metering valve assembly is provided with a protruding valve stem which, in use is inserted as a push fit into a stem block in an actuator body of an inhaler having a drug delivery outlet. In order to actuate a manually operable inhaler, the user applies by hand a compressive force to a closed end of the canister and the internal components of the metering valve assembly are spring loaded so that a compressive force of approximately 15 to 30 N is required to activate the device in some typical circumstances.

In response to this compressive force the canister moves axially with respect to the valve stem and the axial movement is sufficient to actuate the metering valve and cause a metered quantity of the drug and the propellant to be expelled through the valve stem. This is then released into a mouthpiece of the inhaler via a nozzle in the stem block, such that a user inhaling through the outlet of the inhaler will receive a dose of the drug.

A drawback of self-administration from an inhaler is that it is difficult to determine how much active drug and/or propellant are left in the inhaler, if any, especially of the active drug and this is potentially hazardous for the user since dosing becomes unreliable and backup devices not always available.

Inhalers incorporating dose counters have therefore become known.

WO 98/028033 discloses an inhaler having a ratchet mechanism for driving a tape drive dose counter. A shaft onto which tape is wound has a friction clutch or spring for restraining the shaft against reverse rotation.

EP-A-1486227 discloses an inhaler for dry powered medicament having a ratchet mechanism for a tape dose counter which is operated when a mouthpiece of the inhaler is closed. Due to the way in which the mouthpiece is opened and closed, and actuation pawl of the device which is

**2**

mounted on a yoke, travels a known long stroke of consistent length as the mouthpiece is opened and closed.

WO 2008/119552 discloses a metered-dose inhaler which is suitable for breath-operated applications and operates with a known and constant canister stroke length of 3.04 mm+/−0.255 mm. A stock bobbin of the counter, from which a tape is unwound, rotates on a shaft having a split pin intended to hold the stock bobbin taut. However, some dose counters do not keep a particularly reliable count, such as if they are dropped onto a hard surface.

More recently, it has become desirable to improve dose counters further and, in particular, it is felt that it would be useful to provide extremely accurate dose counters for manually-operated canister-type metered dose inhalers. Unfortunately, in these inhalers, it has been found in the course of making the present invention that the stroke length of the canister is to a very large extent controlled on each dose operation by the user, and by hand. Therefore, the stroke length is highly variable and it is found to be extremely difficult to provide a highly reliable dose counter for these applications. The dose counter must not count a dose when the canister has not fired since this might wrongly indicate to the user that a dose has been applied and if done repeatedly the user would throw away the canister or whole device before it is really time to change the device due to the active drug and propellant reaching a set minimum. Additionally, the canister must not fire without the dose counter counting because the user may then apply another dose thinking that the canister has not fired, and if this is done repeatedly the active drug and/or propellant may run out while the user thinks the device is still suitable for use according to the counter. It has also been found to be fairly difficult to assembly some known inhaler devices and the dose counters therefor. Additionally, it is felt desirable to improve upon inhalers by making them easily usable after they have been washed with water.

The present invention aims to alleviate at least to a certain extent one or more of the problems of the prior art.

## SUMMARY OF THE INVENTION

According to a first aspect of the present invention there is provided a dose counter for an inhaler, the dose counter having a counter display arranged to indicate dosage information, a drive system arranged to move the counter display incrementally in a first direction from a first station to a second station in response to actuation input, wherein a regulator is provided which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movements.

The regulator is advantageous in that it helps prevent unwanted motion of the counter display if the counter is dropped.

According to a further aspect of the present invention, the regulator provides a resistance force of greater than 0.1 N against movement of the counter display. According to a further aspect of the present invention, the resistance force is greater than 0.3 N. According to yet a further aspect of the present invention, the resistance force is from 0.3 to 0.4 N.

Preferably, the counter comprises a tape.

Preferably, the tape has dose counter indicia displayed thereon. The first station may comprise a region of the dose counter where tape is held which is located before a display location, such as a display window, for the counter indicia.

TEVAQVAR-00031271

US 9,808,587 B2

3

The first station may comprise a first shaft, the tape being arranged on the first shaft and to unwind therefrom upon movement of the counter display.

The first shaft may be mounted for rotation relative to a substantially rotationally fixed element of the dose counter.

The regulator may comprise at least one projection which is arranged on one of the first shaft and the substantially rotationally fixed element and to engage incrementally with one or more formations on the other of the first shaft and the substantially rotationally fixed element.

At least two said projections may be provided. Exactly two said projections maybe provided.

Each projection may comprise a radiused surface.

The at least one projection may be located on the sub-stantially fixed element which may comprise a fixed shaft which is fixed to a main body of the dose counter, the first shaft being rotationally mounted to the fixed shaft.

Preferably, the fixed shaft has at least two resiliently flexible legs (or forks). Each leg may have at least one said projection formed in an outwardly facing direction thereon, said one or more formations being formed on an inwardly facing engagement surface of the first shaft, said at least one projection being arranged to resiliently engage said one or more formations. Preferably, a series of said formations are provided. An even number of said formations may be provided. Eight to twelve of said formations may be pro-vided. In one embodiment, ten said formations are provided.

Each said formation may comprise a concavity formed on an engagement surface. Each concavity may comprise a radiused surface wall portion which preferably merges on at least one side thereof into a flat wall portion surface. The engagement surface may include a series of said concavities, and convex wall portions of the engagement surface may be formed between each adjacent two said concavities, each said convex wall portion comprising a convex radiused wall portion.

Each convex radiused wall portion of each convex wall portion may be connected by said flat wall portion surfaces to each adjacent concavity.

The fixed shaft may comprise a split pin with fork legs and each projection may be located on a said fork leg.

The first shaft may comprise a substantially hollow bob-bin.

Said at least one formation may be located on an inner surface of the bobbin. In other embodiments it may be located on an outer surface thereof. Said engagement surface may extend partially along said bobbin, a remainder of the respective inner or outer surface having a generally smooth journal portion along at least a portion thereof.

The drive system may comprise a tooth ratchet wheel arranged to act upon a second shaft which is located at the second station, the second shaft being rotatable to wind the tape onto the second shaft.

The second shaft may be located on a main body of the dose counter spaced from and parallel to the first shaft.

The ratchet wheel may be fixed to the second shaft is arranged to rotate therewith. The ratchet wheel may be secured to an end of the second shaft and aligned coaxially with the second shaft.

The dose counter may include anti-back drive system which is arranged to restrict motion of the second shaft. The anti-back drive system may include a substantially fixed tooth arranged to act upon teeth of the ratchet wheel.

According to a further aspect of the present invention, a dose counter includes an anti-back drive system which is arranged to restrict motion of the second shaft in a tape winding direction.

4

According to a further aspect of the present invention there is provided a shaft for holding counter tape in a dose counter for an inhaler, the shaft having an engagement surface including incrementally spaced formations located around a periphery thereof, the formations comprising a series of curved concavities and convex portions.

The shaft may comprise a hollow bobbin.

The engagement surface may be a generally cylindrical inwardly directed surface.

The engagement surface may include a flat surface wall portion joining each concavity and convex wall portion.

Each concavity may comprise a radiused wall portion.

Each convex wall portion may comprise a radiused wall portion.

Said concavities may be regularly spaced around a lon-gitudinal axis of the shaft.

Said convex wall portions may be regularly spaced around a longitudinal axis of the shaft.

In some embodiments there may be from eight to twelve said concavities and/or convex wall portions regularly spaced around a longitudinal axis thereof.

One embodiment includes ten said concavities and/or convex wall portions regularly spaced around a longitudinal axis of the shaft.

According to a further aspect of the present invention there is provided a shaft and counter tape assembly for use in a dose counter for an inhaler, the assembly comprising a rotatable shaft and a counter tape which is wound around the shaft and is adapted to unwind therefrom upon inhaler actuation, the shaft having an engagement surface which includes incrementally spaced formations located around a periphery thereof.

According to a further aspect of the present invention there is provided an inhaler for the inhalation of medication and the like, the inhaler including a dose counter as in the first aspect of the invention.

A preferred construction consists of a manually operated metered dose inhaler including a dose counter chamber including a dose display tape driven by a ratchet wheel which is driven in turn by an actuator pawl actuated by movement of a canister, the tape unwinding from a stock bobbin during use of the inhaler, a rotation regulator being provided for the stock bobbin and comprising a wavelike engagement surface with concavities which engage against control elements in the form of protrusions on resilient forks of a split pin thereby permitting incremental unwinding of the stock bobbin yet resisting excessive rotation if the inhaler is dropped onto a hard surface.

According to another aspect of the present invention there is provided a dose counter for a metered dose inhaler having a body arranged to retain a medicament canister of prede-termined configuration for movement of the canister relative thereto; the dose counter comprising: an incremental count-ing system for counting doses, the incremental counting system having a main body, an actuator arranged to be driven in response to canister motion and to drive an incremental output member in response to canister motion, the actuator and incremental output member being config-ured to have predetermined canister fire and count configu-rations in a canister fire sequence, the canister fire configu-ration being determined by a position of the actuator relative to a datum at which the canister fires medicament and the count configuration being determined by a position of the actuator relative to the datum at which the incremental count system makes an incremental count, wherein the actuator is

TEVAQVAR-00031272

US 9,808,587 B2

5

arranged to reach a position thereof in the count configuration at or after a position thereof in the canister fire configuration.

This arrangement has been found to be highly advantageous since it provides an extremely accurate dose counter which is suitable for use with manually operated metered dose inhalers. It has been found that dose counters with these features have a failure rate of less than 50 failed counts per million full canister activation depressions. It has been found in the course of making the present invention that highly reliable counting can be achieved with the dose counter counting at or soon after the point at which the canister fires. It has been is covered by the present inventors that momentum and motion involved in firing the canister, and in some embodiments a slight reduction in canister back pressure on the user at the time of canister firing, can very reliably result in additional further motion past the count point.

The actuator and incremental counting system may be arranged such that the actuator is displaced less than 1 mm, typically 0.25 to 0.75 mm, more preferably about 0.4 to 0.6 mm, relative to the body between its location in the count and fire configurations, about 0.48 mm being preferred. The canister, which can move substantially in line with the actuator, can reliably move this additional distance so as to achieve very reliable counting.

The incremental count system may comprise a ratchet mechanism and the incremental output member may comprise a ratchet wheel having a plurality of circumferentially spaced teeth arranged to engage the actuator.

The actuator may comprise an actuator pawl arranged to engage on teeth of the ratchet wheel. The actuator pawl may be arranged to be connected to or integral with an actuator pin arranged to engage and be depressed by a medicament canister bottom flange. The actuator pawl may be generally U-shaped having two parallel arms arranged to pull on a central pawl member arranged substantially perpendicular thereto. This provides a very reliable actuator pawl which can reliably pull on the teeth of the ratchet wheel.

The incremental count system may include a tape counter having tape with incremental dose indicia located thereon, the tape being positioned on a tape stock bobbin and being arranged to unwind therefrom.

The actuator and incremental output member may be arranged to provide a start configuration at which the actuator is spaced from the ratchet output member, a reset configuration at which the actuator is brought into engagement with the incremental output member during a canister fire sequence, and an end configuration at which the actuator disengages from the ratchet output during a canister fire sequence.

The actuator may be arranged to be located about 1.5 to 2.0 mm, from its location in the fire configuration, when in the start configuration, about 1.80 mm being preferred.

The actuator may be arranged to be located about 1.0 to 1.2 mm, from its location in the fire configuration, when in the reset configuration, about 1.11 mm being preferred.

The actuator may be arranged to be located about 1.1 to 1.3 mm, from its location in the fire configuration, when in the end configuration, about 1.18 mm being preferred.

These arrangements provide extremely reliable dose counting, especially with manually operated canister type metered dose inhalers.

The main body may include a formation for forcing the actuator to disengage from the incremental output member when the actuator is moved past the end configuration. The formation may comprise a bumped up portion of an other-

6

wise generally straight surface against which the actuator engages and along which it is arranged to slide during a canister firing sequence.

The dose counter may include a counter pawl, the counter pawl having a tooth arranged to engage the incremental output member, the tooth and incremental output member being arranged to permit one way only incremental relative motion therebetween. When the incremental output member comprises a ratchet wheel, the tooth can therefore serve as an anti-back drive tooth for the ratchet wheel, thereby permitting only one way motion or rotation thereof.

The counter pawl may be substantially fixedly mounted on the main body of the incremental count system and the counter pawl may be arranged to be capable of repeatedly engaging equi-spaced teeth of the incremental output member in anti-back drive interlock configurations as the counter is operated. The counter pawl may be positioned so that the incremental output member is halfway, or substantially halfway moved from one anti-back drive interlock configuration to the next when the actuator and incremental output member are in the end configuration thereof. This is highly advantageous in that it minimises the risk of double counting or non-counting by the dose counter.

According to a further aspect of the invention there is provided an inhaler comprising a main body arranged to retain a medicament canister of predetermined configuration and a dose counter mounted in the main body.

The inhaler main body may include a canister receiving portion and a separate counter chamber, the dose counter being located within the main body thereof, the incremental output member and actuator thereof inside the counter chamber, the main body of the inhaler having wall surfaces separating the canister-receiving portion and the counter chamber, the wall surfaces being provided with a communication aperture, an actuation member extending through the communication aperture to transmit canister motion to the actuator.

According to a further aspect of the present invention there is a provided an inhaler for metered dose inhalation, the inhaler comprising a main body having a canister housing arranged to retain a medicament canister for motion therein, and a dose counter, the dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of a medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation located directly adjacent the actuation member.

This is highly advantageous in that the first inner wall canister support formation can prevent a canister from rocking too much relative to the main body of the inhaler. Since the canister may operate the actuation member of the dose counter, this substantially improves dose counting and avoids counter errors.

The canister housing may have a longitudinal axis which passes through a central outlet port thereof, the central outlet port being arranged to mate with an outer canister fire stem of a medicament canister, the inner wall canister support formation, the actuation member and the outlet port lying in a common plane coincident with the longitudinal axis. Accordingly, this construction may prevent the canister from rocking towards the position of the dose counter actuation member, thereby minimising errors in counting.

The canister housing may have a further inner canister wall support formation located on the inner wall opposite, or substantially opposite, the actuation member. Accordingly, the canister may be supported against rocking motion away from the actuator member so as to minimise count errors.

TEVAQVAR-00031273

US 9,808,587 B2

7

The canister housing may be generally straight and tubular and may have an arrangement in which each said inner wall support formation comprises a rail extending longitudinally along the inner wall.

Each said rail may be stepped, in that it may have a first portion located towards a medicine outlet end or stem block of the canister housing which extends inwardly a first distance from a main surface of the inner wall and a second portion located toward an opposite end of the canister chamber which extends inwardly a second, smaller distance from the main surface of the inner wall. This may therefore enable easy insertion of a canister into the canister housing such that a canister can be lined up gradually in step wise function as it is inserted into the canister housing.

The inhaler may include additional canister support rails which are spaced around an inner periphery of the inner wall of the canister housing and which extend longitudinally therealong.

At least one of the additional rails may extend a constant distance inwardly from the main surface of the inner wall.

At least one of the additional rails may be formed with a similar configuration to the first inner wall canister support formation.

The dose counter may, apart from said at least a portion of the actuation member, be located in a counter chamber separate from the canister housing, the actuation member comprising a pin extending through an aperture in a wall which separates the counter chamber and the canister housing.

According to a further aspect of the present invention there is provided an inhaler for inhaling medicaments having: a body for retaining a medicament store; the body including a dose counter, the dose counter having a moveable actuator and a return spring for the actuator, the return spring having a generally cylindrical and annular end; the body having a support formation therein for supporting said end of the return spring, the support formation comprising a shelf onto which said end is engageable and a recess below the shelf.

This shelf and recess arrangement is highly advantageous since it allows a tool (such as manual or mechanical tweezers) to be used to place the return spring of the actuator onto the shelf with the tool then being withdrawn at least partially via the recess.

The shelf may be U-shaped.

The support formation may include a U-shaped upstanding wall extending around the U-shaped shelf, the shelf and upstanding wall thereby forming a step and riser of a stepped arrangement.

The recess below the shelf my also be U-shaped.

At least one chamfered surface may be provided at an entrance to the shelf. This may assist in inserting the actuator and return spring into position.

A further aspect of the invention provides a method of assembly of an inhaler which includes the step of locating said end of said spring on the shelf with an assembly tool and then withdrawing the assembly tool at least partly via the recess. This assembly method is highly advantageous compared to prior art methods in which spring insertion has been difficult and in which withdrawal of the tool has sometimes accidentally withdrawn the spring again.

The cylindrical and annular end of the spring may be movable in a direction transverse to its cylindrical extent into the shelf while being located thereon.

According to a further aspect of the present invention there is provided an inhaler for inhaling medicament, the inhaler having a body for retaining a medicament store; and

8

a dose counter, the dose counter having a moveable actuator and a chassis mounted on the body; the chassis being heat staked in position on the body. This is highly advantageous in that the chassis can be very accurately positioned and held firmly in place, thereby further improving counting accuracy compared to prior art arrangements in which some movement of the chassis relative to the body may be tolerated in snap-fit connections.

The chassis may have at least one of a pin or aperture heat staked to a respective aperture or pin of the body.

The chassis may have a ratchet counter output member mounted thereon.

The ratchet counter output member may comprise a ratchet wheel arranged to reel in incrementally a dose meter tape having a dosage indicia located thereon.

According to a further aspect of the present invention there is provided a method of assembling an inhaler including the step of heat staking the chassis onto the body. The step of heat staking is highly advantageous in fixedly positioning the chassis onto the body in order to achieve highly accurate dose counting in the assembled inhaler.

The method of assembly may include mounting a spring-returned ratchet actuator in the body before heat staking the chassis in place. The method of assembly may include pre-assembling the chassis with a dose meter tape prior to the step of heat staking the chassis in place. The method of assembly may include attaching a dose meter cover onto the body after the heat staking step. The cover may be welded onto the body or may in some embodiments be glued or otherwise attached in place.

According to a further aspect of the present invention there is provided an inhaler for inhaling medicament and having a body, the body have a main part thereof for retaining a medicament store; and a dose counter, the dose counter being located in a dose counter chamber of the body which is separated from the main part of the body, the dose counter chamber of the body having a dosage display and being perforated so as to permit the evaporation of water or aqueous matter in the dose counter chamber into the atmosphere.

This is high advantageous since it enables the inhaler to be thoroughly washed and the dose counting chamber can thereafter dry out fully.

The display may comprise a mechanical counter display inside the dose counter chamber and a window for viewing the mechanical counter display. The mechanical counter display may comprise a tape. The perforated dose counter chamber may therefore enable reliable washing of the inhaler, if desired by the user, and may therefore dry out without the display window misting up.

The dose counter chamber may be perforated by a drain hole formed through an outer hole of the body. The drain hole may be located at a bottom portion of the body of the inhaler, thereby enabling full draining of the inhaler to be encouraged after washing when the inhaler is brought into an upright position.

According to a further aspect of the present invention there is provided a dose counter for an inhaler, the dose counter having a display tape arranged to be incrementally driven from a tape stock bobbin onto an incremental tape take-up drive shaft, the bobbin having an internal bore supported by and for rotation about a support shaft, at least one of the bore and support shaft having a protrusion which is resiliently biased into frictional engagement with the other of the bore and support shaft with longitudinally extending mutual frictional interaction. This arrangement may provide good friction for the bobbin, thereby improving tape counter

TEVAQVAR-00031274

US 9,808,587 B2

9

display accuracy and preventing the bobbin from unwinding undesirably for example if the inhaler is accidentally dropped.

The support shaft may be forked and resilient for resiliently biasing the support shaft and bore into frictional engagement.

The support shaft may have two forks, or more in some cases, each having a radially extending protrusion having a friction edge extending therealong parallel to a longitudinal axis of the support shaft for frictionally engaging the bore of the support shaft with longitudinally extending frictional interaction therebetween.

The bore may be a smooth circularly cylindrical or substantially cylindrical bore.

Each of the above inhalers in accordance with aspects of the present invention may have a medicament canister mounted thereto.

The canister may comprise a pressurised metered dose canister having a reciprocally movable stem extending therefrom and movable into a main canister portion thereof for releasing a metered dose of medicament under pressure, for example by operating a metered dose valve inside the canister body. The canister may be operable by pressing by hand on the main canister body.

In cases in which one or more support rails or inner wall support formations are provided, the canister may at all times when within the canister chamber have a clearance of about 0.25 to 0.35 mm from the first inner wall support formation. The clearance may be almost exactly 0.3 mm. This clearance which may apply to the canister body itself or to the canister once a label has been applied, is enough to allow smooth motion of the canister in the inhaler while at the same time preventing substantial rocking of the canister which could result in inaccurate counting by a dose counter of the inhaler, especially when lower face of the canister is arranged to engage an actuator member of the dose counter for counting purposes.

According to a further aspect of the invention, a method of assembling a dose counter for an inhaler comprises the steps of providing a tape with dosing indicia thereon; providing tape positioning indicia on the tape; and stowing the tape while monitoring for the tape positioning indicia with a sensor. The method advantageously permits efficient and accurate stowing of the tape, e.g. by winding.

The dosing indicia may be provided as numbers, the tape positioning indicia may be provided as one or more lines across the tape. The stowing step comprises winding the tape onto a bobbin or shaft, and, optionally, stopping winding when the positioning indicia are in a predetermined position. The tape may be provided with pixelated indicia at a position spaced along the tape from the positioning indicia. The tape may also be provided with a priming dot.

According to a further aspect of the invention, a tape system for a dose counter for an inhaler has a main elongate tape structure, and dosing indicia and tape positioning indicia located on the tape structure. The tape positioning indicia may comprise at least one line extending across the tape structure. The tape system may comprise pixelated indicia located on the tape structure and spaced from the positioning indicia. The tape system may comprise a priming dot located on the tape structure. The positioning indicia may be located between the timing dot and the pixelated indicia. The main elongate tape structure may have at least one end thereof wound on a bobbin or shaft.

A further aspect of the invention provides a method of designing an incremental dose counter for an inhaler comprising the steps of calculating nominal canister fire and

10

dose counter positions for a dose counter actuator of the inhaler; calculating a failure/success rate for dose counters built to tolerance levels for counting each fire of inhalers in which the dose counter actuators may be applied; and selecting a tolerance level to result in said failure/success rate to be at or below/above a predetermined value. This is highly advantageous in that it allows an efficient and accurate prediction of the reliability of a series of inhaler counters made in accordance with the design.

The method of designing may include selecting the failure/success rate as a failure rate of no more than one in 50 million. The method of designing may include setting an average count position for dose counters built to the tolerances to be at or after an average fire position thereof during canister firing motion. The method of designing may include setting the average count position to be about 0.4 to 0.6 mm after the average fire position, such as about 0.48 mm after. The method of designing may include setting tolerances for the standard deviation of the fire position in dose counters built to the tolerances to be about 0.12 to 0.16 mm, such as about 0.141 mm. The method of designing may include setting tolerances for the standard deviation of the count positions in dose counters built to the tolerances to be about 0.07 to 0.09 mm, such as about 0.08 mm. A further aspect of the invention provides a computer implemented method of designing an incremental dose counter for an inhaler which includes the aforementioned method of designing.

A further aspect of the invention provides a method of manufacturing in a production run a series of incremental dose counters for inhalers which comprises manufacturing the series of dose counters in accordance with the aforementioned method of designing.

A further aspect of the invention provides a method of manufacturing a series of incremental dose counters for inhalers, which comprises manufacturing the dose counters with nominal canister fire and dose count positions of a dose counter actuator relative to a dose counter chassis (or inhaler main body), and which includes building the dose counters with the average dose count position in the series being, in canister fire process, at or after the average canister fire position in the series.

According to a further aspect of the invention, the method provides fitting each dose counter in the series of incremental dose counters to a corresponding main body of an inhaler.

These aspects advantageously provide for the production run of a series of inhalers and dose counters which count reliably in operation.

According to a further aspect of the invention, an incremental dose counter for a metered dose inhaler has a body arranged to retain a canister for movement of the canister relative thereto, the incremental dose counter having a main body, an actuator arranged to be driven and to drive an incremental output member in a count direction in response to canister motion, the actuator being configured to restrict motion of the output member in a direction opposite to the count direction. This advantageously enables an inhaler dose counter to keep a reliable count of remaining doses even if dropped or otherwise jolted.

The output member may comprise a ratchet wheel. The actuator may comprise a pawl and in which the ratchet wheel and pawl are arranged to permit only one-way ratcheting motion of the wheel relative to the pawl. The dose counter may include an anti-back drive member fixed to the main body. In a rest position of the dose counter, the ratchet wheel is capable of adopting a configuration in which a back surface of one tooth thereof engages the anti-back drive member and the pawl is spaced from an adjacent back

TEVAQVAR-00031275

US 9,808,587 B2

**11**

surface of another tooth of the ratchet wheel without positive drive/blocking engagement between the pawl and wheel.

BRIEF DESCRIPTION OF THE DRAWINGS

The present invention may be carried out in various ways and preferred embodiment of a dose counter, inhaler and methods of assembly, design and manufacture will now be described with reference to the accompanying drawings in which:

FIG. **1** is an isometric view of a main body of an embodiment of an inhaler related to the invention together with a mouthpiece cap therefor;

FIG. **2** is a top plan view of the components as shown in FIG. **1**;

FIG. **3**A is a section on the plane **3A-3A** in FIG. **2**;

FIG. **3**B is a view corresponding to FIG. **3**A but with a dose counter fitted to the main body of the inhaler;

FIG. **4**A is an exploded view of the inhaler main body, mouthpiece cap, dose counter and a dose counter window;

FIG. **4**B is a view in the direction **4**B in FIG. **4**C of a spring retainer of the dose counter;

FIG. **4**C is a top view of the spring retainer of FIG. **4**B;

FIG. **5** is a bottom view of the assembled inhaler main body, mouthpiece cap, dose counter and dose counter window;

FIGS. **6**A, **6**B, **6**C, **6**D, **6**E, **6**F, **6**G and **6**H are various views of dose counter components of the inhaler;

FIGS. **7**A and **7**B are sectional views showing canister clearance inside the main body of the inhaler;

FIG. **7**C is a further sectional view similar to that of FIG. **7**B but with the canister removed;

FIG. **7**D is a top plan view of the inhaler main body;

FIGS. **8**A, **8**B, **8**C and **8**D show the inhaler main body and dose counter components during assembly thereof;

FIG. **9** shows a sectional side view of a datum line for an actuator pawl of the dose counter;

FIGS. **10**A, **10**B, **10**C, **10**D, **10**E and **10**F show various side views of positions and configurations of the actuator pawl, a ratchet wheel, and a count pawl;

FIG. **11** shows distributions for tolerances of start, reset, fire, count and end positions for the actuator of the dose counter;

FIG. **12** is an enlarged version of part of FIG. **4**A;

FIG. **13** shows an end portion of a tape of the dose counter;

FIG. **14** shows a computer system for designing the dose counter;

FIG. **15** is an isometric view of a stock bobbin modified in accordance with the present invention for use in the dose counter of the inhaler of FIGS. **1** to **14**;

FIG. **16** shows an end view of the stock bobbin of FIG. **15**;

FIG. **17** is a section through a longitudinal axis of the stock bobbin of FIGS. **15** and **16**;

FIGS. **18**A, **18**B and **18**C are views of the stock bobbin of FIGS. **15** to **17** mounted in the dose counter chassis of FIGS. **1** to **14**, with the control elements of the forks of the second shaft (or split pin) having a profile slightly different to that in FIG. **6**F, with the forks in a compressed configuration;

FIGS. **19**A, **19**B and **19**C are views equivalent to FIGS. **18**A to **18**C but with the forks in a more expanded configuration due to a different rotational position of the stock bobbin;

FIG. **20** is an isometric view of the chassis assembled and including the stock bobbin of FIGS. **15** to **17** but excluding the tape for reasons of clarity;

**12**

FIG. **21** is a view of a preferred embodiment of a dry powder inhaler in accordance with the present invention;

FIG. **22** is an exploded view of the inhaler of FIG. **21**;

FIG. **23** is a view of a dose counter of the inhaler of FIG. **21**;

FIG. **24** is an exploded view of the dose counter shown in FIG. **23**;

FIG. **25** is an exploded view of parts of the inhaler of FIG. **21**; and

FIG. **26** is a view of a yoke of the inhaler of FIG. **21**.

DETAILED DESCRIPTION OF THE INVENTION

FIG. **1** shows a main body **10** of a manually operated metered dose inhaler **12** in accordance with an embodiment related to the present invention and having a mouthpiece cap **14** securable over a mouthpiece **16** of the main body.

The main body has a canister chamber **18** into which a canister **20** (FIG. **7**A) is slideable. The canister **20** has a generally cylindrical main side wall **24**, joined by a tapered section **26** to a head portion **28** having a substantially flat lower face **30** which has an outer annular drive surface **32** arranged to engage upon and drive an actuation pin **34** of a dose counter **36** as will be described. Extending centrally and axially from the lower face **30** is a valve stem **38** which is arranged to sealingly engage in a valve stem block **40** of the main body **10** of the inhaler **12**. The valve stem block **40** has a passageway **42** leading to a nozzle **44** for directing the contents of the canister **20**, namely active drug and propellant, towards an air outlet **46** of the inhaler main body **12**. It will be appreciated that due to gaps **48** between the canister **20** and an inner wall **50** of the main body **10** of the inhaler **12** an open top **52** of the main body **10** forms an air inlet into the inhaler **12** communicating via air passageway **54** with the air outlet **46**, such that canister contents exiting nozzle **44** mix with air being sucked by the user through the air passageway **54** in order to pass together through the air outlet and into the mouth of the user (not shown).

The dose counter **36** will now be described. The dose counter **36** includes an actuation pin **34** biased upwardly from underneath by a return spring **56** once installed in the main body **10**. As best shown in FIGS. **4**A, **6**H and **8**A, the pin **34** has side surfaces **58**, **60** arranged to slide between corresponding guide surfaces **62**, **64** located in a dose counter chamber **66** of the main body **10**, as well as an end stop surface **68** arranged to engage a corresponding end stop **70** formed in the dose counter chamber **66** to limit upward movement of the pin **34**. The pin **34** has a top part **72** which is circularly cylindrical and extends through an aperture **74** formed through a separator wall **76** which separates the canister chamber **18** from the dose counter chamber **66**. The top part **72** of the pin **34** has a flat top surface **78** which is arranged to engage the outer annular drive surface **32** of the canister **20**.

The actuation pin **34** is integrally formed with a drive or actuator pawl **80**. The actuator pawl **80** has a generally inverted U-shape configuration, having two mutually spaced and parallel arms **82**, **84** extending from a base portion of the actuation pin **34**, each holding at respective distal ends **88** thereof opposite ends of a pawl tooth member **90** which extends in a direction substantially perpendicular to the arms **82**, **84**, so as to provide what may be considered a "saddle" drive for pulling on each of the 11 drive teeth **92** of a ratchet wheel **94** of an incremental drive system **96** or ratchet mechanism **96** of the dose counter **36**. As shown for example in FIG. **10**B, the pawl tooth member **90** has a sharp lower

TEVAQVAR-00031276

US 9,808,587 B2

<table>
<tr><td>13</td><td>14</td></tr>
</table>

longitudinal side edge 98 arranged to engage the drive teeth 92, the edge-to-surface contact provided by this engagement providing very accurate positioning of the actuator pawl 80 and resultant rotational positioning of the ratchet wheel 94.

The dose counter 36 also has a chassis preassembly 100 which, as shown in FIGS. 4A and 6A, includes a chassis 102 having a first shaft 104 receiving the ratchet wheel 94 which is secured to a tape reel shaft 106, and a second shaft (or split pin) 108 which is parallel to and spaced from the first shaft 104 and which slidably and rotationally receives a tape stock bobbin 110.

As shown in FIG. 6B, when the inhaler has not been used at all, the majority of a tape 112 is wound on the tape stock bobbin 110 and the tape 112 has a series of regularly spaced numbers 114 displayed therealong to indicate a number of remaining doses in the canister 20. As the inhaler is repeatedly used, the ratchet wheel 94 is rotated by the actuator pawl 80 due to operation of the actuation pin 34 by the canister 20 and the tape 112 is incrementally and gradually wound on to the tape reel shaft 106 from the second shaft 108. The tape 112 passes around a tape guide 116 of the chassis 102 enabling the numbers 114 to be displayed via a window 118 in a dose counter chamber cover 120 having a dose marker 132 formed or otherwise located thereon.

As shown in FIGS. 6A and 6D, the second shaft 108 is forked with two forks 124, 126. The forks 124, 126 are biased away from one another. The forks have located thereon at diametrically opposed positions on the second shaft 108 friction or control elements 128, 130, one on each fork. Each control element extends longitudinally along its respective fork 124, 126 and has a longitudinally extending friction surface 132, 134 which extends substantially parallel to a longitudinal axis of the second shaft and is adapted to engage inside a substantially cylindrical bore 136 inside the tape stock bobbin 110. This control arrangement provided between the bore 136 and the control elements 128, 130 provides good rotational control for the tape stock bobbin 110 such that it does not unwind undesirably such as when the inhaler is dropped. The tape force required to unwind the tape stock bobbin 110 and overcome this friction force is approximately 0.1 N.

As can be seen in FIG. 6D, as well as FIGS. 6G and 10A to 10F, the chassis 102 is provided with an anti-back drive tooth 138 or count pawl 138 which is resiliently and substantially fixedly mounted thereto. As will be described below and as can be seen in FIGS. 10A to 10F, when the actuation pin 34 is depressed fully so as to fire the metered valve (not shown) inside the canister 20, the actuator pawl 80 pulls down on one of the teeth 92 of the ratchet wheel 94 and rotates the wheel 94 anticlockwise as shown in FIG. 6D so as to jump one tooth 92 past the count pawl 138, thereby winding the tape 112 a distance incrementally relative to the dose marker 122 on the dose counter chamber 120 so as to indicate that one dose has been used.

With reference to FIG. 10B, the teeth of the ratchet wheel 94 have tips 143 which are radiused with a 0.1 mm radius between the flat surfaces 140, 142. The ratchet wheel 94 has a central axis 145 which is 0.11 mm above datum plane 220 (FIG. 9). A top/nose surface 147 of the anti-back drive tooth 138 is located 0.36 mm above the datum plane 220. The distance vertically (i.e. transverse to datum plane 220—FIG. 9) between the top nose surface 147 of the anti-back drive tooth is 0.25 mm from the central axis 145 of the wheel 94. Bump surface 144 has a lateral extent of 0.20 mm, with a vertical length of a flat 145' thereof being 1 mm, the width of the bump surface being 1.22 mm (in the direction of the axis 145), the top 149 of the bump surface 144 being 3.02 mm vertically below the axis 145, and the flat 145' being spaced a distance sideways (i.e. parallel to the datum plane 220) 2.48 mm from the axis 145. The top surface 78 of the pin 34 (FIG. 6H) is 11.20 mm above the datum plane 220 (FIG. 9) when the actuator pawl 80 and pin 34 are in the start configuration. The length of the valve stem 22 is 11.39 mm and the drive surface 32 of the canister 20 is 11.39 mm above the datum plane 220 when the canister is at rest waiting to be actuated, such that there is a clearance of 0.19 mm between the canister 20 and the pin 34 in this configuration.

FIGS. 10A and 10B show the actuator pawl 80 and ratchet wheel 94 and count pawl 138 in a start position in which the flat top 78 of the pin 34 has not yet been engaged by the outer annular drive surface 32 of the canister 20 or at least has not been pushed down during a canister depression.

In this "start" position, the count pawl 138 engages on a non-return back surface 140 of one of the teeth 92 of the ratchet wheel 94. The lower side edge 98 of the actuator pawl is a distance "D" (FIG. 9) 1.33 mm above datum plane 220 which passes through bottom surface or shoulder 41 of valve stem block 40, the datum plane 220 being perpendicular to a main axis "X" of the main body 10 of the inhaler 12 which is coaxial with the centre of the valve stem block bore 43 and parallel to a direction of sliding of the canister 20 in the main body 10 of the inhaler 12 when the canister is fired.

As shown in FIG. 10B, an advantageous feature of the construction is that the pawl tooth/actuator 90 acts as a supplementary anti-back drive member when the inhaler 12 is not being used for inhalation. In particular, if the inhaler 12 is accidentally dropped, resulting in a jolt to the dose counter 36 then, if the wheel 94 would try to rotate clockwise (backwards) as shown in FIG. 10B, the back surface 140 of a tooth will engage and be blocked by the tooth member 90 of the pawl 80. Therefore, even if the anti-back drive tooth 138 is temporarily bent or overcome by such a jolt, undesirable backwards rotation of the wheel 94 is prevented and, upon the next canister firing sequence, the pawl 90 will force the wheel 94 to catch up to its correct position so that the dose counter 36 continues to provide correct dosage indication.

FIG. 10C shows a configuration in which the actuator pawl 80 has been depressed with the pin 34 by the canister 20 to a position in which the side edge 98 of the pawl tooth member 90 is just engaged with one of the teeth 92 and will therefore upon any further depression of the pin 34 begin to rotate the wheel 94. This is referred to as a "Reset" position or configuration. In this configuration, the lower side edge 98 of the actuator 80 is 0.64 mm above the datum plane 220.

FIG. 10D shows a configuration in which the actuator pawl 80 has been moved to a position lower than that shown in FIG. 10C and in which the metered dose valve (not shown) inside the canister has at this very position fired in order to eject active drug and propellant through the nozzle 44. It will be noted that in this configuration the count pawl 138 is very slightly spaced from the back surface 140 of the same tooth 92 that it was engaging in the configuration of FIG. 10D. The configuration shown in FIG. 10D is known as a "Fire" configuration. In this configuration the lower side edge 98 of the actuator 80 is 0.47 mm below the datum plane 220.

FIG. 10E shows a further step in the sequence, called a "Count" position in which the actuator pawl 80 has rotated the ratchet wheel 94 by the distance circumferentially angularly between two of the teeth 92, such that the count pawl 138 has just finished riding along a forward surface 142 of one of the teeth 92 and has resiliently jumped over the tooth

TEVAQVAR-00031277

US 9,808,587 B2

**15**

into engagement with the back surface **140** of the next tooth. Accordingly, in this "Count" configuration, a sufficiently long stroke movement of the pin **34** has occurred that the tape **112** of the dose counter **36** will just have counted down one dose. In this configuration, the lower side edge **98** of the actuator is 0.95 mm below the datum plane **220**. Accordingly, in this position, the actuator **80** generally, including edge **98**, is 0.48 mm lower than in the fire configuration. It has been found that, although the count configuration happens further on than the fire configuration, counting is highly reliable, with less than 50 failed counts per million. This is at least partially due to momentum effects and to the canister releasing some back pressure on the user in some embodiments as its internal metering valve fires.

In the configuration of FIG. **10**F, the pawl **80** has been further depressed with the pin **34** by the canister **20** to a position in which it is just disengaging from one of the teeth **92** and the actuator pawl **80** is assisted in this disengagement by engagement of one of the arms **84** with a bump surface **144** on the chassis **102** (see FIG. **6**G) and it will be seen at this point of disengagement, which is called an "End" configuration, the count pawl **138** is positioned exactly halfway or substantially halfway between two of the drive teeth **92**. This advantageously means therefore that there is a minimum chance of any double counting or non-counting, which would be undesirable. In the end configuration, the side edge **98** of the actuator is 1.65 mm below the datum plane **220**. It will be appreciated that any further depression of the actuator pawl **80** and pin **34** past the "End" configuration shown in FIG. **10**F will have no effect on the position of the tape **112** displayed by the dose counter **36** since the actuator pawl **80** is disengaged from the ratchet wheel **94** when it is below the position shown in FIG. **10**F.

As shown in FIGS. **7**C and **7**D, the inner wall **50** of the main body **10** is provided with a two-step support rail **144** which extends longitudinally along inside the main body and is located directly adjacent the aperture **74**. As shown in FIG. **7**B a diametrically opposed two-step support rail **146** is also provided and this diametrically opposed in the sense that a vertical plane (not shown) can pass substantially directly through the first rail **144**, the aperture **74**, a central aperture **148** of the valve stem block **40** (in which canister stem **25** is located) and the second two-step support rail **146**. As shown in FIG. **7**A and schematically in FIG. **7**B, the rails **144**, **146** provide a maximum clearance between the canister **20** and the rails **144**, **146** in a radial direction of almost exactly 0.3 mm, about 0.25 to 0.35 mm being a typical range. This clearance in this plane means that the canister **20** can only rock backwards and forwards in this plane towards away from the actuation pin **34**. A relatively small distance and this therefore prevents the canister wobbling and changing the height of the actuation pin **34** a as to undesirably alter the accuracy of the dose counter **36**. This is therefore highly advantageous.

The inner wall **50** of the main body **10** is provided with two further two-step rails **150** as well as two pairs **152**, **154** of rails extending different constant radial amounts inwardly from the inner wall **50**, so as to generally achieve a maximum clearance of almost exactly 0.3 mm around the canister **20** for all of the rails **144**, **146**, **150**, **152**, **154** spaced around the periphery of the inner wall **50**, in order to prevent undue rocking while still allowing canister motion freely inside the inhaler **12**. It will be clear from FIG. **7**C for example that the two-step rails have a first portion near an outlet end **156** of the canister chamber **18**, the first portion having a substantially constant radial or inwardly-extending width, a first step **160** leading to a second portion **162** of the rail, the

**16**

second portion **102** having a lesser radial or inwardly extending extent than the first portion **156**, and finally a second step **164** at which the rail merges into the main inner wall **50** main surface.

A method of assembling the inhaler **12** will now be described.

With reference to FIG. **8**A, the main body **10** of the inhaler **12** is formed by two or more plastics mouldings which have been joined together to the configuration shown.

As shown in FIG. **8**3, the actuator pawl **80** and pin **34** are translated forward into position into a pin receiving area **166** in the dose counter chamber **66** and the pin **34** and actuator **80** may then be raised until the pin **34** emerges through the aperture **74**.

Next, the return spring **56** may be inserted below the pin **34** and a generally cylindrical annular lower end **168** of the spring **56** may be moved by a tweezer or tweezer-like assembly tool (not shown) into engagement with a shelf **170** of a spring retainer **172** in the dose counter chamber **66**. The spring retainer **172** is U-shaped and the shelf **170** is U-shaped and has a recess **174** formed below it. As shown in FIGS. **4**B, **4**C and **12** shelf **170** includes three chamfer surfaces **176**, **178**, **180** arranged to assist in moving the lower end of the spring **168** into position onto the shelf using the assembly tool (not shown). Once the lower end of the spring **168** is in place, the assembly tool (not shown) can easily be removed at least partly via the recess **174** below the lower end **168** of the spring **56**.

The tape **112** is attached at one end (not shown) to the tape stock bobbin **110** and is wound onto the bobbin by a motor **200** (FIG. **13**) having a hexagonal output shaft **202** which engages in a hexagonal socket **204** (FIG. **6**3) of the bobbin. During winding, the tape is monitored by a sensor **206**, which may be in the form of a camera or laser scanner, which feeds data to a computer controller **205** for the motor **200**. The controller **205** recognises three positioning markers **210** in the form of lines across the tape **112** and stops the motor **202** when the tape **112** is nearly fully wound onto the bobbin **110**, such that the distal end **212** of the tape **112** can be secured, e.g. by adhesive, to the tape reel shaft **106**. The controller **205** also recognises a pixelated tape size marker **214** observed by the sensor **206** and logs in a stocking system data store **217** details of the tape **112** such as the number of numbers **114** on the tape, such as one hundred and twenty or two hundred numbers **114**. Next, the tape reel shaft is wound until an appropriate position of the lines **210** at which a priming dot **216** will, once the bobbin **110** and reel shaft **106** are slid onto the second shaft **108** and second shaft **104**, be in a position to be located in the window **118** when the inhaler **12** is fully assembled. In the embodiments, the bobbin **110** and reel shaft **106** may be slid onto the shafts **108**, **104** before the tape **112** is secured to the reel shaft **106** and the reel shaft may then be wound to position the priming dot **216**.

Next, the assembled dose counter components of the chassis preassembly **100** shown in FIG. **6**3 may be as shown in FIG. **8**C be inserted into the dose counter chamber **66**, with pins **182**, **184**, **186** formed on the main body **10** in the dose counter chamber **66** passing through apertures or slots **188**, **190**, **192** formed on the chassis **102**, such that the pins **182**, **184**, **186** extend through (or at least into) the apertures or slots **188**, **190**, **192**. With the chassis **102** being relatively firmly pushed towards the main body **10**, the pins **182**, **184**, **186** are then heat staked and the chassis **102** is therefore after this held very firmly in position in the main body and is unable to move, thereby assisting in providing great accuracy for the dose counter **36**. Next, as shown in FIG. **8**D, the

TEVAQVAR-00031278

US 9,808,587 B2

17

dose counter chamber cover **120** may be fitted over the dose counter chamber **66** and may be secured in place such as by welding, with the priming dot **216** being displayed through the window.

The user can, when readying the inhaler **12** for first use, prime the inhaler by depressing the canister **20** three times which will bring the first number **114** on the tape into display through the window **118** in place of the priming dot **216**, the number **114** shown in FIG. **8**D being "200", thereby indicating that 200 doses are remaining to be dispensed from the canister **20** and inhaler **12**.

As shown in FIG. **8**D, and in FIG. **5**, an open drain hole **194** is provided at the bottom of the dose counter chamber **66** by a substantially semi-circular cut-out or recess formation **196** in a lower surface **198** of the main body **10** of the inhaler. Accordingly, if the user (not shown) should decide to wash the main body **10** of the inhaler, for example after encountering an unhygienic situation or simply as a matter of choice, the drain hole **194** allows initial draining of water from inside the dose counter chamber **66** and also thereafter evaporation of water or any aqueous matter in the dose counter chamber **66** so that the window **118** does not mist up undesirably.

FIG. **14** shows a computer system **230** for designing the dose counter **36** and in particular for calculating distributions representative of average positions and standard deviations in a production series of inhalers of the start, reset, fire, count and end positions of the actuator lower side edge **98** relative to the datum plane **220** (FIG. **9**) and therefore of the actuator pawl **80** generally relative to the ratchet wheel **94**, and, when the inhaler **12** is fully assembled, the main body **10** of the inhaler **12**. The computer system **230** includes a data store **232**, a CPU **234**, an input device **236** (such as a keyboard or communication port) and an output device **238** (such as a communications port, display screen and/or printer). A user may enter data via the input device **236** which may be used by the CPU **234** in a mathematical calculation to predict count failure rates when the various dose counters are to be built in a series with dose counter positions set with given averages and standard deviations and taking into account any momentum/inertia effects and metering valve user-back-pressure reduction effect which will occur upon canister firing of a given type of canister. The computer system **230** is thus mathematically used to design the distributions. For the inhaler **12** described herein with the dose counter **36** and canister **20**, the distributions are designed as shown in FIG. **11**. The x axis shows distance of the lower side surface **98** of the actuator **80** above the datum plane **220** and the y axis is representative of the distribution. Thus, curve **240** shows that the start configuration has an average 1.33 mm above the datum plane **200** (standard deviation is 0.1 mm), curve **242** shows that the reset configuration has an average of 0.64 mm above the datum plane **220** (standard deviation is 0.082 mm), curve **244** shows the fire configuration has an average 0.47 mm below the datum plane **220** (standard deviation is 0.141 mm), curve **246** shows the count configuration has an average 0.95 mm below the datum plane **220** (standard deviation is 0.080 mm), and curve **248** shows the end configuration has an average of 1.65 mm below the datum plane **220** (standard deviation is 0.144 mm).

FIGS. **15** to **20** show a version of the inhaler modified in accordance with the present invention. In these drawings, the same reference numerals have been used to those in the earlier drawings to denote the equivalent components. The inhaler **12** is the same as that in FIGS. **1** to **14** apart from the following modifications.

18

First, it can be seen that there is a modification in that the drive teeth **92** of the ratchet wheel **94** have a different profile to that in FIGS. **1** to **14**. There are also only nine ratchet teeth **94** in this embodiment instead of eleven.

Additionally, as shown in FIGS. **18**C and **19**C, the control elements **128**, **130** on the forks **124**, **126** of the second shaft **108** have a tapered profile which is different to the profile of the control elements **128**, **130** shown in FIG. **6**F. Either profile can be used in the embodiment of FIGS. **15** to **20** however.

Furthermore, as shown in FIG. **15**, the tape stock bobbin **110** has an inwardly facing generally cylindrical engagement surface **300** with a wavelike form extending partially therealong. The engagement surface **300** has a cross-section **301** perpendicular to the longitudinal length of the stock bobbin **110** which is constant therealong. This cross-section **301** can be seen in FIG. **16** and consists of a series of ten regularly spaced concavities **302** and ten convex wall portions **304**. The convex wall portions **304** are equi-spaced between the concavities **302**. Each concavity **302** has a radius of 0.2 mm. Each convex wall portion **304** also has a radius of 0.2 mm. Finally, the cross section **301** also includes flat wall portions **306** between all of the radiused wall portions of the concavities **302** and convex wall portions **304**. The geometry of the cross-section **301** is therefore defined by the radii of the concavities **302** and convex wall portions **304**, the flat wall portions **306** and the fact that there are ten concavities **302** and convex wall portions **304**.

The minor diameter of the engagement surface **300**, i.e. between the tips of opposite convex wall portions **304**, is 2.46 mm. The major diameter of the engagement surface **300**, i.e. between the outermost portions of the concavities **302**, is 2.70 mm. The undeformed tip to tip maximum diameter of the forks **124**, **126** of the split pin (the second shaft) **108**, i.e. in the region of the maximum radio extent of the control elements **128**, **130**, is 3.1 millimeters and it will therefore be appreciated that the forks **124**, **126** are resiliently compressed once the stock bobbin **110** has been assembled onto the split pin **108** in all rotational configurations of the stock bobbin **110** relative to the split pin **108**. The minimum gap between the forks **124**, **126** in the plane of the cross sections of FIGS. **18**C and **19**C is 1 mm when the split pin **108** is in the undeformed, pre-inserted state. When the split pin **108** is at maximum compression, as shown in FIGS. **18**A to **18**C when the control elements **128**, **130** are shown to be engaged on top of the convex wall portions **304**, the gap **308** between the tips **310**, **312** of the forks **124**, **126** is 0.36 mm. On the other hand, when the split pin **108** is at minimum compression (once inserted into the stock bobbin) as shown in FIGS. **19**A to **19**C, when the control elements **128**, **130** rest in the concavities **302**, the gap between the tips **310**, **312** of the forks **124**, **126** is 0.6 mm. The control elements **128**, **130** are outwardly radiused with a radius also of 0.2 mm such that they can just rest on the concavities **302** with full surface contact (at least at an axial location on the split pin where the tapered control elements are at their maximum radial extent), without rattling in, locking onto or failing to fit in the concavities **302**. The radii of the control elements **128**, **130** is therefore preferably substantially the same as the radii of the concavities **304**.

It will be appreciated that whereas FIGS. **18**B and **19**B are end views along the coaxial plane of the stock bobbin **110** and split pin **108**, FIGS. **18**A and **19**A are cross-sections. FIG. **19**A is a section on the plane A-A' in FIG. **19**C and FIG. **18**A is a section at the same plane, but of course with the stock bobbin **110** rotated relative to the split pin **108**.

TEVAQVAR-00031279

US 9,808,587 B2

| 19 | 20 |

As the inhaler **12** is used and the ratchet wheel **94** rotates in order to count used doses, the stock bobbin rotates incrementally through rotational positions in which rotation is resisted, i.e. due to increasing compression of the split pin **108** at such rotational positions, and rotational positions in which rotation is promoted, i.e. due to decreasing compression of the split pin **108** at such rotational positions and this may involve a click forward of the stock bobbin **110** to the next position equivalent to that in FIGS. **19**A to **19**C in which the control elements **128**, **130** of the split pin art located in the concavities **302**. This functionality firstly allows the stock bobbin to unwind during use as required, but also prevents the tape **112** from loosening during transit if the inhaler **12** is dropped, such as onto a hard surface. This is highly advantageous, since the tape **11** is prevented from moving to a position in which it will give an incorrect reading regarding the number of doses in the canister.

During compression and expansion of the forks in the radial direction between the two configurations shown in FIGS. **18**C and **19**C, the forks **124**, **126** rotate about a point **316** on the split pin where the forks **124**, **126** come together. This rotational action means that there is a camming action between the forks **124**, **126** and the engagement surface **300** without significant friction but, nevertheless, the resilient forces provided by the regulator formed by the engagement surface **300** and forks **124**, **126** are able to regulate unwinding of the tape such that it does not easily occur during transit or if the inhaler **12** is dropped. It has been found during testing that a force of 0.3 to 0.4 N needs to be applied to the tape **112** to overcome the regulator at the stock bobbin **110**. 0.32 N is achieved with the control elements **128** having the profile shown in FIG. **19**C and 0.38 N is achieved with the profile of the control elements **128** altered to be as shown as described with reference to FIG. **6**F. These forces are substantially higher than the 0.1 N force mentioned above and undesirable movement of the tape is substantially avoided even if the inhaler is dropped onto a hard surface. The modified arrangement of FIGS. **15** to **20** does not provide this force "constantly" such that there is overall not an undesirably high friction of the tape **112** as it passes over the other components of the dose counter because, due to the incremental nature of the resilient forces at the regulator, the tape **112** can incrementally relax as it slides over the stationary chassis components.

Instead of having ten concavities **302** and convex wall portions **304**, other numbers may be used, such as 8 or 12. However, it is preferred to have an even number, especially since two control elements **128**, **130** are provided, so that all of the control elements **128**, **130** will expand and contract simultaneously. However, other arrangements are envisaged with 3 or more forks and the number of concavities/convex wall portions may be maintained as an integer divisible by the number of forks to maintain a system with simultaneous expansion/contraction. For example, the use of 9, 12 or 15 concavities/convex wall portions with 3 forks is envisaged.

Instead of having the engagement surface **300** on the inside of the stock bobbin **110**, it could be placed on the outside of the stock bobbin **110** so as to be engaged by flexible external legs/pawls or similar.

It will be noted that the regulator provided by the engagement surface **300** and forks **124**, **126** does not only allow rotation of the stock bobbin in one direction as is the case with the ratchet wheel **94**. Rotation in both directions is possible, i.e. forwards and backwards. This means that during assembly, the stock bobbin **110** can be wound backwards during or after fitting the bobbin **100**, shaft **106** and tape **112** onto the carriage **102**, if desired.

The stock bobbin **110** and the carriage **102** including the split pin **108** are both moulded of polypropylene material.

It will be seen from FIG. **16** that the cross-sectional shape **301** is not symmetrical within the hexagonal socket **204**. This has enabled the hexagonal socket **204** to be maintained at a useful size while still allowing the desired size and geometry of the cross section **301** to fit without interfering with the hexagonal shape of the hexagonal socket **204** and also permits moulding to work during manufacture.

As shown in FIG. **17**, the stock bobbin **110** has a series of four circumferential ribs **330** inside it and a spaced therealong. These hold the stock bobbin **110** on the correct side of the mould tool during moulding.

FIGS. **21** and **22** show a preferred embodiment in accordance with the invention of an inhaler **510** for dispensing a dry-powdered medicament in metered doses for patient inhalation. The inhaler **510** is as disclosed in FIGS. **1** to **16** or EP-A-1330280, the contents of which are hereby fully incorporated herein by reference, but with the stock bobbin **110** and second shaft **108** of the dose counter **516** modified so as to be as in FIGS. **15** to **20** hereof. Thus, the dry powder inhaler **510** generally includes a housing **518**, and an assembly **512** received in the housing (see FIG. **21**). The housing **518** includes a case **520** having an open end **522** and a mouthpiece **524** (FIG. **25**) for patient inhalation, a cap **526** secured to and closing the open end **522** of the case **520**, and a cover **528** pivotally mounted to the case **520** for covering the mouthpiece **524**. As shown in FIG. **22**, the inhaler **510** also includes an actuation spring **569**, first yoke **566** with opening **572**, bellows **540** with crown **574**, a reservoir **514**, second yoke **568** with hopper **542** and dose counter **516** mounted thereto, and case **520** has transparent window **5130** thereon for viewing dose counter tape indicia **5128**. The dose metering system also includes two cams **570** mounted on the mouthpiece cover **528** and movable with the cover **528** between open and closed positions. The cams **570** each include an opening **580** for allowing outwardly extending hinges **582** of the case **520** to pass therethrough and be received in first recesses **584** of the cover **528**. The cams **570** also include bosses **586** extending outwardly and received in second recesses **588** of the cover **528**, such that the cover **528** pivots about the hinges **582** and the cams **570** move with the cover **528** about the hinges **582**. As described in EP-A-1330280, cams **570** act upon cam followers **578** to move second yoke **568** up and down and thereby operate dose counter by engagement of pawl **5138** on the second yoke **568** with teeth **5136**. Remaining components of the inhaler are provided as, and operate as described, in EP-A-1330280.

The dose counting system therefore includes a ribbon or tape **5128** (FIGS. **23** & **24**), having successive numbers or other suitable indicia printed thereon, in alignment with a transparent window **5130** provided in the housing **18** (see FIG. **22**). The dose counting system **516** includes the rotatable stock bobbin **110** (as described above), an indexing spool **5134** rotatable in a single direction, and the ribbon **5128** rolled and received on the bobbin **110** and having a first end **527** secured to the spool **5134**, wherein the ribbon **5128** unrolls from the bobbin **110** so that the indicia are successively displayed as the spool **5134** is rotated or advanced. In FIGS. **23** and **24** the wavelike engagement surface **300** of the bobbin **110** is not shown for the purposes of clarity.

The spool **134** is arranged to rotate upon movement of the yokes **566**, **568** to effect delivery of a dose of medicament from reservoir **514**, such that the number on the ribbon **5128** is advanced to indicate that another dose has been dispensed by the inhaler **510**. The ribbon **5128** can be arranged such that the numbers, or other suitable indicia, increase or

TEVAQVAR-00031280

US 9,808,587 B2

**21**

decrease upon rotation of the spool **5134**. For example, the ribbon **5128** can be arranged such that the numbers, or other suitable indicia, decrease upon rotation of the spool **5134** to indicate the number of doses remaining in the inhaler **510**. Alternatively, the ribbon **5128** can be arranged such that the numbers, or other suitable indicia, increase upon rotation of the spool **5134** to indicate the number of doses dispensed by the inhaler **10**.

The indexing spool **5134** includes radially extending teeth **5136**, which are engaged by pawl **5138** extending from a cam follower **578** of the second yoke **568** upon movement of the yoke to rotate, or advance, the indexing spool **5134**. More particularly, the pawl **5138** is shaped and arranged such that it engages the teeth **5136** and advances the indexing spool **5134** only upon the mouthpiece cover **528** being closed and the yokes **566**, **568** moved back towards the cap **526** of the housing **518**.

The dose counting system **516** also includes a chassis **5140** that secures the dose counting system to the hopper **542** and includes shafts **108**, **5144** for receiving the bobbin **110** and the indexing spool **5134**. As described above with reference to FIGS. **1** to **20**, the bobbin shaft **108** is forked and includes radially nubs **5146** for creating a resilient resistance to rotation of the bobbin **110** on the shaft **108** by engaging with the wavelike engagement surface **300** inside the bobbin **110**. A clutch spring **5148** is received on the end of the indexing spool **5134** and locked to the chassis **5140** to allow rotation of the spool **5134** in only a single direction.

Various modifications may be made to the embodiment shown without departing from the scope of the invention as defined by the accompanying claims as interpreted under patent law.

What is claimed is:

**1**. An inhaler for metered dose inhalation, the inhaler comprising:

a main body having a canister housing,

a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and

a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister,

wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall,

wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, and

wherein the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

**2**. The inhaler as claimed in claim **1** wherein the medicament canister is movable relative to the dose counter.

**3**. The inhaler as claimed in claim **1** further comprising an aperture formed in the inner wall through which the portion of the actuation member extends.

**4**. The inhaler as claimed in claim **1**, wherein the first inner wall canister support formation comprises a support rail which extends longitudinally along an inside surface of the main body.

**5**. The inhaler as claimed in claim **4**, wherein the support rail includes a step formed thereon.

**22**

**6**. The inhaler as claimed in claim **4** further comprising a plurality of support rails each of which extends longitudinally along the inside surface of the main body.

**7**. The inhaler as claimed in claim **6**, wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

**8**. The inhaler as claimed in claim **4**, wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

**9**. The inhaler as claimed in claim **4**, wherein the support rail merges with the inner wall at a location adjacent the aperture.

**10**. The inhaler as claimed in claim **9**, wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail merges with the inner wall.

**11**. The inhaler as claimed in claim **1** further comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the actuation member and the central outlet port lie in a common plane coincident with longitudinal axis X.

**12**. An inhaler for metered dose inhalation, the inhaler comprising:

a main body having a canister housing,

a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and

a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister,

wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall,

wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, and

wherein the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member.

**13**. An inhaler for metered dose inhalation, the inhaler comprising:

a main body having a canister housing,

a medicament canister retained in the canister housing and movable relative thereto, and a dose counter, the dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister,

wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall,

wherein the canister housing has an aperture formed in the inner wall through which the portion of the actuation member extends, and

wherein the first inner wall canister support formation extends from the main surface of the inner wall to the aperture.

**14**. The inhaler as claimed in claim **13** wherein the medicament canister is movable relative to the dose counter.

TEVAQVAR-00031281

US 9,808,587 B2

23

**15**. The inhaler as claimed in claim **13**, wherein the first inner wall canister support formation comprises a support rail which extends longitudinally along an inside surface of the main body.

**16**. The inhaler as claimed in claim **15**, wherein the support rail includes a step formed thereon.

**17**. The inhaler as claimed in claim **15** further comprising a plurality of support rails each of which extends longitudinally along the inside surface of the main body.

**18**. The inhaler as claimed in claim **17**, wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

**19**. The inhaler as claimed in claim **15**, wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along the inside surface of the main body.

**20**. The inhaler as claimed in claim **15**, wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail is closest to the aperture.

**21**. The inhaler as claimed in claim **13**, wherein the first inner wall canister support formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port.

**22**. The inhaler as claimed in claim **21** further comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X.

\* \* \* \* \*

24

TEVAQVAR-00031282



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

February 26, 2021

THIS IS TO CERTIFY THAT ANNEXED HERETO IS A TRUE COPY FROM THE RECORDS OF THIS OFFICE OF:

U.S. PATENT: *10,561,808*

ISSUE DATE: *February 18, 2020*

By Authority of the

Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

P. R.  GRANT

Certifying Officer

Dist. of New Jersey
C.A. No. 20-10172 (JXN)(MAH)
Consolidated

**JTX-002**

TEVAQVAR-00031155



US010561808B2

(12) **United States Patent**    (10) Patent No.:    **US 10,561,808 B2**
Walsh et al.    (45) Date of Patent:    **Feb. 18, 2020**

(54) **DOSE COUNTER FOR INHALER HAVING AN ANTI-REVERSE ROTATION ACTUATOR**

(71) Applicants: **IVAX PHARMACEUTICALS IRELAND**, Waterford (IE); **NORTON (WATERFORD) LIMITED**, Waterford (IE); **TEVA PHARMACEUTICALS IRELAND**, Waterford (IE)

(72) Inventors: **Declan Walsh**, County Kilkenny (IE); **Derek Fenlon**, County Wexford (IE); **Simon Kaar**, County Cork (IE); **Jan Geert Hazenberg**, County Kilkenny (IE); **Daniel Buck**, County Waterford (IE); **Paul Clancy**, Waterford (IE); **Robert Charles Uschold**, Leominster, MA (US); **Jeffrey A. Karg**, Hopkinton, MA (US)

(73) Assignees: **IVAX PHARMACEUTICALS IRELAND**, Waterford (IE); **NORTON (WATERFORD) LIMITED**, Waterford (IE); **TEVA PHARMACEUTICALS IRELAND**, Waterford (IE)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 228 days.

(21) Appl. No.: **15/262,818**

(22) Filed: **Sep. 12, 2016**

(65) **Prior Publication Data**

US 2016/0375208 A1    Dec. 29, 2016

**Related U.S. Application Data**

(60) Continuation of application No. 14/699,584, filed on Apr. 29, 2015, which is a continuation of application
(Continued)

(51) **Int. Cl.**
| | | |
|---|---|---|
| *A61M 15/00* | (2006.01) | |
| *G06M 1/24* | (2006.01) | |
| *A61M 11/00* | (2006.01) | |

(52) **U.S. Cl.**
CPC ........ *A61M 15/0078* (2014.02); *A61M 11/00* (2013.01); *A61M 15/007* (2014.02);
(Continued)

(58) **Field of Classification Search**
CPC .......... A61M 15/0078; A61M 15/0025; A61M 15/0026; A61M 15/007; A61M 15/0071;
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,174,890 | A | 11/1979 | Johnson |
| 4,669,838 | A | 6/1987 | Hibbard |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CA | 2501726 | 9/2006 |
| EP | 1330280 | 7/2003 |

(Continued)

OTHER PUBLICATIONS

Final Office Action dated Oct. 20, 2016 for U.S. Appl. No. 14/699,567.
(Continued)

*Primary Examiner* — Daniel A Hess
(74) *Attorney, Agent, or Firm* — Morgan, Lewis & Bockius LLP

(57) **ABSTRACT**

A dose counter for an inhaler includes a counter display arranged to indicate dosage information, and a drive system arranged to move the counter display incrementally in a first direction from a first station to a second station in response to actuation input. A regulator is provided which is arranged
(Continued)



TEVAQVAR-00031156

**US 10,561,808 B2**

Page 2

to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movements.

**29 Claims, 17 Drawing Sheets**

**Related U.S. Application Data**

No. 14/103,353, filed on Dec. 11, 2013, now Pat. No. 9,526,850, which is a division of application No. 13/110,532, filed on May 8, 2011, now Pat. No. 8,978,966.

(60) Provisional application No. 61/345,763, filed on May 18, 2010, provisional application No. 61/417,659, filed on Nov. 29, 2010.

(52) **U.S. Cl.**
CPC ...... *A61M 15/009* (2013.01); *A61M 15/0025* (2014.02); *A61M 15/0026* (2014.02); *A61M 15/0065* (2013.01); *A61M 15/0071* (2014.02); *G06M 1/246* (2013.01); *A61M 2202/064* (2013.01); *A61M 2205/6063* (2013.01); *A61M 2207/00* (2013.01); *A61M 2207/10* (2013.01); *Y10T 29/49* (2015.01); *Y10T 29/49764* (2015.01); *Y10T 29/49826* (2015.01)

(58) **Field of Classification Search**
CPC .............. A61M 11/00; A61M 15/0065; A61M 15/009; G06M 1/246
USPC .......................................................... 235/8
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,687,359 | A | 8/1987 | Barrus |
| 5,482,030 | A | 1/1996 | Klein |
| 5,861,911 | A | 1/1999 | Oosaka |
| 6,446,627 | B1 | 9/2002 | Bowman |
| 6,718,972 | B2 | 4/2004 | OLeary |
| 8,418,690 | B2 | 4/2013 | Power |
| 8,474,448 | B2 | 7/2013 | Oi |
| 8,978,966 | B2 | 3/2015 | Walsh et al. |
| 9,174,013 | B2 | 11/2015 | Walsh et al. |
| 9,463,289 | B2 | 10/2016 | Walsh et al. |
| 2002/0047021 | A1 | 4/2002 | Blacker |
| 2002/0078949 | A1 | 6/2002 | OLeary |
| 2002/0078950 | A1* | 6/2002 | O'Leary ........... A61M 15/0045 128/200.22 |
| 2002/0084891 | A1 | 7/2002 | Mankins et al. |
| 2003/0209238 | A1 | 11/2003 | Rand |
| 2004/0089239 | A1 | 5/2004 | Haikarainen et al. |
| 2004/0095746 | A1 | 5/2004 | Murphy |
| 2005/0028815 | A1 | 2/2005 | Deaton |
| 2005/0087191 | A1 | 4/2005 | Morton |
| 2006/0096594 | A1 | 5/2006 | Bonney |
| 2006/0107949 | A1 | 5/2006 | Davies |
| 2006/0107979 | A1 | 5/2006 | Kim |
| 2007/0062518 | A1 | 3/2007 | Geser |
| 2008/0242465 | A1 | 10/2008 | Strobel |
| 2009/0178678 | A1 | 7/2009 | OLeary |
| 2010/0089395 | A1 | 4/2010 | Power |
| 2010/0218759 | A1 | 9/2010 | Anderson |
| 2011/0041845 | A1 | 2/2011 | Solomon |
| 2012/0006322 | A1 | 1/2012 | Anderson |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 1486227 | 12/2004 |
| GB | 2320489 | 6/1998 |
| JP | 02502129 | 7/1990 |
| JP | 450059 | 8/1992 |
| JP | 07100205 | 4/1995 |
| JP | 10504220 | 4/1998 |
| JP | 2002528144 | 9/2002 |
| JP | 2004501685 | 1/2004 |
| JP | 2008-94103 A | 4/2008 |
| JP | 2008094103 | 4/2008 |
| JP | 2008261423 | 10/2008 |
| JP | 2009233308 | 10/2009 |
| JP | 2009257392 | 11/2009 |
| JP | 2010096308 | 4/2010 |
| WO | 8909078 | 10/1989 |
| WO | 9628205 | 9/1996 |
| WO | 9828033 | 7/1998 |
| WO | 9936115 | 7/1999 |
| WO | 02/00281 A2 | 1/2002 |
| WO | 03101514 | 12/2003 |
| WO | 2005102430 | 11/2005 |
| WO | 2006062449 | 6/2006 |
| WO | 2006062449 A1 | 6/2006 |
| WO | 2007012861 | 2/2007 |
| WO | 2007062518 | 6/2007 |
| WO | 2008023019 | 2/2008 |
| WO | 2008119552 | 2/2008 |
| WO | 2011012325 | 2/2011 |
| WO | 2011012327 | 2/2011 |

OTHER PUBLICATIONS

Advisory Action dated Mar. 13, 2017 for U.S. Appl. No. 14/699,567.
Non-Final Office Action dated Jan. 12, 2017 for U.S. Appl. No. 14/713,620, 8 pages.
Final Rejection dated Sep. 27, 2016 for U.S. Appl. No. 14/699,578.
Final Office Action dated Aug. 31, 2016 for U.S. Appl. No. 14/713,620, 7 pages.
Advisory action dated Feb. 9, 2017 for U.S. Appl. No. 14/699,584.
Non-final rejection dated Jul. 12, 2016 for U.S. Appl. No. 14/713,643.
File History for U.S. Appl. No. 15/271,738.
File History for U.S. Appl. No. 15/269,102.
File History for U.S. Appl. No. 15/262,818.
File History for U.S. Appl. No. 15/289,553.
File History for U.S. Appl. No. 15/269,249.
Final rejection dated Oct. 20, 2016 or U.S. Appl. No. 14/699,584.
Non-Final Office Action dated Jun. 24, 2016 for U.S. Appl. No. 14/713,620, 7 pages.
Final rejection dated Oct. 20, 2016 or U.S. Appl. No. 14/713,631.
Advisory Action dated Mar. 16, 2017 or U.S. Appl. No. 14/713,633.
Entire patent prosecution history of U.S. Appl. No. 13/110,532, filed May 18, 2011, entitled,"Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."
Entire patent prosecution history of U.S. Appl. No. 14/103,324, filed Dec. 11, 2013, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."
Entire patent prosecution history of U.S. Appl. No. 14/103,343, filed Dec. 11, 2013, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."
Entire patent prosecution history of U.S. Appl. No. 14/103,353, filed Dec. 11, 2013, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."
Entire patent prosecution history of U.S. Appl. No. 14/103,363, filed Dec. 1, 2013, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."
Entire patent prosecution history of U.S. Appl. No. 14/103,392, filed Dec. 11, 2013, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."
Entire patent prosecution history of U.S. Appl. No. 14/699,567, filed Apr. 29, 2015, entitled, "Dose Counter for Inhaler and Method for Counting Doses."
Entire patent prosecution history of U.S. Appl. No. 14/699,578, filed Apr. 29, 2015, entitled, "Dose Counter for Inhaler Having a Bore and Shaft Arrangement."
Entire patent prosecution history of U.S. Appl. No. 14/699,584, filed Apr. 29, 2015, entitled, "Dose Counter for Inhaler Having an Antireverse Rotation Actuator".

**US 10,561,808 B2**

Page 3

(56)          **References Cited**

OTHER PUBLICATIONS

Entire patent prosecution history of U.S. Appl. No. 14/713,612, filed May 15, 2015, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."
Entire patent prosecution history of U.S. Appl. No. 14/713,620, filed May 15, 2015, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."
Entire patent prosecution history of U.S. Appl. No. 14/713,643, filed May 15, 2015, entitled, "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof."
European Patent Office Communication, dated Apr. 24, 2014 of counterpart European Patent Application No. 11 010 211.8.
European Patent Office Communication, dated Apr. 24, 2014 of counterpart European Patent Application No. 11 010 212.6.
First Examination Report of counterpart New Zealand Patent Application No. 603466, dated Jul. 1, 2013.

* cited by examiner

TEVAQVAR-00031158



FIG. 1

FIG. 2   FIG. 3A   FIG. 3B

FIG. 4B

FIG. 4C   FIG. 4A   FIG. 5

TEVAQVAR-00031159



FIG. 6A

FIG. 6B

FIG. 6C

FIG. 6D

FIG. 6E

TEVAQVAR-00031160



FIG.6F

FIG.6G

TEVAQVAR-00031161



FIG. 7A

FIG. 7B

FIG. 6H

TEVAQVAR-00031162



FIG.7C

FIG.7D

FIG.8D

TEVAQVAR-00031163



FIG.8C

FIG.8B

FIG.8A

TEVAQVAR-00031164



FIG. 9

TEVAQVAR-00031165



FIG. 10A

FIG. 10B

TEVAQVAR-00031166



FIG. 10E

FIG. 10C

TEVAQVAR-00031167



FIG. 10F

FIG. 10D

TEVAQVAR-00031168



FIG. 11

FIG. 14

TEVAQVAR-00031169



FIG. 12

FIG. 13

TEVAQVAR-00031170



FIG. 15

FIG. 20

FIG. 16

TEVAQVAR-00031171





TEVAQVAR-00031172



FIG. 21

FIG. 22



**FIG. 23**



**FIG. 24**

TEVAQVAR-00031174



## FIG. 25



## FIG. 26

TEVAQVAR-00031175

US 10,561,808 B2

**1**

# DOSE COUNTER FOR INHALER HAVING AN ANTI-REVERSE ROTATION ACTUATOR

## CROSS-REFERENCE TO RELATED APPLICATIONS

This patent application is a continuation patent application of U.S. Non-Provisional patent application Ser. No. 14/699,584, filed Apr. 29, 2015, which is a continuation patent application of U.S. Non-Provisional patent application Ser. No. 14/103,353, filed Dec. 11, 2013, which is a divisional patent application of U.S. Non-Provisional patent application Ser. No. 13/110,532, filed May 18, 2011, now U.S. Pat. No. 8,978,966, issued Mar. 17, 2015, which claims priority to U.S. Provisional Patent Application No. 61/345, 763, filed May 18, 2010, and U.S. Provisional Patent Application No. 61/417,659, filed Nov. 29, 2010, each of which is incorporated herein by reference in its entirety for any and all purposes.

## FIELD OF THE INVENTION

The present invention relates to dose counters for inhalers, inhalers and methods of assembly thereof. The invention is particularly applicable to metered dose inhalers including dry power medicament inhalers, breath actuated inhalers and manually operated metered dose medicament inhalers.

## BACKGROUND OF THE INVENTION

Metered dose inhalers can comprise a medicament-containing pressurised canister containing a mixture of active drug and propellant. Such canisters are usually formed from a deep-dawn aluminium cup having a crimped lid which carries a metering valve assembly. The metering valve assembly is provided with a protruding valve stem which, in use is inserted as a push fit into a stem block in an actuator body of an inhaler having a drug delivery outlet. In order to actuate a manually operable inhaler, the user applies by hand a compressive force to a closed end of the canister and the internal components of the metering valve assembly are spring loaded so that a compressive force of approximately 15 to 30N is required to activate the device in some typical circumstances.

In response to this compressive force the canister moves axially with respect to the valve stem and the axial movement is sufficient to actuate the metering valve and cause a metered quantity of the drug and the propellant to be expelled through the valve stem. This is then released into a mouthpiece of the inhaler via a nozzle in the stem block, such that a user inhaling through the outlet of the inhaler will receive a dose of the drug.

A drawback of self-administration from an inhaler is that it is difficult to determine how much active drug and/or propellant are left in the inhaler, if any, especially of the active drug and this is potentially hazardous for the user since dosing becomes unreliable and backup devices not always available.

Inhalers incorporating dose counters have therefore become known.

WO 98/028033 discloses an inhaler having a ratchet mechanism for driving a tape drive dose counter. A shaft onto which tape is wound has a friction clutch or spring for restraining the shaft against reverse rotation.

EP-A-1486227 discloses an inhaler for dry powered medicament having a ratchet mechanism for a tape dose counter which is operated when a mouthpiece of the inhaler is closed. Due to the way in which the mouthpiece is opened and closed, and actuation pawl of the device which is mounted on a yoke, travels a known long stroke of consistent length as the mouthpiece is opened and closed.

WO 2008/119552 discloses a metered-dose inhaler which is suitable for breath-operated applications and operates with a known and constant canister stroke length of 3.04 mm+/–0.255 mm. A stock bobbin of the counter, from which a tape is unwound, rotates on a shaft having a split pin intended to hold the stock bobbin taut. However, some dose counters do not keep a particularly reliable count, such as if they are dropped onto a hard surface.

More recently, it has become desirable to improve dose counters further and, in particular, it is felt that it would be useful to provide extremely accurate dose counters for manually-operated canister-type metered dose counters. Unfortunately, in these inhalers, it has been found in the course of making the present invention that the stroke length of the canister is to a very large extent controlled on each dose operation by the user, and by hand. Therefore, the stroke length is highly variable and it is found to be extremely difficult to provide a highly reliable dose counter for these applications. The dose counter must not count a dose when the canister has not fired since this might wrongly indicate to the user that a dose has been applied and if done repeatedly the user would throw away the canister or whole device before it is really time to change the device due to the active drug and propellant reaching a set minimum. Additionally, the canister must not fire without the dose counter counting because the user may then apply another dose thinking that the canister has not fired, and if this is done repeatedly the active drug and/or propellant may run out while the user thinks the device is still suitable for use according to the counter. It has also been found to be fairly difficult to assembly some known inhaler devices and the dose counters therefor. Additionally, it is felt desirable to improve upon inhalers by making them easily usable after they have been washed with water.

The present invention aims to alleviate at least to a certain extent one or more of the problems of the prior art.

## SUMMARY OF THE INVENTION

According to a first aspect of the present invention there is provided a dose counter for an inhaler, the dose counter having a counter display arranged to indicate dosage information, a drive system arranged to move the counter display incrementally in a first direction from a first station to a second station in response to actuation input, wherein a regulator is provided which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movements.

The regulator is advantageous in that it helps prevent unwanted motion of the counter display if the counter is dropped.

According to a further aspect of the present invention, the regulator provides a resistance force of greater than 0.1 N against movement of the counter display. According to still a further aspect of the present invention, the resistance force is greater than 0.3 N. According to yet a further aspect of the present invention, the resistance force is from 0.3 to 0.4 N.

Preferably, the counter comprises a tape.

Preferably, the tape has dose counter indicia displayed thereon. The first station may comprise a region of the dose counter where tape is held which is located before a display location, such as a display window, for the counter indicia.

TEVAQVAR-00031176

US 10,561,808 B2

3

The first station may comprise a first shaft, the tape being arranged on the first shaft and to unwind therefrom upon movement of the counter display.

The first shaft may be mounted for rotation relative to a substantially rotationally fixed element of the dose counter.

The regulator may comprise at least one projection which is arranged on one of the first shaft and the substantially rotationally fixed element and to engage incrementally with one or more formations on the other of the first shaft and the substantially rotationally fixed element.

At least two said projections may be provided. Exactly two said projections maybe provided.

Each projection may comprise a radiused surface.

The at least one projection may be located on the substantially fixed element which may comprise a fixed shaft which is fixed to a main body of the dose counter, the first shaft being rotationally mounted to the fixed shaft.

Preferably, the fixed shaft has at least two resiliently flexible legs (or forks). Each leg may have at least one said projection formed in an outwardly facing direction thereon, said one or more formations being formed on an inwardly facing engagement surface of the first shaft, said at least one projection being arranged to resiliently engage said one or more formations. Preferably, a series of said formations are provided. An even number of said formations may be provided. Eight to twelve of said formations may be provided. In one embodiment, ten said formations are provided.

Each said formation may comprise a concavity formed on an engagement surface. Each concavity may comprise a radiused surface wall portion which preferably merges on at least one side thereof into a flat wall portion surface. The engagement surface may include a series of said concavities, and convex wall portions of the engagement surface may be formed between each adjacent two said concavities, each said convex wall portion comprising a convex radiused wall portion.

Each convex radiused wall portion of each convex wall portion may be connected by said flat wall portion surfaces to each adjacent concavity.

The fixed shaft may comprise a split pin with fork legs and each projection may be located on a said fork leg.

The first shaft may comprise a substantially hollow bobbin.

Said at least one formation may be located on an inner surface of the bobbin. In other embodiments it may be located on an outer surface thereof. Said engagement surface may extend partially along said bobbin, a remainder of the respective inner or outer surface having a generally smooth journal portion along at least a portion thereof.

The drive system may comprise a tooth ratchet wheel arranged to act upon a second shaft which is located at the second station, the second shaft being rotatable to wind the tape onto the second shaft.

The second shaft may be located on a main body of the dose counter spaced from and parallel to the first shaft.

The ratchet wheel may be fixed to the second shaft is arranged to rotate therewith. The ratchet wheel may be secured to an end of the second shaft and aligned coaxially with the second shaft.

The dose counter may include anti-back drive system which is arranged to restrict motion of the second shaft. The anti-back drive system may include a substantially fixed tooth arranged to act upon teeth of the ratchet wheel.

According to a further aspect of the present invention, a dose counter includes an anti-back drive system which is arranged to restrict motion of the second shaft in a tape winding direction.

4

According to a further aspect of the present invention there is provided a shaft for holding counter tape in a dose counter for an inhaler, the shaft having an engagement surface including incrementally spaced formations located around a periphery thereof, the formations comprising a series of curved concavities and convex portions.

The shaft may comprise a hollow bobbin.

The engagement surface may be a generally cylindrical inwardly directed surface.

The engagement surface may include a flat surface wall portion joining each concavity and convex wall portion.

Each concavity may comprise a radiused wall portion.

Each convex wall portion may comprise a radiused wall portion.

Said concavities may be regularly spaced around a longitudinal axis of the shaft.

Said convex wall portions may be regularly spaced around a longitudinal axis of the shaft.

In some embodiments there may be from eight to twelve said concavities and/or convex wall portions regularly spaced around a longitudinal axis thereof.

One embodiment includes ten said concavities and/or convex wall portions regularly spaced around a longitudinal axis of the shaft.

According to a further aspect of the present invention there is provided a shaft and counter tape assembly for use in a dose counter for an inhaler, the assembly comprising a rotatable shaft and a counter tape which is wound around the shaft and is adapted to unwind therefrom upon inhaler actuation, the shaft having an engagement surface which includes incrementally spaced formations located around a periphery thereof.

According to a further aspect of the present invention there is provided an inhaler for the inhalation of medication and the like, the inhaler including a dose counter as in the first aspect of the present invention.

A preferred construction consists of a manually operated metered dose inhaler including a dose counter chamber including a dose display tape driven by a ratchet wheel which is driven in turn by an actuator pawl actuated by movement of a canister, the tape unwinding from a stock bobbin during use of the inhaler, a rotation regulator being provided for the stock bobbin and comprising a wavelike engagement surface with concavities which engage against control elements in the form of protrusions on resilient forks of a split pin thereby permitting incremental unwinding of the stock bobbin yet resisting excessive rotation if the inhaler is dropped onto a hard surface.

According to another aspect of the present invention there is provided a dose counter for a metered dose inhaler having a body arranged to retain a medicament canister of predetermined configuration for movement of the canister relative thereto; the dose counter comprising: an incremental counting system for counting doses, the incremental counting system having a main body, an actuator arranged to be driven in response to canister motion and to drive an incremental output member in response to canister motion, the actuator and incremental output member being configured to have predetermined canister fire and count configurations in a canister fire sequence, the canister fire configuration being determined by a position of the actuator relative to a datum at which the canister fires medicament and the count configuration being determined by a position of the actuator relative to the datum at which the incremental count system makes an incremental count, wherein the actuator is

TEVAQVAR-00031177

US 10,561,808 B2

5

arranged to reach a position thereof in the count configuration at or after a position thereof in the canister fire configuration.

This arrangement has been found to be highly advantageous since it provides an extremely accurate dose counter which is suitable for use with manually operated metered dose inhalers. It has been found that dose counters with these features have a failure rate of less than 50 failed counts per million full canister activation depressions. It has been found in the course of making the present invention that highly reliable counting can be achieved with the dose counter counting at or soon after the point at which the canister fires. It has been is covered by the present inventors that momentum and motion involved in firing the canister, and in some embodiments a slight reduction in canister back pressure on the user at the time of canister firing, can very reliably result in additional further motion past the count point.

The actuator and incremental counting system may be arranged such that the actuator is displaced less than 1 mm, typically 0.25 to 0.75 mm, more preferably about 0.4 to 0.6 mm, relative to the body between its location in the count and fire configurations, about 0.48 mm being preferred. The canister, which can move substantially in line with the actuator, can reliably move this additional distance so as to achieve very reliable counting.

The incremental count system may comprise a ratchet mechanism and the incremental output member may comprise a ratchet wheel having a plurality of circumferentially spaced teeth arranged to engage the actuator.

The actuator may comprise an actuator pawl arranged to engage on teeth of the ratchet wheel. The actuator pawl may be arranged to be connected to or integral with an actuator pin arranged to engage and be depressed by a medicament canister bottom flange. The actuator pawl may be generally U-shaped having two parallel arms arranged to pull on a central pawl member arranged substantially perpendicular thereto. This provides a very reliable actuator pawl which can reliably pull on the teeth of the ratchet wheel.

The incremental count system may include a tape counter having tape with incremental dose indicia located thereon, the tape being positioned on a tape stock bobbin and being arranged to unwind therefrom.

The actuator and incremental output member may be arranged to provide a start configuration at which the actuator is spaced from the ratchet output member, a reset configuration at which the actuator is brought into engagement with the incremental output member during a canister fire sequence, and an end configuration at which the actuator disengages from the ratchet output during a canister fire sequence.

The actuator may be arranged to be located about 1.5 to 2.0 mm, from its location in the fire configuration, when in the start configuration, about 1.80 mm being preferred.

The actuator may be arranged to be located about 1.0 to 1.2 mm, from its location in the fire configuration, when in the reset configuration, about 1.11 mm being preferred.

The actuator may be arranged to be located about 1.1 to 1.3 mm, from its location in the fire configuration, when in the end configuration, about 1.18 mm being preferred.

These arrangements provide extremely reliable dose counting, especially with manually operated canister type metered dose inhalers.

The main body may include a formation for forcing the actuator to disengage from the incremental output member when the actuator is moved past the end configuration. The formation may comprise a bumped up portion of an other-

6

wise generally straight surface against which the actuator engages and along which it is arranged to slide during a canister firing sequence.

The dose counter may include a counter pawl, the counter pawl having a tooth arranged to engage the incremental output member, the tooth and incremental output member being arranged to permit one way only incremental relative motion therebetween. When the incremental output member comprises a ratchet wheel, the tooth can therefore serve as an anti-back drive tooth for the ratchet wheel, thereby permitting only one way motion or rotation thereof.

The counter pawl may be substantially fixedly mounted on the main body of the incremental count system and the counter pawl may be arranged to be capable of repeatedly engaging equi-spaced teeth of the incremental output member in anti-back drive interlock configurations as the counter is operated. The counter pawl may be positioned so that the incremental output member is halfway, or substantially halfway moved from one anti-back drive interlock configuration to the next when the actuator and incremental output member are in the end configuration thereof. This is highly advantageous in that it minimises the risk of double counting or non-counting by the dose counter.

According to a further aspect of the invention there is provided an inhaler comprising a main body arranged to retain a medicament canister of predetermined configuration and a dose counter mounted in the main body.

The inhaler main body may include a canister receiving portion and a separate counter chamber, the dose counter being located within the main body thereof, the incremental output member and actuator thereof inside the counter chamber, the main body of the inhaler having wall surfaces separating the canister-receiving portion and the counter chamber, the wall surfaces being provided with a communication aperture, an actuation member extending through the communication aperture to transmit canister motion to the actuator.

According to a further aspect of the present invention there is a provided an inhaler for metered dose inhalation, the inhaler comprising a main body having a canister housing arranged to retain a medicament canister for motion therein, and a dose counter, the dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of a medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation located directly adjacent the actuation member.

This is highly advantageous in that the first inner wall canister support formation can prevent a canister from rocking too much relative to the main body of the inhaler. Since the canister may operate the actuation member of the dose counter, this substantially improves dose counting and avoids counter errors.

The canister housing may have a longitudinal axis which passes through a central outlet port thereof, the central outlet port being arranged to mate with an outer canister fire stem of a medicament canister, the inner wall canister support formation, the actuation member and the outlet port lying in a common plane coincident with the longitudinal axis. Accordingly, this construction may prevent the canister from rocking towards the position of the dose counter actuation member, thereby minimising errors in counting.

The canister housing may have a further inner canister wall support formation located on the inner wall opposite, or substantially opposite, the actuation member. Accordingly, the canister may be supported against rocking motion away from the actuator member so as to minimise count errors.

TEVAQVAR-00031178

US 10,561,808 B2

**7**

The canister housing may be generally straight and tubular and may have an arrangement in which each said inner wall support formation comprises a rail extending longitudinally along the inner wall.

Each said rail may be stepped, in that it may have a first portion located towards a medicine outlet end or stem block of the canister housing which extends inwardly a first distance from a main surface of the inner wall and a second portion located toward an opposite end of the canister chamber which extends inwardly a second, smaller distance from the main surface of the inner wall. This may therefore enable easy insertion of a canister into the canister housing such that a canister can be lined up gradually in step wise function as it is inserted into the canister housing.

The inhaler may include additional canister support rails which are spaced around an inner periphery of the inner wall of the canister housing and which extend longitudinally therealong.

At least one of the additional rails may extend a constant distance inwardly from the main surface of the inner wall.

At least one of the additional rails may be formed with a similar configuration to the first inner wall canister support formation.

The dose counter may, apart from said at least a portion of the actuation member, be located in a counter chamber separate from the canister housing, the actuation member comprising a pin extending through an aperture in a wall which separates the counter chamber and the canister housing.

According to a further aspect of the present invention there is provided an inhaler for inhaling medicaments having: a body for retaining a medicament store; the body including a dose counter, the dose counter having a moveable actuator and a return spring for the actuator, the return spring having a generally cylindrical and annular end; the body having a support formation therein for supporting said end of the return spring, the support formation comprising a shelf onto which said end is engageable and a recess below the shelf.

This shelf and recess arrangement is highly advantageous since it allows a tool (such as manual or mechanical tweezers) to be used to place the return spring of the actuator onto the shelf with the tool then being withdrawn at least partially via the recess.

The shelf may be U-shaped.

The support formation may include a U-shaped upstanding wall extending around the U-shaped shelf, the shelf and upstanding wall thereby forming a step and riser of a stepped arrangement.

The recess below the shelf my also be U-shaped.

At least one chamfered surface may be provided at an entrance to the shelf. This may assist in inserting the actuator and return spring into position.

A further aspect of the invention provides a method of assembly of an inhaler which includes the step of locating said end of said spring on the shelf with an assembly tool and then withdrawing the assembly tool at least partly via the recess. This assembly method is highly advantageous compared to prior art methods in which spring insertion has been difficult and in which withdrawal of the tool has sometimes accidentally withdrawn the spring again.

The cylindrical and annular end of the spring may be movable in a direction transverse to its cylindrical extent into the shelf while being located thereon.

According to a further aspect of the present invention there is provided an inhaler for inhaling medicament, the inhaler having a body for retaining a medicament store; and

**8**

a dose counter, the dose counter having a moveable actuator and a chassis mounted on the body; the chassis being heat staked in position on the body. This is be highly advantageous in that the chassis can be very accurately positioned and held firmly in place, thereby further improving counting accuracy compared to prior art arrangements in which some movement of the chassis relative to the body may be tolerated in snap-fit connections.

The chassis may have at least one of a pin or aperture heat staked to a respective aperture or pin of the body.

The chassis may have a ratchet counter output member mounted thereon.

The ratchet counter output member may comprise a ratchet wheel arranged to reel in incrementally a dose meter tape having a dosage indicia located thereon.

According to a further aspect of the present invention there is provided a method of assembling an inhaler including the step of heat staking the chassis onto the body. The step of heat staking is highly advantageous in fixedly positioning the chassis onto the body in order to achieve highly accurate dose counting in the assembled inhaler.

The method of assembly may include mounting a spring-returned ratchet actuator in the body before heat staking the chassis in place. The method of assembly may include pre-assembling the chassis with a dose meter tape prior to the step of heat staking the chassis in place. The method of assembly may include attaching a dose meter cover onto the body after the heat staking step. The cover may be welded onto the body or may in some embodiments be glued or otherwise attached in place.

According to a further aspect of the present invention there is provided an inhaler for inhaling medicament and having a body, the body have a main part thereof for retaining a medicament store; and a dose counter, the dose counter being located in a dose counter chamber of the body which is separated from the main part of the body, the dose counter chamber of the body having a dosage display and being perforated so as to permit the evaporation of water or aqueous matter in the dose counter chamber into the atmosphere.

This is high advantageous since it enables the inhaler to be thoroughly washed and the dose counting chamber can thereafter dry out fully.

The display may comprise a mechanical counter display inside the dose counter chamber and a window for viewing the mechanical counter display. The mechanical counter display may comprise a tape. The perforated dose counter chamber may therefore enable reliable washing of the inhaler, if desired by the user, and may therefore dry out without the display window misting up.

The dose counter chamber may be perforated by a drain hole formed through an outer hole of the body. The drain hole may be located at a bottom portion of the body of the inhaler, thereby enabling full draining of the inhaler to be encouraged after washing when the inhaler is brought into an upright position.

According to a further aspect of the present invention there is provided a dose counter for an inhaler, the dose counter having a display tape arranged to be incrementally driven from a tape stock bobbin onto an incremental tape take-up drive shaft, the bobbin having an internal bore supported by and for rotation about a support shaft, at least one of the bore and support shaft having a protrusion which is resiliently biased into frictional engagement with the other of the bore and support shaft with longitudinally extending mutual frictional interaction. This arrangement may provide good friction for the bobbin, thereby improving tape counter

TEVAQVAR-00031179

US 10,561,808 B2

9

display accuracy and preventing the bobbin from unwinding undesirably for example if the inhaler is accidentally dropped.

The support shaft may be forked and resilient for resiliently biasing the support shaft and bore into frictional engagement.

The support shaft may have two forks, or more in some cases, each having a radially extending protrusion having a friction edge extending therealong parallel to a longitudinal axis of the support shaft for frictionally engaging the bore of the support shaft with longitudinally extending frictional interaction therebetween.

The bore may be a smooth circularly cylindrical or substantially cylindrical bore.

Each of the above inhalers in accordance with aspects of the present invention may have a medicament canister mounted thereto.

The canister may comprise a pressurised metered dose canister having a reciprocally movable stem extending therefrom and movable into a main canister portion thereof for releasing a metered dose of medicament under pressure, for example by operating a metered dose valve inside the canister body. The canister may be operable by pressing by hand on the main canister body.

In cases in which one or more support rails or inner wall support formations are provided, the canister may at all times when within the canister chamber have a clearance of about 0.25 to 0.35 mm from the first inner wall support formation. The clearance may be almost exactly 0.3 mm. This clearance which may apply to the canister body itself or to the canister once a label has been applied, is enough to allow smooth motion of the canister in the inhaler while at the same time preventing substantial rocking of the canister which could result in inaccurate counting by a dose counter of the inhaler, especially when lower face of the canister is arranged to engage an actuator member of the dose counter for counting purposes.

According to a further aspect of the invention, a method of assembling a dose counter for an inhaler comprises the steps of providing a tape with dosing indicia thereon; providing tape positioning indicia on the tape; and stowing the tape while monitoring for the tape positioning indicia with a sensor. The method advantageously permits efficient and accurate stowing of the tape, e.g. by winding.

The dosing indicia may be provided as numbers, the tape positioning indicia may be provided as one or more lines across the tape. The stowing step comprises winding the tape onto a bobbin or shaft, and, optionally, stopping winding when the positioning indicia are in a predetermined position. The tape may be provided with pixelated indicia at a position spaced along the tape from the positioning indicia. The tape may also be provided with a priming dot.

According to a further aspect of the invention, a tape system for a dose counter for an inhaler has a main elongate tape structure, and dosing indicia and tape positioning indicia located on the tape structure. The tape positioning indicia may comprise at least one line extending across the tape structure. The tape system may comprise pixelated indicia located on the tape structure and spaced from the positioning indicia. The tape system may comprise a priming dot located on the tape structure. The positioning indicia may be located between the timing dot and the pixelated indicia. The main elongate tape structure may have at least one end thereof wound on a bobbin or shaft.

A further aspect of the invention provides a method of designing an incremental dose counter for an inhaler comprising the steps of calculating nominal canister fire and

10

dose counter positions for a dose counter actuator of the inhaler; calculating a failure/success rate for dose counters built to tolerance levels for counting each fire of inhalers in which the dose counter actuators may be applied; and selecting a tolerance level to result in said failure/success rate to be at or below/above a predetermined value. This is highly advantageous in that it allows an efficient and accurate prediction of the reliability of a series of inhaler counters made in accordance with the design.

The method of designing may include selecting the failure/success rate as a failure rate of no more than one in 50 million. The method of designing may include setting an average count position for dose counters built to the tolerances to be at or after an average fire position thereof during canister firing motion. The method of designing may include setting the average count position to be about 0.4 to 0.6 mm after the average fire position, such as about 0.48 mm after. The method of designing may include setting tolerances for the standard deviation of the fire position in dose counters built to the tolerances to be about 0.12 to 0.16 mm, such as about 0.141 mm. The method of designing may include setting tolerances for the standard deviation of the count positions in dose counters built to the tolerances to be about 0.07 to 0.09 mm, such as about 0.08 mm. A further aspect of the invention provides a computer implemented method of designing an incremental dose counter for an inhaler which includes the aforementioned method of designing.

A further aspect of the invention provides a method of manufacturing in a production run a series of incremental dose counters for inhalers which comprises manufacturing the series of dose counters in accordance with the aforementioned method of designing.

A further aspect of the invention provides a method of manufacturing a series of incremental dose counters for inhalers, which comprises manufacturing the dose counters with nominal canister fire and dose count positions of a dose counter actuator relative to a dose counter chassis (or inhaler main body), and which includes building the dose counters with the average dose count position in the series being, in canister fire process, at or after the average canister fire position in the series.

According to a further aspect of the invention, the method provides fitting each dose counter in the series of incremental dose counters to a corresponding main body of an inhaler.

These aspects advantageously provide for the production run of a series of inhalers and dose counters which count reliably in operation.

According to a further aspect of the invention, an incremental dose counter for a metered dose inhaler has a body arranged to retain a canister for movement of the canister relative thereto, the incremental dose counter having a main body, an actuator arranged to be driven and to drive an incremental output member in a count direction in response to canister motion, the actuator being configured to restrict motion of the output member in a direction opposite to the count direction. This advantageously enables an inhaler dose counter to keep a reliable count of remaining doses even if dropped or otherwise jolted.

The output member may comprise a ratchet wheel. The actuator may comprise a pawl and in which the ratchet wheel and pawl are arranged to permit only one-way ratcheting motion of the wheel relative to the pawl. The dose counter may include an anti-back drive member fixed to the main body. In a rest position of the dose counter, the ratchet wheel is capable of adopting a configuration in which a back surface of one tooth thereof engages the anti-back drive member and the pawl is spaced from an adjacent back

TEVAQVAR-00031180

US 10,561,808 B2

| 11 | 12 |

surface of another tooth of the ratchet wheel without positive drive/blocking engagement between the pawl and wheel.

## BRIEF DESCRIPTION OF THE DRAWINGS

The present invention may be carried out in various ways and preferred embodiment of a dose counter, inhaler and methods of assembly, design and manufacture will now be described with reference to the accompanying drawings in which:

FIG. **1** is an isometric view of a main body of an embodiment of an inhaler related to the invention together with a mouthpiece cap therefor;

FIG. **2** is a top plan view of the components as shown in FIG. **1**;

FIG. **3**A is a section on the plane **3A-3A** in FIG. **2**;

FIG. **3**B is a view corresponding to FIG. **3**A but with a dose counter fitted to the main body of the inhaler;

FIG. **4**A is an exploded view of the inhaler main body, mouthpiece cap, dose counter and a dose counter window;

FIG. **4**B is a view in the direction **4B** in FIG. **4**C of a spring retainer of the dose counter;

FIG. **4**C is a top view of the spring retainer of FIG. **4**B;

FIG. **5** is a bottom view of the assembled inhaler main body, mouthpiece cap, dose counter and dose counter window;

FIGS. **6**A, **6**B, **6**C, **6**D, **6**E, **6**F, **6**G and **6**H are various views of dose counter components of the inhaler;

FIGS. **7**A and **7**B are sectional views showing canister clearance inside the main body of the inhaler;

FIG. **7**C is a further sectional view similar to that of FIG. **7**B but with the canister removed;

FIG. **7**D is a top plan view of the inhaler main body;

FIGS. **8**A, **8**B, **8**C and **8**D show the inhaler main body and dose counter components during assembly thereof;

FIG. **9** shows a sectional side view of a datum line for an actuator pawl of the dose counter;

FIGS. **10**A, **10**B, **10**C, **10**D, **10**E and **10**F show various side views of positions and configurations of the actuator pawl, a ratchet wheel, and a count pawl;

FIG. **11** shows distributions for tolerances of start, reset, fire, count and end positions for the actuator of the dose counter;

FIG. **12** is an enlarged version of part of FIG. **4**A;

FIG. **13** shows an end portion of a tape of the dose counter;

FIG. **14** shows a computer system for designing the dose counter;

FIG. **15** is an isometric view of a stock bobbin modified in accordance with the present invention for use in the dose counter of the inhaler of FIGS. **1** to **14**;

FIG. **16** shows an end view of the stock bobbin of FIG. **15**;

FIG. **17** is a section through a longitudinal axis of the stock bobbin of FIGS. **15** and **16**;

FIGS. **18**A, **18**B and **18**C are views of the stock bobbin of FIGS. **15** to **17** mounted in the dose counter chassis of FIGS. **1** to **14**, with the control elements of the forks of the second shaft (or split pin) having a profile slightly different to that in FIG. **6**F, with the forks in a compressed configuration;

FIGS. **19**A, **19**B and **19**C are views equivalent to FIGS. **18**A to **18**C but with the forks in a more expanded configuration due to a different rotational position of the stock bobbin;

FIG. **20** is an isometric view of the chassis assembled and including the stock bobbin of FIGS. **15** to **17** but excluding the tape for reasons of clarity;

FIG. **21** is a view of a preferred embodiment of a dry powder inhaler in accordance with the present invention;

FIG. **22** is an exploded view of the inhaler of FIG. **21**;

FIG. **23** is a view of a dose counter of the inhaler of FIG. **21**;

FIG. **24** is an exploded view of the dose counter shown in FIG. **23**;

FIG. **25** is an exploded view of parts of the inhaler of FIG. **21**; and

FIG. **26** is a view of a yoke of the inhaler of FIG. **21**.

## DETAILED DESCRIPTION OF THE INVENTION

FIG. **1** shows a main body **10** of a manually operated metered dose inhaler **12** in accordance with an embodiment related to the present invention and having a mouthpiece cap **14** securable over a mouthpiece **16** of the main body.

The main body has a canister chamber **18** into which a canister **20** (FIG. **7**A) is slideable. The canister **20** has a generally cylindrical main side wall **24**, joined by a tapered section **26** to a head portion **28** having a substantially flat lower face **30** which has an outer annular drive surface **32** arranged to engage upon and drive an actuation pin **34** of a dose counter **36** as will be described. Extending centrally and axially from the lower face **30** is a valve stem **38** which is arranged to sealingly engage in a valve stem block **40** of the main body **10** of the inhaler **12**. The valve stem block **40** has a passageway **42** leading to a nozzle **44** for directing the contents of the canister **20**, namely active drug and propellant, towards an air outlet **46** of the inhaler main body **12**. It will be appreciated that due to gaps **48** between the canister **20** and an inner wall **50** of the main body **10** of the inhaler **12** an open top **52** of the main body **10** forms an air inlet into the inhaler **12** communicating via air passageway **54** with the air outlet **46**, such that canister contents exiting nozzle **44** mix with air being sucked by the user through the air passageway **54** in order to pass together through the air outlet and into the mouth of the user (not shown).

The dose counter **36** will now be described. The dose counter **36** includes an actuation pin **34** biased upwardly from underneath by a return spring **56** once installed in the main body **10**. As best shown in FIGS. **4**A, **6**H and **8**A, the pin **34** has side surfaces **58**, **60** arranged to slide between corresponding guide surfaces **62**, **64** located in a dose counter chamber **66** of the main body **10**, as well as an end stop surface **68** arranged to engage a corresponding end stop **70** formed in the dose counter chamber **66** to limit upward movement of the pin **34**. The pin **34** has a top part **72** which is circularly cylindrical and extends through an aperture **74** formed through a separator wall **76** which separates the canister chamber **18** from the dose counter chamber **66**. The top part **72** of the pin **34** has a flat top surface **78** which is arranged to engage the outer annular drive surface **32** of canister **20**.

The actuation pin **34** is integrally formed with a drive or actuator pawl **80**. The actuator pawl **80** has a generally inverted U-shape configuration, having two mutually spaced and parallel arms **82**, **84** extending from a base portion of the actuation pin **34**, each holding at respective distal ends **88** thereof opposite ends of a pawl tooth member **90** which extends in a direction substantially perpendicular to the arms **82**, **84**, so as to provide what may be considered a "saddle" drive for pulling on each of the 11 drive teeth **92** of a ratchet wheel **94** of an incremental drive system **96** or ratchet mechanism **96** of the dose counter **36**. As shown for example in FIG. **10**B, the pawl tooth member **90** has a sharp lower

TEVAQVAR-00031181

US 10,561,808 B2

13

longitudinal side edge 98 arranged to engage the drive teeth 92, the edge-to-surface contact provided by this engagement providing very accurate positioning of the actuator pawl 80 and resultant rotational positioning of the ratchet wheel 94.

The dose counter 36 also has a chassis preassembly 100 which, as shown in FIGS. 4A and 6A, includes a chassis 102 having a first shaft 104 receiving the ratchet wheel 94 which is secured to a tape reel shaft 106, and a second shaft (or split pin) 108 which is parallel to and spaced from the first shaft 104 and which slidably and rotationally receives a tape stock bobbin 110.

As shown in FIG. 6B, when the inhaler has not been used at all, the majority of a tape 112 is wound on the tape stock bobbin 110 and the tape 112 has a series of regularly spaced numbers 114 displayed therealong to indicate a number of remaining doses in the canister 20. As the inhaler is repeatedly used, the ratchet wheel 94 is rotated by the actuator pawl 80 due to operation of the actuation pin 34 by the canister 20 and the tape 112 is incrementally and gradually wound on to the tape reel shaft 106 from the second shaft 108. The tape 112 passes around a tape guide 116 of the chassis 102 enabling the numbers 114 to be displayed via a window 118 in a dose counter chamber cover 120 having a dose marker 132 formed or otherwise located thereon.

As shown in FIGS. 6A and 6D, the second shaft 108 is forked with two forks 124, 126. The forks 124, 126 are biased away from one another. The forks have located thereon at diametrically opposed positions on the second shaft 108 friction or control elements 128, 130, one on each fork. Each control element extends longitudinally along its respective fork 124, 126 and has a longitudinally extending friction surface 132, 134 which extends substantially parallel to a longitudinal axis of the second shaft and is adapted to engage inside a substantially cylindrical bore 136 inside the tape stock bobbin 110. This control arrangement provided between the bore 136 and the control elements 128, 130 provides good rotational control for the tape stock bobbin 110 such that it does not unwind undesirably such as when the inhaler is dropped. The tape force required to unwind the tape stock bobbin 110 and overcome this friction force is approximately 0.1 N.

As can be seen in FIG. 6D, as well as FIGS. 6G and 10A to 10F, the chassis 102 is provided with an anti-back drive tooth 138 or count pawl 138 which is resiliently and substantially fixedly mounted thereto. As will be described below and as can be seen in FIGS. 10A to 10F, when the actuation pin 34 is depressed fully so as to fire the metered valve (not shown) inside the canister 20, the actuator pawl 80 pulls down on one of the teeth 92 of the ratchet wheel 94 and rotates the wheel 94 anticlockwise as shown in FIG. 6D so as to jump one tooth 92 past the count pawl 138, thereby winding the tape 112 a distance incrementally relative to the dose marker 122 on the dose counter chamber 120 so as to indicate that one dose has been used.

With reference to FIG. 10B, the teeth of the ratchet wheel 94 have tips 143 which are radiused with a 0.1 mm radius between the flat surfaces 140, 142. The ratchet wheel 94 has a central axis 145 which is 0.11 mm above datum plane 220 (FIG. 9). A top/nose surface 147 of the anti-back drive tooth 138 is located 0.36 mm above the datum plane 220. The distance vertically (i.e. transverse to datum plane 220—FIG. 9) between the top nose surface 147 of the anti-back drive tooth is 0.25 mm from the central axis 145 of the wheel 94. Bump surface 144 has a lateral extent of 0.20 mm, with a vertical length of a flat 145' thereof being 1 mm, the width of the bump surface being 1.22 mm (in the direction of the axis 145), the top 149 of the bump surface 144 being 3.02

14

mm vertically below the axis 145, and the flat 145' being spaced a distance sideways (i.e. parallel to the datum plane 220) 2.48 mm from the axis 145. The top surface 78 of the pin 34 (FIG. 6H) is 11.20 mm above the datum plane 220 (FIG. 9) when the actuator pawl 80 and pin 34 are in the start configuration. The length of the valve stem 22 is 11.39 mm and the drive surface 32 of the canister 20 is 11.39 mm above the datum plane 220 when the canister is at rest waiting to be actuated, such that there is a clearance of 0.19 mm between the canister 20 and the pin 34 in this configuration.

FIGS. 10A and 10B show the actuator pawl 80 and ratchet wheel 94 and count pawl 138 in a start position in which the flat top 78 of the pin 34 has not yet been engaged by the outer annular drive surface 32 of the canister 20 or at least has not been pushed down during a canister depression.

In this "start" position, the count pawl 138 engages on a non-return back surface 140 of one of the teeth 92 of the ratchet wheel 94. The lower side edge 98 of the actuator pawl is a distance "D" (FIG. 9) 1.33 mm above datum plane 220 which passes through bottom surface or shoulder 41 of valve stem block 40, the datum plane 220 being perpendicular to a main axis "X" of the main body 10 of the inhaler 12 which is coaxial with the centre of the valve stem block bore 43 and parallel to a direction of sliding of the canister 20 in the main body 10 of the inhaler 12 when the canister is fired.

As shown in FIG. 10B, an advantageous feature of the construction is that the pawl tooth/actuator 90 acts as a supplementary anti-back drive member when the inhaler 12 is not being used for inhalation. In particular, if the inhaler 12 is accidentally dropped, resulting in a jolt to the dose counter 36 then, if the wheel 94 would try to rotate clockwise (backwards) as shown in FIG. 10B, the back surface 140 of a tooth will engage and be blocked by the tooth member 90 of the pawl 80. Therefore, even if the anti-back drive tooth 138 is temporarily bent or overcome by such a jolt, undesirable backwards rotation of the wheel 94 is prevented and, upon the next canister firing sequence, the pawl 90 will force the wheel 94 to catch up to its correct position so that the dose counter 36 continues to provide correct dosage indication.

FIG. 10C shows a configuration in which the actuator pawl 80 has been depressed with the pin 34 by the canister 20 to a position in which the side edge 98 of the pawl tooth member 90 is just engaged with one of the teeth 92 and will therefore upon any further depression of the pin 34 begin to rotate the wheel 94. This is referred to as a "Reset" position or configuration. In this configuration, the lower side edge 98 of the actuator 80 is 0.64 mm above the datum plane 220.

FIG. 10D shows a configuration in which the actuator pawl 80 has been moved to a position lower than that shown in FIG. 10C and in which the metered dose valve (not shown) inside the canister has at this very position fired in order to eject active drug and propellant through the nozzle 44. It will be noted that in this configuration the count pawl 138 is very slightly spaced from the back surface 140 of the same tooth 92 that it was engaging in the configuration of FIG. 10D. The configuration shown in FIG. 10D is known as a "Fire" configuration. In this configuration the lower side edge 98 of the actuator 80 is 0.47 mm below the datum plane 220.

FIG. 10E shows a further step in the sequence, called a "Count" position in which the actuator pawl 80 has rotated the ratchet wheel 94 by the distance circumferentially angularly between two of the teeth 92, such that the count pawl 138 has just finished riding along a forward surface 142 of one of the teeth 92 and has resiliently jumped over the tooth

TEVAQVAR-00031182

US 10,561,808 B2

15                                                          16

into engagement with the back surface **140** of the next tooth. Accordingly, in this "Count" configuration, a sufficiently long stroke movement of the pin **34** has occurred that the tape **112** of the dose counter **36** will just have counted down one dose. In this configuration, the lower side edge **98** of the actuator is 0.95 mm below the datum plane **220**. Accordingly, in this position, the actuator **80** generally, including edge **98**, is 0.48 mm lower than in the fire configuration. It has been found that, although the count configuration happens further on than the fire configuration, counting is highly reliable, with less than 50 failed counts per million. This is at least partially due to momentum effects and to the canister releasing some back pressure on the user in some embodiments as its internal metering valve fires.

In the configuration of FIG. **10**F, the pawl **80** has been further depressed with the pin **34** by the canister **20** to a position in which it is just disengaging from one of the teeth **92** and the actuator pawl **80** is assisted in this disengagement by engagement of one of the arms **84** with a bump surface **144** on the chassis **102** (see FIG. **6**G) and it will be seen at this point of disengagement, which is called an "End" configuration, the count pawl **138** is positioned exactly halfway or substantially halfway between two of the drive teeth **92**. This advantageously means therefore that there is a minimum chance of any double counting or non-counting, which would be undesirable. In the end configuration, the side edge **98** of the actuator is 1.65 mm below the datum plane **220**. It will be appreciated that any further depression of the actuator pawl **80** and pin **34** past the "End" configuration shown in FIG. **10**F will have no effect on the position of the tape **112** displayed by the dose counter **36** since the actuator pawl **80** is disengaged from the ratchet wheel **94** when it is below the position shown in FIG. **10**F.

As shown in FIGS. **7**C and **7**D, the inner wall **50** of the main body **10** is provided with a two-step support rail **144** which extends longitudinally along inside the main body and is located directly adjacent the aperture **74**. As shown in FIG. **7**B a diametrically opposed two-step support rail **146** is also provided and this diametrically opposed in the sense that a vertical plane (not shown) can pass substantially directly through the first rail **144**, the aperture **74**, a central aperture **148** of the valve stem block **40** (in which canister stem **25** is located) and the second two-step support rail **146**. As shown in FIG. **7**A and schematically in FIG. **7**B, the rails **144**, **146** provide a maximum clearance between the canister **20** and the rails **144**, **146** in a radial direction of almost exactly 0.3 mm, about 0.25 to 0.35 mm being a typical range. This clearance in this plane means that the canister **20** can only rock backwards and forwards in this plane towards away from the actuation pin **34**. A relatively small distance and this therefore prevents the canister wobbling and changing the height of the actuation pin **34** a as to undesirably alter the accuracy of the dose counter **36**. This is therefore highly advantageous.

The inner wall **50** of the main body **10** is provided with two further two-step rails **150** as well as two pairs **152**, **154** of rails extending different constant radial amounts inwardly from the inner wall **50**, so as to generally achieve a maximum clearance of almost exactly 0.3 mm around the canister **20** for all of the rails **144**, **146**, **150**, **152**, **154** spaced around the periphery of the inner wall **50**, in order to prevent undue rocking while still allowing canister motion freely inside the inhaler **12**. It will be clear from FIG. **7**C for example that the two-step rails have a first portion near an outlet end **156** of the canister chamber **18**, the first portion having a substantially constant radial or inwardly-extending width, a first step **160** leading to a second portion **162** of the rail, the

second portion **102** having a lesser radial or inwardly extending extent than the first portion **156**, and finally a second step **164** at which the rail merges into the main inner wall **50** main surface.

A method of assembling the inhaler **12** will now be described.

With reference to FIG. **8**A, the main body **10** of the inhaler **12** is formed by two or more plastics mouldings which have been joined together to the configuration shown.

As shown in FIG. **8**I3, the actuator pawl **80** and pin **34** are translated forward into position into a pin receiving area **166** in the dose counter chamber **66** and the pin **34** and actuator **80** may then be raised until the pin **34** emerges through the aperture **74**.

Next, the return spring **56** may be inserted below the pin **34** and a generally cylindrical annular lower end **168** of the spring **56** may be moved by a tweezer or tweezer-like assembly tool (not shown) into engagement with a shelf **170** of the spring retainer **172** in the dose counter chamber **66**. The spring retainer **172** is U-shaped and the shelf **170** is U-shaped and has a recess **174** formed below it. As shown in FIGS. **4**B, **4**C and **12** shelf **170** includes three chamfer surfaces **176**, **178**, **180** arranged to assist in moving the lower end of the spring **168** into position onto the shelf using the assembly tool (not shown). Once the lower end of the spring **168** is in place, the assembly tool (not shown) can easily be removed at least partly via the recess **174** below the lower end **168** of the spring **56**.

The tape **112** is attached at one end (not shown) to the tape stock bobbin **110** and is wound onto the bobbin by a motor **200** (FIG. **13**) having a hexagonal output shaft **202** which engages in a hexagonal socket **204** (FIG. **6**I3) of the bobbin. During winding, the tape is monitored by a sensor **206**, which may be in the form of a camera or laser scanner, which feeds data to a computer controller **205** for the motor **200**. The controller **205** recognises three positioning markers **213** in the form of lines across the tape **112** and stops the motor **202** when the tape **112** is nearly fully wound onto the bobbin **110**, such that the distal end **212** of the tape **112** can be secured, e.g. by adhesive, to the tape reel shaft **106**. The controller **205** also recognises a pixelated tape size marker **214** observed by the sensor **206** and logs in a stocking system data store **217** details of the tape **112** such as the number of numbers **114** on the tape, such as one hundred and twenty or two hundred numbers **114**. Next, the tape reel shaft is wound until an appropriate position of the lines **210** at which a priming dot **216** will, once the bobbin **110** and reel shaft **106** are slid onto the second shaft **108** and second shaft **104**, be in a position to be located in the window **118** when the inhaler **12** is fully assembled. In the embodiments, the bobbin **110** and reel shaft **106** may be slid onto the shafts **108**, **104** before the tape **112** is secured to the reel shaft **106** and the reel shaft may then be wound to position the priming dot **216**.

Next, the assembled dose counter components of the chassis preassembly **100** shown in FIG. **6**I3 may as shown in FIG. **8**C be inserted into the dose counter chamber **66**, with pins **182**, **184**, **186** formed on the main body **10** in the dose counter chamber **66** passing through apertures or slots **188**, **190**, **192** formed on the chassis **102**, such that the pins **182**, **184**, **186** extend through (or at least into) the apertures or slots **188**, **190**, **192**. With the chassis **102** being relatively firmly pushed towards the main body **10**, the pins **182**, **184**, **186** are then heat staked and the chassis **102** is therefore after this held very firmly in position in the main body and is unable to move, thereby assisting in providing great accuracy for the dose counter **36**. Next, as shown in FIG. **8**D, the

TEVAQVAR-00031183

US 10,561,808 B2

17                                                          18

dose counter chamber cover **120** may be fitted over the dose counter chamber **66** and may be secured in place such as by welding, with the priming dot **216** being displayed through the window.

The user can, when readying the inhaler **12** for first use, prime the inhaler by depressing the canister **20** three times which will bring the first number **114** on the tape into display through the window **118** in place of the priming dot **216**, the number **114** shown in FIG. **8**D being "200", thereby indicating that 200 doses are remaining to be dispensed from the canister **20** and inhaler **12**.

As shown in FIG. **8**D, and in FIG. **5**, an open drain hole **194** is provided at the bottom of the dose counter chamber **66** by a substantially semi-circular cut-out or recess formation **196** in a lower surface **198** of the main body **10** of the inhaler. Accordingly, if the user (not shown) should decide to wash the main body **10** of the inhaler, for example after encountering an unhygienic situation or simply as a matter of choice, the drain hole **194** allows initial draining of water from inside the dose counter chamber **66** and also thereafter evaporation of water or any aqueous matter in the dose counter chamber **66** so that the window **118** does not mist up undesirably.

FIG. **14** shows a computer system **230** for designing the dose counter **36** and in particular for calculating distributions representative of average positions and standard deviations in a production series of inhalers of the start, reset, fire, count and end positions of the actuator lower side edge **98** relative to the datum plane **220** (FIG. **9**) and therefore of the actuator pawl **80** generally relative to the ratchet wheel **94**, chassis **102** and, when the inhaler **12** is fully assembled, the main body **10** of the inhaler **12**. The computer system **230** includes a data store **232**, a CPU **234**, an input device **236** (such as a keyboard or communication port) and an output device **238** (such as a communications port, display screen and/or printer). A user may enter data via the input device **236** which may be used by the CPU **234** in a mathematical calculation to predict count failure rates when the various dose counters are to be built in a series with dose counter positions set with given averages and standard deviations and taking into account any momentum/inertia effects and metering valve user-back-pressure reduction effect which will occur upon canister firing of a given type of canister. The computer system **230** is thus mathematically used to design the distributions. For the inhaler **12** described herein with the dose counter **36** and canister **20**, the distributions are designed as shown in FIG. **11**. The x axis shows distance of the lower side surface **98** of the actuator **80** above the datum plane **220** and the y axis is representative of the distribution. Thus, curve **240** shows that the start configuration has an average 1.33 mm above the datum plane **200** (standard deviation is 0.1 mm), curve **242** shows that the reset configuration has an average of 0.64 mm above the datum plane **220** (standard deviation is 0.082 mm), curve **244** shows the fire configuration has an average 0.47 mm below the datum plane **220** (standard deviation is 0.141 mm), curve **246** shows the count configuration has an average 0.95 mm below the datum plane **220** (standard deviation is 0.080 mm), and curve **248** shows the end configuration has an average of 1.65 mm below the datum plane **220** (standard deviation is 0.144 mm).

FIGS. **15** to **20** show a version of the inhaler modified in accordance with the present invention. In these drawings, the same reference numerals have been used to those in the earlier drawings to denote the equivalent components. The inhaler **12** is the same as that in FIGS. **1** to **14** apart from the following modifications.

First, it can be seen that there is a modification in that the drive teeth **92** of the ratchet wheel **94** have a different profile to that in FIGS. **1** to **14**. There are also only nine ratchet teeth **94** in this embodiment instead of eleven.

Additionally, as shown in FIGS. **18**C and **19**C, the control elements **128**, **130** on the forks **124**, **126** of the second shaft **108** have a tapered profile which is different to the profile of the control elements **128**, **130** shown in FIG. **6**F. Either profile can be used in the embodiment of FIGS. **15** to **20** however.

Furthermore, as shown in FIG. **15**, the tape stock bobbin **110** has an inwardly facing generally cylindrical engagement surface **300** with a wavelike form extending partially the-realong. The engagement surface **300** has a cross-section **301** perpendicular to the longitudinal length of the stock bobbin **110** which is constant therealong. This cross-section **301** can be seen in FIG. **16** and consists of a series of ten regularly spaced concavities **302** and ten convex wall portions **304**. The convex wall portions **304** are equi-spaced between the concavities **302**. Each concavity **302** has a radius of 0.2 mm. Each convex wall portion **304** also has a radius of 0.2 mm. Finally, the cross section **301** also includes flat wall portions **306** between all of the radiused wall portions of the concavities **302** and convex wall portions **304**. The geometry of the cross-section **301** is therefore defined by the radii of the concavities **302** and convex wall portions **304**, the flat wall portions **306** and the fact that there are ten concavities **302** and convex wall portions **304**.

The minor diameter of the engagement surface **300**, i.e. between the tips of opposite convex wall portions **304**, is 2.46 mm. The major diameter of the engagement surface **300**, i.e. between the outermost portions of the concavities **302**, is 2.70 mm. The undeformed tip to tip maximum diameter of the forks **124**, **126** of the split pin (the second shaft) **108**, i.e. in the region of the maximum radio extent of the control elements **128**, **130**, is 3.1 millimetres and it will therefore be appreciated that the forks **124**, **126** are resiliently compressed once the stock bobbin **110** has been assembled onto the split pin **108** in all rotational configurations of the stock bobbin **110** relative to the split pin **108**. The minimum gap between the forks **124**, **126** in the plane of the cross sections of FIGS. **18**C and **19**C is 1 mm when the split pin **108** is in the undeformed, pre-inserted state. When the split pin **108** is at maximum compression, as shown in FIGS. **18**A to **18**C when the control elements **128**, **130** are shown to be engaged on top of the convex wall portions **304**, the gap **308** between the tips **310**, **312** of the forks **124**, **126** is 0.36 mm. On the other hand, when the split pin **108** is at minimum compression (once inserted into the stock bobbin) as shown in FIGS. **19**A to **19**C, when the control elements **128**, **130** rest in the concavities **302**, the gap between the tips **310**, **312** of the forks **124**, **126** is 0.6 mm. The control elements **128**, **130** are outwardly radiused with a radius also of 0.2 mm such that they can just rest on the concavities **302** with full surface contact (at least at an axial location on the split pin where the tapered control elements are at their maximum radial extent), without rattling in, locking onto or failing to fit in the concavities **302**. The radii of the control elements **128**, **130** is therefore preferably substantially the same as the radii of the concavities **302**.

It will be appreciated that whereas FIGS. **18**B and **19**B are end views along the coaxial axis of the stock bobbin **110** and split pin **108**, FIGS. **18**A and **19**A are cross-sections. FIG. **19**A is a section on the plane A-A' in FIG. **19**C and FIG. **18**A is a section at the same plane, but of course with the stock bobbin **110** rotated relative to the split pin **108**.

TEVAQVAR-00031184

US 10,561,808 B2

19

20

As the inhaler 12 is used and the ratchet wheel 94 rotates in order to count used doses, the stock bobbin rotates incrementally through rotational positions in which rotation is resisted, i.e. due to increasing compression of the split pin 108 at such rotational positions, and rotational positions in which rotation is promoted, i.e. due to decreasing compression of the split pin 108 at such rotational positions and this may involve a click forward of the stock bobbin 110 to the next position equivalent to that in FIGS. 19A to 19C in which the control elements 128, 130 of the split pin are located in the concavities 302. This functionality firstly allows the stock bobbin to unwind during use as required, but also prevents the tape 112 from loosening during transit if the inhaler 12 is dropped, such as onto a hard surface. This is highly advantageous, since the tape 11 is prevented from moving to a position in which it will give an incorrect reading regarding the number of doses in the canister.

During compression and expansion of the forks in the radial direction between the two configurations shown in FIGS. 18C and 19C, the forks 124, 126 rotate about a point 316 on the split pin where the forks 124, 126 come together. This rotational action means that there is a camming action between the forks 124, 126 and the engagement surface 300 without significant friction but, nevertheless, the resilient forces provided by the regulator formed by the engagement surface 300 and forks 124, 126 are able to regulate unwinding of the tape such that it does not easily occur during transit or if the inhaler 12 is dropped. It has been found during testing that a force of 0.3 to 0.4 N needs to be applied to the tape 112 to overcome the regulator at the stock bobbin 110. 0.32 N is achieved with the control elements 128 having the profile shown in FIG. 19C and 0.38 N is achieved with the profile of the control elements 128 altered to be as shown as described with reference to FIG. 6F. These forces are substantially higher than the 0.1 N force mentioned above and undesirable movement of the tape is substantially avoided even if the inhaler is dropped onto a hard surface. The modified arrangement of FIGS. 15 to 20 does not provide this force "constantly" such that there is overall not an undesirably high friction of the tape 112 as it passes over the other components of the dose counter because, due to the incremental nature of the resilient forces at the regulator, the tape 112 can incrementally relax as it slides over the stationary chassis components.

Instead of having ten concavities 302 and convex wall portions 304, other numbers may be used, such as 8 or 12. However, it is preferred to have an even number, especially since two control elements 128, 130 are provided, so that all of the control elements 128, 130 will expand and contract simultaneously. However, other arrangements are envisaged with 3 or more forks and the number of concavities/convex wall portions may be maintained as an integer divisible by the number of forks to maintain a system with simultaneous expansion/contraction. For example, the use of 9, 12 or 15 concavities/convex wall portions with 3 forks is envisaged.

Instead of having the engagement surface 300 on the inside of the stock bobbin 110, it could be placed on the outside of the stock bobbin 110 so as to be engaged by flexible external legs/pawls or similar.

It will be noted that the regulator provided by the engagement surface 300 and forks 124, 126 does not only allow rotation of the stock bobbin in one direction as is the case with the ratchet wheel 94. Rotation in both directions is possible, i.e. forwards and backwards. This means that during assembly, the stock bobbin 110 can be wound backwards during or after fitting the bobbin 100, shaft 106 and tape 112 onto the carriage 102, if desired.

The stock bobbin 110 and the carriage 102 including the split pin 108 are both moulded of polypropylene material.

It will be seen from FIG. 16 that the cross-sectional shape 301 is not symmetrical within the hexagonal socket 204. This has enabled the hexagonal socket 204 to be maintained at a useful size while still allowing the desired size and geometry of the cross section 301 to fit without interfering with the hexagonal shape of the hexagonal socket 204 and also permits moulding to work during manufacture.

As shown in FIG. 17, the stock bobbin 110 has a series of four circumferential ribs 330 inside it and a spaced therealong. These hold the stock bobbin 110 on the correct side of the mould tool during moulding.

FIGS. 21 and 22 show a preferred embodiment in accordance with the invention of an inhaler 510 for dispensing a dry-powdered medicament in metered doses for patient inhalation. The inhaler 510 is as disclosed in FIGS. 1 to 16 or EP-A-1330280, the contents of which are hereby fully incorporated herein by reference, but with the stock bobbin 110 and second shaft 108 of the dose counter 516 modified so as to be as in FIGS. 15 to 20 hereof. Thus, the dry powder inhaler 510 generally includes a housing 518, and an assembly 512 received in the housing (see FIG. 21). The housing 518 includes a case 520 having an open end 522 and a mouthpiece 524 (FIG. 25) for patient inhalation, a cap 526 secured to and closing the open end 522 of the case 520, and a cover 528 pivotally mounted to the case 520 for covering the mouthpiece 524. As shown in FIG. 22, the inhaler 510 also includes an actuation spring 569, first yoke 566 with opening 572, bellows 540 with crown 574, a reservoir 514, second yoke 568 with hopper 542 and dose counter 516 mounted thereto, and case 520 has transparent window 5130 thereon for viewing dose counter tape indicia 5128. The dose metering system also includes two cams 570 mounted on the mouthpiece cover 528 and movable with the cover 528 between open and closed positions. The cams 570 each include an opening 580 for allowing outwardly extending hinges 582 of the case 520 to pass therethrough and be received in first recesses 584 of the cover 528. The cams 570 also include bosses 586 extending outwardly and received in second recesses 588 of the cover 528, such that the cover 528 pivots about the hinges 582 and the cams 570 move with the cover 528 about the hinges 582. As described in EP-A-1330280, cams 570 act upon cam followers 578 to move second yoke 568 up and down and thereby operate dose counter by engagement of pawl 5138 on the second yoke 568 with teeth 5136. Remaining components of the inhaler are provided as, and operate as described, in EP-A-1330280.

The dose counting system 516 therefore includes a ribbon or tape 5128 (FIGS. 23 & 24), having successive numbers or other suitable indicia printed thereon, in alignment with a transparent window 5130 provided in the housing 18 (see FIG. 22). The dose counting system 516 includes the rotatable stock bobbin 110 (as described above), an indexing spool 5134 rotatable in a single direction, and the ribbon 5128 rolled and received on the bobbin 110 and having a first end 527 secured to the spool 5134, wherein the ribbon 5128 unrolls from the bobbin 110 so that the indicia are successively displayed as the spool 5134 is rotated or advanced. In FIGS. 23 and 24 the wavelike engagement surface 300 of the bobbin 110 is not shown for the purposes of clarity.

The spool 134 is arranged to rotate upon movement of the yokes 566, 568 to effect delivery of a dose of medicament from reservoir 514, such that the number on the ribbon 5128 is advanced to indicate that another dose has been dispensed by the inhaler 510. The ribbon 5128 can be arranged such that the numbers, or other suitable indicia, increase or

TEVAQVAR-00031185

US 10,561,808 B2

21

decrease upon rotation of the spool **5134**. For example, the ribbon **5128** can be arranged such that the numbers, or other suitable indicia, decrease upon rotation of the spool **5134** to indicate the number of doses remaining in the inhaler **510**. Alternatively, the ribbon **5128** can be arranged such that the numbers, or other suitable indicia, increase upon rotation of the spool **5134** to indicate the number of doses dispensed by the inhaler **10**.

The indexing spool **5134** includes radially extending teeth **5136**, which are engaged by pawl **5138** extending from a cam follower **578** of the second yoke **568** upon movement of the yoke to rotate, or advance, the indexing spool **5134**. More particularly, the pawl **5138** is shaped and arranged such that it engages the teeth **5136** and advances the indexing spool **5134** only upon the mouthpiece cover **528** being closed and the yokes **566**, **568** moved back towards the cap **526** of the housing **518**.

The dose counting system **516** also includes a chassis **5140** that secures the dose counting system to the hopper **542** and includes shafts **108**, **5144** for receiving the bobbin **110** and the indexing spool **5134**. As described above with reference to FIGS. **1** to **20**, the bobbin shaft **108** is forked and includes radially nubs **5146** for creating a resilient resistance to rotation of the bobbin **110** on the shaft **108** by engaging with the wavelike engagement surface **300** inside the bobbin **110**. A clutch spring **5148** is received on the end of the indexing spool **5134** and locked to the chassis **5140** to allow rotation of the spool **5134** in only a single direction.

Various modifications may be made to the embodiment shown without departing from the scope of the invention as defined by the accompanying claims as interpreted under patent law.

What is claimed is:

**1**. A dose counter for an inhaler, the dose counter having a counter display arranged to indicate dosage information, a drive system arranged to move the counter display incrementally in a first direction from a first station to a second station in response to actuation input, wherein a regulator is provided which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movements.

**2**. The dose counter as claimed in claim **1** in which the counter display comprises a tape.

**3**. The dose counter as claimed in claim **2** in which the tape has dose counter indicia displayed thereon.

**4**. The dose counter as claimed in claim **2** wherein the first station comprises a first shaft, the tape being arranged on the first shaft and to unwind therefrom upon movement of the counter display.

**5**. The dose counter as claimed in claim **4** in which the first shaft is mounted for rotation relative to a substantially rotationally fixed element of the dose counter.

**6**. The dose counter as claimed in claim **5** in which the regulator comprises at least one projection on one of the first shaft and the substantially rotationally fixed element, which is arranged to engage incrementally with one or more formations on the other of the substantially rotationally fixed element and the first shaft.

**7**. The dose counter as claimed in claim **6** in which at least two said projections are provided.

**8**. The dose counter as claimed in claim **6** in which exactly two said projections are provided.

**9**. The dose counter as claimed in claim **6** in which each projection comprises a radiused surface.

**10**. The dose counter as claimed in claim **6** in which the at least one projection is located on the substantially rota-

22

tionally fixed element which comprises a fixed shaft which is fixed to the main body of the dose counter, the first shaft being rotationally mounted to the fixed shaft.

**11**. The dose counter as claimed in claim **10** in which the fixed shaft has at least two flexible legs, and each leg has at least one said projection formed in an outwardly facing direction thereon, said one or more formations being formed on an inwardly facing engagement surface of the first shaft, said at least one projection being arranged to resiliently engage said one or more formations.

**12**. The dose counter as claimed in claim **10** in which the fixed shaft comprises a split pin with fork legs and in which each projection is located on a said fork leg.

**13**. The dose counter as claimed in claim **6** in which a series of said formations are provided.

**14**. The dose counter as claimed in claim **6** in which an even number of said formations is provided.

**15**. The dose counter as claimed in claim **6** in which from eight to twelve of said formations are provided.

**16**. The dose counter as claimed in claim **15** in which ten of said formations are provided.

**17**. The dose counter as claimed in claim **6** in which each said formation comprises a concavity formed on an engagement surface.

**18**. The dose counter as claimed in claim **17** in which each concavity comprises a radiused surface wall portion which merges on at least one side thereof into a flat wall portion surface.

**19**. The dose counter as claimed in claim **18** in which the engagement surface includes a series of said concavities and in which convex wall portions of the engagement surface are formed between each adjacent two said concavities, each said convex wall portion comprising a convex radiused wall portion.

**20**. The dose counter as claimed in claim **19** in which each convex radiused wall portion of each convex wall portion is connected by said flat wall portion surfaces to each concavity which is adjacent thereto.

**21**. The dose counter as claimed in claim **4** in which the first shaft comprises a substantially hollow bobbin.

**22**. The dose counter as claimed in claim **21** in which said one or more formations are located on an inner surface of the bobbin.

**23**. The dose counter as claimed in claim **4** wherein the drive system comprises a tooth ratchet wheel arranged to act upon a second shaft which is located at the second station, the second shaft being rotatable to wind the tape onto the second shaft.

**24**. The dose counter as claimed in claim **23** in which the second shaft is located on the main body of the dose counter spaced from and parallel to the first shaft.

**25**. The dose counter as claimed in claim **23** in which the tooth ratchet wheel is fixed to the second shaft and is arranged to rotate therewith.

**26**. The dose counter as claimed in claim **23** which includes an anti-back drive system which is arranged to restrict motion of the second shaft in a tape winding direction.

**27**. The dose counter as claimed in claim **1** in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

**28**. The dose counter as claimed in claim **27** in which the resistance force is greater than 0.3 N.

**29**. The dose counter as claimed in claim **27** in which the resistance force is from 0.3 to 0.4 N.

\* \* \* \* \*

TEVAQVAR-00031186

(12) INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

(19) World Intellectual Property Organization
International Bureau



(43) International Publication Date
9 October 2008 (09.10.2008)

PCT

(10) International Publication Number
**WO 2008/119552 A1**

(51) International Patent Classification:
G06M 1/04 (2006.01)     G06M 1/08 (2006.01)

(21) International Application Number:
PCT/EP2008/002590

(22) International Filing Date:     1 April 2008 (01.04.2008)

(25) Filing Language:     English

(26) Publication Language:     English

(30) Priority Data:
60/921,320     2 April 2007 (02.04.2007)     US
0706999.0     11 April 2007 (11.04.2007)     GB

(71) Applicant (for all designated States except US): IVAX PHARMACEUTICALS IRELAND [IE/IE]; Unit 301, Industrial Park, Waterford (IE).

(72) Inventor; and
(75) Inventor/Applicant (for US only): FENLON, Derek [IE/IE]; Unit 301, Industrial Park, Waterford (IE).

(74) Agent: COTTAM, David, William; Teva Europe Patent Department, 167 Fleet Street, London EC 4A 2EA (GB).

(81) Designated States (unless otherwise indicated, for every kind of national protection available): AE, AG, AL, AM, AO, AT, AU, AZ, BA, BB, BG, BH, BR, BW, BY, BZ, CA, CH, CN, CO, CR, CU, CZ, DE, DK, DM, DO, DZ, EC, EE, EG, ES, FI, GB, GD, GE, GH, GM, GT, HN, HR, HU, ID, IL, IN, IS, JP, KE, KG, KM, KN, KP, KR, KZ, LA, LC, LK, LR, LS, LT, LU, LY, MA, MD, ME, MG, MK, MN, MW, MX, MY, MZ, NA, NG, NI, NO, NZ, OM, PG, PH, PL, PT, RO, RS, RU, SC, SD, SE, SG, SK, SL, SM, SV, SY, TJ, TM, TN, TR, TT, TZ, UA, UG, US, UZ, VC, VN, ZA, ZM, ZW.

(84) Designated States (unless otherwise indicated, for every kind of regional protection available): ARIPO (BW, GH, GM, KE, LS, MW, MZ, NA, SD, SL, SZ, TZ, UG, ZM, ZW), Eurasian (AM, AZ, BY, KG, KZ, MD, RU, TJ, TM), European (AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HR, HU, IE, IS, IT, LT, LU, LV, MC, MT, NL, NO, PL, PT, RO, SE, SI, SK, TR), OAPI (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, ML, MR, NE, SN, TD, TG).

Published:
— with international search report

(54) Title: METERED-DOSE INHALER



Fig. 5

(57) Abstract: The present invention relates to a metered dose inhaler dose counter, the counter comprising: an actuator; a rotary gear wheel having a plurality of ratchet teeth; a driver for driving the rotary gear in a step-wise fashion in response to displacement of the actuator; a pawl that prevents reverse rotation of the rotary gear; and a display coupled to the rotary gear.

WO 2008/119552 A1

WO 2008/119552                                      PCT/EP2008/002590

Metered-dose inhaler

This invention relates to a metered-dose inhaler and in particular to a dose counter for a metered-dose inhaler, the counter comprising: an actuator; a rotary gear; a driver for
5      driving the rotary gear in a step-wise fashion in response to displacement of the actuator, the rotary gear comprising a wheel mounted on a spindle which wheel having a plurality of ratchet teeth around its periphery; a pawl to prevent reverse rotation of the rotary gear; and a display coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to
10     each step of the step-wise rotary motion of the rotary gear; wherein the pawl comprises at least two ratchet teeth which are radially spaced such that one of the teeth engages with the ratchet teeth of the wheel following each step of the step-wise rotary motion of the rotary gear.

15     Metered-dose inhalers include pressurised metered-dose inhalers (of both manually operable and breath-actuated types) and dry-powder inhalers. Such metered-dose inhalers typically comprise a medicament-containing vessel and an actuator body having a drug delivery outlet.

20     The medicament-containing vessel may be a pressurised canister containing a mixture of active drug and propellant. Such canisters are usually formed from a deep-drawn aluminium cup having a crimped lid which carries a metering valve assembly. The metering valve assembly is provided with a protruding valve stem which, in use, is inserted as a tight push fit into a so-called "stem block" in the actuator body.
25

To actuate the conventional manually operable inhaler, the user applies a compressive force to the closed end of the canister. The internal components of the metering valve assembly are spring loaded so that a compressive force of about 15 to 30 N is required to activate the device.
30

1

**CONFIRMATION COPY**

DTX162
2 of 28

In response to this compressive force, the canister moves axially with respect to the valve stem by an amount varying from about 2 to 4 mm. This degree of axial movement is sufficient to actuate the metering valve and cause a metered quantity of the drug and propellant to be expelled through the valve stem. This is then released into the

5    mouthpiece via a nozzle in the stem block.  A user inhaling through the drug delivery outlet of the device at this point will thus receive a dose of the drug.

Metered-dose inhalers as described above administer an accurate dose of medicament whenever required, which is particularly useful for users whose respiratory difficulties

10   manifest themselves suddenly. Such has been the success of these devices that they are now used throughout the world.

A more recent development is the so-called "breath-operated actuator" which delivers a dose of drug through a mouthpiece in response to inhalation by the user. This type of

15   arrangement is particularly convenient in circumstances where the co-ordination between user inhalation and manual depression of the aerosol canister is imperfect. For example, children sometimes lack the necessary co-ordination to achieve effective self-administration and, at times of respiratory distress, adult users may also experience poor co-ordination.

20

One of the drawbacks of self-administration from an inhaler is that users often experience difficulty in determining when the charge in the medicament-containing vessel has nearly run out since the contents of the medicament reservoir are typically invisible to the user. With aerosol canisters, part of the reason for this difficulty is that a surplus of propellant

25   may remain in the canister even though the drug supply is nearly exhausted. Alternatively, the near-exhausted state may result in a surplus of drug in relation to propellant. Thus, the illusion is created that the inhaler is still capable of providing useful doses of medicament simply because the canister contains liquid. This is potentially hazardous for the user since dosing becomes unreliable and because few users routinely

30   carry a back-up device.

2

Many users have several different inhalers for the treatment of a variety of conditions. Others keep inhalers at a number of different locations such as at school, home, work etc. In these circumstances it is particularly difficult for the user to keep track of the amount of usage extracted from each individual inhaler apparatus.

5

Clearly there is a need for a counter mechanism which enables users to assess how many doses remain in the obscured canister. Such a counter would ensure that users are warned when the inhaler nears exhaustion so that appropriate measures can be taken to avoid running out of medication. Moreover, if a dose counter can provide readability to a resolution of one dose, this can be used for compliance monitoring, either under hospital supervision or by parents and teachers assessing compliance by children in their care. In addition, there are regulatory requirements for metered-dose inhalers to have a dose counter in a number of countries.

10

15

WO 98/28033 discloses a dose counter suitable for use with the above-described metered-dose inhalers. Figs 1 and 2 reproduced herein from WO 98/28033 show the lower portion of a metered-dose inhaler. The inhaler comprises an actuator body 2 having a drug delivery outlet 4. An aerosol canister 6 extends into the lower portion of the actuator 2. The aerosol canister 6 is formed from a deep-drawn aluminium cup 8 to which a lid 10 is attached by crimping.

20

The lid 10 carries a metering-valve assembly having a protruding valve stem 12, the end of which is received as a tight push fit in a stem block 14 of the actuator body 2. Stem block 14 has a nozzle 16 communicating with the drug delivery outlet 4 so that, upon actuation of the metering-valve assembly, a charge of the drug is emitted through the nozzle 16 into the drug delivery outlet 4. Actuation of the metering-valve assembly is effected by causing downward movement of the aerosol canister 6 relative to the actuator body 2. This may be achieved through manual pressure exerted by the user against the upturned base (not shown) of the aerosol canister 6 or by automatic depression of the aerosol canister 6 in response to user inhalation in inhalers of the breath-actuated type. The mechanism of breath actuation does not form part of WO 98/28033 or the present

25

30

3

invention and will not be described in further detail. A user inhaling through the drug delivery outlet 4 when the aerosol canister 6 is depressed will receive a metered dose of the drug.

5    A counter mechanism 18 includes an actuator 20 moulded from a plastics material, such as nylon, the actuator 20 having a boss 22 integrally formed at its base.

The underside of boss 22 is formed with a blind hole which receives a compression spring 24 mounted on an upstanding spigot 26 formed on a lower element of the counter 10   chassis.

A driver 28 for driving a rotary gear in the form of a ratchet-toothed wheel 30 is integrally moulded with boss 22 of the actuator 20 and comprises a transverse hook element (not shown) mounted between two arms (only one visible in Fig. 2), the bases of 15   which are conjoined to the boss 22. The transverse hook is dimensioned and oriented to engage with ratchet teeth 32 formed around the periphery of the ratchet-toothed wheel 30 to rotate it in a forward direction.

The ratchet-toothed wheel 30 is integrally moulded with a first hollow axle 34 which is 20   rotatably supported on a first spindle 36 that projects transversely from a chassis sub-element 38. Chassis sub-element 38 also has a second spindle 40 projecting transversely therefrom on which a second hollow axle 42 is rotatably supported. A flexible tape 44 is wound around the second hollow axle 42 which serves as a supply spool and passes to the first hollow axle 34 which serves as a take-up spool (stock bobbin). A guide plate 46 25   forming part of the chassis sub-element 38 helps to guide the tape 44 in a smooth passage from the supply spool to the take-up spool. The surface of the tape 44 is marked with a progression of descending numbers which denote the number of doses remaining in the aerosol canister. Typically, the starting count is 200 and successive markings on the tape decrease by one. The spacing between successive markings is coincident with the 30   indexing motion of the matching wheel 30 so that a new number appears in a window 48 provided in the inhaler housing 2 for each successive actuation.

4

The ratchet-toothed wheel 30 and integrally formed first hollow axle 34 are restrained from reverse rotation by a wrap-spring clutch 50 surrounding the hollow axle 34 at the end thereof remote from ratchet-toothed wheel 30. One end (not shown) of the wrap-

5    spring clutch 50 is braced against the counter chassis. The windings of the wrap-spring clutch 50 are oriented such that rotation of the first hollow axle 34 in a forward sense is not resisted by the spring coils. However, reverse rotation of the hollow axle 34 acts so as to tighten the spring coils around it, thereby causing the first hollow axle 34 to be gripped by the internal surface of the wrap-spring clutch 50 and hence restraint from reverse

10   rotation.

Fig. 3 shows a preferred embodiment of the invention set out in WO 98/28033. The dose counter 18 comprises an actuator 20 having a boss 22 integrally formed therewith and driver 28 joined to the boss 22. The underside of boss 22 is provided with a blind hole

15   which receives a compression spring 24 that serves to return the actuator 20 to its rest position after depression thereof during actuation of the inhaler apparatus (not shown).

The driver 28 comprises a transverse hook 52 mounted between a pair of arms 54,56 which are joined at their bases by a web (not shown). The web is connected to the boss 22

20   of the actuator 20.  A combined actuator and driver assembly may be integrally formed, such as from a plastics material, e.g. as nylon.

In use, the transverse hook 52 engages with ratchet teeth 32 of a ratchet-toothed wheel 30 which is mounted on a hollow axle 34 serving as a take-up spool for a flexible tape

25   display 44. At the end of the hollow axle 34 remote from the ratchet-toothed wheel 30 is a friction clutch 50 which serves to restrain the axle 34 against reverse rotation and hence prevents reverse travel of the counter tape 44.

A control surface 58 is depicted here as a see-through element so that the workings of the

30   dose counter may be more clearly seen. The control surface 58 extends parallel to the direction of travel of the actuator 20 and is located adjacent the ratchet-toothed wheel 30

5

DTX162
6 of 28

at a position which marks a chordal projection across one of the wheel faces. One of the support arms 56 of the driver 28 is in sliding contact with control surface 58. This sliding contact serves to inhibit the natural tendency of the driver 28 to flex radially inwardly towards the axis of rotation of the ratchet-toothed wheel 30. By preventing such radially

5     inward flexure, the control surface 58 restricts the engagement and disengagement of the drive 28 with the ratchet-toothed wheel 30 so that the distance by which the ratchet-toothed wheel 30 rotates is limited to one tooth pitch. This condition is observed regardless of the extent of linear travel, or stroke, of the actuator 20.

10    Fig. 4 shows a schematic view of a conventional ratchet gear and drive pawl arrangement which is used in the dose counter described in WO 98/28033. The arrangement uses a reciprocating driver 28 acting in a pushing sense to rotate a ratchet-toothed wheel 30 in the direction shown by the arrows A. A fixed pawl 60 acts to prevent reverse rotation of the ratchet-toothed wheel 30 by engagement against the trailing edge 62 of a ratchet tooth

15    32. However, on forward rotation of the ratchet-toothed wheel 30 in the sense of arrows A, the fixed pawl 60 is capable of radially outward deformation, urged by the leading edge 63 of a ratchet-tooth 32.

In this arrangement, if the ratchet-toothed wheel 30 is rotated by more than a single tooth

20    pitch but by less than two tooth pitches for each reciprocating movement of the driver 28, there is a degree of reverse rotation until the pawl 60 becomes engaged by the trailing edge 62 (as opposed to the leading edge 63) of a ratchet tooth 32. Thus, the rotation of the ratchet-toothed wheel 30 may be said to be "stepped".

25    The components of metered-dose inhalers are manufactured to a high technical specification. However, inevitable variations in the tolerances of the components can, in some circumstances, lead to failure of the dose counter of the type disclosed in WO 98/28033. The failure of the dose counter, although not common, makes the dose counter of the type disclosed in WO 98/28033 unsuitable for some applications. There is a

30    requirement in the art, therefore, for a dose counter with a reduced failure rate.

6

Accordingly, a first aspect of the present invention provides a dose counter for a metered-dose inhaler, the counter comprising:

an actuator;

a rotary gear;

5 a driver for driving the rotary gear in a step-wise fashion in response to displacement of the actuator, the rotary gear comprising a wheel mounted on a spindle which wheel having a plurality of ratchet teeth around its periphery;

a pawl to prevent reverse rotation of the rotary gear; and

a display coupled to the rotary gear, the display having a visible array of incrementing

10 integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear;

wherein the pawl comprises at least two ratchet teeth which are radially spaced such that one of the teeth engages with the ratchet teeth of the wheel following each step of the step-wise rotary motion of the rotary gear.

15

The counter of the present invention thus provides a pawl having at least two teeth in which one and the same tooth engages with successive ratchet teeth of the wheel during the step-wise rotary motion of the wheel to prevent reverse rotation of the wheel (and hence the rotary gear).  By providing alternative positions for engaging the ratchet teeth

20 of the wheel, the pawl increases the range of tolerances in the manufacture of the various components of the inhaler which can be accommodated.  This in turn significantly reduces the failure rate of the dose counter and, in particular, the likelihood of undercounting. Clearly, undercounting is particularly undesirable as it can lead to a patient believing that there are more doses left within the inhaler than there actually are.

25

The present invention will now be described with reference to the accompanying drawings, in which:

Figs 1 to 4 show a dose counter for a metered-dose inhaler according to the prior art document WO 98/28033;

30 Fig. 5 shows elements of a dose counter according to the present invention;

Fig. 6 shows further detail of the dose counter according to the present invention;

7

DTX162
8 of 28

Fig. 7 shows a schematic representation of journeys undertaken for indexing of the dose counter to occur;

Fig. 8 shows the wheel and pawl of the dose counter of the present invention in which the pawl is (a) operating from the first tooth and (b) operating from the second tooth; and

5      Fig. 9 shows a metered-dose inhaler containing the dose counter of the present invention.

The dose counter of the present invention is based on that set out in Figs 3 and 4 described hereinabove except that the pawl 60 has been modified.  Modification of the pawl followed an in-depth study of all of the components of the inhaler.  Thus, as shown

10     in Fig. 5, the dose counter 18 of the present invention comprises an actuator 20; a rotary gear (not shown in full in Fig. 5); a driver 28 for driving the rotary gear in a step-wise fashion in response to displacement of the actuator 20, the rotary gear comprising a wheel 30 mounted on a spindle (not shown), the wheel 30 having a plurality of ratchet teeth 32 around its periphery; a pawl 60 to prevent reverse rotation of the rotary gear; and a

15     display (not shown) coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear.

The wheel 30 has a plurality of ratchet teeth 32 and preferably has 8-14 teeth (i.e. 8, 9,

20     10, 11, 12, 13 or 14), more preferably 9, 10, 11 or 12 teeth, and most preferably 11 teeth. The radius of the wheel 30 measured from the centre of the wheel 30 to the tip of the teeth 32 will depend on the size of the components of the inhaler.  Preferably the radius is from 1.5 to 3.5 mm, more preferably from 2.0 to 3.0 mm and most preferably 2.80 ± 0.05 mm.

25

As in the dose counter 18 of WO 98/28033, the dose counter 18 of the present invention preferably further comprises a control surface to regulate the position of engagement and disengagement between the driver 28 and the wheel 30.  In addition, the driver 28 comprises a ratchet drive pawl and preferably the ratchet drive pawl is in the form of a

30     straddle drive in which the element that engages the ratchet teeth of the wheel is supported between a pair of spaced apart support arms.

8

DTX162
9 of 28

The pawl 60 comprises at least two ratchet teeth 64,66. Preferably, as shown in Fig. 5, the pawl 60 comprises two ratchet teeth 64,66 and no more. The at least two ratchet teeth 64,66 are radially spaced with respect to the ratchet-toothed wheel 30 such that one and the same tooth engages with the ratchet teeth 32 of the wheel following each step of the step-wise rotary motion of the rotary gear. Typically, one, and only one, of the ratchet teeth 64,66 on pawl 60 ever engages with the ratchet wheel.

Fig. 6 shows an exploded view of the dose counter 18 showing in addition to the previously described components, the stock bobbin 68 which is held taut by the action of the split hub 70. The split hub 70 avoids the need for a clutch spring as set out in WO 98/28033. Although the clutch spring could be used as an alternative or in addition to the split hub 70, in a preferred embodiment, the dose counter of the present invention does not include a clutch spring. The display is preferably an elongate counter tape 44 on which the dose count is printed or written, and more preferably the counter tape 44 is located on an indexing spool and the dose counter further comprises a stock bobbin to receive the counter tape as the indexing spool is advanced in a step-wise fashion.

In use, the operation of the dose counter 18 is as follows.

The user depresses the aerosol canister 6 which causes displacement of the actuator 20. In this embodiment, the actuator 20 is adapted to engage with the rim of the medicament canister 6. The actuator 20 is operable by linear displacement from a first position to a second position and back to the first position and movement of the rotary gear occurs either during the displacement of the actuator from the first position to the second position or during the displacement of the actuator from the second position to the first position. In the embodiment shown in Fig. 5, the movement of the rotary gear occurs during the displacement of the actuator from the first position to the second position. In the embodiment shown, the actuator 20 comprises a spring-loaded plunger 22,24, the plunger being depressible against the return force of the spring loading when the actuator is caused to deliver a dose of medicament.

9

During the movement from the first position to the second position, the actuator 20 causes the driver 28 to engage the trailing edge 62 of the ratchet tooth 32 of the wheel 30. As the actuator 20 and driver 28 move down the ratchet-toothed wheel 30 rotates.

5

The spindle of the rotary gear moves the counter tape 44 revealing the next integer. The counter tape 44 is held taut by the action of the split hub 70 on which is mounted the stock bobbin 68.

10    The pawl 60 radially outwardly deforms to allow the wheel 30 to rotate by one tooth 32. The at least two teeth 64,66 of pawl 60 may be inherently resilient to allow the required radially outward deformation and return.  Alternatively or in addition, the pawl 60 may be mounted on a resilient support capable of radially outward deformation, for example the resilient support may be a resilient flange incorporated in to the chassis of the dose

15    counter 18.

The driver 28 releases the ratchet-toothed wheel 30 after it has engaged with the pawl 60. On reset of the inhaler, the canister 6 is allowed to return to its initial (first) position. The compression spring 24 pushes the actuator 20 to follow the canister. The driver 28 on the

20    actuator 20 flexes to pass over the teeth of the ratchet-toothed wheel 30 as the actuator 20 moves from the first to the second position.

The tooth of the at least two teeth 64,66 which has engaged tooth 32 of the wheel 30 prevents the rotary gear from rotating backwards.

25

The counter mechanism of the type described with reference to WO 98/28033 and in accordance with the present invention must rotate the wheel 30 of the rotary gear by exactly one tooth spacing each time the actuator is depressed.  By tooth spacing is meant one tooth pitch, i.e. the radial distance between the same notional point two adjacent teeth

30    32 on the ratchet-toothed wheel 30.  The stroke available for indexing the rotary gear is equal to the full stroke of the actuator 2.  Where the metered-dose inhaler is a pressurised

10

DTX162
11 of 28

WO 2008/119552                                              PCT/EP2008/002590

inhaler, the stroke available for counting is equal to the full stroke of the medicament canister 6. However, there are three movements (or "journeys") that must be completed within this total distance for indexing of the dose counter to occur. The three journeys are shown schematically in Fig. 7.

5

Fig. 7 shows a graphical representation the amount of canister travel and the excess stroke available before the three critical journeys must occur. Firstly, the canister travel must close the start gap which is the sum of the tolerances of the manufactured components in the vertical direction. Secondly, the stroke must take up any lost motion, such as in pivot play, flexing of the pawl and arc motion of the drive pawl. Thirdly, is the so-called "stroke to count", which is the journey which leads to indexing of the rotary gear by one tooth spacing.

10

The stroke available for counting will clearly depend on the type of metered-dose inhaler used. By way of example, a suitable inhaler is the pressurised metered-dosed inhaler EasiBreathe® which uses a Qvar® canister. The canister stroke in this inhaler was measured as 3.04 ± 0.255 mm. This tolerance represents ± 3 standard deviations so that 99.7% of all canister strokes will lie within these limits. The measurements were taken from force versus displacement profiles for Qvar® canisters. One hundred and fifty canisters were measured at the start, middle and end of life giving a total of 450 stroke measurements.

15

20

The start gap is the tolerance stack in the vertical direction and includes a first distance between the part of the driver 28 which engages the wheel 30 and the appropriate ratchet tooth 32 of the wheel 30 of the rotary gear, and a second distance between the top of the actuator 20 and the canister 6. The tolerance in the vertical direction was found to be ± 0.47 mm. The nominal start gap for the EasiBreathe® inhaler is set at 0.85 mm and hence the start gap with tolerances is 0.85 ± 0.47 mm.

25

Thus, since the start gap is 0.85 ± 0.47 mm the maximum start gap (mean plus 3 standard deviations) is 1.32 mm (0.85 + 0.47). When such a start gap occurs, a short-stroking

30

11

canister (for example, 2.79 mm) will not rotate the wheel 30 of the rotary gear by a full tooth spacing. This will lead to failure of the dose counter. However, the provision of a first and second ratchet tooth 64,66 in the pawl 60 allows the ratchet tooth 32 of the wheel 30 of the rotary gear to rest on the second tooth 66. In the present embodiment, the

5      second tooth 66 is 0.60 mm away from the first tooth 64. Thus, for the next actuation, the start gap is reduced to 0.72 mm (1.32 - 0.60). The stroke is therefore sufficient to rotate the wheel 30 a full index starting from this point. The step-wise rotation of the wheel 30 then continues with all subsequent actuations starting and finishing with the ratchet teeth 32 of the wheel 30 of the rotary gear engaged with the second tooth 66 of the pawl 60.

10

Fig. 8 shows a more detailed view of the wheel 30 of the rotary gear, the driver 28 and the pawl 60 to prevent reverse rotation of the rotary gear. In Fig. 8(a) the ratchet tooth 32a of the wheel 30 is engaged with the first ratchet tooth 64 of the pawl. In Fig. 8(b) the same tooth 32a of the wheel 30 is engaged with the second ratchet tooth 66 of the pawl

15    60. It may be seen that the start gap is reduced in the arrangement shown in Fig. 8(b) in comparison with the same distance in Fig. 8(a). The second tooth 66 of the pawl 60 therefore allows the first distance S of the start gap (the between the part of the driver 28 which engages the wheel 30 and the appropriate ratchet tooth 32 of the wheel 30) to be reduced thereby accommodating a greater tolerance in the canister stroke.

20

As explained hereinabove, the first and second teeth 64,66 provide different starting positions for the wheel 30 of the rotary gear to accommodate different tolerance levels in the components of the inhaler. The teeth 64,66 are therefore separated radially with respect to the wheel 30. The spacing will clearly depend on the precise nature of the

25    components used in the inhaler and hence it would be inappropriate to provide a precise numerical value. It is clear from the mechanism, however, that the radial spacing will be less than the radial distance between adjacent teeth 32 on the wheel 30 of the rotary gear.

In the embodiments shown herein, the dose counter 18 of the present invention

30    incorporates a pawl 60 having two teeth 64,66 and only two teeth, i.e. the pawl 60 consists essentially of two teeth 64,66. However, additional teeth could be incorporated

12

to provide additional precision to the start position of the wheel 30 and thus additional precision in the first distance S.  For example, the pawl may have 2-6, preferably two, three or four teeth, more preferably two or three and most preferably two teeth.

5    In a particularly preferred embodiment of the present invention, the dose counter is adapted for a canister stroke of 3.041 ± 0.256 mm: the wheel of the rotary gear has a radius of 2.80 ± 0.05mm defined as the distance from the centre of the wheel to the tip of the teeth and 11 ratchet teeth around its periphery; and the pawl comprises two ratchet teeth only which have a radial spacing of 0.6 mm.  In this embodiment, the total stroke to 10   guarantee a count is 2.372 ± 0.115 mm. The probability of failure to count or resent due to component dimension variations (manufacturing tolerances) is less than 1 in 10 million.

The present invention further provides a metered dose inhaler 72 as shown in Fig. 9.  The 15   inhaler comprises a medicament canister 6, an actuator body 74 for receiving the canister 6 and having a medicament delivery outlet, and the dose counter as described herein.  The inhaler has a window 76 for viewing the integers on the tape 44.  In a preferred embodiment the actuator body 74 comprises a sump and preferably a smooth rounded sump.  Typically, a rounded sump is understood to have a substantially cylindrical upper 20   portion and a substantially hemi-spherical lower portion. Typically, smooth is understood to mean that the surface is sufficiently free of surface protrusions to the extent that during normal use medicament will not substantially adhere thereto.

In one embodiment of the invention the vessel contains a medicament in the form of an 25   aerosol.  Alternatively in another embodiment of the invention the vessel contains a medicament in the form of a dry powder.

The medicament may be any medicament that is suitable to be delivered to a patient via a metered-dose inhaler.  In particular medicaments for the treatment of a wide variety of 30   respiratory disorders are delivered in this manner including anti-allergic agents (e.g. cromoglycate,     ketotifen     and     nedocromil),     anti-inflammatory     steroids     (e.g.

13

DTX162
14 of 28

beclomethasone dipropionate, fluticasone, budesonide, flunisolide, ciclesonide, triamcinolone acetonide and mometasone furoate); bronchodilators such as: $\beta_2$-agonists (e.g. fenoterol, formoterol, pirbuterol, reproterol, salbutamol, salmeterol and terbutaline), non-selective $\beta$-stimulants (e.g. isoprenaline), and xanthine bronchodilators (e.g. 5   theophylline, aminophylline and choline theophyllinate); and anticholinergic agents (e.g. ipratropium bromide, oxitropium bromide and tiotropium).

A further aspect of the present invention provides the use of a pawl 60 comprising at least two ratchet teeth 64,66 for preventing miscounting in a dose counter of a metered dose 10   inhaler 72. A still further aspect of the present invention provides the use of a pawl 60 comprising at least two ratchet teeth 64,66 for preventing undercounting in a counter of a metered dose inhaler 72.

In a preferred embodiment the counter comprises an actuator 20; a rotary gear; a driver 15   28 for driving the rotary gear in a step-wise fashion in response to displacement of the actuator 20, the rotary gear comprising a wheel 30 mounted on a spindle 36 which wheel 30 having a plurality of ratchet teeth 32 around its periphery; and a display 44 coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary 20   motion of the rotary gear. Preferably, the pawl 60 prevents reverse rotation of the rotary gear.

Although the invention herein has been described with reference to particular embodiments, it is to be understood that these embodiments are merely illustrative of the 25   principles and applications of the present invention. It is therefore to be understood that numerous modifications may be made to the illustrative embodiments and that other arrangements may be devised without departing from the spirit and scope of the present invention as defined by the appended claims.

14

Claims

1.  A dose counter for a metered-dose inhaler, the counter comprising:

an actuator;

5     a rotary gear;

a driver for driving the rotary gear in a step-wise fashion in response to displacement of the actuator, the rotary gear comprising a wheel mounted on a spindle which wheel having a plurality of ratchet teeth around its periphery;

a pawl to prevent reverse rotation of the rotary gear; and

10     a display coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear;

wherein the pawl comprises at least two ratchet teeth which are radially spaced such that one of the teeth engages with the ratchet teeth of the wheel following each step of the

15     step-wise rotary motion of the rotary gear.

2.  A dose counter as claimed in claim 1, wherein the pawl comprises two ratchet teeth and no more.

3.  A dose counter as claimed in claim 1 or 2, wherein the pawl is mounted on a resilient support.

20     4.  A dose counter as claimed in claim 3, wherein the resilient support is a resilient flange incorporated in to the body of the dose counter.

5.  A dose counter as claimed in any preceding claim, further comprising a control surface to regulate the position of engagement and disengagement between the driver and the wheel.

25     6.  A dose counter as claimed in any preceding claim, wherein the actuator is operable by linear displacement from a first position to a second position and back to the first position and wherein movement of the rotary gear occurs either during the displacement of the

15

DTX162
16 of 28

actuator from the first position to the second position or during the displacement of the actuator from the second position to the first position.

7.   A dose counter as claimed in any preceding claim, wherein the actuator comprises a spring-loaded plunger, the plunger being depressible against the return force of the spring loading when the actuator is caused to deliver a dose of medicament.

8.   A dose counter as claimed in any preceding claim, wherein the driver comprises a ratchet drive pawl.

9.   A dose counter as claimed in claim 8, wherein the ratchet drive pawl is in the form of a straddle drive in which the element that engages the ratchet teeth of the wheel is supported between a pair of spaced apart support arms.

10. A dose counter as claimed in any preceding claim, wherein the display is an elongate counter tape on which the dose count is printed or written.

11. A dose counter as claimed in claim 10, wherein the counter tape is located on an indexing spool and the dose counter further comprises a stock bobbin to receive the counter tape as the indexing spool is advanced in a step-wise fashion.

12. A dose counter as claimed in any preceding claim, wherein the actuator is adapted to engage with the rim of a medicament canister.

13. A dose counter as claimed in any preceding claim, wherein the wheel of the rotary gear has 8-14 ratchet teeth around its periphery.

14. A dose counter as claimed in claim 13, wherein the wheel of the rotary gear has 11 ratchet teeth around its periphery.

15. A dose counter as claimed in any preceding claim, wherein the wheel of the rotary gear has a radius defined as the distance from the centre of the wheel to the tip of the

16

teeth of 2.80 ± 0.05 mm and 11 ratchet teeth around its periphery, and the pawl comprises two ratchet teeth and no more which have a radial spacing of 0.6 mm.

16. A metered dose inhaler comprising a medicament canister, an actuator body for receiving the canister and having a medicament delivery outlet, and the dose counter as claimed in any preceding claim.

17. A metered dose inhaler according to claim 16 wherein the actuator body comprises a smooth rounded sump.

18. The use of a pawl comprising at least two ratchet teeth for preventing miscounting in a dose counter of a metered dose inhaler.

19. The use of a pawl comprising at least two ratchet teeth for preventing undercounting in a dose counter of a metered dose inhaler.

17

DTX162
18 of 28

1/8



**(Prior art)**

**Fig. 1**

WO 2008/119552

PCT/EP2008/002590

2/8



**(Prior art)**

**Fig. 2**

DTX162
20 of 28

3/8



**(Prior art)**

**Fig. 3**

WO 2008/119552                                          PCT/EP2008/002590

4/8



**(Prior art)**

**Fig. 4**

WO 2008/119552                                PCT/EP2008/002590

5/8



**Fig. 5**

WO 2008/119552    PCT/EP2008/002590

6/8



**Fig. 6**



**Fig. 7**

DTX162
24 of 28

WO 2008/119552                                    PCT/EP2008/002590

**7/8**



(a)

(b)

**Fig. 8**

DTX162
25 of 28

WO 2008/119552                                    PCT/EP2008/002590

8/8



**Fig. 9**

DTX162
26 of 28

INTERNATIONAL SEARCH REPORT

| | International application No |
|---|---|
| | PCT/EP2008/002590 |

A. CLASSIFICATION OF SUBJECT MATTER
INV.  G06M1/04    G06M1/08

According to International Patent Classification (IPC) or to both national classification and IPC

B. FIELDS SEARCHED

Minimum documentation searched  (classification system followed by classification symbols)
G06M  A61M

Documentation searched other than minimum documentation to the extent that such documents are included  in the fields searched

Electronic data base consulted during the  international search (name of data base and, where practical, search terms used)

EPO-Internal

C. DOCUMENTS CONSIDERED TO BE RELEVANT

| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| X | WO 2005/114563 A (VALOIS SAS [FR]; STRADELLA GIUSEPPE [IT]; STRADELLA FABIO [IT]) 1 December 2005 (2005-12-01) | 18, 19 |
| A | abstract page 1, line 5 - page 2, line 6 page 14, line 21 - page 16, line 30 figures 21-23 ----- | 1-17 |
| A | WO 98/28033 A (NORTON HEALTHCARE LTD [GB]; BOWMAN NICHOLAS JOHN [GB]; HOLROYD MICHAEL) 2 July 1998 (1998-07-02) cited in the application abstract            > page 12, line 1 - page 17, line 19 figures 2-6 ----- | 1-19 |

D  Further documents are listed in the continuation of Box C.    X  See patent family annex.

* Special categories of cited documents :

"A" document defining the general state of the art which is not considered to be of particular relevance

"E" earlier document but published on or after the international filing date

"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)

"O" document referring to an oral disclosure, use, exhibition or other means

"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention

"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone

"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art.

"&" document member of the same patent family

| Date of the actual completion of the international search | Date of mailing of the International search report |
|---|---|
| 25 June 2008 | 10/07/2008 |

| Name and mailing address of the ISA/ | Authorized officer |
|---|---|
| European Patent Office, P.B. 5818 Patentlaan 2 NL - 2280 HV Rijswijk Tel. (+31-70) 340-2040, Tx. 31 651 epo nl, Fax: (+31-70) 340-3016 | Jacobs, Peter |

Form PCT/ISA/210 (second sheet) (April 2006)

DTX162
27 of 28

## INTERNATIONAL SEARCH REPORT
Information on patent family members

| International application No |
|---|
| PCT/EP2008/002590 |

| Patent document cited in search report | | Publication date | Patent family member(s) | | Publication date |
|---|---|---|---|---|---|
| WO 2005114563 | A | 01-12-2005 | EP | 1756760 AI | 28-02-2007 |
| | | | JP | 2007534400 T | 29-11-2007 |
| | | | US | 2007210102 AI | 13-09-2007 |
| WO 9828033 | A | 02-07-1998 | AT | 268619 T | 15-06-2004 |
| | | | AU | 5329298 A | 17-07-1998 |
| | | | DE | 69729485 DI | 15-07-2004 |
| | | | DE | 69729485 T2 | 02-06-2005 |
| | | | EP | 0966309 A2 | 29-12-1999 |
| | | | ES | 2222525 T3 | 01-02-2005 |
| | | | GB | 2320489 A | 24-06-1998 |
| | | | PT | 966309 T | 30-09-2004 |
| | | | US | 6446627 BI | 10-09-2002 |

Form PCT/ISA/210 (patent family annex) (April 2005)

DTX162
28 of 28

(12) INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

(19) World Intellectual Property Organization
International Bureau



(43) International Publication Date
1 November 2007 (01.11.2007)

PCT

(10) International Publication Number
## WO 2007/124406 A2

(51) International Patent Classification: Not classified

(21) International Application Number:
PCT/US2007/067056

(22) International Filing Date: 20 April 2007 (20.04.2007)

(25) Filing Language: English

(26) Publication Language: English

(30) Priority Data:
60/745,326     21 April 2006 (21.04.2006)    US

(71) Applicant (for all designated States except US): 3M INNOVATIVE PROPERTIES COMPANY [US/US]; 3M Center, Post Office Box 33427, Saint Paul, Minnesota 55133-3427 (US).

(72) Inventors; and

(75) Inventors/Applicants (for US only): STUART, Adam J. [GB/GB]; 23 Highfield Drive, Longton, Preston Lancashire (GB). PURKINS, Graham R. [GB/GB]; 3M United Kingdom, Cain Road, Bracknell Berkshire RG12 8HT (GB). STREIBIG, Rachel [GB/GB]; Flat 4 Cyna Court, Cambridge Road, Wanstead, London CB4 ODW (GB). HOWGILL, Stephen J. [GB/GB]; 123 Leicester Road, Thurcaston, Leicestershire LE7 7JL (GB). HODSON, Peter D. [GB/GB]; 3M United Kingdom, Cain Road, Bracknell, Berkshire RG12 8HT (GB). BREWER, Richard D. [GB/GB]; Flat 7 Metro House, 34 Biggin Street, Loughborough, Leicestershire LEI I IUA (GB). HOLDEN, Benjamin J. [GB/GB]; 3 the Hawthorns, Finch Road, Berkhamsted, Hertfordshire HP4 3LL (GB).

(74) Agents: RINGSRED, Ted K. et al; 3M Center, Office of Intellectual Property Counsel, Post Office Box 33427, Saint Paul, Minnesota 55133-3427 (US).

(81) Designated States (unless otherwise indicated, for every kind of national protection available): AE, AG, AL, AM, AT, AU, AZ, BA, BB, BG, BH, BR, BW, BY, BZ, CA, CH, CN, CO, CR, CU, CZ, DE, DK, DM, DZ, EC, EE, EG, ES, FI, GB, GD, GE, GH, GM, GT, HN, HR, HU, ID, IL, IN, IS, JP, KE, KG, KM, KN, KP, KR, KZ, LA, LC, LK, LR,

[Continued on next page]

(54) Title: DOSE COUNTER



(57) Abstract: This application discloses a dose counter for use in connection with a device adapted for metered dispensing of a medication. The dose counter has a first count indicator that has a first indicia bearing surface, with the first count indicator being rotatable about a first axis. The dose counter also has a second count indicator that has a second indicia bearing surface, with the second count indicator being rotatable about a second axis. The second axis is disposed at an obtuse angle with respect to the first axis, and the first and second indicia bearing surfaces align at a common viewing area to collectively present at least a portion of a medication dosage count.

WO 2007/124406 A2

**WO 2007/124406 A2**

LS, LT, LU, LY, MA, MD, MG, MK, MN, MW, MX, MY, MZ, NA, NG, NI, NO, NZ, OM, PG, PH, PL, PT, RO, RS, RU, SC, SD, SE, SG, SK, SL, SM, SV, SY, TJ, TM, TN, TR, TT, TZ, UA, UG, US, UZ, VC, VN, ZA, ZM, ZW

(84) Designated States (unless otherwise indicated, for every kind of regional protection available): ARIPO (BW, GH, GM, KE, LS, MW, MZ, NA, SD, SL, SZ, TZ, UG, ZM, ZW), Eurasian (AM, AZ, BY, KG, KZ, MD, RU, TJ, TM), European (AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FT, FR, GB, GR, HU, IE, IS, IT, LT, LU, LV, MC, MT, NL, PL,

PT, RO, SE, SI, SK, TR), OAPI (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, ML, MR, NE, SN, TD, TG).

Published:
— without international search report and to be republished upon receipt of that report

For two-letter codes and other abbreviations, refer to the "Guidance Notes on Codes and Abbreviations" appearing at the beginning of each regular issue of the PCT Gazette.

WO 2007/124406
61997WO006

PCT/US2007/067056

# DOSE COUNTER

## TECHNICAL FIELD

[0001]    The present invention relates to a dose counter for use in connection with a device adapted for metered dispensing of a medication.

## BACKGROUND

[0002]    Metered medication dose dispensers take many forms, but have in common that a predetermined dosage (i.e., amount) of medication is dispensed during a dosage dispensing operation. One common form of metered medication dose dispenser is known as an inhaler. Inhalers are commonly used for the treatment of asthma and other respiratory conditions.

[0003]    An inhaler typically takes the form of an aerosol dispensing assembly having an aerosol container and an actuator housing for receiving that container. In the case of a pressurized inhaler, the container includes medication that is formulated with a suitable propellant that is filled into the container to define an aerosol canister. The container is typically equipped with a medication dispenser, fitted by means of a ferrule, such as a valve, in particular, a metered dose valve, comprising a valve stem movable between closed and discharge positions.  Such a container with medication therein (i.e., an aerosol canister) and having a dispenser thereon, thus defines a medication vial. The medication vial is not refillable, and is disposed of once the medication therein has been dispensed. The medication vial is typically used in conjunction with an actuator housing (which may be reusable) that has a patient port (e.g., a mouthpiece or a port adapted for nasal use). The actuator housing typically comprises a support block that has a socket adapted to receive the valve stem of the valve on the container of the medication vial, and has an orifice in communication with the socket and the patient port. The canister and the support block are reciprocally movable relative to each other along an axis to allow the valve stem to move to its discharge position during the operation or firing of the assembly, thereby dispensing a dose of the medication from the vial. The actuator housing also typically includes an elongate portion extending opposite the support block and providing a chamber to house at least a portion of the container of the vial. There are many related design features of the

- 1 -

DTX161
3 of 97

actuator housing and the medication vial that are employed in order to achieve the desired medication dispensing performance (i.e., the dispensing of one metered amount or dose of sprayed medication of appropriate particle size distribution each time the aerosol dispensing assembly is actuated by a user).

[0004]     To dispense a dose of medication, an inhaler user normally squeezes or pushes down on the inhaler in an axial direction causing a relative movement of the canister into the actuator housing towards the support block. It is useful for an inhaler user to know how many doses remain in his or her inhaler (i.e., how much medication by dosage is in the container of the aerosol dispensing assembly). To this end, a reliable dose counter device and methodology is desired, in order to register how many doses have been dispensed from an aerosol dispensing assembly and in order to inform a user how many more doses still remain to be dispensed.

[0005]     There have been numerous proposals, such as in WO2005/060535 and A2 WO2004/041334, for dose counters to be used with inhalers (whether the inhaler is, for example, a dry powder inhaler, a portable nebulizer, or a pressurized metered dose inhaler, or some other type). However, despite progress, there is still an important need for dose counters which are both economic and reliable.

## SUMMARY

[0006]     It has been found that some dose counter designs may not reliably count a single dose only when a dose of medication has been dispensed. A count should not be triggered if the valve stem is not sufficiently depressed to fire the valve and it should not count more than one dose during a firing cycle (e.g., if the return cycle of the valve is interrupted). Also, some dose counters may not be sufficiently sturdy, and stable over the life of the product, so that it will work as intended and will not alter the count when the inhaler is subject to the rigors of being carried in a pocket, purse, school bag, etc. Further, some designs may have difficulty compensating for normal manufacturing variations in the product with which they are used (e.g., inhalers with tolerances that may result in a slightly different length of the valve stem and/or a slightly different length of travel of the valve stem before the valve is triggered). When a dose counter is integrated into the housing for an aerosol inhaler container, it is desirable to minimize its complexity and

- 2 -

DTX161
4 of 97

ease of installation, as well as to provide an arrangement which is as compact as possible, yet which provides a readily reliable and readable medication dosage count to a user.

[0007]    In one aspect, the invention provides a dose counter for use in connection with a device adapted for metered dispensing of a medication. The dose counter comprises a first count indicator and a second count indicator. The first count indicator has a first indicia bearing surface, and is rotatable about a first axis. The second count indicator has a second indicia bearing surface, and is rotatable about a second axis. The second axis is disposed at an obtuse angle with respect to the first axis, and the first and second indicia bearing surfaces aligned at a common viewing area to collectively present at least a portion of a medication dosage count.

[0008]    In one aspect, the present invention is a dose counter for use in connection with a device adapted for metered dispensing of a medication. The dose counter comprises a first count indicator and a second count indicator. The first count indicator has a first indicia bearing surface, and is rotatable about a first axis. The second count indicator has a second indicia bearing surface, and is rotatable about a second axis. The first and second axes are not disposed in coaxial, parallel or perpendicular alignments relative to each other. The first and second indicia bearing surfaces align at a common viewing area to collectively present at least a portion of a medication dosage count.

[0009]    Surprisingly it has been found that by using first and second counter indicators rotatable about a first and second axis, respectively, where the first and second axes of the two counter indicators are not disposed in co-axial, parallel or perpendicular alignments relative to each other or by using a first count indicator disposed on an axis that is at an obtuse angle (in particular, an angle greater than 90° and less than 180°) with respect to the axis of the second count indicator it is possible to provide a desirable compact counter which can fit into the available space within the housing with no or only minimal modification (in shape and/or size) of the housing. Also at the same time the counter, due to its compact size, is less influential on the product performance, e.g. the airflow of the inhaler. Further it has been surprisingly found that through the display of separate digits or indicia in juxtaposition provides an advantageous ease in reading of the counter by user even though the counter itself is quite compact.

- 3 -

WO 2007/124406                                                  PCT/US2007/067056

[0010]    This is achieved without the need for a transfer gear to convey movements from one count indicator to another, since the count indicators intersect. Such intersection has allowed structures to be designed that interact periodically between them. Accordingly the counters herein described are desirably free of a transfer gear, which again allows for the provision of compact counters.

[0011]    In another aspect, the present invention is a dose counter for use in connection with a device adapted for metered dispensing of a medication. The dose counter comprises a first count indicator and a second count indicator. The first count indicator is rotatable about an axis, and the first count indicator has a first indicia bearing surface that is a conical surface relative to the axis. Movement of one of the count indicators is initiated as a function of movement of the other count indicator. The first and second bearing surfaces align at a common viewing area to collectively present at least a portion of a medication dosage count.

[0012]    The use of a first count indicator that is conical in shape facilitates the mounting of the respective counter in the curved profile, in particular within the "elbow" bend of a typical inhaler actuator, in a stable manner, while requiring minimal or no changes to the inside and/or outside profile and/or volume of the actuator to accommodate the counter.

[0013]    The dependent claims define further embodiments of the invention.

[0014]    The invention, in its various combinations, either in apparatus or method form, may also be characterized by the following listing of items:

[0015]    1. A dose counter for use in connection with a device adapted for metered dispensing of a medication, the dose counter comprising:

a first count indicator having a first indicia bearing surface, the first count indicator rotatable about a first axis; and

a second count indicator having a second indicia bearing surface, the second count indicator rotatable about a second axis,

wherein the second axis is disposed at an obtuse angle with respect to the first axis, and

wherein the first and second indicia bearing surfaces align at a common viewing area to collectively present at least a portion of a medication dosage count.

- 4 -

WO 2007/124406                                                        PCT/US2007/067056

[0016]    2. The dose counter of item 1 wherein the first bearing surface is a conical surface relative to the first axis.

[0017]    3. The dose counter of any of the preceding items wherein the first and second indicia bearing surfaces are tangential at the common viewing area.

[0018]    4. The dose counter of any of the preceding items wherein the first and second axes are disposed at an angle of 110 degrees to 160 degrees relative to each other.

[0019]    5. The dose counter of item 4 wherein the first and second axes are disposed at an angle of 125 degrees to 145 degrees relative to each other.

[0020]    6. The dose counter of any of the preceding items wherein the common viewing area is generally tangential to a circumferential surface of a cylinder disposed about the second axis.

[0021]    7. The dose counter of any of the preceding items, and further comprising:

a rotation initiating element on the second count indicator; and

a rotation following element on the first count indicator;

wherein rotation of the second count indicator engages the rotation initiating element thereon with the rotation following element on the first count indicator to cause rotation of the first count indicator as a function of the extent of rotation of the second count indicator.

[0022]    8. The dose counter of any of the preceding items, and further comprising:

a rotation limiting element on the second count indicator; and

a rotation following element on the first count indicator;

wherein the rotation limiting element and the rotation following element engage at times during rotation of the second count indicator to prevent rotation of the first count indicator.

[0023]    9. The dose counter of any of the preceding items wherein the second indicia bearing surface is a cylindrical surface relative to the second axis.

[0024]    10. The dose counter of any of the preceding items wherein the viewing area is generally parallel with the second indicia bearing surface of the second count indicator.

[0025]    11. The dose counter of any of the preceding items, and further comprising:

a rotation initiating element on the first count indicator; and

a rotation following element on the second count indicator;

DTX161
7 of 97

WO 2007/124406                                                    PCT/US2007/067056

wherein rotation of the first count indicator engages the rotation initiating element thereon with the rotation following element on the second count indicator to cause rotation of the second count indicator as a function of the extent of rotation of the first count indicator.

[0026]     12. The dose counter of any of the preceding items, and further comprising:

a rotation limiting element on the first count indicator; and

a rotation following element on the second count indicator;

wherein the rotation limiting element and the rotation following element engage at times during rotation of the first count indicator to prevent rotation of the second count indicator.

[0027]     13. The dose counter of any of the preceding items wherein the second indicia bearing surface is a surface extending perpendicular to the second axis.

[0028]     14. The dose counter of any of the preceding items, and further comprising:

a third count indicator having a third indicia bearing surface, the third count indicator rotatable about a third axis;

wherein the third axis is disposed at an obtuse angle with respect to the first axis; and

wherein the first and third indicia bearing surfaces align to collectively present a medication dosage count at the common viewing area, in combination with the second indicia bearing surface.

[0029]     15. The dose counter of item 14 wherein the first and third indicia bearing surfaces align tangentially at the common viewing area.

[0030]     16. The dose counter of item 14 wherein the second and third axes are disposed at a 90 degree angle relative to each other.

[0031]     17. The dose counter of items 14 or 15, wherein the first, second and third axes are coplanar.

[0032]     18. The dose counter of any of the preceding items, in combination with a metered-dose inhaler having a container filled with a medication.

[0033]     19. The dose counter of any of the preceding items, wherein the first axis and second axis are coplanar.

[0034]     20. A dose counter for use in connection with a device adapted for metered dispensing of a medication, the dose counter comprising:

- 6 -

a first count indicator rotatable about an axis, the first count indicator having a first indicia bearing surface that is a conical surface relative to the axis; and

a second count indicator having a second indicia bearing surface;

wherein movement of one of the count indicators is initiated as a function of movement of the other count indicator, and

wherein the first and second indicia bearing surfaces align at a common viewing area to collectively present at least a portion of a medication dosage count.

[0035]    21. The dose counter of item 20 wherein the first and second indicia bearing surfaces are tangential at the common viewing area.

[0036]    22. A dose counter for use in connection with a device adapted for metered dispensing of a medication, the dose counter comprising:

a first count indicator having a first indicia bearing surface, the first count indicator rotatable about a first axis; and

a second count indicator having a second indicia bearing surface, the second count indicator rotatable about a second axis;

wherein the first and second axes are not disposed in coaxial, parallel or perpendicular alignments relative to each other; and

wherein the first and second indicia bearing surfaces align at a common viewing area to collectively present at least a portion of a medication dosage count.

[0037]    23. The dose counter of item 22 wherein the first and second indicia bearing surfaces are tangential at the common viewing area.

[0038]    24. The dose counter of items 22 or 23 wherein the first and second axes are coplanar.

[0039]    This summary is not intended to describe each disclosed embodiment or every implementation of the present invention. Many other novel advantages, features, and relationships will become apparent as this description proceeds. The figures and the description that follow more particularly exemplify illustrative embodiments.

BRIEF DESCRIPTION OF THE DRAWINGS

- 7 -

[0040]    The present invention will be further explained with reference to the attached figures, wherein like structure or system elements are referred to by like reference numerals throughout the several views.

[0041]    FIG. 1 represents an exploded isometric view of a first embodiment of a dose counter of the present invention.

[0042]    FIG. 2 represents an isometric assembled view of the dose counter of FIG. 1.

[0043]    FIG. 3 represents a partial axial sectional view of a press-and-breathe inhaler incorporating the dose counter of FIGS. 1 and 2.

[0044]    FIG. 4 represents a side view of a lid of the dose counter of FIGS. 1 and 2.

[0045]    FIG. 5 represents an isometric view of a units rotational ring of the dose counter of FIGS. 1 and 2.

[0046]    FIG. 6 represents an isometric view of a housing of the dose counter of FIGS. 1 and 2.

[0047]    FIG. 7 represents an isometric sectional view of the assembled dose counter of FIGS. 1 and 2, with the lateral section taken through the viewing window thereof (and a tens cone not shown in section).

[0048]    FIG. 8 represents a side view of the interface between the units rotational ring and the tens cone of the dose counter of FIGS. 1 and 2.

[0049]    FIG. 9 represents an isometric view of the interface between the units rotational ring and the tens cone of FIG. 8, with the components each rotated to a different orientation relative to each other compared to the orientation shown in FIG. 8.

[0050]    FIGS. 1OA, 1OB, 1OC and 1OD represent sectional views as taken generally along line 10—10 in FIG. 8, illustrating rotation of the tens cone as a function of rotation of the units rotational ring.

[0051]    FIGS. HA, HB, H C and H D represent schematically the interface between the units rotational ring and tens cone that facilitates rotation of the tens cone as a function of rotation of the units rotational ring.

[0052]    FIG. 12 represents an exploded isometric view of a second embodiment of the dose counter of the present invention.

[0053]    FIG. 13 represents an exploded isometric view of the indicia display components of the dose counter of FIG. 12 (i.e., a units rotational ring, a tens cone and a hundreds disk).

- 8 -

DTX161
10 of 97

[0054]     FIG. 14 represents an isometric assembled view of the indicia display components of FIG. 13.

[0055]     FIG. 15 represents a rear view of the assembled dose counter of FIG. 12.

[0056]     FIG. 16 represents a partial axial sectional view of a press-and-breathe inhaler incorporating the dose counter of FIGS. 12 and 15.

[0057]     FIG. 17 represents an isometric view an interior side of the hundreds disk of the dose counter of FIG. 12.

[0058]     FIG. 18 represents an isometric sectional view of the assembled dose counter of FIGS. 12 and 15, with the lateral section taken through the viewing window thereof (and the hundreds disk not shown in section).

[0059]     FIG. 19 represents a side view of the interface between the units rotational ring, the tens cone and the hundreds disk of the dose counter of FIGS. 12-18.

[0060]     FIGS. 20A, 20B, 20C, 20D, 20E and 20F represent schematically the interface between the tens cone and the hundreds disk that facilitates rotation of the hundreds disk as a function of rotation of the tens cone, for the embodiment of the dose counter illustrated in FIGS. 12-19.

[0061]     FIG. 21 represents an exploded isometric view of a third embodiment of the dose counter of the present invention.

[0062]     FIG. 22 represents an isometric view of a units rotational ring of the dose counter of FIG. 21.

[0063]     FIG. 23 represents a top view of a housing for the dose counter of FIG. 21.

[0064]     FIG. 24 represents an isometric assembled view of the dose counter of FIG. 21, as viewed partially from above.

[0065]     FIG. 25 represents an isometric assembled view of the dose counter of FIG. 21, as viewed partially from below.

[0066]     FIG. 26 represents a sectional view of the assembled dose counter of FIGS. 24 and 25, with the lateral section taken through the viewing window thereof.

[0067]     FIG. 27 represents a partial axial sectional view of a press-and-breathe inhaler incorporating the dose counter of FIGS. 21, 24, 25 and 26.

[0068]     FIG. 28 represents an isometric sectional view of the assembled dose counter of FIGS. 21, 24, 25 and 26, with the lateral section taken through the viewing window thereof (and a tens cone not shown in section).

- 9 -

[0069]     FIGS. 29A, 29B, 29C and 29D represent schematically the interface between the units rotational ring and the tens cone that facilitates rotation of the tens cone as a function of rotation of the units rotational ring.

[0070]     FIGS. 30A, 30B, 30C and 30D represent schematically the interface between the tens cone and a projection on the housing provided to stop rotation of the tens cone.

[0071]     FIG. 31 represents an isometric view of a tens cone of a fourth embodiment of the dose counter of the present invention, as viewed generally from the external or front side thereof.

[0072]     FIG. 32 represents a front or external view of the tens cone of FIG. 31.

[0073]     FIG. 33 represents an isometric view of the tens cone of FIG. 31, as viewed generally from an internal or back side thereof.

[0074]     FIG. 34 represents a back or internal side view of the tens cone of FIG. 31.

[0075]     FIG. 35 represents a rear elevational view of a housing adapted for use in connection with the tens cone of FIGS. 31-34.

[0076]     FIG. 36 represents an isometric view of the housing of FIG. 35, as viewed generally from the top thereof.

[0077]     FIGS. 37A and 37B represent sectional views of the assembled dose counter of the fourth embodiment, embodying the tens cone of FIGS. 31-34 and the housing of FIGS. 35 and 36.

[0078]     FIGS. 38A and 38B represent enlarged partial sectional views of FIGS. 37A and 37B respectively.

[0079]     FIGS. 39A, 39B, 39C, 39D and 39E represent the interface between the tens cone of FIGS. 31-34 and an associated units rotational ring.

[0080]     FIGS. 4OA, 4OB, 4OC, 4OD and 4OE represent schematically the interface between an annular sawtooth array of teeth on the tens cone of FIGS. 31-34 and an associated protrusion on the housing of FIGS. 35 and 36.

[0081]     FIG. 41 represents an isometric view of a tens cone of a fifth embodiment of the dose counter of the present invention, as viewed generally from the external or front side thereof.

[0082]     FIG. 42 represents a front or external view of the tens ring of FIG. 41.

[0083]     FIG. 43 represents a back or internal view of the tens cone of FIG. 41.

- 10 -

[0084]    FIG. 44 represents an isometric view of a housing for the dose counter of the fifth embodiment of the present invention, as viewed generally from above.

[0085]    FIGS. 45A and 45B represent a sectional view of the assembled dose counter of the fifth embodiment, with the lateral section for each FIG. taken through the viewing window thereof, and showing the tens cone in two different orientations relative to the housing.

[0086]    FIGS. 46A, 46B and 46C represent sectional views of the tens cone and an associated units rotational ring of the fifth embodiment, illustrating sequential orientations of the tens cone relative to the units rotational ring during rotation of units rotational ring and rotation of the tens cone.

[0087]    FIG. 47 represents an isometric view of the units rotational ring of FIGS. 46A, 46B, and 46C, viewed generally from a bottom side thereof.

[0088]    While the above-identified figures set forth several embodiments of the present invention, other embodiments are also contemplated, as noted in the disclosure. In all cases, this disclosure presents the invention by way of representation and not limitation. It should be understood that numerous other modifications and embodiments can be devised by those skilled in the art which fall within the scope and spirit of the principles of this invention.

<u>DETAILED DESCRIPTION</u>

[0089]    As noted above, the present invention is directed to a dose counter for use in connection with an dispensing assembly adapted for metered dispensing of a medication. In the description and illustrations herein, orientation references such as top, bottom, above, below, vertical, horizontal, upwardly, downwardly and the like are not intended to be limiting in nature, but only to provide visual references for the reader. It is understood that the dose counter will function whether operated as illustrated in an upright orientation as seen, for example, in FIGS. 1-3, or in an any other orientation (e.g., upside down).

[0090]    In a first embodiment illustrated in FIGS. 1-11, a dose counter 2 of the present invention includes a lid 3, an indexer 4, a units teeth ring 5, a compression spring 6, a units rotational ring 7, a tens cone 8 and a housing 9. Those components are assembled as illustrated in FIGS. 2, 3 and 7.

- 11 -

WO 2007/124406    PCT/US2007/067056

[0091]    FIG. 1 represents an exploded view of a dose counter 2 of the present invention. The dose counter 2 comprises a units counter subassembly which counts individual doses in ones units as they are dispensed. In the embodiment illustrated in FIG. 1, the units counter subassembly includes all components shown except the tens cone 8. Alternative embodiments of the inventive dose counter 2 comprise additional counter components to count changes in tens units (and in some cases, changes in hundreds units) during the medication dosage counting process, as explained herein.

[0092]    The lid 3 has an open cylindrical part 11 with a wide rim 12 at a top end thereof. The cylindrical part 11 has its axis aligned coaxially with an axis 13. A plurality (e.g., five) of equally spaced slots 14 extend through the rim 12, and each of the slots 14 has a curved portion disposed in an annular manner, coaxially with respect to the axis 13. Each slot 14 has a central slot projection 15 that extends radially outwardly from the curved portion of the slot 14. As illustrated in FIG. 4, a plurality (e.g., five) of ratchet members or teeth 16 project downwardly from a bottom surface of the rim 12, and are spaced circumferentially equally about the rim 12 relative to the axis 13. In one embodiment, the lid 3 has a plurality (e.g., five) of lugs 17 of trapezoidal cross-section on its outer rim 18, and the lugs 17 are formed to engage complementary slots on a top rim of the housing 9, as explained herein.

[0093]    The indexer 4 is shaped like a castellated ring 20 that is coaxial with the axis 13. The ring has a plurality (e.g., five) of castellations 22 projecting upwardly therefrom. The castellations 22 are curved, like the curved portions of the slots 14. On a bottom side of the ring 20, a pair of downward sawtooth protrusions 24 is provided opposite each castellation 22. A protrusion 26 extends radially outward adjacent a top of each castellation 22, such that the lateral cross-section (relative to axis 13) of the top of each protrusion 26 and its respective castellation 22 corresponds closely to the shape of each of the curved slots 14 and each slot's respective central part 15. Accordingly, the castellations 22 can fit slidably through the slots 14 in the lid 12, in an axial direction.

[0094]    A units teeth ring 5 is also coaxial with axis 13, and is provided with two rings of upstanding teeth. An outer ring of teeth 30 is disposed for engagement with ratchet members 16 on the bottom surface of the rim 12 of the lid 3. An inner ring of teeth 32 is arranged for engagement with the sawtooth protrusions 24 on the indexer 4. Units teeth ring 5 has an outer circumferential surface 34 that has a plurality (e.g., four) of axially

- 12 -

aligned grooves 36 disposed therein. The interaction of the lid 3, indexer 4 and units teeth ring 5 is functionally similar to that disclosed in WO 2005/060535 A2, for causing the units teeth ring 5 to rotate about the axis 13 (i.e., to rotate the ring 5 an indexed amount as each dose of medication is dispensed). In WO 2005/060535 A2, count indicia were provided on an outer circumferential surface of the counter ring bearing the two rings of upstanding teeth. In the present case, however, no indicia are borne by the units teeth ring 5 itself. WO 2005/060535 A2 is hereby incorporated by reference herein.

[0095]    The units rotational ring 7 is generally in the form of a hollow cylinder 38 that is coaxial with the axis 13. A plurality (e.g., four) of axially aligned ribs 40 extend radially inwardly from an internal surface 42 of the cylinder 38, terminating at a beveled ring 44 formed at the bottom of the cylinder 38. On an outer surface 46 of the cylinder 38, the units rotational ring 7 has a circumferential rim 48 extended thereabout adjacent the bottom of the cylinder 38. The circumferential rim 48 has a first set of missing arcuate segments or slots 48a, 48b, 48c, 48d and 48e, as seen in FIG. 1 (a second set of five missing arcuate segments or slots (not shown) are disposed 180 degrees around the other side of the units rotational ring 7 from the first set).

[0096]    The units rotational ring 7 has, on its outer circumferential surface 46, indicia for indicating ones units dosage counts of medication being dispensed. As illustrated by FIG. 1, the indicia may take the form of digits from 9 to 0 arranged equally spaced twice about the circumference of the outer surface 46 of the cylinder 38. The digits are oriented so that they can be underlined by lines parallel to the axis 13, and the digits are arranged in two sequences of descending order in a clockwise direction when viewed from the bottom of the units rotational ring 7 (i.e., in the sequence: 9 8 7 6 5 4 3 2 1 0 9 8 7 6 5 4 3 2 1 0). As seen in FIGS. 5 and 7, the units rotational ring 7 has an oblong lug 50 spaced below and between each space between a 0 digit and its adjacent 9 digit. Since the digits 9 to 0 are arranged twice around the units rotational ring 7, there are two oblong lugs 50 thereon (on opposite sides of the ring 7).

[0097]    The ribs 40 on the units rotational ring 7 are disposed to align with the grooves 36 on the units teeth ring 5. The outer circumferential surface 34 of the units teeth ring 5 is slightly smaller in diameter than the internal surface 42 of the cylinder 38, thus allowing axial movement of the units teeth ring 5 relative to the units rotational ring 7. However, while such axial movement is allowed, the interactions of the ribs 40 and respective

- 13 -

grooves 36 couple the units teeth ring 5 and units rotational ring 7 for rotational purposes relative to the axis 13. As can be seen in FIG. 1, there are four teeth missing on the outer ring 30 where the grooves 36 are disposed, but this does not adversely affect the function of counting individual dosages of medication as they are dispensed.

5      [0098]      The compression spring 6 is, in one embodiment, in the form of an annular leaf spring 52. The leaf spring 52 may be formed from a sheet of spring metal, although it may instead be formed of a suitable polymer material. The leaf spring 52 has a plurality (e.g., four) of cutouts 54 extending radially inwardly from an outer edge 56 thereof. Each of the cutouts 54 is formed and aligned to axially receive one of the ribs 40 of the units rotational

10     ring 7 therein, thereby allowing axial movement of the compression spring 6 relative to the units rotational ring 7. The leaf spring 52 has an annular ring 58 with a plurality (e.g., four) of axially extending spring elements or leafs 60 thereon. The spring elements 60 are biased downwardly from the ring 58 for engagement with the top of the beveled ring 44 within the cylinder 38 of the units rotational ring 7. In one embodiment, the outer end of

15     each leaf 60 is curved or otherwise formed to facilitate smooth sliding of the outer end with respect to the beveled ring 44. A top surface of the ring 58 of the leaf spring 52 engages a bottom surface of the units teeth ring 5. The leaf spring 52 thus urges the units teeth ring 5 axially away from the beveled ring 44 of the units rotational ring 7 and toward the sawtooth projections 24 on the indexer 4 and the ratchet members 16 on the bottom

20     surface of the rim 12 of the lid 3. The leaf spring 52 may alternatively be assembled the other way up, so that the spring elements 60 are biased upwardly from the ring 58 for engagement with the bottom surface of the units teeth ring 5, while the other side of the leaf spring engages the top of the beveled ring 44. This alternative assembly may also be applied to other embodiments of the invention.

25     [0099]      While ribs 40 and grooves 36 are shown, any suitable keyed feature between units teeth ring 5 and units rotational ring 7 will suffice to couple those two components together for rotation, yet allow relative axial movement. In one embodiment (not shown), rotation of the compression spring 6 relative to the units teeth ring 5 or units rotational ring 7 is permitted. However, to the extent it is desired that rotation of the compression

30     spring 6 also be constrained with respect to the units teeth ring 5 or units rotational ring 7, while ribs 40 and cutouts 54 are shown for that purpose, any suitable keyed feature to accomplish that end will suffice.

- 14 -

WO 2007/124406                                    PCT/US2007/067056

[00100] The housing 9 has a generally cylindrical body 62, with two forward wings 64 projecting outwardly therefrom and two forward legs 66 extending downwardly therefrom (only one of which is shown in FIG. 1). The cylindrical body 62 and the wings 64 and the legs 66 are formed to mate with interior surfaces of an actuator housing 68 for an aerosol container 70 (see FIG. 3). A count viewing window 72 is provided in the cylindrical body 62. On an interior circumferential surface 74 of the cylindrical body 62, a ledge 76 is disposed for alignment with the units rotational ring 7, as seen in FIG. 3. The cylindrical body 62 has a top rim with a plurality (e.g., five) of slots 78 shaped for reception of the projections 17 on the lid 3 to provide a snap fit connection of the lid 3 and housing 9, or those components may be press fit together, or may be ultrasonically or otherwise (e.g., laser) welded together.

[00101] The housing 9 has a lower rear internal cone-shaped recess 80 designed to accommodate the tens cone 8 therein, as best seen in FIGS. 3 and 6. The tens cone 8 can thus rotate in a stable manner about an axis directed diagonally forward and upward from a rear corner 82 of the recess 80. In an alternative embodiment (not shown), the tens cone 8 protrudes partly from the housing 9, and is in part supported to rotate about an axis directed diagonally forward and upward from an inside of the actuator housing that receives the aerosol container.

[00102] The tens cone 8 has numbers from 12 to 0 arranged descending clockwise about an external conical surface 84 of the tens cone 8 when viewed from its pointed end 86. The orientation of the numbers is such that they can be underlined by slanted lines from the apex of the conical surface 84 (e.g., in the sequence: 12 11 10 9 8 7 6 5 4 3 2 1 0). An internal surface 87 of the tens cone 8 has a raised frustum 88 pointing the opposite way from the conical surface 84, as can be seen in FIG. 7. Also on the internal surface 87 of the tens cone 8, an annular series of equally spaced pegs 90 extend parallel to and in the same direction as the frustum 88 (parallel to an axis 92 of rotation for the tens cone 8, as seen in FIG. 8). As further seen in FIG. 7, the cylindrical part 11 of the lid 3 has a lower arcuate shelf 11a that extends over the top of the cone shaped recess 80 of the housing 9 to inhibit the ingress of dust, fibers, fluff or other debris from going therein.

[00103] The dose counter 2 may be assembled by inserting the tens cone 8 into the housing 9, with the pointed end 86 of the conical surface 84 of the tens cone 8 seated in the rear corner 82 of the recess 80 in the housing 9. The circumferential rim 48 of the units

- 15 -

DTX161
17 of 97

rotational ring 7 has three slots 48c, 48d and 48e therein that correspond to positions of three of the pegs 90 on the tens cone 8, such that by correct orientation of the ring 7 and cone 8, the units rotational ring 7 can be seated on the ledge 76 of the housing 9, with three of the pegs 90 traversing the circumferential rim 48. The spring 6, units teeth ring 5, and indexer 4 can then be assembled in order over the units rotational ring 7, and the lid 3 fitted over the castellations 22 of the indexer 4 and then engaged with the housing 9. This complete assembly thus defines the dose counter 2, as seen in FIG. 2. Once assembled, the internal working components of the dose counter 2 are fairly well enclosed by the housing 9 and lid 3, thus inhibiting the ingress of dust, fibers, fluff and other debris therein to protect those working components. The enclosure of the working components of the dose counter 2 (with the lid 3 engaged to the housing 9) also provides an assembly that is somewhat tamper resistant, and is durable and shock-resistant.

[00104]    FIG. 3 shows a vertical cross-sectional view through part of a press-and-breathe aerosol inhaler incorporating the dose counter 2 of FIGS. 1 and 2. The purpose of the dose counter is to provide a display that indicates the number of doses of medication remaining or (in an alternative embodiment, not shown) the number already dispensed. The indicia provided for review by a user may be suitable alphabetic, numeric, alphanumeric, or color symbols, or any combination thereof, providing a sequential count up or count down of dispensed doses, or providing a more general indication such as "full" or "empty". The indicia would be visible through a window 94 in a side wall 96 of the actuator housing 68; alternatively, the side wall 96 may be transparent or have at least a portion thereof made of a transparent material to provide a viewing area or lens for viewing the indicia and count. The press-and-breathe inhaler comprises the actuator housing 68 having a cylindrical body 98 to accommodate the aerosol container 70. The actuator housing 68 has a mouthpiece 100. A nozzle block 102 is positioned within the actuator housing 68 and has an aperture to accommodate a valve stem 104 of the aerosol container 70 and a spray orifice 106. A metering valve 108 of the aerosol container 70 comprises a valve ferrule 110, valve stem 104, metering chamber 112 and return spring 114. As illustrated in FIG. 3, the aerosol container 70 is also aligned coaxially with the axis 13.

[00105]    The housing 9 is designed to minimize interference and obstruction of the medication spray and airflow paths in the actuator housing 68. In one embodiment, the

- 16 -

DTX161
18 of 97

dose counter 2 is clipped or retained within the actuator housing 68 by suitable detents or other engaging structure (not shown) between the actuator housing 68 and the dose counter 2. In addition, the dose counter 2 is designed to be useable with a variety of metering valve designs, and to fit compactly within commercially available actuator

5    housing profiles so that it is not necessary to change the external configuration of those actuator housings to accommodate the inventive dose counter 2 therein. The FIGS, illustrate the dose counter 2 of the present invention in combination with an actuator housing for an inhaler of the type used for dispensing medication from a pressurized aerosol container (a pressurized metered dose inhaler or pMDI). However, inhalers in

10   other forms may be used with the present invention including, for example, dry powder inhalers, portable nebulizers, and other metered dose dispensers that use reciprocal mechanism.

[00106]    The inhaler is actuated to dispense a dosage of medication by pressing down on the aerosol container 70 relative to the actuator housing 68. When the inhaler is actuated,

15   downward movement of the aerosol container 70 causes the valve ferrule 110 to engage top surfaces 22a of the castellations 22 of the indexer 4. The lid 3 is positioned low enough relative to the valve ferrule 110 so that those components never engage each other, thus ensuring sufficient space to allow adequate metering valve travel to guarantee the dispensing of a dose of medication. Engagement with the valve ferrule 100 causes the

20   indexer 4 to move downwardly relative to the lid 3, and the sawtooth protrusions 24 of the indexer 4 engage teeth of the inner ring of teeth 32 of the units teeth ring 5. Once the outer ring of teeth 30 move low enough to clear the ratchet members 16 on the lid 3, the ring 5 rotates (as described in WO 2005/060535 A2). Such rotational movement results in coupled rotational movement of the units rotational ring 7. The compression spring 6

25   between the units rotational ring 7 and the units teeth ring 5 maintains relative engagement of the sawtooth protrusions 24 and inner ring of teeth 32 until the downward actuation force on the aerosol container 70 is removed, and the return spring 114 separates the valve ferrule 110 from the indexer 4. This allows the compression spring 6 to return the indexer 4 upwards, whereupon the interaction of the outer ring of teeth 30 on the units teeth ring 5

30   with the ratchet members 16 on the lid 3 results in further rotational motion of the units teeth ring 5 together with further coupled rotational motion of the units rotational ring 7, thereby completing the ones units change to the count, corresponding to the actuation and

- 17 -

DTX161
19 of 97

corresponding to a single dosage of medication. The dose counter 2 is designed to count at (or close before) the firing point of the metering valve 108 on the aerosol container 70, and then "lose" any subsequent excessive axial travel (i.e., lost "motion") of the axially moving components of the dose counter 2. Thus, for each actuation of the inhaler, the units rotational ring 7 is indexed to move rotationally one count increment, which will change the ones units count visible via the windows 72 and 94.

[00107]     In order to change the tens units that are displayed via the windows 72 and 94, the tens cone 8 is rotated as a function of the rotation of the units rotational ring 7 to move the number bearing portion of the conical surface 84 past the window 72. The axes 13 and 92 of the units rotational ring 7 and tens cone 8 are, as shown in FIG. 8, disposed at an obtuse angle α relative to each other (i.e., disposed at an angle greater than 90 degrees and less than 180 degrees relative to each other). In one embodiment, the angle α ranges from 110 degrees to 160 degrees. In an alternative embodiment, the angle α ranges from 125 degrees to 145 degrees. In yet another embodiment, the angle α is 135 degrees. In one embodiment, the axes 13 and 92 are coplanar, but not coaxial, parallel or perpendicular relative to each other.

[00108]     As seen in FIGS. 3 and 7, portions of the tens cone 8 and units rotational ring 7 converge adjacent the viewing window 72 of the housing 9. At the viewing window 72, a circumferential segment of the outer surface 46 of the units rotational ring 7 that bears ones units indicia and an arcuate segment of the conical surface 84 that bears tens units indicia are aligned to collectively present at least a portion of a medication dosage count (for example, in FIG. 2, the count "120" is seen, and in FIG. 9, the count "129" is seen). At this juxtaposition of the indicia bearing surfaces of the units rotational ring 7 and the tens cone 8, those surfaces are tangential to each other at the viewing window 72, which provides a common view area for observing the indicia on the two separate indicia bearing surfaces. As noted above, when the dose counter 2 is disposed within the actuator housing 68 (see FIG. 3), the viewing window 72 is aligned with the viewing window 94 in the side wall 96 of the actuator housing 68, thus presenting the common viewing area for observation by a user. In one embodiment, the common viewing area is generally tangential to a circumferential surface of a cylinder disposed about the axis 13 (see FIG. 8).

- 18 -

WO 2007/124406                                                    PCT/US2007/067056

[00109]    Every tenth movement of the units rotational ring 7 results in a movement of the tens cone 8 due to interaction between one of the oblong lugs 50 (on the units rotational ring 7) and one of the pegs 90 (on the tens cone 8). The relationship between the lugs 50 and pegs 90 is illustrated schematically in FIGS. 10A- 10D and FIGS. 11A-1 1D. This direct interaction between the units rotational ring 7 and the tens cone 8 eliminates the need for any transfer gear or other motion translation components between a component bearing ones units indicia (i.e., the units rotational ring 7) and a component bearing tens units indicia (i.e., the tens cone 8). This arrangement requires fewer parts, is more economical in function and is more compact. In addition, the use of fewer components in a dose counter reduces the number of components that must be manufactured within certain tolerance ranges, and thus reduces the possibility of component incompatibility or inoperabilities due to tolerance stack-up.

[00110]    The interaction in sequence for causing the tens cone 8 to change the indicia displayed in viewing window 72 involves engagement of one of the lugs 50 on the units rotational ring 7 with one of the pegs 90 on the tens cone 8. As seen in FIG. 10A, as the units rotational ring 7 rotates clockwise, one of the lugs 50 thereon eventually moves into engagement with the peg 90a on the tens cone 8. FIG. 11A illustrates the relationship of the lug 50 and peg 90a at the time of their initial engagement caused by rotation of the units rotational ring 7 relative to the tens cone 8. As the units rotational ring 7 continues its clockwise rotation, as seen in FIG 10B, the lug 50 pushes the peg 90a to the left as viewed in FIG 10B, thereby causing the tens cone 8 to rotate about its axis as further illustrated in FIG 11B in a counterclockwise manner. As shown in FIG. 10C, continued clockwise rotation of the units rotational ring 7 causes the lug 50 to further push the peg 90a to the left (as viewed in FIGS. 10C and 11C), thereby causing further rotation of the tens cone 8 in a counterclockwise manner about its axis. Eventually, as illustrated in FIGS. 10D and 11D, the lug 50 pushes the peg 90a so far that rotation of the tens cone 8 moves the peg 90a out of the path of the advancing lug 50 (i.e., below the lug 50 as seen in FIG. 11D). Once this happens, further counterclockwise rotational movement of the tens cone 8 stops, and a new tens units number is aligned for observation through the viewing window 72. In an embodiment where the tens units number is rotated to show a countdown of the number of dosages remaining, the new tens units number displayed will be a number smaller than the previous number that was displayed.

- 19 -

DTX161
21 of 97

[00111]    Rotation of the tens cone 8 relative to the rotation of the units rotational ring 7 occurs each time one of the lugs 50 engages one of the pegs 90. In one embodiment, there are two lugs on the units rotational ring 7, so for every complete rotation of the units rotational ring 7 (which represents twenty ones units numbers), the tens cone 8 is rotated through two tens units numbers. In alternative embodiments, the rotation of the tens cone 8 as a function of rotation of the units rotational ring 7 may be made more frequent or less frequent by providing more or less lugs 50 on the units rotational ring 7. In the illustrated embodiment, the conical surface 84 of the tens cone 8 has thirteen tens units number bearing arcuate segments, and on its internal surface 87 the tens cone 8 correspondingly has thirteen pegs 90. If more or fewer number segments are desired to be provided on the tens cone 8, the number of pegs 90 must therefore accordingly be adjusted in a likewise fashion.

[00112]    In FIGS. 10 and 11, the pegs on the tens cone 8 are referenced as pegs 90a, 90b, 90c, etc. As noted above, the outer surface 46 of the units rotational ring 7 has the circumferential rim 48 thereon, which has slots 48a and 48b aligned adjacent each lug 50 to allow movement of pegs 90, as can be seen in the sequential illustrations of FIGS. 10 and 11. Thus, as peg 90a is moved by lug 50, peg 90c moves through slot 48b in circumferential ring 48 (from below the slot 48b as seen in FIG. 1IA to above the slot 48b as seen in FIG. 1ID). Likewise, peg 90m moves through slot 48a as the tens cone 8 is rotated (from above the circumferential rim 48 as seen in FIG. HA to below the circumferential rim 48 as seen in FIG. 1ID).

[00113]    The circumferential rim 48 acts to prevent rotation of the tens cone 8 except when one of the lugs 50 engages one of the pegs 90. For example, as seen in FIG. HA, tens cone 8 is constrained from movement about its axis by the circumferential rim 48 extending between the pegs 90m and 901. While movement of the tens cone 8 is allowed when the units rotational ring 7 and tens cone 8 are aligned as seen in FIGS. 1OB and 1OC (and in FIGS 1IB and 11C), the tens cone 8 is again prevented from movement once in the configuration shown in FIG. HD. In the position shown in FIG. HD, the circumferential rim 48 extends between the pegs 90a and 90d, and with further rotation of the units rotational ring 7, the circumferential rim 48 will extend between adjacent pegs 90a and 90m, and between adjacent pegs 90c and 90d. Thus, once the tens cone 8 has been moved by interaction with one of the lugs 50 on the units rotational ring 7, it cannot rotate again

- 20 -

DTX161
22 of 97

WO 2007/124406                                           PCT/US2007/067056

until another lug 50 presents itself for engagement with the peg 90b on the tens cone 8, even though the units rotational ring 7 is rotating about its axis 13 to display differing ones units digits.  In one embodiment, cooperative features are provided between the housing 9 and tens cone 8 that will, when the tens cone 8 has been rotated to a position that shows a tens units 0 numeral in the view window 72, prevent further rotation of the tens cone 8. The units rotational ring 7 can continue to rotate as it counts down its nine remaining ones units counts, and then it would be prevented from further rotation by the tens cone 8.  At this point, the viewing window would display a zero count for the dose counter 2. To the extent further medication is present in the aerosol container, it may be dispensed by a user using the aerosol dispensing assembly, but the dose counter 2 will not register any further dosage counts.  As an alternative, the aerosol dispensing assembly could be designed to cease dispensing doses of medication once the zero count has been reached, for example by limiting the free movement of the indexer 4.

[00114]    In essence, the inventive dose counter in the embodiment illustrated in FIGS. 1-11 operates in the following fashion. When a user actuates the inhaler by pushing the aerosol container 70 downwardly into the actuator housing 68, the valve ferrule 110 engages the indexer 4 to push it downwardly. Indexer 4 engages and then causes rotation of units teeth ring 5. The units rotational ring 7 is coupled rotationally to the units teeth ring 5, so it rotates as well. As the aerosol container 70 reciprocates down and up to complete a single dosage of medication therein, the indexer 4 and units teeth ring 5 also reciprocate down and up relative to the units rotational ring 7. One complete down and up reciprocal movement of the units teeth ring 5 causes the units rotational ring 7 to rotate on its axis 13 a single ones units count change in position thereof. Rotation of the units rotational ring 7 is translated into rotation of the tens cone 8 by engagement of the lug 50 on the units rotational ring 7 with one of the pegs 90 on the tens cone 8. However, the tens cone 8 is only rotated periodically relative to the units rotational ring 7, to indicate a change in decade of the counts (i.e., the tens cone 8 is only moved once for every ten movements of the units rotational ring 7). Each time the units rotational ring 7 counts ten ones units counts, the tens cone 8 is indexed one position to change the tens units count displayed thereon.

[00115]    In the illustrated embodiment, a maximum dosage count of "129" medication dosages is shown. This allows for some testing of the aerosol dispensing assembly (e.g., 9

- 21 -

DTX161
23 of 97

initial "tester" counts available), with 120 user available dispensing counts remaining. A s noted above, changing the frequency or spacing of indicia on the units rotational ring and/or tens cone (along with corresponding changes in the interactive geometry between those components) allows modification of the possible count indicia shown.

[00116]    One reason to alter the dosage count indicia would be where a single prescribed dose for a product requires two actuations of the inhaler. In this system, the possibility of counting 240 actuations is achieved by the following modifications. The units rotational ring would have only one oblong lug 50 (not 2) and similarly, only one set of slots 48a and 48b in the circumferential rim 48 (not 2 slots). The indicia on the units rotational ring 7 would be disposed in the following order about its circumference: $9*_8*_7*_6*_5*4*3*2*1*0*$  (or with "$\frac{8}{2}$" in place of each asterisk) rather than the 9 8 7 6 5 4 3 2 1 0 9 8 7 6 5 4 3 2 1 0 indicia pattern described above. The tens cone 8 would then be moved after every twenty actuations (ten dosages) of the units rotational ring 7, rather than after every ten actuations thereof. This would allow the inventive dosage counter to achieve 240 actuation events, rather than have it limited to 120.

[00117]    While the embodiment of the inventive dose counter illustrated in FIGS. 1-1 1 allows an indicia display changing in ones units and in tens units, it does not allow a change in display of hundreds units. FIGS. 12-20 illustrate a dose counter 202 of the present invention which provides a user with a possible dosage count ranging from 0 to 299. The dose counter 202 is similar to the dose counter 2 of FIGS. 1-11, but includes a modified tens cone 208, a modified housing 209 and a hundreds disk 225. The other components of the dose counter 202 are essentially the same as those set forth for dose counter 2. For instance, the lid 3, indexer 4, units teeth ring 5, compression spring 6 and units rotational ring 7 are essentially the same, and operate the same as previously described. The interaction of the lid 3, indexer 4 and units teeth ring 5 is functionally similar to that disclosed in WO 2005/060535 A2, for causing the units teeth ring 5 to rotate about the axis 13 (i.e., to rotate the ring 5 an indexed amount as each dose of medication is dispensed). The interaction between the units rotational ring 7 and tens cone 208 is also similar in terms of causing rotation of the tens cone 208 about its axis as a function of rotation of the units rotational ring 7.

[00118]    In this embodiment, the tens cone 208 has numbers 9 to 0 arranged descending clockwise about external conical surface 284 of the tens cone 208 when viewed from a

- 22 -

WO 2007/124406                                                    PCT/US2007/067056

pointed end 286 thereof (i.e., in the sequence 9 8 7 6 5 4 3 2 1 0). The orientation for readability of the numbers is similar to the orientation on the tens cone 8. On the tens cone 208, the conical surface 284 does not extend to the pointed end 286. The tens cone conical surface 284 extends only in a band adjacent an outer circumferential edge of the tens cone

5   208. An annual recess 284a is concentrically disposed within the band, and a small cone 284b protrudes concentrically within that recess 284a, capped by the pointed end 286. Also protruding within the recess 284a is a circumferential rim 285 surrounding the cone 284b. The rim 285 has a single gap 285a therein, and the recess 284a also has a ramp 289 projecting outwardly therefrom, which extends generally radially and outwardly from the

10   gap 285a. An internal surface 287 of the tens cone 208 has a raised frustum 288 pointing the opposite way from the conical surface 284 as can be seen in FIG. 18. Also on its internal surface 287 of the tens cone 208, an annular series of equally spaced pegs 290 extend parallel to and in the same direction as the frustum 288 (generally parallel to an axis 292 of rotation for the tens cone 208, as seen in FIG. 19). Since there are only ten

15   numbers on the external surface 284 of the tens cone 208, there are only ten corresponding pegs 290 on the internal surface 287 thereof.

[00119]   The housing 209 again has a generally cylindrical body 262, with two forward wings 264 projecting outwardly therefrom and two legs 266 extending downwardly therefrom. The cylindrical body 262 and the wings 264 and the legs 266 are formed to

20   mate with interior surfaces of the actuator housing 68 for the aerosol container 70 (see FIG. 16). A count viewing window 272 is provided in the cylindrical body 262. On an interior circumferential surface 274 of the cylindrical body 262, a ledge 276 is disposed for alignment with the units rotational ring 7, as seen in FIG. 16. The cylindrical body 262 has a top rim with a plurality (e.g., five) of slots 278 shaped for reception of the

25   projections 17 on the lid 3 to provide a snap fit connection of the lid 3 and housing 209 or those components may be press fit together, or maybe ultrasonically or otherwise (e.g., laser) welded together.

[00120]   The housing 209 has a lower rear internal cone shaped recess 280 designed to accommodate the tens cone 208 therein, as best seen in FIGS. 16 and 18. The tens cone

30   208 can thus rotate in a stable manner about an axis directed diagonally forward and upward from a rear corner 282 of the recess 280. The housing 209 also has a generally vertically aligned arcuate slot 279 adjacent the recess 280 for reception and partial

- 23 -

rotatable support of the hundreds disk 225. The hundreds disk 225 has an external indicia bearing surface 227 extending generally perpendicular to a rotational axis 229 thereof (see, e.g., FIG. 19). The external surface 227 has numbers from 2 to 0 arranged descending clockwise thereon. The orientation of the numbers is generally adjacent and

5    tangential to a circumferential edge of the circular external surface 227, with each number bisected horizontally by a radial line extending outwardly from the axis 229. An internal surface 231 of the hundreds disk 225 has three annularly equally spaced pegs 233 projecting outwardly therefrom, in a direction generally parallel to the axis 229 (see FIG. 17). Higher counts are possible by incorporating more numbers on a larger hundreds disc

10   and correspondingly more pegs to match. When assembled, the internal surface 231 of the hundreds disk 225 faces and engages portions of the external surface 284 of the tens cone 208.

[00121]     The dose counter 202 may be assembled by inserting the hundreds disk 225 into the slot 279 of the housing 209. The tens cone 208 is then inserted into the housing

15   209, with the pointed end 286 of the small cone 284b thereon seated in the rear corner 282 of the recess 280 in the housing 209. In the indicia count mode, the hundreds units number "2" of the hundreds disk 225 is aligned for observation through the viewing window 272, and the tens units number "0" on the tens cone 208 is aligned for observation through the viewing window 272. The circumferential rim 48 of the units rotational ring again has

20   three slots 48c, 48d and 48e (such as shown in FIG. 1) that correspond to positions of three of the pegs 290 on the tens cone 208 such that by correct orientation of the ring 7 and the cone 208, the units rotational ring 7 can be seated on the ledge 276 of the housing 209, with three of the pegs 290 traversing the circumferential rim 48. Once initially assembled, the ones units number "9" on the units rotational ring 7 is aligned for

25   observation through the viewing window 272. The spring 6, units teeth ring 5, and indexer 4 can then be assembled in order over the units rotational ring 7, and the lid 3 fitted over the castellations 22 of the indexer 4 and then engaged with the housing 209. This complete assembly thus defines the dose counter 202 as seen in FIG. 15. Once assembled, the internal working components of the dose counter 202 are fairly well

30   enclosed by the housing 9 and lid 3, thus inhibiting the ingress of dust, fibers, fluff and other debris therein to protect those working components. The enclosure of the working components of the dose counter 202 (with the lid 3 engaged to the housing 9) also

- 24 -

provides an assembly that is somewhat tamper resistant, and is durable and shock-resistant.

[00122]   In the illustrated second embodiment, a maximum dosage count of "299" medication dosages is shown. This allows for some testing or the aerosol dispensing assembly (e.g., 9 initial "tester" counts available), with 200 user available dispensing counts remaining. Changing the frequency or spacing of indicia on the units rotational ring, tens cone and/or hundreds disk (along with corresponding changes in the interactive geometry between those components) allows modification of the possible count indicia shown.

[00123]   FIG. 16 shows a vertical cross-sectional view through part of a press-and-breathe aerosol inhaler incorporating the dose counter 202 of FIGS. 12, 15 and 18. As noted above, the purpose of the dose counter is to provide a display that indicates the number of doses of medication remaining or (in an alternative embodiment, not shown) the number already dispensed. The indicia provided for review by a user may be a suitable alphabetic, numeric, alphanumeric or color symbols, or any combination thereof, providing a sequential count up or count down of dispensed doses, or providing a more general indication, such as "full" or "empty". The indicia would be visible through a window 94 in a side wall 96 of the actuator housing 68; alternatively, the side wall 96 may be transparent or have at least a portion thereof made of a transparent material to provide a viewing area or lens for viewing the indicia and count. The press-and-breathe inhaler is of the same structure and components as illustrated in FIG. 3, and likewise cooperates with the dose counter 202 in the same manner to initiate a single ones units dosage count, as well as a change of decades (i.e., tens units) for counting by cooperation of the units rotational ring 7 and the tens cone 208. As illustrated in FIG. 16, the aerosol container 70 is aligned coaxially with the axis 13.

[00124]   The housing 9 is designed to minimize interference and obstruction of the medication spray and airflow paths in the actuator housing 68.  In one embodiment, the dose counter 202 is clipped or retained within the actuator housing 68 by suitable detents or other engaging structure (not shown) between the actuator housing 68 and the dose counter 202.  In addition, the dose counter 202 is designed to be useable with a variety of metering valve designs, and to fit compactly within commercially available actuator housing profiles so that it is not necessary to change the external configuration of those

- 25 -

actuator housings to accommodate the inventive dose counter 202 therein.    The FIGS.
illustrate the dose counter 202 of the present invention in combination with an actuator
housing for an inhaler of the type used for dispensing medication from a pressurized
aerosol container.    However, inhalers in other forms may be used with the present

5      invention including, for example, dry powder inhalers, portable nebulizers, and other
dispensers that use reciprocal mechanism.

[00125]    As seen in FIGS. 14, 16, 18 and 19, portions of the hundreds disk 225, the tens
cone 208 and the units rotational ring 7 converge adjacent the viewing window 272 of the
housing 209. At the viewing window 272, a circumferential segment of the outer surface

10     46 of the units rotational ring 7 that bear ones units indicia, an arcuate segment of the
conical surface 284 of the tens cone 208 that bears tens units indicia, and an arcuate
segment of the external surface 227 of the hundreds disk 225 that bears hundreds units
indicia are aligned to collectively present a medication dosage count (for example, in FIG.
14, the count "100" is seen, and in FIG. 15, the count "098" is seen). At this juxtaposition

15     of the indicia bearing surfaces of the units rotational ring 7, the tens cone 208 and the
hundreds disk 225, those surfaces are sequentially tangential to each other at the viewing
window 272, which provides a common view area for observing the indicia on the three
separate indicia bearing surfaces. The external surface 227 of the hundreds disk 225 is
thus generally parallel with the viewing area 272. As noted above, when a dose counter

20     202 is disposed within the actuator housing 68 (see FIG. 16), the viewing window 272 is
aligned with the viewing window 94 in the side wall 96 of the actuator housing 68, thus
presenting the common viewing area for observation by a user. The common viewing area
is generally tangential to a circumferential surface of a cylinder disposed about the axis
13.

25     [00126]    As seen in FIG. 19, the rotational axis 229 of the hundreds disk 225 and the
rotational axis 13 of the units rotational ring 7 are perpendicular to one another. The axis
229 of the hundreds disk 225 is disposed at an obtuse angle $\beta$ with respect to the axis 92 of
the tens cone 208. The angle $\beta$ may assume the same ranges or value as stated above with
respect to the angle $\alpha$. In one embodiment, the axes 13 and 292 are coplanar, but not

30     coaxial, parallel or perpendicular relative to each other. Likewise, in one embodiment, the
axes 292 and 229 are coplanar, but not coaxial, parallel or perpendicular relative to each
other. In other embodiments of the invention, these pairs of axes need not be coplanar.

- 26 -

[00127]    Every tenth movement of the units rotational ring 7 results in a movement of the tens cone 208 due to interaction between one of the oblong lugs 50 (on the units rotational ring 7) and one of the pegs 290 (on the tens cone 208). The tens cone 208 thus rotates about its axis 292 as a function of the rotation of the units rotational ring 7 about its axis 13. Although the number of pegs 290 on the tens cone 208 is different from that illustrated in the first embodiment, the mechanics of the interaction between the tens cone 208 and the units rotational ring 7 are the same as illustrated in FIGS. 10 and 11. The lug 50 on the units rotational ring 7 engages sequentially each peg 290 of the tens cone 208 to cause the tens cone 208 to rotate as function of rotation of the units rotational ring 7. The circumferential ring 48 on the units rotational ring 7, in cooperation with the slots 48a and 48b therein (disposed relative to the lug 50), permit rotation of the tens cone 208 when desired, but inhibit its rotation at other times, while allowing continued rotation of the units rotational ring 7.

[00128]    Every complete rotation of the tens cone 208 results in a rotational movement of the hundreds disk 225 due to interaction between the ramp 289 (on the tens cone 208) and one of the pegs 233 (on the hundreds disk 225). The relationship between the ramp 289 and the pegs 233 is illustrated schematically in FIGS. 20A-20F. This direct interaction between the tens cone 208 and hundreds disk 225 eliminates the need for any transfer gear or other translation components between a component bearing tens units (i.e., the tens cone 208) and a component bearing hundreds units (i.e., the hundreds disk 225). This arrangement requires fewer parts, is more economical in function, and is more compact.

[00129]    The interaction and sequence for causing the hundreds disk 225 to change the hundreds units indicia displayed in the viewing window 272 involves engagement of the ramp 289 on the tens cone 208 with one of the pegs 233 on the hundreds disk 225. As seen in FIG. 20A, the tens cone 208 rotates counterclockwise, and the ramp 289 eventually moves into engagement with the peg 233a on the hundreds disk 225. As the tens cone 208 continues its counterclockwise rotation, as seen in FIG. 20B, the ramp 289 pushes the peg 233a (down and to the left, as viewed in FIG. 20B) and thereby causes the hundreds disk 225 to rotate about its axis in a counterclockwise manner. As shown in FIG. 20C, further counterclockwise rotation of the units rotational ring 7 causes the ramp 289 to further push the peg 233a down and to the left, thereby causing further rotation of the hundreds disk

- 27 -

WO 2007/124406                                          PCT/US2007/067056

225 in a counterclockwise manner about its axis. As shown in FIG. 1OD, further counterclockwise rotation of the tens cone 208 causes the ramp 289 to further push the peg 233a down and to the left, thereby causing further rotation of the hundreds disk 225 in a counterclockwise manner about its axis. Eventually, as illustrated in FIG. 2OE, the ramp

5     289 pushes the peg 233a so far down that rotation of the hundreds disk 225 moves the peg 233a out of the arcuate path of the advancing ramp 289 (i.e., out of reach of the ramp 289, as seen in FIG. 20E). Once this happens, further counterclockwise rotational movement of the hundreds disk 225 stops, and a new hundreds units number is aligned for observation through the viewing window 272. In an embodiment where the hundreds disk is rotated to

10     show a count down of the number of dosages remaining, the new hundreds units number displayed will be a smaller number than the previous number that was displayed.

[00130]     Rotation of the hundreds disk 225 relative to the rotation of the tens cone 208 occurs each time the ramp 289 engages one of the pegs 233. In the embodiment illustrated, there is a single ramp 289, so for every single rotation of the tens cone 208, the hundreds

15     disk 225 is rotated through one hundreds unit number (or, in the case where the hundreds disk 225 has three hundreds units thereon, the hundreds disk 225 is rotated 120°).

[00131]     In FIGS. 20A-20F, the pegs on the hundreds disk 225 are referenced as pegs 233a, 233b and 233c. As noted above, the external surface 284 of the tens cone 208 has an annular recess 284a thereon. The recess 284a is formed to accommodate the pegs 233. The

20     circumferential rim 285 has a slot 285a aligned adjacent the ramp 289 and is provided to prevent movement of the pegs 233, as can be seen in the sequential illustrations of FIGS. 20A-20F. Thus, as peg 233a is moved by the ramp 289, peg 233c moves through the slot 285a in the circumferential ring 285 (from below the slot 285a, as seen in FIG. 20A, to above the slot 285a, as seen in FIG. 20D). At the same time, peg 233a moves from above

25     the slot 285a (see FIG. 20A) to below the slot 285a (see FIG. 20E).

[00132]     The circumferential rim 285 acts to prevent rotation of the hundreds disk 225 except when the ramp 289 engages one of the pegs 233. For example, as seen in FIG. 2OF, hundreds disk 225 is constrained from movement about its axis by the circumferential rim 285 extending between the peg 233c and the peg 233a (and the peg 233b). While

30     movement of the hundreds disk 225 is allowed when the tens cone 208 and hundreds disk 225 are aligned as seen in FIGS. 20A-20E, the hundreds disk 225 is prevented from movement once in the configuration shown in FIG. 2OF. The circumferential rim 285

- 28 -

DTX161
30 of 97

WO 2007/124406                                                    PCT/US2007/067056

extends between the opposed pegs 233c and 233a (or pegs 233c and 233b), and continued rotation of the tens cone 208 will maintain this relationship until the slot 285a of the circumferential rim 285 again reaches the position shown in FIG. 2OA. Thus, once the hundreds disk 225 has been moved by interaction with the ramp 289 on the tens cone 208, it cannot begin further rotation until the ramp 289 again presents itself for engagement with the peg 233c on the hundreds disk 225, even though the tens cone 208 is rotating about its axis to display differing tens units numbers.

[00133]    In one embodiment, cooperative features are provided between the housing 9 and hundreds disk 225 that will, when the hundreds disk 225 has been rotated to a position that shows a hundreds units 0 numeral in the view window 272, prevent further rotation of the hundreds disk 225. The tens cone 208 can continue to rotate as it counts down its ten remaining tens units counts, and then it would be prevented from further rotation by the hundreds disk 225. At this point, the units rotational ring 7 can continue to rotate as it counts down its nine remaining ones units counts, and then it would be prevented from further rotation by the tens cone 208. At this point, the viewing window would display a zero count for the dose counter 202. To the extent further medication is present in the aerosol container, it may be dispensed by a user using the aerosol dispensing assembly, but the dose counter 202 will not register any further dosage counts. As an alternative, the aerosol dispensing assembly could be designed to cease dispensing doses of medication once the zero count has been reached, for example by limiting the free movement of the indexer 4.

[00134]    In essence, the inventive dose counter in the embodiment illustrated in FIGS. 12-20, operates in the following fashion. When a user actuates the inhaler by pushing the aerosol container 70 downwardly into the actuator housing 68, the valve ferrule 110 engages the indexer 4 to push it downwardly. Indexer 4 engages and then causes rotation of units teeth ring 5. The unit rotational ring 7 is coupled rotationally to the units teeth ring 5, so it rotates as well. As the aerosol container 70 reciprocates down and up to complete a single dosage of medication therein, the indexer 4 and units teeth ring 5 also reciprocate down and up relative to the units rotational ring 7. One complete down and up reciprocal motion of the units teeth ring 5 causes the units rotational ring 7 to rotate on its axis 13, a single ones units count change in position thereof. Rotation of the units rotational ring 7 is translated into rotation of the tens cone 208 by engagement of the lug 50 on the units

- 29 -

rotational ring 7 with one of the pegs 290 on the tens cone 208. However, the tens cone 208 is only rotated periodically relative to the units rotational ring 7, to indicate a change in decade of the counts (i.e., the tens cone 208 is only moved once for every ten movements of the units rotational ring 7). Each time the units rotational ring 7 counts ten ones units counts, the tens cone 208 is indexed one position to change the tens unit count displayed thereon. Rotation of the tens cone 208 is translated into rotation of the hundreds disk 225 by engagement of the ramp 289 on the tens cone 208 with one of the pegs 233 on the hundreds disk 225. However, the hundreds disk 225 is only rotated periodically relative to the tens cone 208, to indicate a change in hundreds units of the counts (i.e., the hundreds disk 225 is only moved once for every ten movements of the tens cone 208). Each time the tens cone 208 counts ten tens units counts, the hundreds disk 225 is indexed one position to change the hundreds units count displayed thereon.

[00135]    A third embodiment of the inventive dose counter is illustrated in FIGS. 21-30. FIG. 21 illustrates a dose counter 302 of the present invention which provides a user with a possible dosage count ranging from 0 to 129. The dose counter 302 is similar to the dose counter 2 of FIGS. 1-11, but each component thereof is modified. However, the dose counter 302 does include the same relative components, such as a lid 303, indexer 304, units teeth ring 305, compression spring 306, units rotational ring 307, tens cone 308 and housing 309. While the components differ in structure, they operate similarly to those described with respect to the dose counter 2 of FIGS. 1-11. Actuation of the indexer 304 by a user causes indexed rotation of the units rotational ring 307, and the tens cone 308 is rotated as a function of rotation of the units rotational ring 307.

[00136]    The lid 303 is generally annular. A central circular hole 310 has a plurality (e.g., five) of circumferentially equally spaced radial hole extensions 311 of slightly greater radius thereon. Between adjacent hole extensions 311, the lid 303 has a plurality (e.g., five) of circumferentially equally spaced small radially inward protrusions 312 thereon. Adjacent an outer circumferential edge of the lid 303, a plurality (e.g., three) of circumferentially equally spaced cutaways 313 are defined by a radius slightly smaller than the outer edge. A cylindrical extension 314 extends downwardly from the lid 303, and has a smaller radius than the outer edge of the lid 303 (equal to the radius of the cutaways 313). Below each cutaway 313, the cylindrical extension 314 has an outward radial protrusion 315, shorter in circumferential length than the cutaways 313. The

- 30 -

DTX161
32 of 97

protrusions 315 are designed to form a snap fit with three doorframes 376 in the housing 309, as explained herein.

[00137]    The indexer 304 is shaped generally like a cylindrical cap with a central hole 316. The indexer 304 has a plurality (e.g., five) peripheral castellations 318 that are designed to pass through the hole extensions 311 of slightly greater radius in the central hole 310 of the lid 303. The indexer 304 also has a plurality (e.g., five) of peripheral grooves 320 extending from a top thereof to almost a bottom thereof, in directions parallel to an axis 322 of the indexer 304 and its associated lid 303 and designed to accommodate the protrusions 312 of the lid. On a bottom circumferential edge 324 of the indexer 304, a plurality (e.g., five) of circumferentially equally spaced sawtooth projections 326 are provided for interaction with an inner ring of teeth on the units teeth ring 305.

[00138]    The units teeth ring 305 is also coaxial with axis 322, and is provided with two rings of upstanding teeth. An outer ring of teeth 330 is disposed for engagement with ratchet members 331 on the bottom surface of the lid 303. An inner ring of teeth 332 is arranged for engagement with the sawtooth protrusions 326 on the indexer 304. A central cylinder 334 extends upwardly from the units teeth ring 305 to aid in keeping dust out of the dosage counter mechanism, and to serve as a guide for relative axial movement with the an inner cylinder 342 of the units rotational ring 307 (see FIG. 26). A circumferential perimeter of the units teeth ring 305 has a plurality (e.g., four) of circumferentially equally spaced features 336, with each feature 336 comprising a vertical recess with a pair of vertically oblong lugs on each side thereof.

[00139]    The interaction of the lid 303, indexer 304 and units teeth ring 305 is functionally similar to that disclosed in WO 2005/060535 A2 for causing units teeth ring 305 to rotate about the axis 322 (i.e., to rotate the ring 305 an indexed amount as each dose of medication is dispensed).

[00140]    The units rotational ring 307 is generally in the form of inner and outer coaxial cylinders 342 and 344, joined by an annular base 346. As seen in FIG. 26, a circumferential rib 350 is disposed on a bottom side of the annular base 346. The rib 350 provides a low friction surface for the units rotational ring 307 to rotate relative to a shelf 381 of the housing 309 on which it rests. An upwardly extending circumferential groove 352 is also provided on a bottom surface of the annular base 346, coaxially within the rib 350, to accommodate a spindle 397 of the tens cone 308, at all rotational positions of the

- 31 -

units rotational ring 307 with respect to the tens cone 308. The outer cylinder 344 has a further external cylindrical section 356 joined approximately midway up an outer surface of the outer cylinder 344 via an annular wall 358. An internal circumferential surface 360 of the outer cylinder 344 has a plurality (e.g., four) of features 362 (see FIG. 22). Each

5    feature 362 comprises a pair of grooves on either side of a vertically oriented radially inwardly projecting rib. The features 362 are designed to slide in an axial orientation with the corresponding features 336 of the units teeth ring 305. The inner cylinder 342 of the units rotational ring 307 has a diameter such that it slides axially inside the central cylinder 334 of the units teeth ring 305. As seen in FIGS. 26 and 27, an additional small

10   cylindrical section 364 (of smaller diameter than the inner cylinder 342) extends from a lower end of the units rotational ring 307, and is designed to fit around the nozzle block 102 of the actuator housing 68. The external cylindrical section 356 has an outer cylindrical surface 366 bearing indicia for indicating ones units dosage counts of medication being dispensed. As illustrated by FIGS. 21 and 22, the indicia may take the

15   form of digits from 9 to 0 arranged equally spaced twice about the circumference of the outer surface 366 of the external cylindrical segment 356. The digits are oriented so that they can be underlined by lines parallel to the axis 322, and the digits are arranged in two sequences of descending order in a clockwise direction when viewed from the bottom of the units rotational ring 307 (i.e., in the sequence: 9 8 7 6 5 4 3 2 1 0 9 8 7 6 5 4 3 2 1 0).

20   As seen in FIG. 22, the units rotational ring 307 has an oblong lug 368 spaced below and between each space between a 0 digit and its adjacent 9 digit. Since the digits 9 to 0 are arranged twice around that units rotational ring 307, there are two oblong lugs 368 thereon (on opposite sides of the ring 307).

[00141]    The features 362 on the units rotational ring 307 are disposed to align with the

25   features 336 on the units teeth ring 305. The outer circumferential edge of the units teeth ring 305 is slightly smaller in diameter than the internal surface 360 of the outer cylinder 344, thus allowing axial movement of the units teeth ring 305 relative to the units rotational ring 307. However, while such axial movement is allowed, the interaction of the features 362 and 336 couple the units teeth ring 305 and units rotational ring 307 for

30   rotational purposes relative to the axis 322.

[00142]    The compression spring 306 is similar to that disclosed in the embodiments above. For example, it can be in the form an annular leaf spring 370. In the embodiment

- 32 -

DTX161
34 of 97

illustrated in FIG. 21, the leaf spring 370 has a plurality (e.g., three) of cutouts 372 extending radially inwardly from an outer circumferential edge thereof. Each of the cutouts 372 is formed and aligned to axially receive one of the features 362 of the units rotational ring 307 therein, thereby allowing axial movement of the compression spring

5    306 relative to the units rotational ring 307. The leaf spring 370 has an annular ring with a plurality (e.g., three) of axially extending spring elements or leafs 374 thereon. The spring elements 374 are biased downwardly from the leaf spring 370 for engagement with the top of the annular base 346 of the units rotational ring 307. In one embodiment, the outer end of each leaf 374 is curved or otherwise formed to facilitate to smooth sliding of the outer

10   end with respect to the annular base 346. A top surface of the ring of the leaf spring 370 engages a bottom surface of the units teeth ring 305. The leaf spring 370 thus urges the units teeth ring 305 axially away from the annular base 346 of the units rotational ring 307 and toward the sawtooth projections 326 on the indexer 304 and the ratchet members 331 on the bottom surface of the lid 303.

15   [00143]    While cooperative features 336 and 362 are shown, any suitable keyed features between units teeth ring 305 and units rotational ring 307 will suffice to couple those two components together for rotation, yet allow relative axial movement. In one embodiment (not shown), rotation of the compression spring 306 relative to the units teeth ring 305 or units rotational ring 307 is permitted.  However, to the extent it is desired that rotation of

20   the compression spring 306 also be constrained with respect to the units teeth ring 305 or units rotational ring 307, while features 362 and cutouts 372 are shown for that purpose, any suitable keyed feature to accomplish that end will suffice. The housing 309 has a generally cylindrical body 375 with a plurality (e.g., three) of doorframe features 376, two forward legs 378 and a viewing window 379 thereon. The housing 309 is also generally

25   coaxial with respect to the axis 322, and has a lateral shelf 381 therein. The shelf 381 has a central hole 382 therethrough for accommodating the nozzle block 102 of the actuator housing 68, as seen in FIGS. 26 and 27. On a rear side thereof (defined as including the viewing window 379), the housing 309 has a conical housing section 383 extending downwardly therefrom and designed to accommodate the tens cone 308 therein, as seen in

30   FIGS. 24-28. The tens cone 308 is aligned to rotate in a stable manner about an axis directed diagonally forward and upward from the rear of the housing 309. The relationship of the axis of the tens cone 308 relative to the axis 322 of the units rotational ring 307 in

- 33 -

WO 2007/124406                                                    PCT/US2007/067056

this embodiment is similar to that illustrated and stated for those components in FIGS. 8 and 19 of the first and second embodiments (i.e., for FIG. 8, the axis 92 of tens cone 8 and the axis 13 of units rotational ring 7, and for the FIG. 19, the axis 292 of the tens cone 208 and the axis 13 of the units rotational ring 7). The conical housing section 383 has a

5    central hole 384 therethrough, and internally is shaped to support a conical wall of the tens cone 308 and to surround and engage splines thereon (as well as providing upper and lower axis passages for assembly and tooling). In addition, the conical housing section 383 has a gutter portion 385 (see FIG. 26) at its apex end where it adjoins the shelf 381 to support an upper part of a spindle of the tens cone 308. The circular hole 384 has a

10   projection 386 extending radially inwardly thereon (see FIGS. 30A-D). Adjacent a lower front end of the housing 309, the cylindrical wall 375 has a stepped portion 387 which partly conforms to an external surface of units rotational ring 307. This stepped portion 387 on the external profile of the housing 309 is shaped to minimize potential interference with medication spray emerging from the spray orifice 106 of the nozzle block 102 when

15   the inhaler is actuated.

[00144]    Each doorframe feature 376 has an inverted U-shaped section defined by upwardly extending legs 390 and 391 and cross beam member 392 (see FIGS. 24 and 25). Upon assembly of the dose counter 302, each protrusion 315 is aligned within one of the doorframe features 376. Each doorframe feature 376 flexes outwardly as the protrusion

20   315 passes by it during assembly, and then snaps back into place with the cross beam member 92 over the protrusion 315, thereby fixing the lid 303 to the housing 309. Of course, the lid 303 and housing 309 may be otherwise connected together, such as by press fit connections, or may be ultrasonically or otherwise (e.g., laser) welded together.

[00145]    The tens cone 308 has numbers from 12 to 0 arranged descending clockwise

25   about an external conical surface 394 of the tens cone 308 when viewed from an apex of the conical surface 394 (e.g., in the sequence: 12 11 10 9 8 7 6 5 4 3 2 1 0). The orientation for readability of the numbers is similar to the orientation on the tens cone 8. On the tens cone 308, the conical surface 394 extends only in a band adjacent an outer circumferential edge of the tens cone 308. An internal surface 395 of the tens cone 308 is

30   also generally conical (inversely) and is provided with a plurality (e.g., thirteen) of radial spokes 396. A forward and upwardly directed spindle 397 extends from the center of the internal surface 395 of the tens cone 308.

- 34 -

[00146]     The tens cone 308 rotates about an axis 398, once assembled in the dose counter 302 (as seen in FIG. 26). On its external side, the tens cone 308 has a plurality (e.g., thirteen) of splines 399 arranged annularly about and parallel to the axis 398. The splines 399 project externally from the tens cone 308 in a generally cylindrical configuration to define a boss that is, upon assembly, received within the hole 384 of the conical housing section 383 in the housing 309. The splines 399 thus point in an opposite direction from the spindle 397 on the tens cone 308. Twelve of the splines 399 are identical in lateral cross section, having a cross section similar to that of a "fairy cake" or "cupcake" (see, e.g., splines 399a to 399l in FIG. 30A). A curved top portion or cap of each spline 399 is farthest from the axis 398 of the tens cone 308. The thirteenth spline 399m is, in part, similarly shaped, but has a base portion 400 extended axially inwardly toward the axis 398 of the tens cone 308. The splines 399a to 399l are formed to be able to flex slightly radially inwardly relative to the axis 398, while the spline 399m is more rigid than the other splines 399a to 399l, and is not able to flex radially inwardly.

[00147]     The dose counter 302 may be assembled by inserting the tens cone 308 into the housing 309, with the spindle 397 of the tens cone 308 seated upon the gutter portion 385 in the conical housing section 383 of the housing 309. The boss formed by the splines 399 is also aligned to extend into the hole 384 of the conical housing section 383. The units rotational ring 307 is then inserted and seated on the shelf 381 of the housing 309, above the tens cone 308 (see FIG. 26). In this embodiment, the units rotational ring 307 completely covers the tens cone 308 in the conical housing section 383, to inhibit the ingress of dust, fibers, fluff or other debris from falling into the tens cone 308.

[00148]     The spring 306, units teeth ring 305 and indexer 304 can then be assembled in order over the units rotational ring 307, and the lid 303 fitted about the castellations 311 of the indexer 304. As explained above, the lid 303 is snap-fit engaged with the housing 309 by engagement of the protrusions 315 and associated doorframe features 376. This complete assembly thus defines the dose counter 302 as seen in FIGS. 24, 25, 26 and 27. Once assembled, the internal working components of the dose counter 302 are fairly well enclosed by the housing 309 and lid 303, thus inhibiting the ingress of dust, fibers, fluff and other debris therein to protect those working components. The enclosure of the working components of the dose counter 302 (with the lid 303 engaged to the housing

- 35 -

309) also provides an assembly that is somewhat tamper resistant, and is durable and shock-resistant.

[00149]     FIG. 27 shows a vertical cross sectional view through part of a press-and -breath aerosol inhaler incorporating the dose counter 302 of FIGS. 21, 24, 25, 26 and 28. The purpose of the dose counter is to provide a display that indicates the number of doses of medication remaining, or (in an alternative embodiment, not shown) the number already dispensed. The indicia provided for review by a user may be suitable alphabetic, numeric, alphanumeric, or color symbols or any combination thereof, providing a sequential count up or count down of dispensed doses, or providing a more general indication, such as "full" or "empty". The indicia would be visible through a window 94 in a side wall 96 of the actuator housing 68; alternatively, the side wall 96 may be transparent or have at least a portion thereof made of a transparent material to provide a viewing area or lens for viewing the indicia and count. The press-and-breathe inhaler is of the same structure and components as illustrated in FIG. 3, and likewise cooperates with the dose counter 302 in a similar manner to initiate a single ones units dosage count, as well as a change of decades (i.e., tens units) for counting by cooperation of the units rotational ring 307 and the tens cone 308. As illustrated in FIG. 27, the aerosol container 70 is also aligned coaxially with the axis 322. In this embodiment, the ferrule 110 engages a top surface of the indexer 304.  It will be appreciated by those familiar with metering valves that the profiles of various kinds of valve ferrule differ, and that the indexer is suitably designed to abut a the ferrule flatly to minimize variations in travel between valves of the same kind due to tolerances on components.

[00150]     The inhaler is actuated to dispense a dosage of medication by pressing down on the aerosol container 70 relative to the actuator housing 68. When the inhaler is actuated, downward movement of the aerosol container 70 causes the valve ferrule 110 to push down on the indexer 304. The lid 303 is positioned low enough relative to the valve ferrule 110 so that those components never engage each other, thus ensuring sufficient space to allow adequate metering valve travel to guarantee the dispensing of a dose of medication.   Engagement with the valve ferrule 100 causes the indexer 304 to move downwardly relative to the lid 303, and the sawtooth protrusions 326 of the indexer 304 engage teeth of the inner ring of teeth 332 of the units teeth ring 305. Once the outer ring of teeth 330 move low enough to clear the ratchet members 331 on the lid 303, the ring

- 36 -

305 rotates (as described in WO 2005/060535 A2). Such rotational movement results in coupled rotational movement of the units rotational ring 307. The compression spring 306 between the units rotational ring 307 and the units teeth ring 305 maintains relative engagement of the sawtooth protrusions 326 and inner ring of teeth 332 until the

5    downward actuation force on the aerosol container 70 is removed, and the return spring 114 urges the valve ferrule 110 upwardly relative to the nozzle block 102. This allows the compression spring 306 to urge the indexer 304 upwards, whereupon the interaction of the outer ring of teeth 330 on the units teeth ring 305 with the ratchet members 331 on the lid 303 results in further rotational motion of the units teeth ring 305 together with further

10   coupled rotational motion of the units rotational ring 307, thereby completing the ones units change to the count, corresponding to the actuation and corresponding to a single dosage of medication. The dose counter 302 is designed to count at (or close before) the firing point of the metering valve 108 on the aerosol container 70, and then "lose" any subsequent excessive axial travel (i.e., lost "motion") of the axially moving components of

15   the dose counter 302. Thus, for each actuation of the inhaler, the units rotational ring 307 is indexed to move rotationally one count increment, which will change the ones units count visible via the windows 379 and 94.

[00151]    The housing 309 is designed to minimize interference and obstruction of the medication spray and airflow paths in the actuator housing 68. In one embodiment, the

20   dose counter 302 is clipped or retained within the actuator housing 68 by suitable detents or other engaging structure (not shown) between the actuator housing 68 and the dose counter 302. In addition, the dose counter 302 is designed to be useable with a variety of metering valve designs, and to fit compactly within commercially available actuator housing profiles so that it is not necessary to change the external configuration of those

25   actuator housings to accommodate the inventive dose counter 302 therein.    The FIGS. illustrate the dose counter 302 of the present invention in combination with an actuator housing for an inhaler of the type used for dispensing medication from a pressurized aerosol container.    However, inhalers in other forms may be used with the present invention including, for example, dry powder inhalers, portable nebulizers, and other

30   dispensers that use reciprocal mechanism.

[00152]    As seen in FIGS. 24, 25, 26 and 27, portions of the tens cone 308 and units rotational ring 307 converge adjacent the viewing window 379 of the housing 309. At the

- 37 -

viewing window 379, a circumferential segment of the outer surface 366 of the units rotational ring 307 that bears ones units indicia and an arcuate segment of the conical surface 394 of the tens cone 308 are aligned to collectively present at least a portion of a medication dosage count (for example, in FIG. 24, the count "129" is seen, and in FIG. 25, the count "29" is seen). At this juxtaposition of the indicia bearing surfaces of the units rotational ring 307 and the tens cone 308, those surfaces are tangential to each other at the viewing window 379, which provides a common viewing area for viewing the indicia on the two separate indicia viewing surfaces. As noted above, when the dose counter 302 is disposed within the actuator housing 68 (see FIG.27), the viewing window 379 is aligned with the viewing window 94 in the side wall 96 of the actuator housing 68, thus presenting the common viewing area for observation by a user. In one embodiment, the common viewing area is generally tangential to a circumferential surface of a cylinder disposed about the axis 322.

[00153]     Every tenth movement of the units rotational ring 307 results in a movement of the tens cone 308 due to interaction between one of the oblong lugs 368 (on the units rotational ring 307) and one of the spokes 396 (on the tens cone 308). The relationship between the lugs 368 and spokes 396 is illustrated schematically in FIGS. 29A-29D. This direct interaction between the units rotational ring 307 and the tens cone 308 eliminates the need for any transfer gear or other motion translation components between the component bearing ones units indicia (i.e., the units rotational ring 307) and the component bearing tens units indicia (i.e., the tens cone 308). This arrangement requires fewer parts, is more economical in function, and is more compact. In addition, the use of fewer components in a dose counter reduces the number of components that must be manufactured within certain tolerance ranges, and thus reduces the possibility of component incompatibility or inoperabilities due to tolerance stack up.

[00154]     The interaction and sequence for causing the tens cone 308 to change the indicia displayed in the viewing window 379 involves engagement of one of the lugs 368 on the units rotational ring 307 with one of the spokes 396 on the tens cone 308. As seen in FIG. 29A, as the units rotational ring 307 rotates (in direction of arrow 393) one of the lugs 368 thereon eventually moves into engagement with the spoke 396a on the tens cone 308. FIG. 29A illustrates the relationship of the lug 368 and spoke 396a at the time of their initial engagement caused by rotation of the units rotational ring 307 relative to the tens

- 38 -

WO 2007/124406                                                    PCT/US2007/067056

cone 308. As the units rotational ring 307 continues its rotation, the lug 368 pushes the spoke 396a to the left as viewed in FIG. 29B, thereby causing the tens cone 308 to rotate about its axis in a counterclockwise manner (as illustrated by arrow 401). As shown in FIG. 29C, continued rotation of the units rotational ring 307 causes the lug 368 to further

5    push the spoke 396a to the left, thereby causing further counterclockwise rotation of the tens cone 308 about its axis in direction of arrow 401. Eventually, as illustrated in FIG. 29D, the lug 368 pushes the spoke 396a so far that rotation of the tens cone 308 moves the spoke 396a out of the path of the advancing lug 368 (i.e., below the lug 368 as seen in FIG. 29D). Once this happens, further counter clockwise rotational movement of the tens

10   cone 308 stops, and a new tens units number is aligned for observation through the viewing window 379. In an embodiment where the tens units number is rotated to show a count down of the number of dosages remaining, the new tens units number displayed will be a number smaller than the previous number that was displayed.

[00155]   Rotation of the tens cone 308 relative to the rotation of the units rotational ring

15   307 occurs each time one of the lugs 368 engages one of the spokes 396. In one embodiment, there are two lugs 368 on the units rotational ring 307, so for every complete rotation of the units rotational ring 307 (which represents twenty ones units numbers) the tens cone 308 is rotated through two tens units numbers. In alternative embodiments, the rotation of the tens cone 308 as a function of rotation of the units rotational ring 307 may

20   be made more frequent or less frequent by providing more or fewer lugs 368 on the units rotational ring 307. In the illustrated embodiment, the conical surface 394 of the tens cone 308 has thirteen tens units numbers bearing arcuate segments, and on its internal surface 395 the tens cone 308 correspondingly has thirteen spokes 396. If more or fewer arcuate number segments are desired to be provided on the tens cone 308, the number of spokes

25   396 must therefore accordingly be adjusted in a likewise fashion.

[00156]   The position of the tens cone 308 is maintained as it is indexed through each of its tens units numbers for display by the interaction of the splines 399 and the projection 386 on the housing 309, as illustrated in FIGS. 3OA-3OD. This arrangement also provides a mechanism for establishing a zero count for the dose counter 302, thus preventing

30   further count down number changes when that zero dosage count is reached. As seen in FIG. 30A, the projection 386 is shaped to extend between adjacent splines 399 (such as between splines 399k and 399l). The sequence of movement shown in FIGS. 3OA-3OD

- 39 -

DTX161
41 of 97

corresponds generally in position to the sequential movement positions of the tens cone 308 in FIGS. 29A-29D. As seen in FIG. 3OB, as the tens cone 308 is rotated in direction of arrow 401 (relative to the conical housing section 383), the spline 3991 engages the projection 386 and bends axially inwardly to ride over the projection 386. FIG. 30C

5 illustrates continued movement of the tens cone 308 relative to the projection 386. Once the spline 3991 has moved past the projection 386, it snaps back to its original configuration as seen in FIG. 30D.

[00157]    When the projection 386 reaches the spline 399m, a locking of components occurs. Spline 399m is larger than the other splines, and thus unable to bend radially

10 inwardly upon engagement with the projections 386. This thus locks the tens cone 308 in rotational position relative to the conical housing section 383, and also with respect to further rotation relative to the units rotational ring 307. Once one of the lugs 368 on the units rotational ring 307 again moves into engagement with one of the spokes 396 on the tens cone 308, further rotation of the units rotational ring 307 is prevented. At that point,

15 both the units rotational ring 307 and the tens cone 308 will display a "0" numeral in the viewing window 379. To the extent further medication is present in the aerosol container, it may be dispensed by a user using the aerosol dispensing assembly, but the dose counter 302 will not register any further dosage counts. As an alternative, the aerosol dispensing assembly could be designed to cease dispensing doses of medication once the zero count

20 has been reached, for example by limiting the free movement of the indexer 304.

[00158]    In essence, the inventive dose counter 302 in the embodiment illustrated in FIGS. 21-30 operates in the following fashion. When a user actuates the inhaler by pushing the aerosol container 70 downwardly into the actuator housing 68, the valve ferrule 110 engages the indexer 304 to push it downwardly. Indexer 304 engages and then

25 causes rotation of the units teeth ring 305. The units rotational ring 307 is coupled rotationally to the units teeth ring 305, so it rotates as well. As the aerosol container 70 reciprocates down and up to complete a single dosage of medication therein, the indexer 304 and units teeth ring 305 also reciprocate down and up relative to the units rotational ring 307. When complete down and up reciprocal movement of the units teeth ring 305

30 causes the units rotational ring 307 to rotate on its axis 322, the ring 307 has a single ones units count change in position thereof. Rotation of the units rotational ring 307 is translated into rotation of the tens cone 308 by engagement of the lug 368 on the units

- 40 -

rotational ring 307 with one of the spokes 396 on the tens cone 308. However, the tens cone 308 is only rotated periodically relative to the units rotational ring 307, to indicate a change in decade of the counts (i.e., the tens cone 308 is only moved once for every ten movements of the units rotational ring 307). Each time the units rotational ring 307 counts ten ones units counts, the tens cone 308 is indexed one position to change the tens units count displayed thereon.

[00159]    In the illustrated embodiment shown in FIG. 24, a maximum dosage count of "129" medication dosages is shown. This allows for some testing of the aerosol dispensing assembly (e.g., nine initial "tester" counts available with 120 user available dispensing counts remaining). As noted above, changing the frequency or spacing of indicia on the units rotational ring and/or tens cone (along with corresponding changes in the interactive geometry between those components) allows modification of the possible count indicia shown.

[00160]    A fourth embodiment of the inventive dose counter is illustrated in FIGS. 31-40. This embodiment is referenced as dose counter 402 (see FIGS. 37A and 37B), and is generally similar to the third embodiment, except that the mechanism for preventing reverse movement of the counter components has been modified. The tens cone no longer has splines visible through a circular hole in a conical housing section of the housing. Instead, the tens cone has an annular sawtooth array disposed to engage a beveled protrusion on an inner movable face of the housing.

[00161]    FIGS. 31-34 illustrate a tens cone 408 of the fourth embodiment dose counter 402. The tens cone 408 has numbers 12 to 0 arranged descending clockwise about an external conical surface 484 of the tens cone 408 when viewed from an apex of the conical surface 484 (i.e., in the sequence 12 11 10 9 8 7 6 5 4 3 2 1 0). The orientation for readability of the numbers is similar to the orientation on the tens cone 8. On the tens cone 408, the conical surface 484 extends only in a band adjacent an outer circumferential edge of the tens cone 408. Concentrically within the band, the tens cone 408 has an annular recess 435 sloped such that the recess 435 is deepest nearest an axis 437 of the tens cone 408. A short cylindrical wall 441 forms an inside wall of the recess 435. Radially within the cylindrical wall 441 is an annular sawtooth array 443 surrounding an axial hole 445. A narrow radial in-fill element 447 bridges the deepest part of the recess 435 between the

- 41 -

external conical surface 484 and the cylindrical wall 441, at about the "6 o'clock" position, as indicated by the tens units digits on the external conical surface 484 (see FIG. 32).

[00162]    An internal surface 495 of the tens cone 408 is formed the same as the internal surface 395 of the tens cone 308, bearing radial spokes 496 and a spindle 497 thereon (see FIGS. 33 and 34).

[00163]    For this fourth embodiment, a housing 409 is provided, which again has a generally cylindrical body 462 with two forward legs 466 extending downwardly therefrom, and a viewing window 472 thereon. Like the housing 309, the housing 409 has a plurality (e.g., three) of doorframe features 476 thereon, shaped similarly and for the same function as the doorframe features 376 of housing 309 (to clip the housing 409 to a lid for the dose counter 402). The housing 409 also has a lateral shelf 481 therein, which has a central hole 482 therethrough for accommodating the nozzle block of the actuator housing.

[00164]    On a rear side thereof (defined as including the viewing window 472), the housing 409 has a conical housing section 483 extending downwardly therefrom and designed to accommodate the tens cone 408 therein, as seen in FIGS. 37A and 37B. The tens cone 408 is aligned to rotate in a stable manner about an axis directed diagonally forward and upward from the rear of the housing 409. The relationship of the axis 437 of the tens cone 408 relative to an axis 422 of the housing 409 in this embodiment is similar to that illustrated and stated for the those axes of the same components of the third embodiment (compare FIGS. 37A and 37B with FIG. 26). The conical housing section 483 is shaped internally to generally conform to the external side of the tens cone 408 except within the cylindrical wall 441 and recess 435 thereof. The conical housing section 483 has an inner planar face 454 that is flush with a top surface which corresponds to the cylindrical wall 441, except for a beveled protrusion 455 designed to fit between the teeth of the sawtooth array 443. That portion 457 of the conical housing section 483 that corresponds to the recess 435 of the tens cone 408 has a protruding ramp 459 directed axially inwards and designed to abut the in-fill element 447 when the tens cone 408 has rotated far enough to bring the ramp 459 and in-fill element 447 into engagement. This ultimately corresponds to the zero position for the counter elements of the dose counter 402.

- 42 -

[00165]    FIGS. 37A and 37B illustrate the tens cone 408, housing 409 and other components of the dose counter 402. Those other components conform generally to the configuration of like components in the embodiment illustrated in FIGS. 21-30. Thus, a lid 403 corresponds to lid 303, an indexer 404 corresponds to indexer 304, a units teeth
5    ring 405 corresponds to units teeth ring 305, a compression spring 406 corresponds to compression ring 306, and a units rotational ring 407 corresponds to units rotational ring 307. The lid 403, indexer 404, units teeth ring 405, spring 406 and units rotational ring 407 are assembled with the tens cone 408 and housing 409 as illustrated in FIGS. 37A and 37B. This assembly, other than the relationship between the tens cone 408 and housing
10    409, is generally identical to that illustrated in the embodiment of FIGS. 21-30. Indexing of the units rotational ring 407 is accomplished in the same manner in the embodiment of FIGS. 31-40 as in the embodiment of FIGS. 21-30. In addition, indexing of the tens cone 408 is accomplished in the same manner in the embodiment of FIGS. 31-40 as in the embodiment of FIGS. 21-30. The spokes 496 of the tens cone 408 are periodically
15    engaged and advanced by a lug 468 on the units rotational ring 407, in the fashion illustrated schematically by FIGS. 29A-29D (and as illustrated for like structure in FIGS. 39A-39E).

[00166]    An outer cylindrical surface 466 bears ones units indicia of the units rotational ring 407, and is viewable through the viewing window 472. The tens cone 408 bears tens
20    units indicia on the external surface 484 thereof. When assembled in the dose counter 402, the indicia on the surface 466 and the surface 484 are tangentially aligned within the viewing window 472, at the common viewing area, to present a representative dosage count to a user. The indicia bearing surfaces are aligned like those of like structure in the earlier described embodiments.

25    [00167]    As seen in FIGS. 35 and 36, the conical housing section 483 has a center pivoting section 461 which is separated from the conical housing section 483 along its side edges 463 and 465 and its top edge 467. This configuration thus allows the center pivoting section 461 to flex outwards slightly from a bottom portion 469 thereof connected to the conical housing section 483 to allow the beveled protrusion 455 to ride
30    over the sawtooth array 443 when sufficient force is applied to cause rotation of the tens cone 408.

- 43 -

DTX161
45 of 97

[00168]    FIGS. 40A^K)E illustrate schematically and sequentially the interaction between the beveled protrusion 455 on the center pivoting section 461 of the conical housing section 483 of the housing 409. FIG. 4OA shows the relationship between the beveled protrusion 455 and the teeth of the sawtooth array 443 when the tens cone 408 is

5    fixed in place rotationally to display one of the tens units numbers thereon (such as aligned in FIGS. 37A and 38A). As the tens cone 408 is rotated counterclockwise to change the tens units number displayed in the viewing window 472, a tooth 443a of the sawtooth array 443 moves to the left (as seen in FIG. 40B) and pushes, ramp on ramp, against the beveled protrusion 455, causing it to bend outwardly (downwardly as viewed

10    in FIG. 40B). When the apex of tooth 443a encounters the apex of the beveled protrusion 455, the center pivoting section 461 is bent at its most outward position relative to the conical housing section 443, as seen in FIG. 4OC (and as also seen in FIGS. 37B and 38B). Continued counterclockwise movement of the tens ring 408 causes the tooth 443a of the sawtooth array 443 to move past the beveled protrusion 455, ramp on ramp, thus reducing

15    the extent of interference and allowing the center pivoting section 461 to flex back toward the tens cone 408 (or upwardly, as viewed in FIG. 40D). Once a tens units numeral has been changed by rotation of the tens unit 408, the beveled protrusion 455 is seated between the tooth 443a and a next tooth 443b of the sawtooth array 443, thus preventing further forward or reverse movement of the tens cone 408 (until it is again caused to be

20    rotated as a function of the rotation of the units rotational ring 407).

[00169]    Eventually, the in-fill element 447 on the tens cone 408 is rotated into abutment with the ramp 459 on the housing 409. Following this point of abutment (when the units rotational ring is showing a 9 as its ones units digit), as the units rotational ring 408 completes its last ten ones units counts, the protruding oblong lug 468 can no longer

25    move a radial spoke 496 on the tens cone 408. Thus, the units rotational ring 407 will also be unable to advance beyond 0 as its ones units digit, once the tens cone 408 has reached 0 as its tens units numeral, despite further actuations of the inhaler.

[00170]    In essence, the inventive dose counter 402 in the embodiment illustrated in FIGS. 31-40 operates in the following fashion. When a user actuates the inhaler by

30    pushing the aerosol container downwardly into the actuator housing, the valve ferrule engages the indexer 404 to push it downwardly. Indexer 404 engages and then causes rotation of the units teeth ring 405. The units rotational ring 407 is coupled rotationally to

- 44 -

the units teeth ring 405, so it rotates as well. As the aerosol container reciprocates down and up to complete a single dosage of medication therein, the indexer 404 and units teeth ring 405 also reciprocate down and up relative to the units rotational ring 407. When complete up and down reciprocal movement of the units teeth ring 405 causes the units rotational ring 407 to rotate on its axis 422, the ring 407 has a single ones units count change in position thereof. Rotation of the units rotational ring 407 is translated into rotation of the tens cone 408 by engagement of the lug 468 on the units rotational ring 407 with one of the spokes 496 on the tens cone 408. However, the tens cone 408 is only rotated periodically relative to the units rotational ring 407, to indicate a change in decade of the count (i.e., the tens cone 408 is only moved once for every ten movements of the units rotational ring 407). Each time the units rotational ring 407 counts ten ones units counts, the tens cone 408 is indexed one position to change the tens units counts displayed thereon.

[00171]    A fifth embodiment of the inventive dose counter is illustrated in FIGS. AI-AI. This embodiment is referenced as dose counter 502 (see FIGS. 45A and 45B), and is generally similar to the third embodiment, except that the mechanism for preventing reverse movement of the counter components has been modified. The tens cone no longer has splines visible through a circular hole in a conical housing section of the housing. Instead, the tens column has an annular array of teardrop shaped recesses disposed to engage a teardrop shaped protrusion on an inner face of the housing. In addition, the tens cone of this embodiment and its associated housing and units rotational ring are configured to allow a rocking motion of the tens cone as it is rotated to engage and disengage one of its teardrop shaped recesses with the teardrop shaped protrusion on the housing.

[00172]    FIGS. 41-43 illustrate a tens cone 508 of the fifth embodiment dose counter 502. The tens cone has numbers 12 to 0 arranged descending clockwise about an external conical surface 584 of the tens cone 508 when viewed from an apex of the conical surface 584 (i.e., in the sequence 12 11 10 9 8 7 6 5 4 3 2 1 0). The orientation for readability of the numbers is similar to the orientation on the tens cone 8. On the tens cone 508, the conical surface 584 extends only in a band adjacent an outer circumferential edge of the tens cone 508. Concentrically within the band, the tens cone 508 has an annular surface 535 which adjoins the conical surface 584 and extends perpendicular to an axis 537 of

- 45 -

rotation for the tens cone 508. An annular array 537 of teardrop shaped recesses 539 are disposed on the annular surface 535. Each teardrop shaped recess 539 has its narrower end pointed radially outwardly from the axis 537 of the tens cone 508. Concentrically within the annular surface 535, the tens cone 508 has an annular recess 541 that is sloped such

5 that the recess 541 is deepest nearest the axis 537 of the tens cone 508. The annular recess 541 abuts and surrounds a protruding boss 543 of the tens cone 508, with the boss 543 being coaxial with the axis 537. A narrow radial in-fill element 545 bridges the recess 541 between the annular surface 535 and the boss 543, at about the "6 o'clock" position, as indicated by the tens units digits on the external conical surface 584.

10 [00173]     An internal surface 595 of the tens cone 508 is formed the same as the internal surface 395 of the tens cone 308 (and the same as the internal surface 495 of the tens cone 408), bearing radial spokes 596 and a spindle 597 thereon (see FIG. 43).

[00174]     For the fifth embodiment, a housing 509 is provided, which again has a generally cylindrical body 562 with two forward legs 566 extending downwardly

15 therefrom, and a viewing window 572 thereon. Like the housing 309, the housing 509 has a plurality (e.g., three) of doorframe features 576 thereon, shaped similarly and for the same function as the doorframe features 376 of housing 309 (to clip the housing 509 to a lid for the dose counter 502). The housing 509 also has a lateral shelf 581 therein, which has a central hole 582 therethrough for accommodating the nozzle block of the actuator

20 housing.

[00175]     On a rear side thereof (defined as including the viewing window 572), the housing 509 has a conical housing section 583 extending downwardly therefrom and designed to accommodate the tens cone 508 therein, as seen in FIGS. 45A and 45B. The tens cone 508 is aligned to rotate generally about an axis directed diagonally forward and

25 upward from the rear of the housing 509. The relationship of the axis 537 of the tens cone 508 relative to an axis 522 (see FIGS. 45A and 45B) of the housing 409 in this embodiment is similar to that illustrated and stated for those axes of the same components of the third embodiment (compare FIGS. 45A and 45B with FIG. 26). However, as explained below, during rotation of the tens cone 508, it wobbles or rocks relative to the

30 housing 509, so that its axis 537 changes slightly in orientation relative to the axis 522 of the housing 509 (such as illustrated by comparison of angle $\alpha i$ in FIG. 45A to angle $\beta_2$ in FIG. 45B, wherein $\alpha i$ is greater than $\alpha_2$). The conical housing section 583 is shaped

- 46 -

internally to generally conform to the external side of the tens cone 508 except within the annular surface 535 and recess 541 thereof. As best seen in FIG. 44, the conical housing section 583 has a generally planar surface 551 that corresponds to the annular surface 535 and recess 541 of the tens cone 508. A teardrop shaped protrusion 553 extends inwardly

5      from the planar surface 551 at the lowest point corresponding to the annular surface 535 of the tens cone 508, and is shaped to conform to each one of the thirteen teardrop shaped recesses 539 on the tens cone 508. A ramp 555 also projects inwardly from the planar surface 551, radially inwardly from the teardrop shaped protrusion 553 and circumferentially offset therefrom. The ramp 555 is designed to project inwardly sufficient

10     to abut the in-fill element 545 when the tens cone 508 has rotated far enough to bring the ramp 555 and in-fill element 545 into engagement. This corresponds to the zero position for the counter elements of the dose counter 502. The conical housing section 583 also has a hole 557 shaped to accommodate the boss 597 of the tens cone 508. Above the hole 557, a portion of the conical housing section 583 has a diagonal cutout 559 to facilitate

15     assembly of the tens cone 508 and the housing 509. The cutout 559 and hole 557 interface so that the diameter of the boss 543 of the tens cone 508 must be pushed past a slightly necked region 561 in the conical housing section 583 during assembly, so that the boss 543 clips into place in the housing 509 upon assembly. Like the housing 309, the conical housing section is also provided with a gutter portion 585 for support of the spindle 597 of

20     the tens cone 508.

[00176]   FIGS. 45A and 45B illustrate the tens cone 508, housing 509 and other components of the dose counter 502. These other components conform generally to the configuration of like components in the embodiment illustrated in FIGS. 21-30 except for a revision to the underside of the units rotational ring 507. As seen in FIG. 47, the units

25     rotational ring 507 has an annular base 546 at a bottom thereof. A circumferential rib 550 is disposed on the annular base 546. A circumferential groove 552 is also provided on a bottom surface of the annular base 546, coaxial within the rib 550. The groove 542 is provided to accommodate the spindle 597 of the tens cone 508, at all rotational positions of the units rotational ring 507 with respect to the tens cone 508. In this embodiment,

30     however, the groove 552 has two diametrically opposed smoothly radially scooped deeper recessed regions 565 that extend radially slightly beyond the groove 552 and radially inwardly past the groove 552 and into a cylindrical section 564 of the units rotational ring

- 47 -

507. The recessed regions 565 are designed to allow the spindle 597 of the tens cone 508 to move to a temporary off-axis position while registering a change in the tens units number count, as explained below.

[00177]    As noted above, the other components of the dose counter 502 conform generally to the configuration of like components in the embodiment illustrated in FIGS. 21-30. Thus, a lid 503 corresponds to lid 303, and indexer 504 corresponds to indexer 304, a units teeth ring 505 corresponds to units teeth ring 305, and a compression spring 506 corresponds to compression ring 306. The lid 503, indexer 504, units teeth ring 505, spring 506 and units rotational ring 507 are assembled with the tens cone 508 and housing 509 as illustrated in FIGS. 45A and 45B. This assembly, other than the relationship of the tens cone 508 with the units rotational ring 507 and the housing 509, is generally identical to that illustrated in the embodiment of FIGS. 21-30. Indexing of the units rotational ring 507 is accomplished in the same manner in the embodiment of FIGS. W-AI as in the embodiment of FIGS. 21-30. In addition, indexing of the tens cone 508 is accomplished in the same manner in the embodiment of FIGS. 41-47 as in the embodiments of FIGS. 21-30. The spokes 596 of the tens cone 508 are periodically engaged and advanced by a lug 568 (see FIG. 47) on the units rotational ring 507, in the fashion illustrated schematically by FIGS. 29A-29D (and as illustrated for like structure in FIGS. 39A-39E).

[00178]    An outer cylindrical surface 566 bears ones units indicia of the units rotational ring 507, and is viewable through the viewing window 572. The tens cone 508 bears tens units indicia on the external surface 584 thereof.  When assembled in the dose counter 502, the indicia on the surface 566 and the surface 584 are tangentially aligned within the viewing window 572, at the common viewing area, to present a representative dosage count to a user.  The indicia bearing surfaces are aligned like those of like structure in the earlier described embodiments.

[00179]    As illustrated in FIGS. 45A and 45B (and in FIGS. 46A^6C), the tens cone 508 rocks or moves off the axis as it indexes from displaying one tens units number in the viewing window 572 to a next tens units number. When the lug 568 of the units rotational ring 507 engages one of the radial spokes 596 of the tens cone 508, the tens cone 508 is caused to rotate about its axis 537.  This rotation becomes an off-axis movement as the teardrop shaped protrusion 553 rides out of whatever teardrop shaped recess 539 it currently is in. The recessed region 565 that the spindle 597 of the tens cone 508 is in

- 48 -

DTX161
50 of 97

allows the spindle 597 of the tens cone 508 to swivel off-axis, making such rotary off-axis movement of the tens cone 508 possible. As rotation of the tens cone 508 is completed as a function of rotation of the units rotational ring 507, a next teardrop shaped recess 539 comes into registration with the teardrop shaped protrusion 553 on the conical housing
5   section 583. As the units rotational ring 507 continues its rotation, the recessed region 565 is moved out of engagement with the spindle 537, and the spindle again rides in the groove 552 that bears against the spindle 597 and pushes it back on axis (where it remains for the next 9 ones units digits counts of the units rotational ring 507).

[00180]   FIGS. 46A and 46B correspond to the position of the tens cone 508 when one
10   of the teardrop shaped recesses 539 thereof is in mated engagement with the teardrop shaped protrusion 553 of the conical housing section 583 (as also shown in FIG. 45B). FIG. 46C illustrates the off-axis movement of the tens cone 508 relative to the units rotational ring 507 (which is allowed by the recessed region 565 thereof), when none of the teardrop shaped recesses 539 on the tens cone 508 are in mated engagement with the
15   teardrop shaped protrusion 553 of the conical housing section 583 (as also shown in FIG. 45A).

[00181]   Eventually, the in-fill element 545 on the tens cone 508 is rotated into abutment with the ramp 555 on the housing 509. Following this point of abutment (when the units rotational ring is showing a 9 as its ones units digit), as the units rotational ring
20   508 completes its last ten ones units counts, the protruding oblong lug 568 can no longer move a radial spoke 596 on the tens cone 508. Thus, the units rotational ring 507 will also be unable to advance beyond 0 as its ones units digit, once the tens cone 508 has reached 0 as its tens units numeral, despite further actuations of the inhaler.

[00182]   In essence, the inventive dose counter 502 in the embodiment illustrated in
25   FIGS. 41-47 operates in the following fashion. When a user actuates the inhaler by pushing the aerosol container downwardly into the actuator housing, the valve ferrule engages the indexer 504 to push it downwardly. Indexer 504 engages and then causes rotation of the units teeth ring 505. The units rotational ring 507 is coupled rotationally to the units teeth ring 505, so it rotates as well. As the aerosol container reciprocates down
30   and up to complete a single dosage of medication therein, the indexer 504 and the units teeth ring 505 also reciprocate down and up relative to the units rotational ring 507. When complete up and down reciprocal movement of the units teeth ring 505 causes the units

- 49 -

rotational ring 507 to rotate on its axis 522, the ring 507 has a single ones units count change in position thereof. Rotation of the units rotational ring 507 is translated into rotation of the tens cone 508 upon engagement of the lug 568 on the units rotational ring 507 with one of the spokes 596 on the tens cone 508. However, the tens cone 508 is only

5   rotated periodically relative to the units rotational ring 507, to indicate a change in decade of the counts (i.e., the tens cone 508 is only moved once for every ten movements of the units ring 507). Each time the units rotational ring 507 counts ten ones units counts, the tens cone 508 is indexed one position to change the tens units counts displayed thereon.

[00183]     In each embodiment, those portions of the components of the dose counter that

10   are designed for engagement (e.g., sawtooth protrusions on an indexer and inner ring of teeth on a units teeth ring, circumferential rim or oblong lug on a units rotational ring and pegs or spokes on a tens cone) are formed from materials (e.g., suitable polymers) that are durable but of adequately low friction to facilitate ready interaction.

[00184]     Although the present invention has been described with reference to preferred

15   embodiments, workers skilled in the art will recognize that changes may be made in form and detail without departing from the spirit and scope of the invention.

DTX161
52 of 97

What is claimed is:

1.    A dose counter for use in connection with a device adapted for metered dispensing of a medication, the dose counter comprising:

> a first count indicator having a first indicia bearing surface, the first count indicator rotatable about a first axis; and

> a second count indicator having a second indicia bearing surface, the second count indicator rotatable about a second axis,

>> wherein the second axis is disposed at an obtuse angle with respect to the first axis, and

>> wherein the first and second indicia bearing surfaces align at a common viewing area to collectively present at least a portion of a medication dosage count.

2.    A dose counter for use in connection with a device adapted for metered dispensing of a medication, the dose counter comprising:

> a first count indicator having a first indicia bearing surface, the first count indicator rotatable about a first axis; and

> a second count indicator having a second indicia bearing surface, the second count indicator rotatable about a second axis;

>> wherein the first and second axes are not disposed in coaxial, parallel or perpendicular alignments relative to each other; and

>> wherein the first and second indicia bearing surfaces align at a common viewing area to collectively present at least a portion of a medication dosage count.

3.    A dose counter of claim 1 or claim 2 wherein the first bearing surface is a conical surface relative to the first axis.

DTX161
53 of 97

WO 2007/124406                                                      PCT/US2007/067056

4.    A dose counter of any one of the preceding claims wherein the first and second indicia bearing surfaces are tangential at the common viewing area.

5.    A dose counter of any one of the preceding claims wherein the first and second axes are disposed at an angle of greater than 90 degrees and less than 180 degrees relative to each other.

6.    A dose counter of claim 5 wherein the first and second axes are disposed at an angle of 110 degrees to 160 degrees relative to each other.

7.    A dose counter of claim 6 wherein the first and second axes are disposed at an angle of 125 degrees to 145 degrees relative to each other.

8.    A dose counter of any one of the preceding claims wherein the common viewing area is generally tangential to a circumferential surface of a cylinder disposed about the second axis.

9.    A dose counter of any one of the preceding claims wherein the second indicia bearing surface is a cylindrical surface relative to the second axis.

10.    A dose counter of any of the preceding claims wherein the viewing area is generally parallel with the second indicia bearing surface of the second count indicator.

11.    A dose counter of any one of the preceding claims, and further comprising:
            a rotation initiating element on the second count indicator; and
            a rotation following element on the first count indicator;
                        wherein rotation of the second count indicator engages the
                        rotation initiating element thereon with the rotation
                        following element on the first count indicator to cause
                        rotation of the first count indicator as a function of the
                        extent of rotation of the second count indicator.

DTX161
54 of 97

12.    A dose counter of any one of the preceding claims, and further comprising:

a rotation limiting element on the second count indicator; and

a rotation following element on the first count indicator;

wherein the rotation limiting element and the rotation following element engage at times during rotation of the second count indicator to prevent rotation of the first count indicator.

13.    A dose counter of any one of claims 1 to 10, , and further comprising:

a rotation initiating element on the first count indicator; and

a rotation following element on the second count indicator;

wherein rotation of the first count indicator engages the rotation initiating element thereon with the rotation following element on the second count indicator to cause rotation of the second count indicator as a function of the extent of rotation of the first count indicator.

14.    A dose counter of any one of claims 1 to 10 or claim 13 , and further comprising:

a rotation limiting element on the first count indicator; and

a rotation following element on the second count indicator;

wherein the rotation limiting element and the rotation following element engage at times during rotation of the first count indicator to prevent rotation of the second count indicator.

15.    A dose counter of any one of the preceding claims wherein the second indicia bearing surface is a surface extending perpendicular to the second axis.

16.    A dose counter of any one of the preceding claims, wherein the first axis and second axis are coplanar.

17.    A dose counter of any one of the preceding claims, and further comprising:

- 53 -

DTX161
55 of 97

WO 2007/124406                                                    PCT/US2007/067056

a third count indicator having a third indicia bearing surface, the third count indicator rotatable about a third axis;

wherein the third axis is disposed at an obtuse angle with respect to the first axis; and

wherein the first and third indicia bearing surfaces align to collectively present a medication dosage count at the common viewing area, in combination with the second indicia bearing surface.

18.    A dose counter of claim 17 wherein the first and third indicia bearing surfaces align tangentially at the common viewing area.

19.    A dose counter of claim 17 or claim 18 wherein the second and third axes are disposed at a 90 degree angle relative to each other.

.

20.    A dose counter of any one of claims 17 to 19 wherein the first, second and third axes are coplanar.

21.    A dose counter of any one of the preceding claims, in combination with a metered-dose inhaler having a container filled with a medication.

22.    A dose counter for use in connection with a device adapted for metered dispensing of a medication, the dose counter comprising:

a first count indicator rotatable about an axis, the first count indicator having a first indicia bearing surface that is a conical surface relative to the axis; and

a second count indicator having a second indicia bearing surface;

wherein movement of one of the count indicators is initiated as a function of movement of the other count indicator, and

- 54 -

DTX161
56 of 97

wherein the first and second indicia bearing surfaces align at a common viewing area to collectively present at least a portion of a medication dosage count.

23.    The dose counter of claim 22 wherein the first and second indicia bearing surfaces are tangential at the common viewing area.

24.    A dose counter of claim 22 or claim 23 wherein the viewing area is generally parallel with the second indicia bearing surface of the second count indicator.

25.    A dose counter of any one of claims 22 to 24, and further comprising:
a rotation initiating element on the second count indicator; and
a rotation following element on the first count indicator;

wherein rotation of the second count indicator engages the rotation initiating element thereon with the rotation following element on the first count indicator to cause rotation of the first count indicator as a function of the extent of rotation of the second count indicator.

26.    A dose counter of any one of claims 22 to 26, and further comprising:
a rotation limiting element on the second count indicator; and
a rotation following element on the first count indicator;

wherein the rotation limiting element and the rotation following element engage at times during rotation of the second count indicator to prevent rotation of the first count indicator.

27.    A dose counter of any one of claims 22 to 24, and further comprising:
a rotation initiating element on the first count indicator; and
a rotation following element on the second count indicator;

wherein rotation of the first count indicator engages the rotation initiating element thereon with the rotation following

- 55 -

DTX161
57 of 97

element on the second count indicator to cause rotation of the second count indicator as a function of the extent of rotation of the first count indicator.

28. A dose counter of any one of claims 22 to 24 or claim 27, and further comprising:
a rotation limiting element on the first count indicator; and
a rotation following element on the second count indicator;
wherein the rotation limiting element and the rotation following element engage at times during rotation of the first count indicator to prevent rotation of the second count indicator.

29. A dose counter of any one of claims 22 to 27 wherein the second count indicator is rotatable about a second axis.

30. A dose counter of claim 29, wherein the first axis and second axis are coplanar.

31. A dose counter of claim 29 or claim 30 wherein the first and second axes are disposed at an angle of greater than 90 degrees and less than 180 degrees relative to each other.

32. A dose counter of claim 31 wherein the first and second axes are disposed at an angle of 110 degrees to 160 degrees relative to each other.

33. A dose counter of claim 32 wherein the first and second axes are disposed at an angle of 125 degrees to 145 degrees relative to each other.

34. A dose counter of any one of claims 29 to 33 wherein the common viewing area is generally tangential to a circumferential surface of a cylinder disposed about the second axis.

35. A dose counter of any one of claims 29 to 34 wherein the second indicia bearing surface is a cylindrical surface relative to the second axis.

- 56 -

DTX161
58 of 97

36.    A dose counter of any one of claims 29 to 35 wherein the second indicia bearing surface is a surface extending perpendicular to the second axis.

37.    A dose counter of any one claims 29 to 36, and further comprising:

    a third count indicator having a third indicia bearing surface, the third count indicator rotatable about a third axis;

        wherein the third axis is disposed at an obtuse angle with respect to the first axis; and

        wherein the first and third indicia bearing surfaces align to collectively present a medication dosage count at the common viewing area, in combination with the second indicia bearing surface.

38.    A dose counter of claim 37 wherein the first and third indicia bearing surfaces align tangentially at the common viewing area.

39.    A dose counter of claim 37 or claim 38 wherein the second and third axes are disposed at a 90 degree angle relative to each other.

40.    A dose counter of any one of claims 37 to 39 wherein the first, second and third axes are coplanar.

41.    A dose counter of any one of claims 22 to 40, in combination with a metered-dose inhaler having a container filled with a medication.

- 57 -

DTX161
59 of 97

WO 2007/124406                                    PCT/US2007/067056

1/38



*FIG. 1*

2/38



*FIG. 2*

WO 2007/124406                                                    PCT/US2007/067056

3/38



*FIG. 3*

DTX161
62 of 97

4/38



*FIG. 4*



*FIG. 5*

DTX161
63 of 97

WO 2007/124406                                    PCT/US2007/067056

5/38



*FIG. 6*



*FIG. 7*

WO 2007/124406                                    PCT/US2007/067056

6/38



FIG. 8



FIG. 9

WO 2007/124406                                    PCT/US2007/067056

7/38



*FIG. 10A*



*FIG. 10B*

DTX161
66 of 97

WO 2007/124406

PCT/US2007/067056



*FIG. 10C*

*FIG. 10D*

WO 2007/124406                                         PCT/US2007/067056

9/38



*FIG. 11A*



*FIG. 11B*

DTX161
68 of 97

WO 2007/124406                                    PCT/US2007/067056



FIG. 11C



FIG. 11D

DTX161
69 of 97

*FIG. 12*

WO 2007/124406                                                          PCT/US2007/067056

12/38



*FIG. 13*



*FIG. 14*

WO 2007/124406                                                      PCT/US2007/067056

13/38



*FIG. 15*

WO 2007/124406                                                              PCT/US2007/067056

14/38



*FIG. 16*

DTX161
**73 of 97**

WO 2007/124406                                                          PCT/US2007/067056

15/38



*FIG. 17*



*FIG. 18*

WO 2007/124406                                          PCT/US2007/067056

16/38



*FIG. 19*

DTX161
75 of 97

WO 2007/124406                                    PCT/US2007/067056

17/38



*FIG. 20A*

*FIG. 20B*

*FIG. 20C*

DTX161
76 of 97

WO 2007/124406                                                    PCT/US2007/067056

18/38



FIG. 20D

FIG. 20E

FIG. 20F

19/38



*FIG. 21*



*FIG. 22*



*FIG. 23*



*FIG. 24*



*FIG. 25*

WO 2007/124406                                    PCT/US2007/067056

22/38



*FIG. 26*

WO 2007/124406                                PCT/US2007/067056

23/38



*FIG. 27*

DTX161
82 of 97



*FIG. 28*

25/38



*FIG. 29A*

*FIG. 29B*

*FIG. 29C*

*FIG. 29D*

DTX161
84 of 97

WO 2007/124406                                                    PCT/US2007/067056

26/38



*FIG. 30A*



*FIG. 30B*



*FIG. 30C*



*FIG. 30D*

27/38



*FIG. 31*

*FIG. 32*

WO 2007/124406                                          PCT/US2007/067056

28/38



*FIG. 33*



*FIG. 34*

WO 2007/124406                                                      PCT/US2007/067056

29/38



*FIG. 35*



*FIG. 36*

WO 2007/124406                                           PCT/US2007/067056

30/38



*FIG. 37A*



*FIG. 37B*

WO 2007/124406                                    PCT/US2007/067056

31/38



*FIG. 38A*



*FIG. 38B*

WO 2007/124406                                    PCT/US2007/067056

32/38



FIG. 39A

FIG. 39B

FIG. 39C

FIG. 39D

FIG. 39E

DTX161
91 of 97

WO 2007/124406                                   PCT/US2007/067056

33/38



*FIG. 40A*

*FIG. 40B*

*FIG. 40C*

*FIG. 40D*

*FIG. 40E*

WO 2007/124406                                              PCT/US2007/067056

34/38



*FIG. 41*



*FIG. 42*

WO 2007/124406                                          PCT/US2007/067056

35/38



*FIG. 43*



*FIG. 44*

DTX161
94 of 97

WO 2007/124406                                           PCT/US2007/067056

36/38



*FIG. 45A*



*FIG. 45B*

WO 2007/124406                                    PCT/US2007/067056

37/38



*FIG. 46A*



*FIG. 46B*



*FIG. 46C*

DTX161
96 of 97



*FIG. 47*

**(12) INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)**

**(19) World Intellectual Property Organization**
International Bureau



**(43) International Publication Date**
11 December 2003 (11.12.2003)

PCT



**(10) International Publication Number**
**WO 03/101514 A1**

**(51) International Patent Classification⁷:** A61M 15/00, A61J 7/04, G06M 1/08, 1/04

**(21) International Application Number:** PCT/US03/15924

**(22) International Filing Date:** 19 May 2003 (19.05.2003)

**(25) Filing Language:** English

**(26) Publication Language:** English

**(30) Priority Data:**
02012173.7     3 June 2002 (03.06.2002)     EP

**(71) Applicant** *(for all designated States except US)*: **3M INNOVATIVE PROPERTIES COMPANY** [US/US]; 3M Center, Post Office Box 33427, Saint Paul, MN 55133-3427 (US).

**(72) Inventor; and**
**(75) Inventor/Applicant** *(for US only)*: **MARX, Eduard**

[DE/DE]; Lommertzheimstrasse 16, 52445 Titz-Kalrath (DE).

**(74) Agents: RINGSRED, Ted, K.** et al.; Office of Intellectual Property Counsel, Post Office Box 33427, Saint Paul, MN 55133-3427 (US).

**(81) Designated States** *(national)*: AE, AG, AL, AM, AT, AU, AZ, BA, BB, BG, BR, BY, BZ, CA, CH, CN, CO, CR, CU, CZ, DE, DK, DM, DZ, EC, EE, ES, FI, GB, GD, GE, GH, GM, HR, HU, ID, IL, IN, IS, JP, KE, KG, KP, KR, KZ, LC, LK, LR, LS, LT, LU, LV, MA, MD, MG, MK, MN, MW, MX, MZ, NI, NO, NZ, OM, PH, PL, PT, RO, RU, SC, SD, SE, SG, SK, SL, TJ, TM, TN, TR, TT, TZ, UA, UG, US, UZ, VC, VN, YU, ZA, ZM, ZW.

**(84) Designated States** *(regional)*: ARIPO patent (GH, GM, KE, LS, MW, MZ, SD, SL, SZ, TZ, UG, ZM, ZW), Eurasian patent (AM, AZ, BY, KG, KZ, MD, RU, TJ, TM), European patent (AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HU, IE, IT, LU, MC, NL, PT, RO,

[Continued on next page]

**(54) Title:** DOSE INDICATORS AND DISPENSING CANISTER-INDICATOR ASSEMBLIES



**(57) Abstract:** An annular dose indicator (50) for use with a dispenser comprising a dispensing canister (10) comprising a substantially cylindrical container (1) having a closed end (2) and an open end (3), said open end of the container being equipped with a dispensing means (4) that comprises an outlet member (5) movable between closed and discharge positions and an adaptor comprising a support block (21) having a socket (22) adapted to receive the outlet member, the container and support block being reciprocally movable relative to each other to cause the outlet member to move to its discharge position thereby dispensing a dose, said annular dose indicator (50) comprising an annular housing (60) having an interior surface (64) defining a substantially circumferential cavity; a counter-ring (80), said counter-ring located in the cavity and being arranged to be moveable relative to the housing by rotation about an axis parallel or substantially parallel to linear reciprocal movement of container and support block; a driving member (90) mounted on the interior surface of the housing, said driving member engaging the counter-ring and being arranged to be selectively engaged during reciprocal movement of container and support block as to drive an incremental, rotational movement of the counter-ring; wherein said indicator (50) is arranged to be circumferentially mountable about the dispensing-canister (10), such that the first edge (51) of the indicator faces towards the closed end of the container, the second edge (52) of the indicator faces towards the outlet of the dispensing canister, so that at least the outlet member of the canister will extend beyond the second edge of the indicator.

WO 03/101514 A1

DTX165
1 of 49

**WO 03/101514 A1** 

SE, SI, SK, TR), OAPI patent (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, ML, MR, NE, SN, TD, TG).

**Published:**
— *with international search report*
— *before the expiration of the time limit for amending the claims and to be republished in the event of receipt of amendments*

*For two-letter codes and other abbreviations, refer to the "Guidance Notes on Codes and Abbreviations" appearing at the beginning of each regular issue of the PCT Gazette.*

## Dose Indicators and Dispensing Canister-Indicator Assemblies

Field of the Invention

The present invention relates to annular mechanical dose indicators, particularly suitable

5    for use with medicinal dispensers, more particularly metered dose inhalers. The present

invention also relates to dispensing canister-indicator assemblies, in particular such

assemblies including medicinal aerosol dispensing canisters, more particular pressurized

metered dose dispensing canisters, as well as dispensers comprising such dispensing

canister-indicator assemblies.

10

Background of the Invention

Inhalation therapy is becoming an increasingly important method of administering

medicaments to a patient. The medicament is generally formulated with suitable propellant

and if appropriate other components and charged into a container, e.g. an aerosol vial. The

15   container is typically fitted by means of a ferrule with a dispensing means, such a valve, in

particular a metered dose valve, comprising an elongate outlet member (e.g. a valve stem)

movable between closed and discharged positions, to provide a dispensing canister.  The

dispensing canister is typically used in conjunction with an adaptor, typically having a

patient port, for example a mouthpiece or a port adapted for nasal use. The adaptor

20   comprises a support block having a socket adapted to receive the outlet member of the

dispensing means and an orifice having open communication with the socket and the

patient port. The container and the support block are reciprocally movable relative to each

other to allow the outlet member to move to its discharge position during the operation or

firing of the device, thereby dispensing a dose.

25

With a conventional press-and-breathe device in which the patient fires the device by

depressing the container towards the support block of the adaptor, while inhaling, a rough

indication of the amount of medicament remaining in the vial can be obtained by shaking

the whole unit. With experience, the user can distinguish the difference in `feel` between a

30   vial that is substantially full and one that is substantially empty. However, this method is

necessarily far from precise and is even less satisfactory with a breath-actuated inhaler in

DTX165
3 of 49

which, because of the additional parts, the mass of the aerosol contents is a smaller proportion of the total unit weight. Thus, a difficulty arising from use of such known devices is that the patient cannot precisely determine the amount of medicament in the container at any given time. In extreme cases, a patient, possibly in an emergency situation and requiring an immediate dose of medicament, may find that the container will not dispense a dose because its contents have already been exhausted.

Although a number of dose counters or indicators for metered dose medicinal products have been proposed over the last decade, no pressurized metered dose inhaler with a built in dose counter has yet been marketed.

Proposed dose indicators include electrical and/or electronic dose counters, see for example US 5,622,163 and WO 92/17231. Such counters can be disadvantageous in that they are relatively expensive. Furthermore, such counters require the use of a power source, such as a battery. Accordingly the reliability of such counters is overshadowed by the reliability of the power source itself. Here it is to be appreciated that some patients, e.g. asthma sufferers, often carry a device with them for extended periods of time and may only use the device on an occasional basis. If during this extended period the power source is exhausted or runs out, the patient would be again faced with uncertainty about the precise number of doses contained in the device.

A number of mechanical dose counters have also been proposed. Most of these counters comprise quite a number individual components and/or require significant modification of the inhaler device, in particular the adaptor. This makes mass production and assembly often complicated and/or tedious. A number of mechanical dose counters require additional counter-containing structures. For example, each of the documents, US 5,421,482, US 5,718,355, US 5,817,007, US 6,082,358, EP 0 254 391, EP 0 949 584, WO 95/34874 and WO 99/57019, relate to dose counting devices, which are provided on the exterior of an existing inhaler as an add-on counter-component. Such add-on counters suffer a number of disadvantages, including increased overall dimensions of the device resulting in a reduced ease in handling of the device.

2

DTX165
4 of 49

GB 1,317,315, GB 1,290,484, GB 2,320,489, DE 298 14 647, US 5,349,945, US 5,482,030, WO 92/09324 and WO 98/56444, for example, relate to devices with dose counters located substantially beneath the container in a region near the outlet means of the dispensing means and near or around the support block of the adaptor. Such arrangements
5    can be disadvantageous in that modification of the adaptor geometry, such as greater dimensions, in the critical region where atomization takes place is generally required. Furthermore, such counters are often not applicable for breath-actuated devices, because this region usually contains the trigger mechanism for the breath-actuated firing of the
10   device.

WO 93/24167 for example proposes actuating means for triggering breath-actuated firing with an associated dose indicator as a type of add-on system at the end of the dispensing canister distant to the outlet member, which disadvantageously increases the overall
15   dimensions of the device and correspondingly reduces general handleability of the device.

WO 00/59806 also relates to devices having an adaptor provided with a dose-indicating means.

20   EP 0 414 536 discloses a breath-actuated inhaler having an indicator with a ring mechanism located in the adaptor and mounted for rotation.

Another problem is that many dose counters do not differentiate between the same container being removed and put back in the adaptor (e.g. for cleaning) and a new
25   container being inserted as a replacement, so that the count may or may not properly reset to the beginning.

Summary of the Invention
Thus, there is an ongoing need for a simple, reliable, inexpensive, unobtrusive mechanical
30   dose counter for use with a dispenser, such as a medicinal dispenser or more particularly a metered dose inhaler.

3

DTX165
5 of 49

Moreover, there is a need for a mechanical dose counter for use with a dispenser comprising a dispensing canister comprising a substantially cylindrical container having a closed end and an open end, said open end of the container being equipped with a

5        dispensing means that comprises an outlet member movable between closed and discharge positions and an adaptor comprising a support block having a socket adapted to receive the outlet member, the container and support block being reciprocally movable relative to each other to cause the outlet member to move to its discharge position thereby dispensing a dose.

10

According to one aspect of the invention there is provided an annular dose indicator comprising

an annular housing having an interior surface defining a substantially circumferential cavity;

15      a counter-ring, said counter-ring located in the cavity and being arranged to be moveable relative to the housing by rotation about an axis parallel or substantially parallel to linear reciprocal movement of container and support block;

a driving member mounted on the interior surface of the housing, said driving member engaging the counter-ring and being arranged to be selectively engaged during reciprocal

20      movement of container and support block as to drive an incremental, rotational movement of the counter-ring;

wherein said indicator is arranged to be circumferentially mountable about the dispensing-canister, such that the first edge of the indicator faces towards the closed end of the container, the second edge of the indicator faces towards the outlet of the dispensing

25      canister, so that at least the outlet member of the canister will extend beyond the second edge of the indicator.

Typically, the two edges of the annular dose indicator are defined by the two edges of the annular housing.

30

4

DTX165
6 of 49

WO 03/101514                                                PCT/US03/15924

Suitably the driving member is engaged by the adaptor, in particular an element thereof, during the reciprocal movement of the container and support block as to drive an incremental, rotational movement of the counter-ring. The incremental rotation of the counter-ring is suitably indicative of the successive dose firings.

5

The outer side of the counter-ring is preferably adjacent to the interior surface of the housing. The outer side of the counter-ring advantageously comprises indicia which are viewable through the housing to provide a visual indication of the total quantity of doses dispensed from, or remaining in, the container.

10

The indicator is preferably arranged such that the counter-ring is locatable about a portion of the container. Desirably the inner side of the counter-ring is adjacent to an exterior surface of the container.

15    More particularly, for use with dispensing canisters in which the container is equipped with a dispensing means by means of a ferrule, said ferrule having a seal-edge (an external edge of the ferrule near to where the open end of the container is sealed), the indicator is preferably arranged such that the counter-ring is locatable about a portion of the container and/or a portion of the ferrule. Desirably, the inner side of the counter-ring is adjacent to

20    an exterior surface of the container and/or the ferrule. Preferably, the indicator is arranged, such that the second edge of the indicator is locatable near, more preferably adjacent to, the seal-edge of the ferrule.

The dose indicator desirably includes at least one stop member provided on the interior

25    surface of the housing and engaging the counter-ring to prevent substantial movement of counter-ring along said axis. In another preferred embodiment the dose indicator further comprises at least one non-return member provided on the interior surface of the housing, said non-return member engaging the counter-ring to permit incremental rotation of the counter-ring in only one direction. The stop member and/or the non-return member are

30    desirably integral with the housing, more desirably form-molded elements on the interior

5

surface of the housing. Desirably, the stop member is integral with the non-return member, more desirably the stop member is simultaneously the non-return member.

Annular dose indicators according to the invention are advantageous in that the indicator can be manufactured independent of the dispensing-canister and the adaptor to provide a self-contained assembly. They can be easily mounted around the dispensing canister by sliding the indicator over the outlet- or container-end of the dispensing canister, as the case may be. This simplifies the production and handling of the indicator itself as well as the assembly of a complete dispenser or a dispensing-canister/indicator assembly. Production is also simplified in that the dose indicators according to the invention and in particular certain preferred embodiments thereof include a limited number of components. Because the counter-ring and driving member are located or mounted within the housing of the indicator, the sensitive components of the indicator are protected, providing desirable robustness, ease in handling as well as resistance to tampering during use.

In use, dose indicators according to the invention are located substantially about the dispensing-canister and above the outlet means, and thus the indicator can be advantageously used in both press-and-breathe inhalers and breath-actuated inhalers, in which the triggering or breath actuation mechanism is located near or about the support of the adaptor. Also because the indicators are positioned about the dispensing-canister, so that the first edge of indicator, which faces towards the closed end of the container, does not extend axially beyond the closed end of the container, a necessary increase in axial dimensions can be avoided, which is particularly advantageous in a portable inhaler.

Dose indicators according to the invention can be readily used with various types of dispensing canisters. Certain preferred embodiments of the dose indicator are particularly advantageous for use with dispensing canisters having a container, whose diameter of its outermost circumference is greater than the diameter of the outermost circumference of the ferrule and/or a container having a constricted portion, if applicable near or adjacent to the ferrule (distant to the outlet member). Here the space formed by the recess in the dispensing-canister-profile can be advantageously used for the components of the dose

6

DTX165
8 of 49

indicator, for example the counter-ring and thus the overall dimensions of the counter-ring and/or indicator can be kept in relation to the dispensing-canister to a minimum. Containing the dose indicator within the profile of the dispensing canister may also have an additional advantage of interfering less with the airflow through and within a dispenser

5  or adaptor. In particular for use with such canisters, it is preferred that the diameter of the outermost circumference of the counter-ring is less than the diameter of the outermost circumference of the container.

It is preferred that the diameter of the outermost circumference of the indicator (typically

10  the outermost circumference of the housing of the indicator) is less than, equal to or substantially equal to (i.e. ± up to 0.5 mm, more preferably ± up to 0.03 mm) the diameter of the outermost circumference of dispensing canister, in particular the container. More preferably the outermost circumference of the indicator, in particular the housing, is equal to or substantially equal to the outermost circumference of the dispensing canister.

15

Furthermore dose indicators, in particular the housing, can be advantageously secured to an external surface of the dispensing canister, preferably to an external surface of the container or, if applicable the ferrule of the dispensing canister, to provide a self-contained canister/indicator assembly.

20

The provision of a dispensing-canister/indicator assembly as a self-contained or single unit in which the indicator is located substantially about the dispensing canister (e.g. the container of the canister and/or the canister closure means) and above the outlet means of the canister is particularly advantageous, because such an assembly is desirably robust.

25  Furthermore such an assembly allows for desirable ease in handling and assembly of a complete dispenser. In particular, the insertion of the outlet means into the support block of an adaptor, is desirably facilitated for large scale assembly and more importantly, if desired, by a patient, because the outlet means of the dispensing-canister is unobstructed by components of a dose counter.

30

7

Accordingly, in another aspect of the present invention there is provided a canister-indicator assembly comprising

a dispensing canister comprising a substantially cylindrical container having a closed end and an open end, said open end of the container being equipped with a dispensing means

5    that comprises an outlet member movable between closed and discharge positions;

and an annular mechanical dose indicator mounted circumferentially about the dispensing-canister and secured to an external surface of the dispensing canister, such that the first edge of the indicator faces towards the closed end of the container and the second edge of the indicator faces towards the outlet of the dispensing canister, so that at least the outlet

10    member of the canister extends beyond the second edge of the indicator.

Preferably the indicator is secured to an external surface of the container. In particular the indicator is desirably secured to the external surface of the container in the vicinity of the first edge of the indicator.

15

Preferred embodiments comprise a dispensing canister in which the container is equipped with a dispensing means by means of a ferrule, said ferrule typically having a seal-edge near the open end of the container. The indicator is preferably attached to an external surface of the ferrule or the container, more preferably the container. Preferably, the

20    second edge of the indicator is located near, more preferably adjacent to the seal-edge of the ferrule. Desirably, the diameter of its outermost circumference of the container is greater than the diameter of the outermost circumference of the ferrule.

Preferably the diameter of the outermost circumference of the indicator is less than, equal

25    to or substantially equal to (i.e. ± up to 0.5 mm, more preferably ± up to 0.3 mm) the diameter of the outermost circumference of the dispensing canister, in particular the container.

Canister-indicator assemblies according to the invention are particularly suitable for use

30    with an adaptor comprising a support block having a socket adapted to receive the outlet member, the container and support block being reciprocally movable relative to each other

8

to cause the outlet member to move to its discharge position thereby dispensing a dose from the container.

Desirably the annular mechanical dose indicator comprises an annular housing having an interior surface defining a substantially circumferential cavity;
a counter-ring, said counter-ring located in the cavity and being arranged to be moveable relative to the housing by rotation about an axis parallel or substantially parallel to linear reciprocal movement of container and support block; and
a driving member mounted on the interior surface of the housing, said driving member engaging the counter-ring and being arranged to be selectively engaged during reciprocal movement of the container and support block as to drive an incremental, rotational movement of the counter-ring.

Another aspect of the present invention is a canister-indicator assembly in kit of parts form comprising
a dispensing canister comprising a substantially cylindrical container having a closed end and an open end, said open end of the container being equipped with a dispensing means that comprises an outlet member movable between closed and discharge positions; and
an annular mechanical dose indicator arranged to be mounted circumferentially about the dispensing-canister and secured to an external surface of the dispensing canister, such that the first edge of the indicator faces towards the closed end of the container and the second edge of the indicator faces towards the outlet of the dispensing canister, so that at least the outlet member of the canister extends beyond the second edge of the indicator.

A further aspect of the present invention is an annular mechanical dose indicator for use with a dispensing canister comprising a substantially cylindrical container having a closed end and an open end, said open end of the container being equipped with a dispensing means that comprises an outlet member movable between closed and discharge positions, said annular mechanical dose indicator being arranged to be mounted circumferentially about the dispensing-canister and secured to an external surface of the dispensing canister, such that the first edge of the indicator faces towards the closed end of the container and

9

DTX165
11 of 49

WO 03/101514                                               PCT/US03/15924

the second edge of the indicator faces towards the outlet of the dispensing canister, so that at least the outlet member of the canister extends beyond the second edge of the indicator.

In another aspect of the present invention, there is provided a dispenser for dispensing doses of medicament comprising a canister-indicator assembly as described above and an adaptor comprising a support block having a socket adapted to receive the outlet member of the dispensing-canister, the container and support block being reciprocally movable relative to each other to cause the outlet member to move to its discharge position thereby dispensing a dose from the container.

Desirably the adaptor, in particular an element thereof, is arranged to selectively engage the dose indicator, in particular an element thereof, during reciprocal movement of the container and support block as to drive an incremental count of the number of doses dispensed from or remaining in the container.

The adaptor preferably comprises an elongate or generally cylindrical portion extending opposite the support block defining a chamber, in which the dose indicator and at least a portion of the container of the canister-indicator assembly are locatable. Desirably the canister-indicator assembly is reversibly removable from the adaptor. In particular, the end of the cylindrical portion distant to the support block is unobstructed and the canister-indicator assembly can be reversibly inserted and removed from the chamber of the adaptor. There may be situations in which it is desired to minimize access to the dose indicator, dispensing-canister or possibly other internal components of a dispenser by the patient. In such cases, preferably the dose indicator and at least a portion of, more particularly the entire container are located within said chamber and the canister-indicator assembly is irremovable from the adaptor or sealed within the adaptor.

Preferably the adaptor comprises a patient port, wherein the support has an orifice having open communication with the socket and the patient port. The patient port may be detachable to allow washing and cleaning thereof. For those embodiments in which the adaptor includes an elongate or generally cylindrical portion, the detachable portion would

10

DTX165
12 of 49

preferably include the support block to facilitate washing and cleaning of the support block and the orifice. For such embodiments, desirably the dispensing canister-indicator assembly is non-removably located within the elongate or generally cylindrical portion of the adaptor.

5    The dispenser may be a non-pressurized metered dose pump spray dispenser or pressurized metered dose dispenser suitable for inhalation, nasal or sublingual administration of medicament. The dispenser is preferably a pressurized metered dose inhaler, more particularly a press-and-breathe inhaler or a breath-actuated inhaler.

10    These and other features, aspects, and advantages of the present invention will become better understood with regard to the following description, appended claims, and accompanying drawings.

Brief Description of the Drawings

15

Figures 1a to c show isometric views of three exemplary dispensing canisters suitable for use in the invention.

Figures 2a and 2b show vertical cross-sectional views of two exemplary, conventional
20    adaptors; an adaptor for a press-and-breathe type inhaler and an adaptor for a breath-actuated inhaler.

Figure 3 shows a vertical cross-sectional view of a breath-actuated inhaler, i.e. the adaptor shown in Fig. 2b, containing a dispensing canister.

25

Figure 4 shows an isometric view of a preferred embodiment of a canister-indicator assembly.

Figure 5 shows an exploded view of a preferred embodiment of an annular dose indicator.

30

11

DTX165
13 of 49

Figure 6 shows an isometric view of the preferred annular dose indicator illustrated in Figure 5.

Figure 7 shows a cross sectional view of the preferred annular dose indicator illustrated in Figures 5 and 6, mounted and attached to a dispensing canister of the type depicted in Figure 1a, providing a preferred embodiment of a canister-indicator assembly.

Figures 8a and b show vertical cross-sectional views of two preferred embodiments of a dispenser comprising a canister-indicator assembly illustrated in Figure 7.

Figures 9 a to d represent an enlarged, partial view of the preferred dispensers depicted in Figures 8a and 8b, showing the region of the driving member of the dose indicator at various dispensing positions.

Figure 10 shows a vertical cross-sectional view of a further preferred embodiment of a dispenser.

Figure 11 shows a vertical cross-sectional view of another preferred embodiment of a dispenser.

Figures 12 a and b shows a vertical cross-sectional view of an additional preferred embodiment of a dispenser.

Detailed Description of Invention

It is to be understood that the present invention covers all combinations of particular and preferred aspects of the invention described herein.

For a better understanding of the various aspects of the present invention, exemplary dispensing canisters suitable for use with the present invention as well as two exemplary conventional adaptors will be initially described in the following.

12

DTX165
14 of 49

In Figures 1 a to c three exemplary dispensing-canisters are illustrated. A dispensing canister (10) typically comprises a substantially cylindrical container (1), in particular an aerosol container, having a closed end (2), an open end (3, not visible) and a side-wall (9). The open end of the container is equipped with a dispensing means (4), in particular, a

5      dispensing valve, more particularly a metering dose valve, having an elongate outlet member (5), in particular a valve stem, movable between closed and discharged positions. The dispensing means is normally mounted onto the container by means of a ferrule (6). The ferrule is typically fastened onto the container by crimping, however it can be suitably fastened onto the container by other means, such as welding, adhesives, snap-fit, thread-fit.

10     The term ferrule is understood here to mean any component or element of the dispensing canister, which is used to allow the attachment of the dispensing means to the container. The ferrule may be an integral component of the dispensing means or alternatively be a separate component, e.g. in the form of a mounting ring or cup. Alternatively the ferrule may be an integral component of the container, e.g. an element or extension of the

15     container to allow the crimping or folding of the open end of the container over an appropriate element of the dispensing means. After fastening (e.g. crimping), the ferrule typically shows a seal-edge (7) (e.g. a folded edge) near the open end of the container and often a second edge (8) (e.g. a crimped edge) about the container (i.e. about the side wall (9) of the container). The portion of the dispensing-canister located between the seal-edge

20     (7) of the ferrule and the elongate outlet member (5) is referred to as the nose (14) of the dispensing-canister. The height of the nose of the dispensing canister can vary from being relatively flat (ratio of axial height of nose to container < 1: 28), intermediate height (nose to container height ratio from 1:6 to 1:28) to being extended (nose to container height ratio > 1:6). As can be seen in Figures 1a to c, the diameter of the outermost circumference of

25     the ferrule may be less than, equal to or greater than the diameter of the outermost circumference of the container. The container (1) may have a constricted portion (11) distant to the closed end of the container (e.g. near or adjacent to ferrule) as depicted in Figures 1a and 1b, and a corresponding non-constricted portion (12) towards the closed end of the container; the boundary (13) between the constricted and non-constricted

30     portions may be relevantly distinct or relevantly continuous. It is to be understood that

13

Figures 1a to 1c show three exemplary dispensing canisters, which are suitable for use in the present invention, and that other dispensing canisters may also be suitable for use.

Figures 2a and 2b illustrate vertical cross-section views of two exemplary adaptors (20). Fig. 2a illustrates a conventional adaptor used for press-and-breathe type inhalers, while Fig. 2b depicts a conventional adaptor including a breath-actuation or triggering mechanism suitable for a breath-actuated inhaler. The adaptor comprises a support block (21) having a socket (22). The outlet member (5) of the dispensing-canister (10) (e.g. the dispensing end of the elongate valve stem of a metered dose dispensing valve) is received by the socket (22) and thus positioned in the support block (21), e.g. as illustrated in Fig. 3 showing the adaptor of Fig. 2b containing a dispensing-canister. The container (1) and the support block (21) are reciprocally movable relative to each other along an axis, marked as "A" in Fig. 3. The adaptor typically includes a patient port, such as a mouthpiece (23) and the support has an orifice (24) having open communication with the socket and the mouthpiece (23). The adaptor also typically includes an elongate or generally cylindrical portion (25) extending opposite the support block defining a chamber (26) to accommodate at least a portion of the container (1) of the dispensing-canister. One or more ribs (27) may be positioned within the chamber of the cylindrical portion to aid in locating and supporting the container in the correct position.

Referring to Fig. 3, the breath-actuation mechanism of the illustrated adaptor comprises a vane (31), which is pivotally mounted within the mouthpiece (23), a rocker element (32) which supports a catch (33) pivotally mounted on the rocker at (34). When a patient inhales through the mouthpiece, inhalation causes pivotal movement of the vane. The curved surface (35) of the vane (31) and the curved surface (36) of the catch (33) effectively acts as co-operating roller surfaces. Pivotal movement of the vane (31) causes the curved surface (35) to rotate in one direction resulting in curved surface (36) of the catch rotating in the opposite direction. This displacement of the catch moves from a blocking to an unblocking position allowing pivotal movement of the rocker element (32) which in turns allows movement of the container (1) relative to the support block (21) under the influence of the cocking pressure (e.g. the patient pressing downwards on the

14

container) causing the valve to fire. The breath-actuation mechanism is described more in detail in EP 147 028, incorporated here by reference. Further examples of breath or inhalation activatable dispensers are described in British Patent Specification Nos. 1,269,554, 1,335,378, 1,392,192 and 2,061,116 and U.S. Pat. Nos. 3,456,644, 3,456,645, 3,456,646, 3,565,070, 3,598,294, 3,814,297, 3,605,738, 3,732,864, 3,636,949, 3,789,843 and 3,187,748 as well as WO 92/09323, WO 98/41254 and WO 01/70313 to 70317.

Referring to Fig. 4 showing an isometric view of a preferred embodiment of a canister-indicator assembly in accordance with the invention, the assembly (40) comprises a dispensing canister (10) and an annular mechanical dose indicator (50) having two edges (51,52). The indicator (50) is mounted circumferentially about the dispensing canister, such that the first edge (51) faces towards the closed end (2) of the container and the second edge (52) faces towards the outlet of the dispensing canister, so that at least the outlet member (5) of the canister extends beyond the second edge (52) of the indicator. Here, it is understood that the reference to the outlet member refers to the portion of the outlet member, which is located externally when the dispensing means is at rest (i.e. in its closed position). It is preferred that the entire portion of the outlet member extends beyond the second edge of the indicator.

Suitably, the container may be equipped with the dispensing means by means of a ferrule. The second edge (52) of the indicator is preferably located near, more preferably adjacent to, the seal-edge of the ferrule (not visible in Fig. 4).

As can be recognized in the preferred embodiment depicted in Fig. 4, the indicator (50) is secured directly to an external surface of the dispensing-canister (10), preferably an external surface of the container (1) (in particular an external surface of the side-wall (9) of the container), more preferably an external surface of the container in the vicinity of the first edge (51) of the indicator.

As shown in Fig. 4, the indicator may be secured by means an adhesive-coated film (55), which overlays an external surface (53) of the indicator, extending across the first edge

15

DTX165
17 of 49

(51) of the indicator, and the external surface of the side-wall of the container in the vicinity of said first edge. Alternatively, the indicator may be secured to an external surface of the ferrule. The indicator may be suitably secured by other means including shrink sleeves, heat forming, crimping and welding. Alternatively the indicator may be

5      provided with a gripping member for securing the indicator onto an external surface of the container or the ferrule. To prevent tampering or detachment of the indicator, the indicator is preferably secured in a substantially non-reversible or substantially permanent manner. Preferred is the attachment of the indicator by adhesive or more preferably an adhesive-coated (in particular pressure-sensitive adhesive-coated) film. Suitable adhesives, in

10     particular pressure-sensitive adhesives are typically chosen so as to provide a high adhesive or permanent bond to the particular substrate, e.g. indicator, container, ferrule, etc. For adhesive-coated films, a suitable film thickness ranges from 0.05 mm to 0.7 mm, more preferably 0.075 to 0.5 mm. The film may be made of any suitable material, such as paper, plastic. Desirably, the adhesive-coated film is provided in the form of a label or

15     tape; more desirably a label or tape provided or printed with indicia concerning the product contained in the dispensing canister and/or indicia to aid the patient in reading an indication of the total quantity of doses dispensed from or remaining in the container.

The diameter of the outermost circumference of the indicator is preferably less than, equal

20     to (e.g. as depicted in the preferred embodiment of Fig. 4) or substantially equal to the diameter of the outermost circumference of the dispensing canister. More preferably the diameter of outermost circumference of the indicator is equal to or substantially equal to the diameter of the outermost circumference of the container.

25     The dispensing canister desirably comprises a container having constricted portion, in particular distant to the closed end of the container and a non-constricted portion towards the closed end of the container. The first edge of the indicator is desirably near or adjacent to the boundary between the constricted and non-constricted portion. In preferred embodiments comprising dispensing-canisters comprising a ferrule, desirably the diameter

30     of the outermost circumference of the container is greater than the diameter of the outermost circumference of the ferrule

16

Figures 5 and 6 show an exploded diagram and an isometric view, respectively, of a preferred embodiment of an annular dose indicator in accordance with the invention and an annular dose indicator suitable for use in canister-indicator assemblies according to the invention. As illustrated by the preferred embodiment shown in Fig. 5, the annular dose indicator (50) typically comprises three main components: an annular housing (60), a counter-ring (80) and a driving member (90).

The annular housing (60) has an interior surface (64) defining a substantially circumferential cavity. Although the housing is preferably in the form of a closed ring, as shown in Fig. 5, if desired the housing may alternatively have an open ring form (e.g. ¾ or 7/8 ring). The first and second edges (61, 62) of the annular housing are typically substantially parallel to one another and are generally continuous about the circumference of the housing. The housing may include one or more cut-out sections (65, 66) along the edges (61,62) for e.g. manufacturing and/or assembling purposes. The first and second edges (61, 62) of the housing typically define the first and second edges (51,52) of the indicator. The external surface (63) of the housing typically defines the external surface (53) of the indicator. The housing may include a folded lip or one or more radial protrusions (68) along the second edge (62).

The annular housing (60) may be made of any suitable rigid, durable material, such as metal, plastic or combinations of these materials. Plastic is preferred since it can be molded, preferably by high precision molding, into a finished piece and thereby may be less expensive to manufacture. Preferably the housing comprises a transparent or translucent plastic. Suitable plastics include rigid, ductile polymers having good impact strength, for example IZOD impact strength greater than or equal to 65 KJ/m$^2$, preferably greater than or equal to 70 KJ/m$^2$ as determined by the method ISO 180-4A. For optimal molding, the polymer desirably exhibits good melt flow behavior, for example a polymer having a melt temperature around 280°C would desirably exhibit a melt volume-flow rate as determined by ISO 1133 at 300°C, 1.2 kg from 17 to 30 (preferably 17 to 22) cm$^3$/10 min. Polycarbonates are preferred. The housing is desirably provided with a window (67),

17

optionally a magnifying window. The window may be formed as a cut-out portion of the housing, as a polished portion of the housing or as fitted window in the housing.

The internal surface (63) of the housing (60) may be provided with one or more additional, preferably integral, more preferably form-molded components. For example, the internal surface is desirably provided with a bearing element (70) to facilitate the mounting of the driving member (90) on the interior surface of the housing. The internal surface of the housing is desirably provided with an annular ridge (71) to help support and position the counter ring (80). The annular ridge is typically non-continuous having two longitudinal edges (72,73) extending towards the second edge (62) of the housing.  A limit member (74) may also be desirably provided to facilitate movement of the driving member. The interior surface is preferably provided with at least one stop member (75). The preferred embodiment depicted in Figures 5 and 6 includes three stop members (75), one (visible) located towards the first edge (61) distant to the cut-out portion (66) and two (not visible) located between the two pairs of cut-out portions (65) along the first edge. As can be better seen in Fig. 6, the stop member engages the counter-ring in order to prevent substantial movement of the counter-ring along the axis about which the counter-ring is moveable by rotation. The interior surface is also desirably provided with at least one non-return member (76), typically in the form of one or more teeth, which engages the counter-ring to permit incremental rotation of the counter-ring in one direction. Preferably the non-return member (76) is integral with the stop member (75), more preferably the stop member (75) is simultaneously the non-return member (76). The stop member and/or the non-return member also desirably facilitate the biasing of the counter-ring into engagement with the driving member.

Thickness of housing, including components provided on the interior surface, typically ranges from 0.9 to 3 mm, preferably 1.1 to 2.5 mm, more preferably 1.2 to 1.7 mm, most preferably 1.4 to 1.6 mm. The wall thickness of the housing, i.e. excluding components provided on the interior surface, typically ranges from 0.3 to 1.0 mm, preferably 0.4 to 0.75 mm, more preferably about 0.4 to 0.6 mm, most preferably about 0.5 mm.

18

DTX165
20 of 49

The counter-ring (80) has an inner (84) and outer (83) side. Although the counter-ring is preferably in the form of a closed ring, as shown in Fig. 5, if desired the counter-ring may alternatively have an open ring form (e.g. ¾ or 7/8 ring). As can be seen in Fig. 6, the counter-ring (80) is located in the cavity of the housing (60), preferably such that the outer

5      side (83) of the counter-ring is adjacent to the interior surface (64) of the housing. The counter-ring (80) is arranged to be moveable relative to the housing (60) by rotation about an axis parallel or substantially parallel to the linear reciprocal movement of the container and support (e.g. axis depicted as "A" in Figure 6). The outer side (83) of the counter-ring desirably comprises indicia (85), which are viewable through the housing, to provide a

10     visual indication of the total quantity of doses dispensed from, or remaining in, the container of the dispensing-canister. The indicia may be suitably alphabetical, numerical, alphanumeric, or color symbols, providing a sequential count-up or count-down of dispensed doses or providing a more general indication, such as "Full", "Empty", etc.

15     The counter-ring has two edges (81, 82), the first edge (81) towards the first edge (61) of the housing and the second edge (82) towards the second edge (62) of the housing and the driving member (90). As can be see in Figures 5 and 6, the counter-ring desirably has a set of teeth (86) along the second edge (82) of the counter-ring and one or more teeth of the set of teeth (86) are in engagement with the driving member. The number of teeth in the

20     set of teeth (86) is generally a function of the dispensing-canister in which the indicator is used with, in particular the number of doses to be dispensed from the dispensing-canister. Generally the set of teeth includes an appropriate number of teeth to allow for the counting of up to 220 doses, more preferably up to 190 doses, even more preferably up to 160 doses and most preferably up to 130 doses. Desirably the set of teeth (86) along the second edge

25     includes a spacer gap and/or a spacer block (87) to prevent more than one full revolution of the counter-ring. In alternative embodiments in which the counter-ring is provided in the form of an open-ring, the gap in the open-ring would allow for the prevention of more than one full revolution. Desirably the counter-ring has a second set of teeth (88) along the first edge (81) of the counter-ring. One or more teeth of the second set of teeth (88) are

30     preferably in engagement with the stop member (75) and/or non-return (76) member. As will be appreciated by those skilled in the art, the indicator may be arranged such that the

DTX165
21 of 49

non-return member may alternatively be in engagement with one or more teeth of the first set of teeth (86).

The counter-ring (60) may be made of any suitable rigid, durable material, such as metal, plastic or combinations of these materials. Again due to manufacture considerations and costs, plastic is preferred. Preferably the counter-ring comprises a printable polymer. The counter-ring is typically prepared by high precision molding. Preferably the polymer exhibits good melt flow behavior, for example a polymer having a melt temperature around 220 to 225 °C would desirably exhibit a melt volume-flow rate as determined by ISO 1133 at 250°C, 2.16 kg between 25 and 45 cm$^3$/10 min, preferably 37 to 42 cm$^3$/10 min. Polybutylene terephthalate (PBT) polymers are preferred.

The wall thickness of the counter-ring typically ranges from 0.4 to 2.0 mm , preferably 0.7 to 1.5 mm, more preferably 0.90 to 1.3 mm, most preferably about 0.95 mm

As depicted in Figure 6, the driving member (90) is mounted on the interior surface (64) of the housing. The driving member (90) engages the counter-ring (80), in particular the driving member desirably includes at least one pawl (93), preferably two or more pawls in engagement with teeth of the first set of teeth (86) of the counter-ring. As described in more detail below, the driving member is arranged to be selectively engaged, in particular by the adaptor, more particularly an element thereof, during reciprocal movement of the container and support block as to drive an incremental, rotational movement of the counter-ring. In particular, the driving member, as better seen in Figure 5, preferably includes an V-shaped, spring portion (91), integral with a shallow U-shaped portion (92) including a pawl, preferably two pawls, (93) provided at the end of U-shaped portion distant to the spring portion.

It should be appreciated that the driving member of the preferred dose indicator of Figures 5 and 6 represents one possible form of a suitable driving member. Suitable driving members may be provided in a variety of suitable forms including one or more pawls for engagement with the counter-ring.

20

DTX165
22 of 49

The driving member (90) may be made of any suitable durable material, such as metal, plastic or combinations of these materials, preferably plastic. For optimal molding, preferably high precision molding, the polymer desirably exhibits good melt flow

5      characteristics. Suitable polymers includes polymers having a Young's modulus greater than or equal to 2500 MPa, preferably greater than or equal to 3000 MPa (as determined by ISO 527 parts I and II) and a tensile strain at break greater than or equal to 4%, preferably greater to or equal to 5.5 % (as determined by ISO 527 parts I and II).. Preferred are PBT, poly-oxymethylene (POM) and LCP polymers. Desirably the material of each the

10     driving member, housing and counter-ring is selected, such that the frictional behavior between the driving member and each the housing and counter-ring is low, preferably a substrate-substrate friction coefficient less than or equal to 0.3.

The thickness of the driving member, typically having substantially the same thickness as

15     the counter-ring, generally ranges from 0.4 to 2.0 mm, preferably 0.7 to 1.5 mm, more preferably 0.90 to 1.3 mm, most preferably about 0.95 to 1.0 mm.

In assembly of the preferred indicator depicted in Figures 5 and 6, the driving member is mounted on the bearing element (70) at the interface (94) of the spring and pawl-bearing

20     portions (91, 92) of the driving member. The end (95) of the spring portion (91) is positioned against a longitudinal edge (72) of the ridge (71), while the pawl-bearing portion (92), is positioned adjacent to and substantially about the limit member (74). The counter-ring (80) is then inserted into cavity of the housing (60), by sliding the counter-ring over the stop member or members (75). The cut-out portions (65) along the first edge

25     (61) of the housing (60) facilitate the insertion of the counter-ring (80) by deflecting outwards. Once the counter-ring (80) is inserted beyond the stop member(s) (75) into engagement with the driving member (90), the stop member(s) prevent any substantially linear movement of the ring along axis "A".

30     Figure 7 shows a partial, cross-sectional view of a preferred embodiment of a canister-indicator assembly. In particular, Figure 7 shows the preferred dose indicator assembly as

21

depicted in Figures 5 and 6 mounted and secured to a dispensing canister of the type
depicted in Figure 1a. As can be recognized from Figure 7, the annular dose indicator (50)
is mounted onto the dispensing canister (10) by sliding it over the dispensing canister, in
particular over the outlet-end of the dispensing canister. The indicator, in particular the

5     housing (60), is secured to the external surface of the dispensing canister (10), in particular
the side wall (9) of the container (1) in the vicinity of the first edge of the indicator and
housing (51,61) desirably by means of an adhesive-coated film (55) in a similar manner as
described above. The indicator housing (60) is advantageously immovable in relation to
the dispensing canister, enhancing overall robustness and handleability of the canister-

10    indicator assembly. The first edge of the indicator and housing (51,61) is desirably located
near the boundary (13) between the constricted and non-constricted portions of the
container. The second edge of the indicator and housing (52, 62) is desirably located
adjacent to the seal-edge (7) of the ferrule (6). To facilitate positioning of the indicator
adjacent to the seal-edge of the ferrule, the second edge (62) of the housing (60) may be

15    desirably provided with one or more radial protrusions (68). These protrusions
advantageously facilitate positioning by providing a reference to aid the control of the
relative positions of the indicator and an actuation pin so that manufactured assemblies
operate within a narrow range of a specified counter actuation travel between the container
and the support block. As can be seen in Figure 7, the counter-ring (80) is desirably

20    located about a portion (in particular a constricted portion) of the container (1) and a
portion of the ferrule (6). The inner side of the counter-ring is desirably adjacent to an
exterior surface of the container and ferrule. In alternative, preferred embodiments, the
counter-ring may be located just about a portion of the container. The driving member (90)
of the preferred embodiment depicted in Figure 7 is located adjacent to an exterior surface

25    of the ferrule (6).

In the embodiment illustrated in Figure 7, both the nose (14) as well as the outlet means
(5) extend beyond the second edge of the indicator. In alternative, preferred embodiments,
the second edge of the indicator and housing may be located about the dispensing canister

30    on a level (or height) near or adjacent to the level (or height) of the edge of the nose
adjacent to the outlet means. The counter-ring may be desirably located about a portion of

22

the ferrule or about a portion of the nose, the latter being particularly advantageous with dispensing canisters having extended noses.

As illustrated in Figure 7, advantageously, the diameter of the outermost circumference of the indicator (50), in particular the housing (60), is equal to (or substantially equal to) the diameter of the outermost circumference of the container. For embodiments in which the counter-ring of the annular dose indicator is located about a portion of the container and/or the ferrule, the inner diameter of the counter-ring is typically greater than the diameter of the outermost circumference of the ferrule. For embodiments in which the counter-ring is located about the nose, the inner diameter of the counter-ring may be less the diameter of the ferrule. However for such embodiments it is preferred that inner diameter of the counter-ring is greater than the diameter of the outmost circumference of the ferrule. More particularly, for ease in manufacturing the counter-ring, it is preferred that the outer diameter of the counter-ring be large as possible, while still providing an indicator and housing having an outermost circumference whose diameter is equal to or substantially equal to the diameter of the outermost circumference of the container.

It is to be appreciated that the dimensions (e.g. outer and inner diameter, height, etc.) of the dose indicator and its respective components will be selected in consideration of the dimensions of particular dispensing canister, on which the indicator will be mounted. In order to provide one example of the possible dimensions of a dose indicator, in the following reference will be made to a dispensing canister and a dose indicator as illustrated in Figure 7. For example, for a canister in which the diameter of the outermost circumference of the container (1) is 24.5 mm and the diameter of the outermost circumference of the ferrule (6) is 21 mm, a suitable diameter of the innermost circumference (excluding any radial protrusions (68)) of the indicator/housing (50,60) would be about 21.1 mm or greater, preferably about 21.1 to about 21.3 mm. A suitable diameter of the outermost circumference of the indicator/housing (50,60) would be about 24.0 to about 25 mm, preferably about 24.2 to 24.8 mm. For a canister in which the axial distance between the boundary (13) and the seal-edge (7) of the ferrule is 16.6 mm and the axial height of the constricted portion of the container is 10.6 mm, a suitable axial height

23

of the housing would be about 12 to about 14.8 mm, preferably about 14 to 14.4 mm, while a suitable height of the counter-ring would be about 4.5 to about 4.9 mm. -

It should be appreciated that although dose indicators according to the invention are
5     particularly advantageous for use with dispensing-canisters in which the diameter of the outermost circumference of the ferrule is less than the diameter of the outermost circumference of the container, the indicators may be also be advantageous use with dispensing canisters in which the corresponding ferrule diameter is equal to or greater than the diameter of the outermost circumference of the container.

10

Figures 8a and b show vertical cross-sectional views of two preferred dispensers (100), in particular a press-and-breathe inhaler and a breath-actuated inhaler, respectively, in accordance with the invention; each dispenser comprises an adaptor and a canister-indicator assembly of Figure 7.

15

The adaptor (20) comprises a support block (21) having a socket (22) adapted to receive the outlet member (5) of the dispensing-canister (10). The container (1) and the support block (21) are reciprocally movable relative to each other along a linear axis, (marked as "A") to cause the outlet member to move to its discharge position thereby dispensing a
20    dose from the container. The adaptor desirably includes a patient port, in particular a mouthpiece (23), and the support has an orifice (24) having open communication with the socket and the mouthpiece (23). The adaptor desirably includes an elongate or generally cylindrical portion (25) extending opposite the support block defining a chamber (26), in which the dose indicator (50) and at least a portion of the container (1) of the dispensing-
25    canister are located or locatable. As can be appreciated from Figures 8a and b, the canister-indicator assembly is reversibly removable from the adaptor. In particular, the end of the elongate or generally cylindrical portion distant to the support block is unobstructed and the canister-indicator assembly can be reversibly inserted and removed from the chamber of the adaptor. As illustrated in Figure 8b, the adaptor may desirably include a breath-
30    actuation mechanism to provide a breath-actuated inhaler. (The components and the

24

operation principle of the breath-actuation mechanism shown in Figure 8b are discussed above in conjunction with the breath-actuated inhaler depicted in Figure 3.)

5 In a comparison to the conventional press-and-breathe inhaler and breath-actuated inhaler adaptors illustrated in Fig. 2a and 2b, it can be seen that the adaptors of the preferred dispensers shown in Figures 8a and 8b reveal a minimum of structural change. The adaptor (20), in particular the elongate or generally cylindrical portion (25) of the adaptor, is desirably provided with a window (28) to allow the user of the dispenser to read the indicia concerning the total quantity of doses dispensed from, or remaining in, the container of the 10 dispensing-canister. For ergonomic reasons, the window of the adaptor (28) is desirably positioned at the front side of the adaptor, i.e. the side of the adaptor in which the patient port is located or locatable.

15 Desirably the adaptor, in particular an element thereof, is arranged to selectively engage the dose indicator, in particular the driving member, during reciprocal movement of the container and support block as to drive an incremental count of the number of doses dispensed from or remaining in the container. More particularly, the adaptor is advantageously provided with an actuation pin (29), typically as a form-molded element of the adaptor. In the embodiment shown in Figure 8a, the actuation pin (29) is provided as 20 an extension of a rib (27). While in the embodiments shown in Figures 8a and b, the actuation pin (29) is provided as a molded element of the adaptor, other embodiments can be envisaged in which the actuation pin (29) forms a part of the dose indicator itself.

25 When the outlet member (5) of the canister-indicator assembly (40) is inserted in the socket (22) of the support block (21), the actuation pin (29) is received within the dose indicator, e.g. passing through a cut-out portion (66) in the second edge (62) of the housing (see Figure 5). During reciprocal linear movement (along axis "A") of the container and support block, the actuation pin (29), in particular the head of the actuation pin, selectively engages the driving member as to drive an incremental, rotational movement of the 30 counter-ring. This is better understood by reference to Figures 9 a to d, which show an enlarged view of the dose indicator in the region of the driving member as well as the

actuation pin at various dispensing positions: at the rest or closed position; at a transitional position between the closed position and the final discharge position; at the final discharge position; and again at the closed position.

5    As illustrated in Figure 9a, at the rest position, the head of the actuation pin (29) is located at a position adjacent an inclined receiving surface (96) of the pawl-bearing portion (92) of the driving member (90). The pawls (93) of the driving member are engaged with teeth of the first set of teeth (86) of the counter-ring (80), while the non-return member (76) in the form of two teeth (which is in this preferred embodiment simultaneously the stop member
10    (75)) are engaged with teeth of the second set of teeth (88). As the container of the dispensing-canister moves towards the support block of the adaptor to allow the outlet member to move to its discharge position, the dose indicator moves towards the actuation pin (29), such that the head of the actuation pin moves, relative to the dose indicator, towards and engages the receiving surface (96) of the driving member (90) (see Figure 9b).
15    As the head of the actuation pin (29) moves along the receiving surface (96), the driving member (90), in particular the pawl-bearing portion (92) thereof, is urged to slide in a direction substantially perpendicular to the movement the actuation pin. This movement of the driving member in turn urges a rotational movement of the counter-ring (80). The limit member (73) desirably facilitates the sliding movement of the driving member in
20    particular, to prevent over-movement of the driving member and correspondingly an over-rotation of the counter-ring. The prevention of an over-rotation of the counter-ring is also advantageously facilitated by the non-return member (76). As depicted in Figures 9b and 9c, during the rotation of the counter-ring, the teeth of the second set of teeth (88), with which the non-return member was originally engaged, moves past the non-return member,
25    so that the non-return member moves into engagement with the next teeth at final discharge position. As can be seen, there is a squeezing action upon the counter-ring between the actuation pin and the non-return member, thus the angle of the inclined surface of each tooth of the non-return member is desirably smaller with respect to the horizontal than the angle of the receiving surface of the driving member.

30

26

DTX165
28 of 49

Upon return to the rest position (as the container of the dispensing-canister moves away from the support block), the dose indicator moves away from the actuation pin (29), such that the head of the actuation pin, in a relative movement, returns to its original position adjacent to the receiving surface (96) of the driving member (90) (see Figure 9d). The

5    tension on the spring portion (91) of the driving member (90) is released, allowing the driving member, in particular pawl-bearing portion (92) thereto, to slide in the opposite direction and thus moving the pawls (93) in engagement with next teeth of the first set of teeth (86) of the counter-ring (80). During this movement, the non-return member (76), which is in engagement with teeth of the second set of teeth (88) of the counter-ring (80),

10   desirably aids in preventing rotational movement of the counter-ring.

Figure 10 shows a vertical cross-sectional view of a further preferred embodiment of a dispenser, in particular a breath-actuated inhaler provided with a cocking mechanism. This dispenser is similar to the dispenser shown in Figure 8b. The dispenser (100) further

15   comprises a housing (126) formed of a sleeve (127) and a crown (128), which can be mounted over the closed end of the container onto the adaptor (20), in particular the elongate or generally cylindrical portion (25) thereof, e.g. by a threaded coupling (129). To prevent tampering of the indicator (50) and/or the breath-actuation triggering mechanism, the housing can be desirably sealed or irreversibly coupled onto the adaptor, for example

20   by welding, adhesives or by means of a one-way snap fit connection. In such embodiments, the dispensing canister-indicator assembly can not be removed from the adaptor. The cocking mechanism comprises a lever (130) which acts on a spring (131) facilitated by a spring guide (132). Figure 10 shows the dispenser in the unprimed position. Upon pivoting the lever, downward pressure is applied to the aerosol container providing

25   the cocking force for the breath-actuation firing of the dispenser. The dispenser may include a protective cover (133) for the mouthpiece (23).

Figure 11 shows a vertical cross-sectional view of another preferred embodiment of a dispenser, in particular a press-and-breathe type inhaler. The dispenser is similar to the

30   dispenser shown in Figure 8a, but in this embodiment the dispenser (100) further comprises a cap (135), which is mounted, preferably irreversibly mounted, over the closed

DTX165
29 of 49

end of the container onto the adaptor (20), in particular the elongate or generally cylindrical portion (25) thereof, such that at least a portion of the cap is movable along axis "A" so that the dispenser-user can depress the dispensing canister (10), in particular the container (1), towards the support block (21) to dispense a dose. In the embodiment

5    shown in Fig. 11, the connecting end of the cap preferably comprises an annular edge turned outward (136) connected to a corresponding annular edge (137) (typically turned inward) of the adaptor, in particular the elongate or generally cylindrical portion thereof, so as to prevent the separation of the cap from the adaptor. (The type of coupling is generally understood as a one-way snap fit coupling.) Thus, the canister-indicator

10   assembly is non-removably located within the adaptor. The internal surface of the adaptor, in particular the elongate or generally cylindrical portion, is desirably provided with a guide portion or depression (138), to allow axial translation of the cap. Thus, in use as the container and cap are pressed downwards towards the support block, the annular edge (136) of the cap moves downwards within the guide portion (138). For airflow, slits (139,

15   not shown) may be provided in the cap and/or in the adaptor in the vicinity of the support block.


Figures 12a and b show vertical cross-sectional views of an additional preferred embodiment of a dispenser, in particular a press-and-breathe type inhaler. The dispenser

20   shown in Fig. 12a comprises a canister-indicator assembly (40) of the type shown in Fig. 7 and an adaptor (20) comprising two parts: a support-portion (220) as well as an elongate or generally cylindrical portion or sleeve  (225) defining a chamber or cavity adapted to receive the dispensing canister-indicator assembly (40). The support-portion (220), which comprises a patient port, in particular a mouthpiece (23) and a support block (21) having a

25   socket (22) adapted to receive the outlet member of the dispensing-canister (10) and an orifice (24) having open communication with the socket and mouthpiece, is reversibly attachable and detachable. This can be best seen in Fig. 12b showing the dispenser with the support-portion detached. As can be recognized from Figures 12a and 12b, the support-portion (220) is attached to and detached from the dispenser by inserting and removing the

30   outlet member (5) into and out of the socket block (21) of the support-portion. The support-portion is typically held securely in place due to the interference fit between the

28

DTX165
30 of 49

outlet member (5) and the socket (22) of the socket block. To facilitate positioning of the support-portion relative to the elongate or generally cylindrical portion, one or more positioning guides may be provided. For example, the support-portion (221) may include a guide slot (221) adapted to receive a guide pin (226) provided on the elongate or generally

5    cylindrical portion (225) as the support-portion is attached or reattached. Alternatively or in conjunction thereto, the elongate or generally cylindrical portion may be provided with a guide groove (227) adapted to receive a guide notch (222) provided on the socket block, as the support portion is attached or reattached.

10    As shown in Figures 12a and b, one or more extensions (228) are desirably provided on the internal surface of the chamber to aid in retaining the canister-indicator assembly within the elongate or generally cylindrical portion as the support-portion is detached. During the detachment and reattachment of the support portion, the dispensing canister will typically be fired dispensing a dose, which will be counted by the indicator. As shown

15    in Figures 12a and b, the dispenser preferably comprises a cap (135) irreversibly mounted over the closed end of the container onto the elongate or cylindrical portion (225), such that at least a portion of the cap is movable along axis "A" so that the dispenser-user can depress the dispensing canister (10), in particular the container (1), towards the support block (21) to dispense a dose. (The cap, elements thereof, etc. have been described above

20    in connection with the dispenser embodiment shown in Figure. 11.) For airflow, slits (139) may be provided in the cap and/or in the adaptor in the vicinity of the support block. The dispensing canister-indicator assembly is thus advantageously non-removably located within the elongate or cylindrical portion of the adaptor, and thus desirably protected from e.g. tampering, while the support-portion of the adaptor, including the patient port and

25    support block, is advantageously detachable from the dispenser for purposes of cleaning, etc.

Dispensers in accordance with the invention are suitable for dispensing medicament, in particular medicinal aerosol products e.g. suitable for administration to the lung by nasal

30    or oral inhalation.

29

DTX165
31 of 49

It will be understood that the present disclosure of particular preferred embodiments in accordance with the invention is for the purpose of illustration only and the invention extends to modifications, variations and improvements thereof.

5

30

DTX165
32 of 49

Claims

1.    An annular dose indicator

5              for use with a dispenser comprising (a) a dispensing canister comprising a
              substantially cylindrical container having a closed end and an open end,
              said open end of the container being equipped with a dispensing means that
              comprises an outlet member movable between closed and discharge
              positions and (b) an adaptor comprising a support block having a socket
10             adapted to receive the outlet member, the container and support block being
              reciprocally movable relative to each other to cause the outlet member to
              move to its discharge position thereby dispensing a dose from the container,
       comprising
       an annular housing having an interior surface defining a substantially
15     circumferential cavity;
       a counter-ring, said counter-ring located in the cavity and being arranged to be
       moveable relative to the housing by rotation about an axis parallel or substantially
       parallel to linear reciprocal movement of container and support block;
       a driving member mounted on the interior surface of the housing, said driving
20     member engaging the counter-ring and being arranged to be selectively engaged
       during reciprocal movement of container and support block as to drive an
       incremental, rotational movement of the counter-ring;
       wherein said indicator is arranged to be slidably mountable about the dispensing
       canister, such that the first edge of the indicator faces towards the closed end of the
25     container and the second edge of the indicator faces towards the outlet of the
       dispensing canister, so that at least the outlet member of the dispensing canister
       will extend beyond the second edge of the indicator.

2.    An annular dose indicator according to claim 1, wherein the indicator is arranged
30     such that the counter-ring is locatable about a portion of the container.

31

3.    An annular dose indicator according to claim 1 or 2, wherein the outermost circumference of the indicator is less than, equal to or substantially equal to the diameter of the outermost circumference of the dispensing canister

5    4.    A dispensing canister-indicator assembly comprising
a dispensing canister comprising a substantially cylindrical container having a closed end and an open end, said open end of the container being equipped with a dispensing means that comprises an outlet member movable between closed and discharge positions;
10    and an annular mechanical dose indicator mounted circumferentially about the dispensing canister and secured to an external surface of the dispensing canister, such that the first edge of the indicator faces towards the closed end of the container and the second edge of the indicator faces towards the outlet of the dispensing canister, so that at least the outlet member of the canister extends
15    beyond the second edge of the indicator.

5.    A canister-indicator assembly according to claim 4, wherein the indicator is secured to an external surface of the container.

20    6.    A canister-indicator assembly according to claim 5, wherein the indicator is secured to the external surface of the container in the vicinity of the first edge of the indicator.

.

7.    A canister-indicator assembly according to any one of claims 4 to 6, said assembly
25    for use with an adaptor comprising a support block having a socket adapted to receive the outlet member, the container and support block being reciprocally movable relative to each other to cause the outlet member to move to its discharge position thereby dispensing a dose from the container, wherein the indicator comprises
30    an annular housing having an interior surface defining a substantially cylindrical cavity;

32

DTX165
34 of 49

a counter-ring, said counter-ring located in the cavity and being arranged to be
moveable relative to the housing by rotation about an axis parallel or substantially
parallel to linear reciprocal movement of container and support block; and
a driving member mounted on the interior surface of the housing, said driving

5    member engaging the counter-ring and being arranged to be selectively engaged
during reciprocal movement of container and support block as to drive an
incremental, rotational movement of the counter-ring.

8.    A canister-indicator assembly according to claim 7, wherein the counter-ring is

10    located about a portion of the container.

9.    A canister-indicator assembly in kit of parts form comprising
a dispensing canister comprising a substantially cylindrical container having a
closed end and an open end, said open end of the container being equipped with a

15    dispensing means that comprises an outlet member movable between closed and
discharge positions; and
an annular mechanical dose indicator arranged to be mounted circumferentially
about the dispensing-canister and secured to an external surface of the dispensing
canister, such that the first edge of the indicator faces towards the closed end of the

20    container and the second edge of the indicator faces towards the outlet of the
dispensing canister, so that at least the outlet member of the canister extends
beyond the second edge of the indicator.

10.    A canister-indicator assembly according to any one of claims 4 to 9, wherein the

25    diameter of the outermost circumference of indicator is less than, equal to or
substantially equal to the diameter of the outermost circumference of the
dispensing canister.

11.    An annular mechanical dose indicator for use with a dispensing canister

30    comprising a substantially cylindrical container having a closed end and an open

33

WO 03/101514                                                    PCT/US03/15924

end, said open end of the container being equipped with a dispensing means that comprises an outlet member movable between closed and discharge positions, said annular mechanical dose indicator being arranged to be mounted circumferentially about the dispensing-canister and secured to an external surface of the dispensing canister, such that the first edge of the indicator faces towards the closed end of the container and the second edge of the indicator faces towards the outlet of the dispensing canister, so that at least the outlet member of the canister extends beyond the second edge of the indicator.

12. An annular mechanical dose indicator according to claim 11, wherein the diameter of the outermost circumference of indicator is less than, equal to or substantially equal to the diameter of the outermost circumference of the dispensing canister.

13. A dispenser for dispensing doses of medicament comprising a canister-indicator assembly according to any one of claims 4 to 8 and an adaptor comprising a support block having a socket adapted to receive the outlet member of the dispensing-canister, the container and support block being reciprocally movable relative to each other to cause the outlet member to move to its discharge position thereby dispensing a dose from the container.

14. A dispenser according to claim 13, wherein the adaptor is arranged to selectively engage the dose indicator during reciprocal movement of the container and support block as to drive an incremental count of the number of doses dispensed from or remaining in the container.

15. A dispenser according to claim 13 or 14, wherein the adaptor further comprises an elongate or generally cylindrical portion extending opposite the support block defining a chamber, the dose indicator and at least a portion of the container of the canister-indicator assembly being locatable within said chamber.

DTX165
36 of 49

16.    A dispenser according to claim 15, wherein the canister-indicator assembly is reversibly removable from the adaptor.

17.    A dispenser according to claim 15, wherein the dose indicator and at least a portion of the container of the canister-indicator assembly are located within said chamber and the canister-indicator assembly is irremovable from the adaptor.

18.    A dispenser according to any one of claims 13 to 17, wherein the adaptor further comprises a patient port and wherein the support has an orifice having open communication with the socket and the patient port.

19.    A dispenser according to claim 18, wherein the patient port is detachable from the adaptor.

20.    A dispenser according to claim 19, wherein a portion of the adaptor including the patient port and the support block is detachable from the adaptor.

35

DTX165
37 of 49

WO 03/101514

PCT/US03/15924

1/9



**Fig. 1a**



**Fig. 1b**



**Fig. 1c**

DTX165
**38 of 49**



**Fig. 2a**

**Fig. 2b**

**Fig. 3**



**Fig. 4**

**Fig. 7**

WO 03/101514                                        PCT/US03/15924

4/9



**Fig. 5**



**Fig. 6**

5/9



**Fig. 8a**



**Fig. 8b**

DTX165
42 of 49



**Fig. 9a**



**Fig. 9b**



**Fig. 9c**





**Fig. 9d**

8/9



**Fig. 10**



**Fig. 11**

9/9



**Fig. 12a**



**Fig. 12b**

## INTERNATIONAL SEARCH REPORT

| PCT/US 03/15924 |
|---|

**A. CLASSIFICATION OF SUBJECT MATTER**
IPC 7  A61M15/00    A61J7/04      G06M1/08    G06M1/04

According to International Patent Classification (IPC) or to both national classification and IPC

**B. FIELDS SEARCHED**

Minimum documentation searched (classification system followed by classification symbols)
IPC 7  A61M  A61J  G06M

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practical, search terms used)

EPO-Internal, WPI Data

**C. DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category ° | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| X | WO 00 09187 A (ECKERT JOSEPH ;JOSEPH WISCHERATH GMBH & CO KG (DE)) 24 February 2000 (2000-02-24) page 8, line 1 -page 8, line 5 page 8, last paragraph -page 10, paragraph 3; figures 1,2A-C | 1-4, 7-16,18 |
| A | | 5,6,17, 18 |
| | --- | |
| X | WO 93 24167 A (NORTON HEALTHCARE LTD ;HOLROYD MICHAEL JOHN (GB)) 9 December 1993 (1993-12-09) cited in the application | 1,2,13 |
| A | page 5, line 18 -page 7, line 19; figures 1,3,4 | 4,7-9, 11, 14-16,18 |
| | page 9, line 15 -page 9, line 16 page 9, line 30 -page 11, line 16 --- | |
| | -/-- | |

| [X] | Further documents are listed in the continuation of box C. | | [X] | Patent family members are listed in annex. |
|---|---|---|---|---|

° Special categories of cited documents :

"A" document defining the general state of the art which is not considered to be of particular relevance
"E" earlier document but published on or after the international filing date
"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)
"O" document referring to an oral disclosure, use, exhibition or other means
"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention
"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone
"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art.
"&" document member of the same patent family

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 29 September 2003 | 07/10/2003 |

| Name and mailing address of the ISA | Authorized officer |
|---|---|
| European Patent Office, P.B. 5818 Patentlaan 2 NL – 2280 HV Rijswijk Tel. (+31-70) 340–2040, Tx. 31 651 epo nl, Fax: (+31–70) 340–3016 | Merté, B |

Form PCT/ISA/210 (second sheet) (July 1992)

INTERNATIONAL SEARCH REPORT

PCT/US 03/15924

C.(Continuation) DOCUMENTS CONSIDERED TO BE RELEVANT

| Category ° | Citation of document, with indication,where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| X<br>A | EP 0 480 488 A (ELETTRO PLASTICA S.P.A.)<br>15 April 1992 (1992-04-15)<br>column 2, line 58 -column 4, line 53;<br>figures 1-5<br>--- | 13,14,<br>16,18-20<br>1 |
| A | WO 96 29278 A (GARBY GAGE ET AL)<br>26 September 1996 (1996-09-26)<br>----- | |

Form PCT/ISA/210 (continuation of second sheet) (July 1992)

## INTERNATIONAL SEARCH REPORT

PCT/US 03/15924

| Patent document cited in search report | | | Publication date | Patent family member(s) | | | Publication date |
|---|---|---|---|---|---|---|---|
| WO 0009187 | A | | 24-02-2000 | DE | 29814647 | U1 | 23-12-1999 |
| | | | | AT | 223744 | T | 15-09-2002 |
| | | | | DE | 59902680 | D1 | 17-10-2002 |
| | | | | DK | 1104318 | T3 | 09-12-2002 |
| | | | | WO | 0009187 | A1 | 24-02-2000 |
| | | | | EP | 1104318 | A1 | 06-06-2001 |
| | | | | ES | 2184498 | T3 | 01-04-2003 |
| | | | | JP | 2002522172 | T | 23-07-2002 |
| WO 9324167 | A | | 09-12-1993 | AU | 4083993 | A | 30-12-1993 |
| | | | | CN | 1079167 | A | 08-12-1993 |
| | | | | WO | 9324167 | A1 | 09-12-1993 |
| | | | | TR | 26757 | A | 15-05-1995 |
| | | | | ZA | 9303639 | A | 20-12-1993 |
| EP 0480488 | A | | 15-04-1992 | IT | 1243820 | B | 28-06-1994 |
| | | | | AT | 113486 | T | 15-11-1994 |
| | | | | AU | 646873 | B2 | 10-03-1994 |
| | | | | AU | 8025891 | A | 16-04-1992 |
| | | | | BR | 9103035 | A | 16-06-1992 |
| | | | | CA | 2046806 | A1 | 10-04-1992 |
| | | | | DE | 69104950 | D1 | 08-12-1994 |
| | | | | DE | 69104950 | T2 | 09-03-1995 |
| | | | | EP | 0480488 | A1 | 15-04-1992 |
| | | | | ES | 2066336 | T3 | 01-03-1995 |
| | | | | JP | 3211894 | B2 | 25-09-2001 |
| | | | | JP | 5228213 | A | 07-09-1993 |
| | | | | US | 5174473 | A | 29-12-1992 |
| WO 9629278 | A | | 26-09-1996 | US | 5421482 | A | 06-06-1995 |
| | | | | WO | 9629278 | A1 | 26-09-1996 |
| | | | | AU | 7732794 | A | 10-04-1995 |
| | | | | EP | 0720568 | A1 | 10-07-1996 |
| | | | | WO | 9508484 | A1 | 30-03-1995 |
| | | | | AU | 688794 | B2 | 19-03-1998 |
| | | | | BR | 9407608 | A | 14-01-1997 |
| | | | | CA | 2172537 | A1 | 30-03-1995 |
| | | | | CN | 1133584 | A ,B | 16-10-1996 |
| | | | | JP | 9502951 | T | 25-03-1997 |
| | | | | US | 5611444 | A | 18-03-1997 |
| | | | | US | 5718355 | A | 17-02-1998 |
| | | | | US | 5799651 | A | 01-09-1998 |

Form PCT/ISA/210 (patent family annex) (July 1992)

US 20020078950A1

(19) **United States**

(12) **Patent Application Publication**     (10) Pub. No.: **US 2002/0078950 A1**
O'Leary                                      (43) Pub. Date:     **Jun. 27, 2002**

(54) **RESERVOIR PRESSURE SYSTEM FOR MEDICAMENT INHALER**

(76) Inventor:    **David O'Leary**, Essex (GB)

Correspondence Address:
**IVAX Corporation**
**4400 Biscayne Boulevard**
**Miami, FL 33137 (US)**

(21) Appl. No.:     **09/888,199**

(22) Filed:     **Jun. 23, 2001**

**Related U.S. Application Data**

(63) Non-provisional of provisional application No. 60/213,668, filed on Jun. 23, 2000. Non-provisional

of provisional application No. 60/213,382, filed on Jun. 23, 2000.

**Publication Classification**

(51) Int. Cl.$^7$ ................................................. A61M 11/00
(52) U.S. Cl. ................................ **128/200.22**; 128/200.14

(57)     **ABSTRACT**

A new and improved inhaler includes an accurate and consistent mechanical dose metering system that dispenses dry powdered medicament in discrete amounts or doses for patient inhalation, a pressure relief system that manages pressure within a medicament reservoir of the inhaler to ensure consistently dispensed doses, and a dose counting system indicating the number of doses remaining in the inhaler.



CIPLA-BDI_0184200

**DTX159**
**1 of 14**

Patent Application Publication    Jun. 27, 2002  Sheet 1 of 8        US 2002/0078950 A1



FIG. 1

FIG. 2

CIPLA-BDI_0184201

DTX159
2 of 14



FIG. 3

FIG. 4

CIPLA-BDI_0184202

**DTX159**
**3 of 14**



FIG. 5



FIG. 6

CIPLA-BDI_0184203

**DTX159
4 of 14**



FIG. 7                          FIG. 8



**FIG. 9**



**FIG. 10**

CIPLA-BDI_0184205

**DTX159**
**6 of 14**



FIG. 11

FIG. 12



POSITION 1          POSITION 2          POSITION 3          BACK

FIG. 13

CIPLA-BDI_0184206

**DTX159**
**7 of 14**



**FIG. 14**



**FIG. 15**

CIPLA-BDI_0184207

**DTX159**
**8 of 14**

Patent Application Publication    Jun. 27, 2002  Sheet 8 of 8        US 2002/0078950 A1



**FIG. 16**

CIPLA-BDI_0184208
**DTX159**
**9 of 14**

US 2002/0078950 A1

1

Jun. 27, 2002

## RESERVOIR PRESSURE SYSTEM FOR MEDICAMENT INHALER

### CROSS-REFERENCE TO RELATED APPLICATIONS

[0001]   The present application claims priority to co-pending provisional U.S. patent application serial No. 60/213,668, filed Jun. 23, 2000 (entitled "Breath-Actuated Dry Powder Inhaler"), and co-pending provisional U.S. patent application serial No. 60/213,382, filed Jun. 23, 2000 (entitled "De-Agglomerator for Breath-Actuated Dry Powder Inhaler"). Each of these co-pending applications is assigned to the assignee of the present disclosure and incorporated herein by reference.

### FIELD OF THE DISCLOSURE

[0002]   The present disclosure relates to an apparatus and method for administering medicament for inhalation by a patient and, more particularly, to a dry powdered medicament inhaler.

### BACKGROUND OF THE DISCLOSURE

[0003]   Metered dose medicament inhalers are well known for dispensing medicament to the lungs of a patient, for treating asthma for example. Existing types of medicament dispensing inhalers include pressurized propellant inhalers, aqueous solution inhalers, and dry-powdered inhalers.

[0004]   U.S. Pat. No. 5,503,144 to Bacon, for example, shows a dry powdered inhaler. The inhaler includes a reservoir for containing a dry powdered medicament, a metering chamber for removal of the powdered medicament from the reservoir in discrete amounts, and an air inlet for entraining the removed powdered medicament through a mouthpiece upon patient inhalation.

[0005]   Another example is U.S. Pat. No. 5,971,951 to Ruskewicz, which shows an inhaler including a motor driven cam mechanism for extruding aqueous medicament through a porous membrane to form a medicament aerosol for inhalation by a patient. The inhaler also includes sensors, circuitry and a microprocessor that determines the rate of patient inhalation and operates the extrusion mechanism only upon adequate inhalation levels.

[0006]   A pressurized propellant, or "aerosol" inhaler is shown in U.S. Pat. No. 5,447,150 to Bacon, which also discloses a simple, mechanical actuation assembly for ensuring that medicament is dispensed from the inhaler only upon adequate inhalation by a patient. The actuation assembly works by applying a pre-load to a valve of the aerosol container sufficient to cause a dose release, but prevents the release by applying a pneumatic resisting force. The dose of medicament is then released upon a patient inhalation strong enough to move a door within the assembly, which in turn releases the pneumatic resisting force.

[0007]   What is still desired, however, is a new and improved inhaler for administering medicament for patient inhalation. Preferably, the new and improved inhaler can be used with dry powdered medicament. In addition, the new and improved inhaler will preferably include mechanical assemblies for metering doses of medicament, managing medicament reservoir pressure, and counting the number of doses remaining in the inhaler.

### SUMMARY OF THE DISCLOSURE

[0008]   The present disclosure, therefore, provides a new and improved medicament inhaler having a unique dose metering system. The inhaler includes a mouthpiece for patient inhalation, a delivery passageway for directing an inhalation induced air flow through the mouthpiece, a channel extending from the delivery passageway, and a reservoir for containing medicament, with the reservoir having a dispenser port connected to the channel. In a preferred form, the dose metering system includes a cup received in the channel, which is movable between the dispenser port and the delivery passageway, a cup spring biasing the cup towards one of the dispenser port and the passageway, and a yoke movable between at least two positions. The yoke includes a ratchet engaging the cup and preventing movement of the cup when the yoke is in one of the positions, and allowing movement of the cup when the yoke is in another of the positions.

[0009]   The present disclosure also provides a medicament inhaler having a unique reservoir pressure system. The inhaler includes a sealed reservoir having a dispenser port, and a channel communicating with the dispenser port, and a cup assembly movably received in the channel. In a preferred form, the pressure system includes a pressure relief port in the channel, and a conduit providing fluid communication between an interior of the sealed reservoir and the pressure relief port of the channel. The cup assembly includes a recess adapted to receive medicament when aligned with the dispenser port, a first sealing surface adapted to seal the dispenser port when the recess is unaligned with the dispenser port, and a second sealing surface adapted to seal the pressure relief port when the recess is aligned with the dispenser port and unseal the pressure relief port when the recess is unaligned with the dispenser port.

[0010]   The present disclosure additionally provides a medicament inhaler having a unique dose counter. The inhaler includes a mouthpiece for patient inhalation, a dose metering system including a pawl movable along a predetermined path during the metering of a dose of medicament to the mouthpiece by the dose metering system, and a dose counter. In a preferred form, the dose counter includes a bobbin, a rotatable spool, and a rolled ribbon received on the bobbin, rotatable about an axis of the bobbin. The ribbon has indicia thereon successively extending between a first end of the ribbon secured to the spool and a second end of the ribbon positioned on the bobbin. The dose counter also includes teeth extending radially outwardly from the spool into the predetermined path of the pawl so that the spool is rotated by the pawl and the ribbon advanced onto the spool during the metering of a dose to the mouthpiece.

[0011]   Thus, the present disclosure provides a new and improved inhaler including a simple, accurate and consistent mechanical dose metering system that dispenses dry powdered medicament in discrete amounts or doses for patient inhalation, a reservoir pressure system that ensures consistently dispensed doses, and a dose counter indicating the number of doses remaining in the inhaler.

[0012]   Further features and advantages of the presently disclosed inhaler will become more readily apparent to those having ordinary skill in the art to which the present disclosure relates from the drawings and the detailed description.

CIPLA-BDI_0184209

**DTX159**
**10 of 14**

## BRIEF DESCRIPTION OF THE DRAWINGS

[0013]  So that those having ordinary skill in the art will more readily understand how to construct a dry powdered medicament inhaler in accordance with the present disclosure, a preferred embodiment is described below with reference to the drawing figures wherein:

[0014]  **FIG. 1** is a first side isometric view of a dry powdered medicament inhaler according to the present disclosure;

[0015]  **FIG. 2** is an exploded, second side isometric view of the inhaler of **FIG. 1**;

[0016]  **FIG. 3** is a second side isometric view of a main assembly of the inhaler of **FIG. 1**;

[0017]  **FIG. 4** is a second side isometric view of the main assembly of the inhaler of **FIG. 1**, shown with a yoke removed;

[0018]  **FIG. 5** is an exploded first side isometric view of the main assembly of the inhaler of **FIG. 1**;

[0019]  **FIG. 6** is an exploded enlarged isometric view of a medicament cup of the inhaler of **FIG. 1**;

[0020]  **FIG. 7** is an exploded first side isometric view of a hopper and a de-agglomerator of the inhaler of **FIG. 1**;

[0021]  **FIG. 8** is an exploded second side isometric view of the hopper and a swirl chamber roof of the de-agglomerator of the inhaler of **FIG. 1**;

[0022]  **FIG. 9** is an exploded first side isometric view of a case, cams and a mouthpiece cover of the inhaler of **FIG. 1**;

[0023]  **FIG. 10** is an enlarged side isometric view of one of the cams of the inhaler of **FIG. 1**;

[0024]  **FIG. 11** is a second side isometric view of the yoke of the inhaler of **FIG. 1**;

[0025]  **FIG. 12** is a first side isometric view of the yoke of the inhaler of **FIG. 1**, showing a ratchet and a push bar of the yoke;

[0026]  **FIG. 13** is a schematic illustration of lateral movement of a boss of the medicament cup in response to longitudinal movement of the ratchet and the push bar of the yoke of the inhaler of **FIG. 1**;

[0027]  **FIG. 14** is an enlarged isometric view of a dose counter of the inhaler of **FIG. 1**;

[0028]  **FIG. 15** is an exploded enlarged isometric view of the dose counter of the inhaler of **FIG. 1**; and

[0029]  **FIG. 16** is an enlarged isometric view, partially in section, of a portion of the inhaler of **FIG. 1** illustrating medicament inhalation through the inhaler.

[0030]  Like reference characters designate identical or corresponding components and units throughout the several views.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

[0031]  Referring to **FIGS. 1 through 16**, the present disclosure provides a new and improved inhaler **10** for dispensing a dry-powdered medicament in metered doses for

patient inhalation. The inhaler **10** of the present disclosure provides many beneficial features including but not limited to a dose metering system that dispenses dry powdered medicament in discrete amounts or doses for patient inhalation, a medicament reservoir pressure system for managing pressure within the reservoir, and a dose counting system indicating the number of doses remaining in the inhaler **10**.

[0032]  The inhaler **10** generally includes a housing **18**, and an assembly **12** received in the housing (see **FIG. 2**). The housing **18** includes a case **20** having an open end **22** and a mouthpiece **24** for patient inhalation, a cap **26** secured to and closing the open end **22** of the case **20**, and a cover **28** pivotally mounted to the case **20** for covering the mouthpiece **24** (see **FIGS. 1, 2** and **9**). The housing **18** is preferably manufactured from a plastic such as polypropylene, acetal or moulded polystyrene, but may be manufactured from metal or another suitable material.

[0033]  The internal assembly **12** includes a reservoir **14** for containing dry powered medicament in bulk form, a de-agglomerator **32** that breaks down the medicament between a delivery passageway **34** and the mouthpiece **24**, and a spacer **38** connecting the reservoir to the de-agglomerator.

[0034]  Reservoir

[0035]  The reservoir **14** is generally made up of a collapsible bellows **40** and a hopper **42** having a dispenser port **44** (see **FIGS. 2-5** and **7-8**) for dispensing medicament upon the bellows **40** being at least partially collapsed to reduce the internal volume of the reservoir. The hopper **42** is for holding the dry powder medicament in bulk form and has an open end **46** closed by the flexible accordion-like bellows **40** in a substantially air-tight manner. An air filter **48** covers the open end **46** of the hopper **42** and prevents dry powder medicament from leaking from the hopper **42** (see **FIG. 7**).

[0036]  Spacer

[0037]  A base **50** of the hopper **42** is secured to a spacer **38**, which is in turn secured to the de-agglomerator **32** (see **FIGS. 3-5** and **7-8**). The hopper **42**, the spacer **38**, and the de-agglomerator **32** are preferably manufactured from a plastic such as polypropylene, acetal or moulded polystyrene, but may be manufactured from metal or another suitable material. The hopper **42**, the spacer **38** and the de-agglomerator **32** are connected in a manner that provides an air tight seal between the parts. For this purpose heat or cold sealing, laser welding or ultrasonic welding could be used, for example.

[0038]  The spacer **38** and the hopper **42** together define the medicament delivery passageway **34**, which preferably includes a venturi **36** (see **FIG. 16**) for creating an entraining air flow. The spacer **38** defines a slide channel **52** communicating with the dispenser port **44** of the hopper **42**, and a chimney **54** providing fluid communication between the medicament delivery passageway **34** and a supply port **56** of the de-agglomerator **32** (see **FIGS. 7 and 8**). The slide channel **52** extends generally normal with respect to the axis "A" of the inhaler **10**.

[0039]  De-Agglomerator

[0040]  As its name implies, the de-agglomerator **32** breaks down agglomerates of dry powder medicament before the dry powder leaves the inhaler **10** through the mouthpiece **24**.

CIPLA-BDI_0184210

**DTX159**
**11 of 14**

The de-agglomerator includes a swirl chamber **58** extending from the supply port **56** to an outlet port **60** connected to the mouthpiece **24** (see FIG. **16**). The de-agglomerator **32** also includes two diametrically opposed inlet ports **62** that extend substantially tangential to the circular cross-section of the swirl chamber. Radial vanes **64** are positioned at the top of the swirl chamber and are sized such that at least a portion of breath-actuated air streams entering through the diametrically opposed inlet ports **62** collide with the vanes.

[0041]   The inhaler **10** preferably includes a de-agglomerator of the type disclosed in co-pending provisional U.S. patent application serial No. 60/213,382, filed Jun. 23, 2000 (entitled "De-Agglomerator for Breath-Actuated Dry Powder Inhaler **10**"), which has been incorporated herein by reference. It should be understood that although the inhaler **10** of the present disclosure is shown with a particular de-agglomerator **32**, the inhaler **10** is not limited to use with the de-agglomerator shown and can be used with other types of de-agglomerators or a simple swirl chamber.

[0042]   Dose Metering System

[0043]   The dose metering system includes a first yoke **66** and a second yoke **68** mounted on the internal assembly **12** within the housing **18**, and movable in a linear direction parallel with an axis "A" of the inhaler **10** (see FIG. **2**). An actuation spring **69** is positioned between the cap **26** of the housing **18** and the first yoke **66** for biasing the yokes in a first direction towards the mouthpiece **24**. In particular, the actuation spring **69** biases the first yoke **66** against the bellows **40** and the second yoke **68** against cams **70** mounted on the mouthpiece cover **28** (see FIG. **9**).

[0044]   The first yoke **66** includes an opening **72** that receives and retains a crown **74** of the bellows **40** such that the first yoke **66** pulls and expands the bellows **40** when moved towards the cap **26**, i.e., against the actuation spring **69** (see FIG. **2**). The second yoke **68** includes a belt **76**, which receives the first yoke **66**, and two cam followers **78** extending from the belt in a direction opposite the first yoke **66** (see FIGS. **3**, **11** and **12**), towards the cams **70** of the mouthpiece cover **28**.

[0045]   The dose metering system also includes the two cams **70** mounted on the mouthpiece cover **28** (see FIGS. **9** and **10**), and movable with the cover **28** between open and closed positions. The cams **70** each include an opening **80** for allowing outwardly extending hinges **82** of the case **20** to pass therethrough and be received in first recesses **84** of the cover **28**. The cams **70** also include bosses **86** extending outwardly and received in second recesses **88** of the cover **28**, such that the cover **28** pivots about the hinges **82** and the cams **70** move with the cover **28** about the hinges.

[0046]   Each cam **70** also includes first, second and third cam surfaces **90**, **92**, **94**, and the cam followers **78** of the second yoke **68** are biased against the cam surfaces by the actuation spring **69**. The cam surfaces **90**, **92**, **94** are arranged such that the cam followers **78** successively engage the first cam surfaces **90** when the cover **28** is closed, the second cam surfaces **92** when the cover **28** is partially opened, and the third cam surfaces **94** when the cover **28** is fully opened. The first cam surfaces **90** are spaced further from the hinges **82** than the second and the third cam surfaces, while the second cam surfaces **92** are spaced further from the hinges **82** than the third cam surfaces **94**. The cams **70**, therefore,

allow the yokes **66**, **68** to be moved by the actuation spring **69** parallel with the axis "A" of the inhaler **10** in the first direction (towards the mouthpiece **24**) through first, second and third positions as the cover **28** is opened. The cams **70** also push the yokes **66**, **68** in a second direction parallel with the axis "A" (against the actuation spring **69**) and towards the cap **26** of the housing **18**) through the third, the second and the first positions as the cover **28** is closed.

[0047]   The dose metering system further includes a cup assembly **96** movable between the dispenser port **44** of the reservoir **14** and the delivery passageway **34**. The cup assembly **96** includes a medicament cup **98** mounted in a sled **100** slidably received in the slide channel **52** of the spacer **38** below the hopper **42** (see FIGS. **5** and **6**). The medicament cup **98** includes a recess **102** adapted to receive medicament from the dispenser port **44** of the reservoir **14** and sized to hold a predetermined dose of dry powdered medicament when filled. The cup sled **100** is biased along the slide channel **52** from the dispenser port **44** of the hopper **42** towards the delivery passageway **34** by a cup spring **104**, which is secured on the hopper **42** (see FIGS. **4** and **5**).

[0048]   The dose metering system also includes a ratchet **106** and a push bar **108** on one of the cam followers **78** of the second yoke **68** that engage a boss **110** of the cup sled **100** (see FIGS. **5**, **11** and **12**). The ratchet **106** is mounted on a flexible flap **112** and is shaped to allow the boss **110** of the sled **100** to depress and pass over the ratchet **106**, when the boss **110** is engaged by the push bar **108**. Operation of the dose metering system is discussed below.

[0049]   Reservoir Pressure System

[0050]   The reservoir pressure system includes a pressure relief conduit **114** in fluid communication with the interior of the reservoir **14** (see FIGS. **7** and **8**), and a pressure relief port **116** in a wall of the slide channel **52** (see FIGS. **5** and **8**) providing fluid communication with the pressure relief conduit **114** of the hopper **42**.

[0051]   The medicament cup assembly **96** includes a first sealing surface **118** adapted to seal the dispenser port **44** upon the cup assembly being moved to the delivery passageway **34** (see FIGS. **5** and **6**). A sealing spring **120** is provided between the sled **100** and the cup **98** for biasing the medicament cup **98** against a bottom surface of the hopper **42** to seal the dispenser port **44** of the reservoir **14**. The cup **98** includes clips **122** that allow the cup to be biased against the reservoir, yet retain the cup in the sled **100**.

[0052]   The sled **100** includes a second sealing surface **124** adapted to seal the pressure relief port **116** when the recess **102** of the cup **98** is aligned with the dispenser port **44**, and an indentation **126** (see FIG. **6**) adapted to unseal the pressure relief port **116** when the first sealing surface **118** is aligned with the dispenser port **44**. Operation of the pressure system is discussed below.

[0053]   Dose Counting System

[0054]   The dose counting system **16** is mounted on the hopper **42** and includes a ribbon **128**, having successive numbers or other suitable indicia printed thereon, in alignment with a transparent window **130** provided in the housing **18** (see FIG. **2**). The dose counting system **16** includes a rotatable bobbin **132**, an indexing spool **134** rotatable in a single direction, and the ribbon **128** rolled and received on

CIPLA-BDI_0184211

**DTX159**
**12 of 14**

4

the bobbin 132 and having a first end 127 secured to the spool 134, wherein the ribbon 128 unrolls from the bobbin 132 so that the indicia is successively displayed as the spool 134 is rotated or advanced.

[0055]   The spool 134 is arranged to rotate upon movement of the yokes 66, 68 to effect delivery of a dose of medicament from the reservoir 14 into the delivery passageway 34, such that the number on the ribbon 128 is advanced to indicate that another dose has been dispensed by the inhaler 10. The ribbon 128 can be arranged such that the numbers, or other suitable indicia, increase or decrease upon rotation of the spool 134. For example, the ribbon 128 can be arranged such that the numbers, or other suitable indicia, decrease upon rotation of the spool 134 to indicate the number of doses remaining in the inhaler 10. Alternatively, the ribbon 128 can be arranged such that the numbers, or other suitable indicia, increase upon rotation of the spool 134 to indicate the number of doses dispensed by the inhaler 10.

[0056]   The indexing spool 134 preferably includes radially extending teeth 136, which are engaged by a pawl 138 extending from one of the cam followers 78 (see FIGS. 3 and 11) of the second yoke 68 upon movement of the yoke to rotate, or advance, the indexing spool 134. More particularly, the pawl 138 is shaped and arranged such that it engages the teeth 136 and advances the indexing spool 134 only upon the mouthpiece 24 cover 28 being closed and the yokes 66, 68 moved back towards the cap 26 of the housing 18.

[0057]   The dose counting system 16 also includes a chassis 140 that secures the dose counting system to the hopper 42 and includes shafts 142, 144 for receiving the bobbin 132 and the indexing spool 134. The bobbin shaft 142 is preferably forked and includes radially nubs 146 for creating a resilient resistance to rotation of the bobbin 132 on the shaft 142. A clutch spring 148 is received on the end of the indexing spool 134 and locked to the chassis 140 to allow rotation of the spool 134 in only a single direction (counterclockwise as shown in FIG. 14). Operation of the dose counting system 16 is discussed below.

[0058]   Operation

[0059]   FIG. 13 illustrates the relative movements of the boss 110 of the cup sled 100, and the ratchet 106 and the push bar 108 of the second yoke 68 as the mouthpiece cover 28 is opened and closed. In the first position of the yokes 66, 68 (wherein the cover 28 is closed and the cam followers 78 are in contact with the first cam surfaces 90 of the cams 70), the ratchet 106 prevents the cup spring 104 from moving the cup sled 100 to the delivery passageway 34. The dose metering system is arranged such that when the yokes are in the first position, the recess 102 of the medicament cup 98 is directly aligned with the dispenser port 44 of the reservoir 14 and the pressure relief port 116 of the spacer 38 is sealed by the second sealing surface 124 of the cup sled 100.

[0060]   Upon the cover 28 being partially opened such that the second cam surfaces 92 of the cams 70 engage the cam followers 78, the actuator spring 69 is allowed to move the yokes 66, 68 linearly towards the mouthpiece 24 to the second position and partially collapse the bellows 40 of the medicament reservoir 14. The partially collapsed bellows 40 pressurizes the interior of the reservoir 14 and ensures

medicament dispensed from the dispenser port 44 of the reservoir fills the recess 102 of the medicament cup 98 such that a predetermined dose is provided. In the second position, however, the ratchet 106 prevents the cup sled 100 from being moved to the delivery passageway 34, such that the recess 102 of the medicament cup 98 remains aligned with the dispenser port 44 of the reservoir 14 and the pressure relief port 116 of the spacer 38 remains sealed by the second sealing surface 124 of the cup assembly 96.

[0061]   Upon the cover 28 being fully opened such that the third cam surfaces 94 engage the cam followers 78, the actuator spring 69 is allowed to move the yokes 66, 68 further towards the mouthpiece 24 to the third position. When moved to the third position, the ratchet 106 disengages, or falls below the boss 110 of the cup sled 100 and allows the cup sled 100 to be moved by the cup spring 104, such that the filled recess 102 of the cup 98 is position in the venturi 36 of the delivery passageway 34 and the dispenser port 44 of the reservoir 14 is sealed by the first sealing surface 118 of the cup assembly 96. In addition, the pressure relief port 116 is uncovered by the indentation 126 in the side surface of the sled 100 to release pressure from the reservoir 14 and allow the bellows 40 to further collapse and accommodate the movement of the yokes 66, 68 to the third position. The inhaler 10 is then ready for inhalation by a patient of the dose of medicament placed in the delivery passageway 34.

[0062]   As shown in FIG. 16, a breath-induced air stream 150 diverted through the delivery passageway 34 passes through the venturi 36, entrains the medicament and carries the medicament into the de-agglomerator 32 of the inhaler 10. Two other breath-induced air streams 152 (only one shown) enter the de-agglomerator 32 through the diametrically opposed inlet ports 62 and combine with the medicament entrained air stream 150 from the delivery passageway 34. The combined flows 154 and entrained dry powder medicament then travel to the outlet port 60 of the de-agglomerator and pass through the mouthpiece 24 for patient inhalation.

[0063]   Once inhalation is completed, the mouthpiece cover 28 can be closed. When the cover 28 is closed, the trigger cams 70 force the yokes 66, 68 upwardly such that the first yoke 66 expands the bellows 40, and the pawl 138 of the second yoke 68 advances the indexing spool 134 of the dose counting system 16 to provide a visual indication of a dose having been dispensed. In addition, the cup assembly 96 is forced back to the first position by the pusher bar 108 of the upwardly moving second yoke 68 (see FIG. 13) such that the boss 110 of the cup sled 100 is engaged and retained by the ratchet 106 of the second yoke 68.

[0064]   It should be understood that the foregoing detailed description and preferred embodiment are only illustrative of inhalers constructed in accordance with the present disclosure. Various alternatives and modifications to the presently disclosed inhalers can be devised by those skilled in the art without departing from the spirit and scope of the present disclosure. For example, the medicament cup could be provided on a rotary sled, advanced by movement of the yokes. In addition, the outlet port of the pressure relief could be provided in other locations than the side wall of the slide channel. Furthermore, the dose counting system could be adapted to provide an audible indications in addition to a

CIPLA-BDI_0184212

US 2002/0078950 A1

5

Jun. 27, 2002

visual indication of a dispensed dose. Accordingly, the present disclosure is intended to embrace all such alternatives and modifications that fall within the spirit and scope of an inhaler as recited in the appended claims.

What is claimed is:

1. An inhaler comprising:

a sealed reservoir including a dispensing port;

a channel communicating with the dispensing port and including a pressure relief port;

a conduit providing fluid communication between an interior of the sealed reservoir and the pressure relief port of the channel;

a cup assembly movably received in the channel and including,

a recess adapted to receive medicament when aligned with the dispensing port,

a first sealing surface adapted to seal the dispensing port when the recess is unaligned with the dispensing port, and

a second sealing surface adapted to sealing the pressure relief port when the recess is aligned with the dispensing port and unseal the pressure relief port when the recess is unaligned with the dispensing port.

2. An inhaler according to claim 1, wherein the cup assembly includes a sealing spring biasing the first sealing surface against the reservoir.

3. An inhaler according to claim 1, wherein the reservoir includes a collapsible bellows adapted to increase pressure within the interior of the reservoir upon being collapsed, when the pressure relief port is sealed.

4. An inhaler according to claim 1, wherein the cup assembly includes a cup received in a cup sled movable within the channel, the cup defining the recess and the first sealing surface, and the sled defining the second sealing surface.

5. An inhaler according to claim 4, wherein the sled defines an indentation adapted to align with and unseal the pressure relief port when the first sealing surface is aligned with the dispenser port.

6. An inhaler according to claim 4, wherein the cup assembly includes a sealing spring between the cup and the cup sled, biasing the first sealing surface of the cup against the reservoir.

7. An inhaler according to claim 1, wherein the channel extends linearly and the cup assembly is movable in opposing directions within the channel.

8. An inhaler according to claim 1, further comprising:

a cup spring biasing the cup assembly along the channel; and

a yoke movable between at least two positions and including a ratchet engaging the cup assembly and preventing movement of the cup assembly when the yoke is in one of the positions and allowing movement of the cup when the yoke is in another of the positions.

9. An inhaler according to claim 8, wherein the cup spring biases the cup assembly to a position wherein the recess is unaligned with the dispensing port of the reservoir.

10. An inhaler according to claim 9, wherein the yoke further includes a push bar adapted to align the recess of the cup assembly with the dispensing port upon movement of the yoke to one of the positions.

11. An inhaler according to claim 9, further comprising:

at least one movable cam including at least two successive cam surfaces; and

a spring biasing the yoke against the cam such that movement of the cam causes the yoke to successively engage the cam surfaces and move the yoke between the at least two positions of the yoke.

12. An inhaler according to claim 11, wherein the cam includes three successive cam surfaces for moving the yoke between three positions, wherein the ratchet is adapted to hold the recess unaligned with the dispensing port when the yoke is in a first and a second of the three positions, and allow movement of the cup assembly when the yoke is in a third of the three positions.

13. An inhaler according to claim 12, further comprising a collapsible bellows adapted to increase pressure within the interior of the reservoir upon being collapsed, and wherein the yoke is arranged to collapse the bellows when the yoke is in the first and the second positions.

14. An inhaler according to claim 11, further comprising:

a mouthpiece for patient inhalation; and

a cover movable to open and close the mouthpiece, wherein the at least one cam is secured to the cover for movement therewith, whereby opening and closing the mouthpiece causes the yoke to move between the three positions of the yoke.

15. An inhaler according to claim 14, wherein the cam is movable by rotation.

16. An inhaler according to claim 1, wherein the reservoir includes a volume of dry powdered medicament.

17. An inhaler according to claim 1, further comprising:

a pawl movable along a predetermined path upon movement of the recess of the cup assembly from the dispensing port; and

a dose counter including,

a bobbin,

a rotatable spool,

a rolled ribbon received on the bobbin and rotatable about an axis of the bobbin, the ribbon having indicia thereon successively extending between a first end of the ribbon secured to the spool and a second end of the ribbon positioned on the bobbin, and

teeth extending radially outwardly from the spool into the predetermined path of the pawl so that the spool is rotated by the pawl and the ribbon is advanced onto the spool during the metering of a dose.

* * * * *

CIPLA-BDI_0184213



## THE UNITED STATES OF AMERICA

### TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

*January 25, 2021*

**THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE RECORDS OF THIS OFFICE OF THE FILE WRAPPER AND CONTENTS OF:**

**APPLICATION NUMBER:** *15/262,818*
**FILING DATE:** *September 12, 2016*
**PATENT NUMBER:** *10561808*
**ISSUE DATE:** *February 18, 2020*

> Dist. of New Jersey
> C.A. No. 20-10172 (JXN)(MAH)
> Consolidated
> ## JTX-006



Certified by

*Andrew Lauren*

**Under Secretary of Commerce
for Intellectual Property
and Director of the United States
Patent and Trademark Office**

TEVAQVAR-00024954

<table>
<tr><td rowspan="2"><strong>INFORMATION DISCLOSURE STATEMENT BY APPLICANT</strong><br>( Not for submission under 37 CFR 1.99)</td><td>Application Number</td><td>15262818</td></tr>
<tr><td>Filing Date</td><td>2016-09-12</td></tr>
</table>

| | | |
|---|---|---|
| Application Number | 15262818 |
| Filing Date | 2016-09-12 |
| First Named Inventor | Declan Walsh |
| Art Unit | 2876 |
| Examiner Name | Daniel A. Hess |
| Attorney Docket Number | 026723-5043-15US |

| | | | | |
|---|---|---|---|---|
| 6 | 20100089395 | 2010-04-15 | Power | |
| 7 | 20030209239 | 2003-11-13 | Rand | |
| 8 | 20060107949 | 2006-05-25 | Davies | |
| 9 | 20020047021 | 2002-04-25 | Blacker | |
| 10 | 20020078949 | 2002-06-27 | OLeary | |
| 11 | 20020078950 | 2002-06-27 | OLeary | |
| 12 | 20050028815 | 2005-02-10 | Deaton | |
| 13 | 20050087191 | 2005-04-28 | Morton | |
| 14 | 20060096594 | 2006-05-11 | Bonney | |
| 15 | 20070062518 | 2007-03-22 | Geser | |
| 16 | 20080242465 | 2008-10-02 | Strobel | |

TEVAQVAR-00025109

| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) |
|---|---|

| Application Number | 15262818 |
|---|---|
| Filing Date | 2016-09-12 |
| First Named Inventor | Declan Walsh |
| Art Unit | 2876 |
| Examiner Name | Daniel A. Hess |
| Attorney Docket  Number | 026723-5043-15US |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 18 | 2007012861 | WO | | 2007-02-01 | Cambridge Consultants Limited | | |
| 19 | 2008119552 | WO | | 2008-02-28 | Ivax Pharmaceuticals Ireland | | |
| 20 | 2008261423 | JP | | 2008-10-30 | NSK Ltd. | | |
| 21 | 2009233308 | JP | | 2009-10-15 | Otsuka Pharma Co. Ltd. et al. | | |
| 22 | 2009257392 | JP | | 2009-11-05 | Jtekt Corp. | | |
| 23 | 2010096308 | JP | | 2010-04-30 | NSK Ltd. | | |
| 24 | 2011012325 | WO | | 2011-02-03 | Ivax International B.V. | | |
| 25 | 2011012327 | WO | | 2011-02-03 | Ivax International B.V. | | |
| 26 | 2320489 | GB | | 1998-06-24 | Norton Healthcare Limited | | |
| 27 | 2501726 | CA | | 2006-09-21 | Sluggo Lighting Ltd. | | |
| 28 | 450059 | JP | | 1992-08-13 | Sued Chemie AG | | |

TEVAQVAR-00025112

Application/Control Number: 15/262,818                                              Page 2
Art Unit: 2876

## DETAILED ACTION

This action is responsive to applicant's arguments of 7/6/2017, which have been entered

into the electronic file of record.

The present application is being examined under the pre-AIA first to invent provisions.

### *Response to Arguments*

Applicant's arguments filed 7/6/2017 have been fully considered but they are not

persuasive.

The applicant argues:

"In particular, O'Leary does not teach, suggest or disclose the claimed regulator as highlighted

above. And, unsupported speculation as to the significance and functionality of a prior art

disclosure or how that prior art might be modified does not satisfy the Office's burden of

articulating a reasoned basis for a determination of prime facie obviousness. Indeed, the

Examiner acknowledges that "O'Leary does not show what is inside the bobbin 132 beyond the

hexagonal part." Office Action page 3. Instead, the Examiner states that features of independent

claim 1 could be met by O'Leary "if there are some kind of complementary features inside of the

bobbin 132 that match the nubs 146 of the shaft 142." Id. (emphasis added). The Examiner also

notes that "[i]t is reasonable that there should be some complementary features in the bobbin 132

[of O'Leary] that correspond to nubs 146 because the alternative, a smooth opening, would seem

to render the nubs pointless and non-functional." The speculative nature of these observations

TEVAQVAR-00027120

were acknowledged while noting that the rejection incorporates what is "merely...one probable

assumption." Yet, even if it were possible to modify the subject matter disclosed in O'Leary to

arrive at the claimed invention, the mere possibility of doing so does not make the claimed

invention obvious in view of O'Leary. That is especially true where, as here, there is no

articulated rational to so modify O'Leary to arrive at the claimed invention."


The examiner appreciates the applicant's argument, but maintains that the text of O'Leary itself

provides a clear motivation to have grooves that match with the radial nubs 146. The examiner is

not merely speculating but is following O'Leary's statements about these nubs.


O'Leary teaches at para 0057,

"The bobbin shaft 142 is preferably forked and includes radially nubs 146 for creating a resilient

resistance to rotation of the bobbin 132 on the shaft 142."


If the corresponding inner surface of O'Leary were smooth, then the nubs would not "create a

resilient resistance to rotation" as O'Leary requires. In order to "create a resilient resistance to

rotation" as O'Leary states that there is, the nubs should slip into corresponding concavities.


The examiner does not believe he is engaging in undue speculation or departing from the text of

O'Leary. The examiner maintains that there must be corresponding concave features to match the

nubs in order to "create a resilient resistance to rotation" which is O'Leary's stated requirement

of para 0057.

TEVAQVAR-00027121

Application/Control Number: 15/262,818                                   Page 4
Art Unit: 2876

This follows the physics principle of surface friction. Surface friction, especially on a

microscopic scale, results when small protrusions on one surface press against small indentations

on the other surface. A perfectly smooth surface would provide no friction. From a physics

perspective, it is plain that in order to "create a resilient resistance to rotation", the inner surface

opposite the nubs of O'Leary should have concavities.

### *Claim Rejections - 35 USC § 103*

The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102, if the differences between the subject matter sought to be patented and the prior art
> are such that the subject matter as a whole would have been obvious at the time the invention was made
> to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not
> be negatived by the manner in which the invention was made.

The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under pre-

AIA 35 U.S.C. 103(a) are summarized as follows:

1. Determining the scope and contents of the prior art.

2. Ascertaining the differences between the prior art and the claims at issue.

3. Resolving the level of ordinary skill in the pertinent art.

4. Considering objective evidence present in the application indicating obviousness or

nonobviousness.

Claims 1-13, 16, 17 and 20-29 are rejected under pre-AIA 35 U.S.C. 103(a) as being

unpatentable over O'Leary (US 2002/0078950).

TEVAQVAR-00027122

Application/Control Number: 15/262,818                                    Page 5
Art Unit: 2876

Re claim 1:

Attention is drawn particularly to figures 14 and 15 of O'Leary and paragraphs 0053 to 0057 of O'Leary.

O'Leary teaches a dose counter with a counter display to indicate dosage information (counter numerals on the tape in figures 14 and 15). There is a pawl 138 (see para 0055, and figures 3 and 11) that engages teeth 136 to drive the counter incrementally in a first direction from a first station (bobbin 132 onto which ribbon 128 is initially placed) onto a second station (uptake spool 134 which collects the ribbon as it unrolls from bobbin 132.)

There is a regulator in O'Leary that is almost identical to the regulator of the claims. In particular, O'Leary teaches at para 0057, "The bobbin shaft 142 is preferably forked and includes radially nubs 146 for creating a resilient resistance to rotation of the bobbin 132 on the shaft 142."

Regarding a regulator that acts on the counter in an incremental way, the claim limitations could be met if there are some kind of complementary features inside of the bobbin 132 that match the nubs 146 of shaft 142.

O'Leary does not show what is inside the bobbin 132 beyond the hexagonal part. Nevertheless, it is reasonable to expect that there would be some kind of complementary features to match the nubs 146 because connecting parts are typically complementary.

It is reasonable that there should be some complementary features in the bobbin 132 that correspond to nubs 146 because the alternative, a smooth opening, would seem to render the

TEVAQVAR-00027123

Application/Control Number: 15/262,818                                    Page 6
Art Unit: 2876

nubs pointless and non-functional. In short, the nubs 146 should be interacting with something

complementary inside of 132, otherwise the nubs aren't interacting with anything

If the inside of bobbin 132 is simply complementary (i.e. with indentations exactly

matching the nubs) -- a reasonable/obvious assumption since connectors are usually

complementary, then an incremental regulator would result. If the opening of bobbin 132 were

merely matched to the nubs, then there would be resistance as the nubs nestle in matching

indentations, less resistance when the nubs slide between indentations, and more resistance again

as the nubs fall into the next indentations. This would regulate toward incremental movements.

The examiner is not merely speculating but is following O'Leary's statements about these nubs.

O'Leary teaches at para 0057,

"The bobbin shaft 142 is preferably forked and includes radially nubs 146 for creating a resilient

resistance to rotation of the bobbin 132 on the shaft 142."

If the corresponding inner surface of O'Leary were smooth, then the nubs would not "create a

resilient resistance to rotation" as O'Leary requires. In order to "create a resilient resistance to

rotation" as O'Leary states that there is, the nubs should slip into corresponding concavities.

Re claims 2 and 3: As figures 14 and 15 illustrate, the counter display is a tape with

indicia.

TEVAQVAR-00027124

Application/Control Number: 15/262,818                                           Page 7
Art Unit: 2876

  Re claim 4: As figures 14 and 15 of O'Leary and paragraphs 0053 to 0057 show, the tape

unwinds from the first shaft to move onto the second shaft.

  Re claim 5: See figure 15. Element 132 is mounted for rotation on the fixed shaft 142 of

the dose counter.

  Re claim 6: See discussion re claim 1, above.

  Re claims 7 and 8: There are exactly two projections, or nubs. Figure 15 shows one nub

146 and the symmetrical shaft 142 would plainly have second matching nub hidden from view

on the second fork, as is apparent in figure 15.

  Re claim 9: The nubs 146 of O'Leary figure 15 can be regarded as radiused.

  Re claim 10: The nubs 146 are located on shaft 142 which rotationally fixed, and the

shaft/bobbin 132 is rotationally mounted thereon.

  Re claims 11-13: Again, view figure 15 of O'Leary which shows the fixed shaft 142 with

two flexible legs, each with a nub. As for complementary formations, see discussion re claim 1,

above.

  The difference between six and "eight to twelve" formations is a matter of obvious design

choice. For example, if the numbers on the tape were smaller so that it takes more numbers to

travel the circumference of the bobbin, there should be correspondingly more grooves closer

together for the nubs to rest.

  Various solutions with different numbers of formations on the interior of the shaft/bobbin

132 are equivalent.

TEVAQVAR-00027125

Application/Control Number: 15/262,818                                                      Page 8
Art Unit: 2876

Re claim 16: The six corners of the interior hexagon of the shaft/bobbin 132 are

concavities.

Re claim 17: Although not directly shown in O'Leary, it is obvious and conventional for a

receptacle to be complementary in shape to that which plugs into it. If the receptacle inside 132

of O'Leary was merely complementary to the outer shape of shaft 142, then the claim limitation

would be met.


Re claims 20-22: See figure 15 of O'Leary.

Re claims 23-25: See figures 14 and 15 of O'Leary and paragraphs 0053 to 0057 of

O'Leary.

Re claim 26: The dose metering system in O'Leary is described as a ratchet (para 0048).

As commonly understood in the art, a ratchet is a one-way gearing system which operates by an

anti-back-drive pawl. The ratchet is an old and conventional mechanical system.

Re claims 27-29: O'Leary is silent on the specific amounts of rotationally-resisting force

involved in his regulator. However the rotationally-resisting force is a function of the shape of

the shaft 142 and the shape of the interior of bobbin 132 in figure 15 of O'Leary. With

complementary indentations as per claim 1 above, it would be reasonable to expect that the

resistance forces will be similar.

TEVAQVAR-00027126

Application/Control Number: 15/262,818                                                    Page 9
Art Unit: 2876

*Allowable Subject Matter*

Claims 14-15 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

The examiner also takes one obviousness step by judging that there may be complementary formations to the nubs in bobbin 132. To say that the number is particularly 8 to 12 would be overreliance on hindsight in the examiner's view.

Claims 18-19 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

Claims 17+18 recite, "The dose counter as claimed in Claim 16 in which each concavity comprises a radiused surface wall portion which merges on at least one side thereof into flat wall portion surface and in which the engagement surface includes a series of said concavities and in which convex wall portions of the engagement surface are formed between each adjacent two said concavities, each said convex wall portion comprising a convex radiused wall portion."

The examiner understands that the applicant is describing the interior profile seen in instant figure 16, which is not shown or suggest in the prior art.

*Conclusion*

**THIS ACTION IS MADE FINAL.** Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

TEVAQVAR-00027127